## DOCKET NO. 17-11589-HH

# United States Court of Appeals

*for the*

# Eleventh Circuit

---

CODE REVISION COMMISSION, ET AL.,

*Plaintiffs/Appellees,*

*v.*

PUBLIC.RESOURCE.ORG, INC.,

*Defendant/Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 1:15-cv-02594-RWS

(Hon. Richard W. Story)

## APPELLANT'S APPENDIX – VOLUME ONE

ELIZABETH H. RADER
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, N.W.
Washington, DC 20004
(202) 239-3008
elizabeth.rader@alston.com

SARAH P. LAFANTANO
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309
(404) 881-7000
sarah.lafantano@alston.com

*Counsel for Defendant/Appellant*

# TABLE OF CONTENTS

**VOLUME ONE**

**TAB DS –** District Court Docket Sheets ........................................................ 1

**TAB 1 –** Complaint for Injunctive Relief
Filed July 21, 2015 ........................................................................................ 10

    **TAB 1-1 –** Code §1-1-6 .............................................................................. 29

    **TAB 1-2 –** Columbia Journalism Review ................................................ 31

    **TAB 1-3 –** YES WE SCAN Project Promotion ..................................... 37

    **TAB 1-4 –** July 25, 2013 Cease and Desist Letter to Carl Malamud ................ 41

    **TAB 1-5 –** Letter from Public.Resource.Org dated 7/30/13 ........................... 44

    **TAB 1-6 –** O.C.G.A. Works Copied by Defendant ............................................ 48

**TAB 6 –** Answer and Counterclaim
Filed September 14, 2015 ............................................................................... 53

    **TAB 6-1 –** Letter from Lee Rosenthal dated 7/16/08 ....................................... 84

    **TAB 6-2 –** Letter from Darrell Issa dated 1/5/11 ............................................. 86

    **TAB 6-3 –** Code §1-1-1 ............................................................................. 88

    **TAB 6-4 –** Code §1-1-10 ........................................................................... 91

    **TAB 6-5 –** LexisNexis Terms and Conditions ..................................................... 93

    **TAB 6-6 –** Georgia Code Website Terms and Conditions .............................. 100

**TAB 11 –** Amended Complaint for Injunctive Relief
Filed October 8, 2015 ................................................................................... 104

    **TAB 11-1 –** Code §1-1-6 (FOUND AT TAB 1-1)

**TAB 11-2 –** Columbia Journalism Review (FOUND AT TAB 1-2)

**TAB 11-3 –** YES WE SCAN Project Promotion (FOUND AT TAB 1-3)

**TAB 11-4 –** July 25, 2013 Cease and Desist Letter to Carl Malamud (FOUND AT TAB 1-4)

**TAB 11-5 –** Letter from Public.Resource.Org dated 7/30/13 (FOUND AT TAB 1-5)

**TAB 11-6 –** O.C.G.A. Works Copied by Defendant (FOUND AT TAB 1-6)

**TAB 10 –** Answer to Affirmative Defenses and Counterclaim
Filed October 10, 2015 .......................................................................................... 125

**TAB 16 –** Answer to Amended Complaint and Counterclaim of Defendant
Public.Resource.Org, Inc.
Filed October 22, 2015 .......................................................................................... 141

**TAB 16-1 –** Letter from Lee Rosenthal dated 7/16/08 (FOUND AT 6-1)

**TAB 16-2 –** Letter from Darrell Issa dated 1/5/11 (FOUND AT 6-2)

**TAB 16-3 –** Code §1-1-1 (FOUND AT 6-3)

**TAB 16-4 –** Code §1-1-10 (FOUND AT 6-4)

**TAB 16-5 –** LexisNexis Terms and Conditions (FOUND AT 6-5)

**TAB 16-6 –** Georgia Code Website Terms and Conditions (FOUND AT 6-6)

**TAB 16-7 –** LexisNexis Official Code of Georgia Annotated ........................ 172

**VOLUME TWO**

**TAB 17 –** Stipulation of Facts
Filed January 15, 2016 .......................................................................................... 175

**TAB 17-1 –** O.C.G.A. Works Copied and Distributed by Defendant ............ 197

**TAB 17-2 –** Cover of Georgia Code 2013 Edition ............................................ 209

ii

**TAB 17-3 –** Letter from Carl Malamud dated 5/30/13 .................................... 211

**TAB 17-4 –** Letter from Public.Resource.Org dated 7/30/13 (FOUND AT
      TAB 1-5)

**TAB 17-5 –** July 25, 2013 Cease and Desist Letter to Carl Malamud (FOUND
      AT 1-4)

**TAB 17-6 –** Letter from Josh McKoon dated 8/15/13 .................................... 213

**TAB 17-7 –** Letter from Josh McKoon dated 4/2/14 ..................................... 215

**TAB 17-8 –** Emails between Wayne Allen and Brendan Keefe ...................... 220

**TAB 17-9 –** LexisNexis Terms and Conditions (FOUND AT 6-5)

**TAB 17-10 –** Georgia Code Website Terms and Conditions .......................... 223

**TAB 17-11 –** LexisNexis Online Georgia Statutes Terms and Conditions ..... 225

**TAB 17-12 –** Georgia Code Website Terms and Conditions (FOUND AT
      TAB 6-6)

**TAB 17-13 –** LexisNexis Official Code of Georgia Annotated (FOUND AT
      TAB 16-7)

Exhibits to Motion for Summary Judgment with Brief in Support
    Filed May 17, 2016

**TAB 29-3 –** Declaration of Carl Malamud .......................................... 230

**TAB 29-4 –** IRS Information for Public.Resource.Org ................................... 251

**TAB 29-6 –** Foreword from History of Codification ...................................... 255

**TAB 29-7 –** Article from Georgia State Bar Journal ......................................... 263

**TAB 29-8 –** Agreement for Publication .............................................. 268

**TAB 29-10 –** Lexis Report on hits on GA Code ................................................ 301

**TAB 29-14 –** Declaration of Edward Walters ...................................................... 303

**TAB 29-16 –** User's Guide to the OCGA............................................................. 308

**TAB 29-17 –** Plaintiff Commission's Response to Defendant
Public.Resource.Org, Inc.'s First Set of Interrogatories............ 316

**TAB 44 –** Order on Motion for Summary Judgment
Entered March 23, 2017..................................................................... 343

**TAB 45 –** Joint Motion for Entry of Proposed Permanent Injunction Order
Filed April 6, 2017 ........................................................................... 366

**TAB 45-1 –** Proposed Order ............................................................... 370

**TAB 52 –** Order on Joint Motion for Permanent Injunction
Entered April 7, 2017 ......................................................................... 372

**TAB CS –** Certificate of Service

# TAB DS

5/22/2017                                CM/ECF-GA Northern District Court

4months,APPEAL,CLOSED,PROTO,SUBMDJ

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:15-cv-02594-RWS

Code Revision Commission et al v. Public.Resource.Org, Inc.    Date Filed: 07/21/2015
Assigned to: Judge Richard W. Story                            Date Terminated: 04/07/2017
Case in other court: USCA - 11th Circuit., 17-11589-HH         Jury Demand: Defendant
Cause: 28:1338 Copyright Infringement                          Nature of Suit: 820 Copyright
                                                               Jurisdiction: Federal Question

**Plaintiff**

**Code Revision Commission**              represented by    **Anthony B. Askew**
*for the Benefit of and*                                    Meunier Carlin & Curfman, LLC -Atl
*on behalf of*                                              Suite 1300
General Assembly of Georgia                                 999 Peachtree Street, NE
                                                            Atlanta, GA 30309
                                                            404-645-7700
                                                            Fax: 404-645-7707
                                                            Email: taskew@mcciplaw.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Lisa Pavento**
                                                            Meunier Carlin & Curfman, LLC -Atl
                                                            Suite 1300
                                                            999 Peachtree Street, NE
                                                            Atlanta, GA 30309
                                                            404-645-7700
                                                            Email: lpavento@mcciplaw.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Warren James Thomas**
                                                            Meunier Carlin & Curfman, LLC - ATL
                                                            Suite 1300
                                                            999 Peachtree Street NE
                                                            Atlanta, GA 30309
                                                            404-645-7700
                                                            Email: wthomas@mcciplaw.com
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Georgia**                      represented by    **Anthony B. Askew**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Lisa Pavento**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Warren James Thomas**

1

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Public.Resource.Org, Inc.**                represented by **Elizabeth Hannah Rader**
Alston & Bird, LLP- DC
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
202-239-3008
Email: elizabeth.rader@alston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Parker LaFantano**
Alston & Bird, LLP - Atl
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7811
Fax: 404-881-7777
Email: sarah.lafantano@alston.com
*ATTORNEY TO BE NOTICED*

**Jason D. Rosenberg**
Alston & Bird, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7461
Email: jason.rosenberg@alston.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Matthew Bender & Company, Inc**            represented by **John M. Bowler**
Troutman Sanders LLP                         Troutman Sanders, LLP-ATL
600 Peachtree Street, NE                     Bank of America Plaza, Suite 5200
Suite 5200                                   600 Peachtree Street NE
Atlanta, GA 30308                            Atlanta, GA 30308-2216
404-885-3190
Email: john.bowler@troutmansanders.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Mississippi Joint Legislative**    represented by **Lawrence Arthur Schemmel**
**Committee,**                                Office of the Attorney General-MS
P.O. Box 1850
401 North West Street
Jackson, MS 39215
601-359-7600
Email: lschemmel@mdot.ms.gov
*LEAD ATTORNEY*

2

*ATTORNEY TO BE NOTICED*

**Michelle J. Hirsch**
Office of the Attorney General-GA
40 Capitol Square, SW
Atlanta, GA 30334-1300
404-463-8850
Fax: 404-651-5304
Email: mhirsch@law.ga.gov
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Public.Resource.Org, Inc.**       represented by   **Elizabeth Hannah Rader**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Parker LaFantano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason D. Rosenberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Code Revision Commission**       represented by   **Anthony B. Askew**
*for the Benefit of and*                         (See above for address)
*ATTORNEY TO BE NOTICED*

**Lisa Pavento**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Warren James Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**State of Georgia**       represented by   **Anthony B. Askew**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lisa Pavento**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Warren James Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Public.Resource.Org, Inc.**                    represented by **Elizabeth Hannah Rader**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Parker LaFantano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason D. Rosenberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Code Revision Commission**                    represented by **Anthony B. Askew**
*for the Benefit of and*                        (See above for address)
*ATTORNEY TO BE NOTICED*

**Lisa Pavento**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Warren James Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**State of Georgia**                            represented by **Anthony B. Askew**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lisa Pavento**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Warren James Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2015 | 1 | COMPLAINT filed by State of Georgia, Code Revision Commission. (Filing fee $ 400 receipt number 113E-5942262.) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Civil Cover Sheet)(cem) Please visit our website at http://www.gand.uscourts.gov/forms to obtain Pretrial Instructions which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 07/22/2015) |
| 07/21/2015 | 2 | Electronic Summons Issued as to Public.Resource.Org, Inc. (cem) (Entered: 07/22/2015) |
| 07/22/2015 | 3 | AO 121 Form mailed to the Register of Copyrights Office. (cem) (Entered: 07/22/2015) |

| | | |
|---|---|---|
| 07/22/2015 | 4 | STANDING ORDER REGARDING CIVIL LITIGATION, Signed by Judge Mark H. Cohen on 7/22/15. (jpa) (Entered: 07/22/2015) |
| 07/24/2015 | 5 | Return of Service Executed by State of Georgia, Code Revision Commission. Public.Resource.Org, Inc. served on 7/24/2015, answer due 8/14/2015. (Pavento, Lisa) (Entered: 07/24/2015) |
| 09/14/2015 | 6 | ANSWER to 1 COMPLAINT with Jury Demand ( Discovery ends on 2/11/2016.), COUNTERCLAIM against All Plaintiffs with Jury Demand by Public.Resource.Org, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Rosenberg, Jason) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 09/14/2015) |
| 09/14/2015 | 7 | Corporate Disclosure Statement by Public.Resource.Org, Inc. (Rosenberg, Jason) Modified on 9/15/2015 to edit text (jpa). (Entered: 09/14/2015) |
| 09/16/2015 | | Clerks Notation re 7 Corporate Disclosure Statement reviewed by MHC. (jgs) (Entered: 09/16/2015) |
| 09/16/2015 | 8 | APPLICATION for Admission of Elizabeth Rader Pro Hac Vice (Application fee $ 150, receipt number 113E-6046489)by Public.Resource.Org, Inc., Public.Resource.Org, Inc.. (Rosenberg, Jason) (Entered: 09/16/2015) |
| 09/25/2015 | | APPROVAL by Clerks Office re: 8 APPLICATION for Admission of Elizabeth Rader Pro Hac Vice (Application fee $ 150, receipt number 113E-6046489). Attorney Elizabeth Hannah Rader added appearing on behalf of Public.Resource.Org, Inc., Public.Resource.Org, Inc. (pb) (Entered: 09/25/2015) |
| 09/28/2015 | | MINUTE ORDER granting 8 Application for Admission Pro Hac Vice of Elizabeth Rader by CRD by direction of the Court. Approved by Judge Mark H. Cohen on 9/28/15. (jgs) (Entered: 09/28/2015) |
| 09/29/2015 | 9 | NOTICE of Appearance by Sarah Parker on behalf of Public.Resource.Org, Inc. (Parker, Sarah) (Entered: 09/29/2015) |
| 10/08/2015 | 10 | ANSWER to 6 Counterclaim and Affirmative Defenses by Code Revision Commission, State of Georgia.(Askew, Anthony) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 10/08/2015) |
| 10/08/2015 | 11 | AMENDED COMPLAINT FOR INJUNCTIVE RELIEF against Public.Resource.Org, Inc., filed by State of Georgia, Code Revision Commission. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Askew, Anthony) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 10/08/2015) |
| 10/14/2015 | 12 | JOINT PRELIMINARY REPORT AND DISCOVERY PLAN filed by Code Revision Commission, State of Georgia. (Askew, Anthony) (Entered: 10/14/2015) |
| 10/15/2015 | 13 | SCHEDULING ORDER: re: 12 Joint Preliminary Report and Discovery Plan. Discovery ends on 3/18/2016. Signed by Judge Mark H. Cohen on 10/15/15. (jpa) (Entered: 10/15/2015) |
| 10/19/2015 | 14 | CERTIFICATE OF SERVICE of Defendant's Initial Disclosures by Public.Resource.Org, Inc. (Rosenberg, Jason) Modified on 10/20/2015 to edit filing attorney (jpa). (Entered: 10/19/2015) |
| 10/20/2015 | 15 | CERTIFICATE OF SERVICE for Plaintiffs' Initial Disclosures by Code Revision Commission, State of Georgia.(Thomas, Warren) (Entered: 10/20/2015) |

5

| 10/22/2015 | 16 | ANSWER to 11 Amended Complaint , COUNTERCLAIM against All Plaintiffs by Public.Resource.Org, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Rosenberg, Jason) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 10/22/2015) |
|---|---|---|
| 01/15/2016 | 17 | STIPULATION *of Facts* by Code Revision Commission, State of Georgia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M)(Askew, Anthony) (Entered: 01/15/2016) |
| 02/10/2016 | 18 | Joint MOTION for Protective Order by Code Revision Commission, State of Georgia. (Attachments: # 1 Proposed Protective Order)(Askew, Anthony) (Entered: 02/10/2016) |
| 02/12/2016 | 19 | PROTECTIVE ORDER. Signed by Judge Mark H. Cohen on 2/12/16. (jpa) (Entered: 02/12/2016) |
| 02/16/2016 | 20 | CERTIFICATE OF SERVICE *of Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories* by Public.Resource.Org, Inc..(Parker, Sarah) (Entered: 02/16/2016) |
| 02/16/2016 | 21 | CERTIFICATE OF SERVICE *of Defendant's Responses and Objections to Plaintiff's First Request for Production of Documents* by Public.Resource.Org, Inc..(Parker, Sarah) (Entered: 02/16/2016) |
| 02/17/2016 | 22 | CERTIFICATE OF SERVICE *of Defendant's Responses to Plaintiff's Second Set of Interrogatories* by Public.Resource.Org, Inc..(Parker, Sarah) (Entered: 02/17/2016) |
| 02/17/2016 | 23 | CERTIFICATE OF SERVICE *Defendant's Responses to Plaintiff's Second Request for Production of Documents* by Public.Resource.Org, Inc..(Parker, Sarah) (Entered: 02/17/2016) |
| 02/18/2016 | 24 | CERTIFICATE OF SERVICE *of Plaintiff's Responses to Defendant's First Set of Interrogatories* by Code Revision Commission, State of Georgia.(Askew, Anthony) (Entered: 02/18/2016) |
| 02/18/2016 | 25 | CERTIFICATE OF SERVICE *of Plaintiff's Responses to Defendant's First Set of Requests for Production* by Code Revision Commission, State of Georgia.(Askew, Anthony) (Entered: 02/18/2016) |
| 04/14/2016 | 26 | Joint MOTION for Extension of Time to File Proposed Consolidated Pretrial Order by Code Revision Commission, State of Georgia. (Askew, Anthony) (Entered: 04/14/2016) |
| 04/15/2016 | 27 | ORDER granting 26 Joint Motion for Extension of Time to File Proposed Consolidated Pretrial Order and parties shall comply with the following schedule: Summary Judgment motions due 5/17/2016; Responses to Summary Judgment motions due 21 days after service of the motion; Replies to such responses due 14 days after service of the response and if necessary, the Consolidated Pretrial Order shall be filed no later than 30 days after the entry of the Court's ruling on the parties' motions for summary judgment. Signed by Judge Mark H. Cohen on 4/15/2016. (bdb) (Entered: 04/15/2016) |
| 04/15/2016 | | Summary Judgment Motions due by 5/17/2016. (bdb) (Entered: 04/15/2016) |
| 05/17/2016 | 28 | First MOTION for Leave to File An Amicus Curiae Brief in Support of Plaintiff with Brief In Support by Matthew Bender & Company, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Bowler, John) (Entered: 05/17/2016) |
| 05/17/2016 | 29 | MOTION for Summary Judgment with Brief In Support by Public.Resource.Org, Inc., Public.Resource.Org, Inc., Public.Resource.Org, Inc.. (Attachments: # 1 Statement of Material Facts, # 2 Brief Memorandum of Law In Support, # 3 Exhibit Ex. A, # 4 Exhibit |

6

| | | |
|---|---|---|
| | | Ex. B, # [5] Exhibit Ex. C, # [6] Exhibit Ex. D, # [7] Exhibit Ex. E, # [8] Exhibit Ex. F, # [9] Exhibit Ex. G, # [10] Exhibit Ex. H, # [11] Exhibit Ex. I, # [12] Exhibit Ex. J, # [13] Exhibit Ex. K, # [14] Exhibit Ex. L, # [15] Exhibit Ex. M, # [16] Exhibit Ex. N, # [17] Exhibit Ex. O)(Parker, Sarah) --Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.-- (Entered: 05/17/2016) |
| 05/17/2016 | 30 | MOTION for Partial Summary Judgment with Brief In Support by Code Revision Commission, State of Georgia. (Attachments: # [1] Brief in support, # [2] Statement of Undisputed Material Facts, # [3] Exhibit 1, # [4] Exhibit 2, # [5] Exhibit 3, # [6] Exhibit 4) (Pavento, Lisa) --Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.-- (Entered: 05/17/2016) |
| 05/23/2016 | 31 | ORDER OF RECUSAL. Judge Mark H. Cohen recused. Case reassigned to Judge Richard W. Story for all further proceedings NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 1:15-cv-2594-RWS. Please make note of this change in order to facilitate the docketing of pleadings in this case. Signed by Judge Mark H. Cohen on 5/23/16. (jpa) (Entered: 05/23/2016) |
| 06/06/2016 | 32 | APPLICATION for Admission of Lawrence Schemmel Pro Hac Vice (Application fee $ 150, receipt number 113E-6493289)by State of Mississippi Joint Legislative Committee,. (Hirsch, Michelle) (Entered: 06/06/2016) |
| 06/07/2016 | | Submission of [28] First MOTION for Leave to File An Amicus Curiae Brief in Support of Plaintiff, submitted to District Judge Richard W. Story. (hfm) (Entered: 06/07/2016) |
| 06/07/2016 | 33 | RESPONSE in Opposition re [30] MOTION for Partial Summary Judgment filed by Public.Resource.Org, Inc., Public.Resource.Org, Inc., Public.Resource.Org, Inc.. (Attachments: # [1] Statement of Material Facts Defendant's Response to Plaintiff's Statement of Material Facts)(Parker, Sarah) (Entered: 06/07/2016) |
| 06/10/2016 | 34 | RESPONSE in Opposition re [29] MOTION for Summary Judgment filed by Code Revision Commission, State of Georgia. (Attachments: # [1] Exhibit 1, # [2] Exhibit 2, # [3] Exhibit 3, # [4] Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts, # [5] Plaintiff's Supplemental Statement of Additional Undisputed Material Facts in Support of Its Response to Defendant's Motion for Summary Judgment)(Pavento, Lisa) (Entered: 06/10/2016) |
| 06/17/2016 | | RETURN of [32] APPLICATION for Admission of Lawrence Schemmel Pro Hac Vice (Application fee $ 150, receipt number 113E-6493289) to attorney for correction re: form. (pb) (Entered: 06/17/2016) |
| 06/21/2016 | 35 | APPLICATION for Admission of Lawrence Arthur Schemmel Pro Hac Vice by State of Mississippi Joint Legislative Committee,. (Hirsch, Michelle) (Entered: 06/21/2016) |
| 06/24/2016 | 36 | Consent MOTION for Extension of Time to File Replies by Public.Resource.Org, Inc., Public.Resource.Org, Inc., Public.Resource.Org, Inc.. (Parker, Sarah) (Entered: 06/24/2016) |
| 06/27/2016 | | Submission of [36] Consent MOTION for Extension of Time to File Replies , submitted to District Judge Richard W. Story. (hfm) (Entered: 06/27/2016) |
| 06/27/2016 | 37 | ORDER granting [28] Motion for Leave to File Amicus Curiae Brief in Support of Plaintiff. Signed by Judge Richard W. Story on 6/27/16. (hfm) (Entered: 06/27/2016) |
| 06/27/2016 | 38 | Amicus Curiae Brief by Matthew Bender & Company, Inc. (Attachments: # [1] Exhibit 1, # |

7

| | | 2 Exhibit 2)(hfm) (Entered: 06/27/2016) |
|---|---|---|
| 06/27/2016 | 39 | ORDER granting 36 Motion for Extension of Time, through and including July 5, 2016, to file replies to the pending Motions for Summary Judgement. Signed by Judge Richard W. Story on 6/27/16. (hfm) (Entered: 06/27/2016) |
| 07/05/2016 | 40 | REPLY to Response to Motion re 30 MOTION for Partial Summary Judgment filed by Code Revision Commission, State of Georgia. (Pavento, Lisa) (Entered: 07/05/2016) |
| 07/05/2016 | 41 | REPLY to Response to Motion re 29 MOTION for Summary Judgment filed by Public.Resource.Org, Inc., Public.Resource.Org, Inc., Public.Resource.Org, Inc.. (Attachments: # 1 Statement of Material Facts Response to Plaintiff's Supplemental Statement of Undisputed Material Facts)(Parker, Sarah) (Entered: 07/05/2016) |
| 07/06/2016 | | Submission of 29 MOTION for Summary Judgment and 30 MOTION for Partial Summary Judgment. Submitted to District Judge Richard W. Story. (bdb) (Entered: 07/06/2016) |
| 07/07/2016 | | APPROVAL by Clerks Office re: 35 APPLICATION for Admission of Lawrence Arthur Schemmel Pro Hac Vice. Attorney Lawrence Arthur Schemmel added appearing on behalf of State of Mississippi Joint Legislative Committee, (pb) (Entered: 07/07/2016) |
| 07/11/2016 | 42 | ORDER granting 35 Application for Admission Pro Hac Vice Lawrence Arthur Schemmel for State of Mississippi Joint Legislative Committee. Signed by Judge Richard W. Story on 7/11/2016. (bdb) (Entered: 07/11/2016) |
| 07/11/2016 | | Clerks Certificate of Mailing as to State of Mississippi Joint Legislative Committee, re 42 Order on Application for Admission PHV to Lawrence Arthur Schemmel. (bdb) (Entered: 07/11/2016) |
| 03/10/2017 | 43 | NOTICE Of Filing Supplemental Authority by Code Revision Commission, State of Georgia (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Pavento, Lisa) (Entered: 03/10/2017) |
| 03/23/2017 | 44 | ORDER denying 29 Defendant's Motion for Summary Judgment and granting 30 Plaintiffs' Motion for Partial Summary Judgment. The parties are ORDERED to confer and to submit to the Court, within 14 days, a proposed briefing schedule to address the injunctive relief to which Plaintiffs are entitled as a result of the foregoing decision. Signed by Judge Richard W. Story on 3/23/2017. (bdb) (Entered: 03/23/2017) |
| 04/06/2017 | 45 | Joint MOTION for Order *Entering Proposed Permanent Injunction* by Code Revision Commission. (Attachments: # 1 Text of Proposed Order)(Askew, Anthony) (Entered: 04/06/2017) |
| 04/07/2017 | 46 | PERMANENT INJUNCTION ORDER granting 45 Joint Motion for Permanent Injunction Order. (See order for details) The Clerk shall close the case. Signed by Judge Richard W. Story on 4/7/2017. (bdb) Modified to add text on 4/7/2017 (bdb). (Entered: 04/07/2017) |
| 04/07/2017 | | Civil Case Terminated. (bdb) (Entered: 04/07/2017) |
| 04/07/2017 | 47 | AO 121 re 46 Order and Register of Copyrights mailed to Register of Copyrights Office. (Attachments: # 1 Permanent Injunction Order) (bdb) (Entered: 04/07/2017) |
| 04/07/2017 | 48 | RESPONSE in Support re 45 Joint MOTION for Order *Entering Proposed Permanent Injunction* filed by Public.Resource.Org, Inc.. (Rader, Elizabeth) (Entered: 04/07/2017) |
| 04/07/2017 | 49 | NOTICE OF APPEAL as to 44 Order, 52 Judgment and 46 Permanent Injunction Order by Public.Resource.Org, Inc. Filing fee $505, receipt number 113E-7076702. Transcript Order Form due on 4/21/2017 (Rader, Elizabeth) Modified on 4/7/2017 to include |

8

| | | |
|---|---|---|
| | | document relationship (kac). Modified to include judgment on 4/7/2017 (bdb). (Entered: 04/07/2017) |
| 04/07/2017 | 50 | NOTICE Of Filing Appeal Transmission Letter by Public.Resource.Org, Inc., re: 49 Notice of Appeal. (kac) (Entered: 04/07/2017) |
| 04/07/2017 | 51 | Transmission of Certified Copy of Notice of Appeal, Orders and Docket Sheet to US Court of Appeals re: 49 Notice of Appeal. (kac) (Entered: 04/07/2017) |
| 04/07/2017 | 52 | CLERK'S JUDGMENT ENTERED that this action be and the same hereby is dismissed. (bdb)--Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (Entered: 04/07/2017) |
| 04/14/2017 | 53 | USCA Acknowledgment of 49 Notice of Appeal filed by Public.Resource.Org, Inc. Case Appealed to USCA - 11th Circuit. USCA Case Number 17-11589-HH. (kac) (Entered: 04/14/2017) |
| 04/21/2017 | 54 | TRANSCRIPT ORDER FORM re 49 Notice of Appeal,. (Rader, Elizabeth) (Entered: 04/21/2017) |
| 04/21/2017 | | Set Electronic Certification due date deadline re: 54 Transcript Order Form. Electronic Certification due on 5/5/2017. (No transcript is required for appeal purposes.) (kac) (Entered: 04/21/2017) |
| 04/21/2017 | 55 | MOTION for Attorney Fees with Brief In Support by Code Revision Commission, State of Georgia. (Attachments: # 1 Memorandum In Support, # 2 Statement of Additional Undisputed Material Facts)(Askew, Anthony) (Entered: 04/21/2017) |
| 05/05/2017 | | Pursuant to F.R.A.P.11(c), the Clerk certifies that the record is complete for purposes of this appeal re: 49 Notice of Appeal. Case Appealed to USCA - 11th Circuit. USCA Case Number 17-11589-HH. The entire record on appeal is available electronically. (kac) (Entered: 05/05/2017) |
| 05/05/2017 | 56 | RESPONSE in Opposition re 55 MOTION for Attorney Fees *and Other Costs* filed by Public.Resource.Org, Inc.. (Rader, Elizabeth) (Entered: 05/05/2017) |
| 05/19/2017 | 57 | REPLY to Response to Motion re 55 MOTION for Attorney Fees filed by Code Revision Commission, State of Georgia. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Askew, Anthony) (Entered: 05/19/2017) |
| 05/22/2017 | | Submission of 55 MOTION for Attorney Fees. Submitted to District Judge Richard W. Story. (bdb) (Entered: 05/22/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/22/2017 09:27:27 | | | |
| **PACER Login:** | cpvaharmon:5048515:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:15-cv-02594-RWS |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

# TAB 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CODE REVISION COMMISSION )<br>on Behalf of and For the Benefit of the )<br>GENERAL ASSEMBLY OF GEORGIA, )<br>and the STATE OF GEORGIA, )<br> )<br> )<br> )<br>        Plaintiffs, )<br> )<br>v. )<br> )<br>PUBLIC.RESOURCE.ORG, INC. )<br> )<br> )<br>        Defendant. )<br>_____ ) | CIVIL ACTION NO.<br>1:15-cv-2594-MHC |

**COMPLAINT FOR INJUNCTIVE RELIEF**

The Code Revision Commission on Behalf of and For the Benefit of the

General Assembly of Georgia and the State of Georgia ("Plaintiff"), alleges, on

information and belief, the following against Defendant:

-1-

10

## <u>NATURE OF THIS ACTION</u>

1.      This action for injunctive relief arises from Defendant's systematic, widespread and unauthorized copying and distribution of the copyrighted annotations in the Official Code of Georgia Annotated ("O.C.G.A.") through the distribution of thumb drives containing copies of the O.C.G.A. and the posting of the O.C.G.A. on various websites.  Defendant has facilitated, enabled, encouraged and induced others to view, download, print, copy, and distribute the O.C.G.A copyrighted annotations without limitation, authorization, or appropriate compensation.  On information and belief, Defendant has also created unauthorized derivative works containing the O.C.G.A. annotations by re-keying the O.C.G.A. in order to make it possible for members of the public to copy and manipulate the O.C.G.A., thereby also encouraging the creation of further unauthorized derivative works.

2.      The copyrighted annotations include analysis and guidance that are added to the O.C.G.A. by a third party publisher of the O.C.G.A. as a work for hire.  These annotations include synopses of cases that interpret the O.C.G.A., summaries of Opinions of the Attorney General of Georgia, and summaries of research references related to the O.C.G.A.  Each of these annotations is an original and creative work of authorship that is protected by copyrights owned by the State of Georgia.  Without

11

providing the publisher with the ability to recoup its costs for the development of

these copyrighted annotations, the State of Georgia will be required to either stop

publishing the annotations altogether or pay for development of the annotations using

state tax dollars.  Unless Defendant's infringing activities are enjoined, Plaintiff and

citizens of the State of Georgia, will face losing valuable analysis and guidance

regarding their state laws.

## JURISDICTION AND VENUE

3.    This is a civil action seeking injunctive relief for copyright infringement

under the Copyright Act of 1976, as amended, specifically 17 U.S.C. §§ 101, *et seq*.

4.    This Court has jurisdiction in and over this copyright infringement action

pursuant to 17 U.S.C. §§ 101, *et seq*., and 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has personal jurisdiction over Defendant. Defendant has

infringed the State of Georgia's copyright in Georgia by distributing infringing copies

of the O.C.G.A including copyrighted annotations to persons in Georgia, to Georgia

Speaker of the House David Ralston and Georgia Legislative Counsel Wayne R. Allen

at locations within the State of Georgia on or about May 30, 2013.  On or about

September 24, 2013, Defendant further distributed infringing copies of the O.C.G.A.

including copyrighted annotations on thumb drives to at least eight (8) institutions in and around the State of Georgia. Defendant further presented copies of the O.C.G.A. including copyrighted annotations on at least one Internet website (https://public.resource.org, https://bulk.resource.org, and/or https://law.resource.org) that attracts citizens from Georgia as viewers and actively encourages all such individuals to copy, use, and disseminate to others in Georgia and elsewhere, and to create derivative works of the O.C.G.A. Defendant still further solicited and continues to solicit funds on one of its own websites (https://yeswescan.org) and a crowd funding website (www.indiegogo.com/projects/the-laws-of-georgia) to help Defendant scan and post the O.C.G.A. including copyrighted annotations, which websites attract and affect citizens from the State of Georgia. Defendant's website at https://yeswescan.org indicates that $3,035 dollars were raised as of June 15, 2015 to assist Defendant in infringing the State of Georgia's copyrights in the O.C.G.A. copyrighted annotations. Individual visitors are also encouraged to provide financial donations on several of the Defendant's websites via a PayPal account, and Defendant offers for sale multiple products via the Internet, including phone cases, caps, stickers, stamps, mugs, bags, and prints at http://www.zazzle.com/carlmalamud/.

-4-

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 since a substantial number of the claims recited in this Complaint arose in the State of Georgia and the Defendant does business in this state.  Paragraph 5 above is incorporated by reference as if set forth fully herein.

## **PARTIES**

7.     Plaintiff Georgia Code Revision Commission is acting on behalf of and for the benefit of the General Assembly of Georgia and the State of Georgia.  The Georgia Code Revision Commission is composed of fifteen members selected from the Georgia House, the Georgia Senate and the State Bar of Georgia including a judge of the superior courts and a district attorney.  The Georgia Code Revision Commission compiles and obtains the publication of the O.C.G.A. The Georgia General Assembly enacts laws on behalf of the State of Georgia.

8.     Defendant Public Resource.Org is a California corporation with its principal place of business located at 1005 Gravenstein Highway North, Sebastopol, California  95472.

14

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiffs and Their Infringed Copyrighted Works

9.      The State of Georgia enacts and promulgates the laws of the state through its legislature.  The state laws are provided in Code sections.  Periodically, typically annually, the Georgia General Assembly ("Legislature") revises, modifies, and amends its laws through supplemental laws and amendments. The Georgia General Assembly is assisted by the Code Revision Commission in publishing the Georgia state laws.

10.      The Legislature contracts with a publisher, currently Matthew Bender and Company, Inc., a member of the LexisNexis Group ("LexisNexis"), a division of Reed Elsevier Properties, Inc., to publish an annotated version of the State laws as the O.C.G.A.  Pursuant to this contract ("Code Publishing Contract"), and in order to allow LexisNexis to recoup its publishing costs, LexisNexis is permitted to sell the O.C.G.A., with the copyrighted annotations, in both hard bound book and electronic format for a set fee.

11.      In its capacity as publisher of the O.C.G.A., LexisNexis makes additions to the statutory text of the state laws previously approved and enacted by the Legislature.  One example of additions made by LexisNexis is a summary of a judicial

-6-

15

decision that relates to a particular Code section and illustrates and informs as to an interpretation of that Code section. This judicial summary is added at the end of the relevant Code section under the heading "Judicial Decisions." *See* Exhibit 1 for examples of O.C.G.A. judicial summaries. The judicial summary is only added in the annotated publication and is not enacted as law.

12. In order to create judicial summaries, LexisNexis selects and reads relevant judicial decisions. LexisNexis then distills each relevant decision down to a single paragraph. The succinctness and accuracy of the judicial summaries are in large part what make them valuable to attorneys and others researching the Code. Accordingly, the text of the judicial summaries of the O.C.G.A. must be and is carefully crafted by LexisNexis in order to illustrate and interpret the Code sections of the O.C.G.A.

13. These judicial summaries, along with notes and other original and creative works added by LexisNexis to the Georgia statutory text, are prepared as works made for hire for the State of Georgia and are protected by copyright ("Copyrighted Annotations"). The Copyrighted Annotations are created by LexisNexis for the State of Georgia pursuant to the state's Code Publishing Contract with LexisNexis. Accordingly, each of Plaintiff's Copyrighted Annotations, as to

-7-

16

which infringement is specifically alleged below, are original works of authorship

protected by copyright, and exclusive rights under these copyrights are owned by

Plaintiff.  These copyrights have been registered with the United States Copyright

Office, or have an application for registration pending with the United States

Copyright Office.

14.    Plaintiff does not assert copyright in the O.C.G.A. statutory text itself

since the laws of Georgia are and should be free to the public.  The Code Publishing

Contract between LexisNexis and the State of Georgia requires that LexisNexis

publish on the internet, free of charge, the statutory text of the O.C.G.A. These free

Code publications are available 24 hours each day, 7 days a week, and include all

statutory text and numbering; numbers of titles, chapters, articles, parts, and subparts;

captions and headings; and history lines.  The free Code publications are fully

searchable, and the catchlines, captions and headings are accessible by links from the

table of contents.  The free Code publication of the State of Georgia is accessible via a

website link found on the State of Georgia website www.legis.ga.gov.

17

**Defendant's Copying and Distribution of Plaintiffs' Copyrighted Annotations**

15.    On information and belief, Defendant has, without authorization, copied at least 140 different volumes/supplements containing the O.C.G.A. Copyrighted Annotations, the copyrights for which are owned by the State of Georgia.  Each of these copied works has been posted by the Defendant on at least one of its websites, https://public.resource.org, https://law.resource.org, and https://bulk.resource.org, and is available to members of the public for downloading, viewing, and printing.  *See* https://law.resource.org/pub/us/code/ga/georgia.scan.2013/.   The electronic nature of these documents, and their availability on the Internet, magnifies the ease and speed with which they may be copied and distributed to others.

16.    On information and belief, Defendant has, without authorization, copied or "rekeyed" at least some of Plaintiff's Copyrighted Annotations prior to posting them on Defendant's website(s) to make the Copyrighted Annotations easier for members of the public to copy and manipulate, thereby encouraging the creation of works that are derivative of Plaintiff's Copyrighted Annotations.

17.    On information and belief, Defendant has, without authorization, distributed/uploaded hundreds of Plaintiff's Copyrighted Annotations to the website www.archive.org ("Internet Archive Website").  On information and belief, Defendant

has further falsely indicated that PublicResource.Org is the owner of Plaintiff's Copyrighted Annotations by uploading those works to the Internet Archive Website with an indication that Defendant has dedicated the work to the public and with an instruction that members of the public "can copy, modify, distribute and perform the work, even for commercial purposes, all without asking permission."  *See*, for example, https://archive.org/details/govlawgacode392000, which indicates that O.C.G.A. Volume 39, 2000 Edition, Title 51 is subject to a "CC0 1.0 Universal" license. Following the CCO 1.0 Universal link on that web page directs one to http://creativecommons.org/publicdomain/zero/1.0/ where the quoted language can be found.  As a result, Plaintiff's Copyrighted Annotations have been downloaded by the public from the Internet Archive Website thousands of times.  *See* https://archive.org/search.php?query=georgia%20code%20and%20public%20resourc e.

18.    On information and belief, Defendant's ongoing and widespread copying and distribution of Plaintiff's Copyrighted Annotations are deliberate and willful acts of copyright infringement that are part of a larger plan designed to challenge the letter of U.S. copyright law and force government entities (in the U.S. and elsewhere) to expend tax payer dollars in creating annotated state codes and making those annotated

codes easily accessible by Defendant.  Defendant's websites

https://public.resource.org and https://yeswescan.org are dedicated to these efforts,

and in January of 2014, Carl Malamud, Defendant's founder and president, testified in

front of the U.S. House of Representatives, House Judiciary Committee, to advance an

amendment to the U.S. Copyright Act making state and local official legal documents

uncopyrightable for reasons of public policy.  No such amendment has been adopted

by Congress.  On information and belief, Carl Malamud has engaged in an 18 year-

long crusade to control the accessibility of U.S. government documents by becoming

the United States' Public Printer – an individual nominated by the U.S. President and

who is in control of the U.S. Government Printing Office.  Carl Malamud has not been

so nominated.

     19.    On information and belief, Defendant is employing a deliberate strategy

of copying and posting large document archives such as the O.C.G.A. (including the

Copyrighted Annotations) in order to force the State of Georgia to provide the

O.C.G.A., in an electronic format acceptable to Defendant.  Defendant's founder and

president, Carl Malamud, has indicated that this type of strategy has been a successful

form of "terrorism" that he has employed in the past to force government entities to

publish documents on Malamud's terms.  *See* Exhibit 2.

20.    Consistent with its strategy of terrorism, Defendant freely admits to the copying and distribution of massive numbers of Plaintiff's Copyrighted Annotations on at least its https://yeswescan.org website.  *See* Exhibit 3.  Defendant also announced on the https://yeswescan.org website that it has targeted the States of Mississippi, Georgia, and Idaho and the District of Columbia for its continued, deliberate and willful copying of copyrighted portions of the annotated codes of those jurisdictions.  Defendant has further posted on the https://yeswescan.org website, and delivered to Plaintiffs, a "Proclamation of Promulgation," indicating that its deliberate and willful copying and distribution of Plaintiff's Copyrighted Annotations would be "greatly expanded" in 2014.  Defendant has further instituted public funding campaigns on a website www.indiegogo.com to support its continued copying and distribution of Plaintiff's Copyrighted Annotations.  Defendant has raised thousands of dollars to assist Defendant in infringing the O.C.G.A. Copyrighted Annotations.

21.    Defendant deliberately and willfully distributed USB thumb drives containing scanned copies of Plaintiff's Copyrighted Annotations to members of the State of Georgia Legislature.

22.    Defendant mailed at least ninety (90) different volumes/supplements of the O.C.G.A. Copyrighted Annotations published over several years to Honorable

-12-

21

David Ralston, Speaker of the House, Georgia House of Representatives and Mr. Wayne Allen, Legislative Counsel, Office of Legislative Counsel, Georgia General Assembly, and, on information and belief, later mailed USB thumb drives containing copies of the same O.C.G.A. Copyrighted Annotations to at least eight (8) institutions in and around the State of Georgia.

23.    Plaintiff has not authorized Defendant to copy, distribute or make derivative works of Plaintiff's Copyrighted Annotations.  The State of Georgia demanded that Defendant cease and desist its infringement of the O.C.G.A. Copyrighted Annotations on at least July 25, 2013 (*see* Exhibit 4). Defendant has refused to remove any and all copies of Plaintiff's Copyrighted Annotations from its website(s) (*see* Exhibit 5).

## CLAIMS FOR RELIEF

**First Claim**
**Direct Copyright Infringement in Violation of 17 U.S.C. § 106**

24.    Paragraphs 1 through 23 above are incorporated by reference as set forth fully herein.

-13-

22

25.    By scanning, copying, displaying, distributing, and creating derivative works of Plaintiff's Copyrighted Annotations—including but not limited to each copyrighted work identified on Exhibit 6—on a widespread and continuing basis via Defendant's website(s) and the Internet Archive Website, Defendant's conduct constitutes infringement of Plaintiff's copyrights and exclusive rights under copyright in violation of one or more of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

26.    By scanning, copying and distributing Plaintiff's Copyrighted Annotations in at least twenty one (21) different volumes/supplements of the O.C.G.A. identified on Exhibit 6 on USB thumb drives via a mail service to multiple entities, Defendant's conduct constitutes infringement of Plaintiff's copyrights and exclusive rights under copyright in violation of one or more of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

27.    Defendant's acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiff's rights.

28.    As a direct and proximate result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under copyright, and because there is no adequate remedy at law, Plaintiff is entitled to injunctive relief.  Unless enjoined by

-14-

23

the Court, Defendant's conduct will continue to cause severe and irreparable harm to Plaintiff.

29.    Plaintiff is entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## Second Claim
## Indirect Copyright Infringement in Violation of 17 U.S.C. § 106

30.    Paragraphs 1 through 23 above are incorporated by reference as set forth fully herein.

31.    By facilitating, encouraging and inducing members of the public to copy, display, distribute, and create derivative works of Plaintiff's Copyrighted Annotations—including, but not limited to each copyrighted work identified on Exhibit 6—on a widespread and continuing basis via Defendant's website(s) and the Internet Archive Website, Defendant has contributorily infringed Plaintiff's copyrights and exclusive rights under copyright in violation of one or more of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

24

32.     Defendant has actual and constructive knowledge that members of the public have copied and displayed Plaintiff's copyrighted material, and Defendant knowingly encouraged members of the public to do so.

33.     Defendant's acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiff's rights.

34.     As a direct and proximate result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under copyright, and because there is no adequate remedy at law, Plaintiff is entitled to injunctive relief.  Unless enjoined by the Court, Defendant's conduct will continue to cause severe and irreparable harm to Plaintiff.

35.     Plaintiff is entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**WHEREFORE**, Plaintiff prays:

1.     That this Court enter an order pursuant to 17 U.S.C. § 502 granting permanent injunctive relief enjoining Defendant and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with any of them, now or in the future, without seeking the

appropriate authorization from Plaintiff, from creating derivative works of, or copying, displaying, or distributing electronic or paper copies of, any of Plaintiff's copyrighted works to anyone, in the manner described above—namely, via the posting on a website or the distribution of a USB thumb drive or otherwise;

2.     That this Court enter an order pursuant to 17 U.S.C. § 502 granting permanent injunctive relief enjoining Defendant and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with any of them, now or in the future, without seeking the appropriate authorization from Plaintiff, from facilitating or encouraging others to create derivative works of, or copy, display or distribute electronic or paper copies of, any of Plaintiff's copyrighted works to anyone, in the manner described above—namely, via the posting on a website or otherwise;

3.     That this Court enter an order pursuant to 17 U.S.C. § 503 for seizure to recover, impound, and destroy all things infringing Plaintiff's copyrighted works that are in the custody or control of Defendant;

4.     That this Court award Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 17 U.S.C. § 505; and

-17-

26

5.      That this Court grant such other and further relief as it deems just and proper.

Respectfully submitted, this 21st day of July, 2015.

/s/ *Anthony B. Askew*

Anthony B. Askew (G.A. Bar: 025300)
Lisa C. Pavento (G.A. Bar: 246698)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE
Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: taskew@mcciplaw.com
          lpavento@mcciplaw.com
          wthomas@mcciplaw.com

*Counsel for the Plaintiff State of Georgia, on Behalf of and For the Benefit of the General Assembly of Georgia, Acting By and Through the Code Revision Commission*

-18-

27

## CERTIFICATE OF COMPLIANCE

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District of

Georgia, the foregoing Complaint for Injunctive Relief complies with the font and

point selections approved by the Court in L.R. 5.1C. The foregoing pleading was

prepared on a computer using 14-point Times New Roman font.

/s/ *Anthony B. Askew*
Anthony B. Askew (G.A. Bar: 025300)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE
Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: taskew@mcciplaw.com

-19-

28

# TAB 1-1

# EXHIBIT 1

1-1-6 GENERAL PROVISIONS 1-1-8

**1-1-6. Effect of adoption of Code upon terms of office and rights of officials or employees.**

(a) The adoption of this Code shall not affect the term of office or the right to hold office of any person who is in office on November 1, 1982, unless otherwise expressly provided or unless such office is abolished by the adoption of this Code.

(b) The adoption of this Code shall not affect the compensation, expenses, per diem, allowances, retirement, or other rights of any official or employee of the state or any county, municipal corporation, school system, political subdivision, authority, or other governmental entity within this state, unless otherwise provided in this Code.

**1-1-7. Notes and catchlines of Code sections not part of law.**

Unless otherwise provided in this Code, the descriptive headings or catchlines immediately preceding or within the text of the individual Code sections of this Code, except the Code section numbers included in the headings or catchlines immediately preceding the text of the Code sections, and title and chapter analyses do not constitute part of the law and shall in no manner limit or expand the construction of any Code section. All historical citations, title and chapter analyses, and notes set out in this Code are given for the purpose of convenient reference and do not constitute part of the law. (Ga. L. 1982, p. 3, § 1.)

Cross references. — Section captions in Title 11 as constituting part of that title, § 11-1-109.

JUDICIAL DECISIONS

Cited in Hogan v. State, 178 Ga. App. 534, 343 S.E.2d 770 (1986); Brown v. Earp, 261 Ga. 522, 407 S.E.2d 737 (1991).

**1-1-8. References to state law or this Code.**

(a) Unless otherwise indicated in the context, references in this Code to titles, chapters, articles, parts, subparts, or Code sections shall mean titles, chapters, articles, parts, subparts, or Code sections of this Code.

(b) Unless there is an expressed intention to the contrary, any reference in this Code or in any law of this state to another provision of this Code or law of this state shall mean and be construed to refer to such other provision or law as it is now or hereafter exists.

(c) Any reference in any local or special law of this state to any Act or resolution of the General Assembly or to any title, chapter, section, or other

1-1-9 GENERAL PROVISIONS 1-1-9

portion of any prior code of this state shall be construed to be a reference to the appropriate title, chapter, part, subpart, Code section, subsection, paragraph, subparagraph, division, or subdivision of the Official Code of Georgia Annotated.

(b) Unless otherwise indicated by the context in which it is used, any citation in any public or private document, writing, or other instrument to a law of the State of Georgia which has been codified in the Official Code of Georgia Annotated shall be construed to be a reference to such law as contained in the Official Code of Georgia Annotated.

(c) Any reference in any Act of the General Assembly or in any other public or private document, writing, or other instrument to "O.C.G.A." shall mean and refer to the Official Code of Georgia Annotated published under authority of the State of Georgia. The Official Code of Georgia Annotated published under authority of the State of Georgia may be cited or referred to as "O.C.G.A." (Ga. L. 1981, Ex. Sess., p. 8, § 6; Ga. L. 1982, p. 3, § 1; Ga. L. 1983, p. 3, § 2.)

**1-1-9. Effective date of Code.**

This Code shall become effective on November 1, 1982.

JUDICIAL DECISIONS

Editor's notes. — Some of the decisions cited below was decided under former Code 1933, § 2. (Ga. L. 1895, p. 97).

Driving while license revoked under former Code provision. — Where a driver was declared a habitual violator by the Department of Public Safety under the provisions of former Code 1933, § 68B-308(a), then was convicted for operating a motor vehicle while his license was still revoked pursuant to that action, after the Official Code of Georgia Annotated became effective on November 1, 1982, the revocation of the driver's license was effective under this Code section within the meaning of § 40-5-58(c), and the driver can be sentenced to a freeyear confinement pursuant to that section. Ketchum v. State, 167 Ga. App. 858, 307 S.E.2d 742 (1983).

Effect of adopting the Code was to enact into one statute all of the sections of the Code. Barnes v. Carter, 120 Ga. 895, 48 S.E. 387 (1901); Atkinson v. Swords, 11 Ga. App. 167, 74 S.E. 1093 (1912); See also Central of Ga. Ry. v. State, 104 Ga. 831, 31 S.E. 531, 42 L.R.A. 518 (1898); Thornton v. State, 5 Ga. App. 597, 63 S.E. 901 (1909).

Adoption, not the compilation, is the legislative Act. Western & A.R.R. v. Young, 83 Ga. 512, 10 S.E. 197 (1889).

Errors were not adopted. City of Atlanta v. Gate City Gas Light Co., 71 Ga. 106 (1883); Bailey v. McAlpin, 122 Ga. 616, 50 S.E. 388 (1905).

If Act embodied in Code, title immaterial. — If an Act has been embodied in the Code and becomes a part of the law of this state upon the adoption of the Code, the contents of the title of the original Act are immaterial. Huff v. Markham, 70 Ga. 284 (1883); Central of Ga. Ry. v. State, 104 Ga. 831, 31 S.E. 531, 42 L.R.A. 518 (1898); Kennedy v. Meara, 127 Ga. 68, 56 S.E. 243, 9 Ann. Cas. 396 (1906).

Rulings are all as applicable to the Code as to the statute on which they were made, for the Code is substantially different from the statute. Wall v. Jones, 62 Ga. 725 (1879).

Where provision of the Code treats the entire subject matter, what is omitted is repealed. Shumate v. Williams, 34 Ga. 245 (1866); Georgia R.R. & Banking Co. v. Wynn, 42 Ga. 331 (1871); Miller v. Southwestern R.R., 55 Ga. 143 (1875).

# TAB 1-2

# EXHIBIT 2

# Columbia Journalism Review.

(http://www.cjr.org/index.php)

# Carl Malamud, Public Printer

An open source Presidential appointment campaign

It was 1991, in the early days of the Internet. Carl Malamud was thirty-two years old, and deeply embedded in a community of computer engineers and visionaries shaping the world's nascent online architecture as it was being built atop phone lines and in parallel with other global networks.

Many of the technical standards governing those telecommunication systems were laid out in a 20,000-page document known as the Blue Book, covering such communications basics as modems, faxes, and packet switching. The standards were maintained and shepherded by the International Telecommunication Union, a Geneva-based intergovernmental agency. If you were an American engineer, student, inventor, or amateur who wanted a copy, you could buy it for about a dollar a page.

To Malamud and many others, this highly unsatisfactory state of affairs represented a real barrier to innovation and transparency. So Malamud told Tony Rutkowski, a sympathetic ITU official, that he was prepared to scan the Blue Book and put it online, freely accessible to all by anonymous FTP. It was a threat to commit "standards terrorism," as Malamud later put it (http://museum.media.org/eti/); faced with it, the ITU agreed to hand over the standards on nine-track magnetic tape to Malamud for a three-month free download trial.

Soon, the National Science Foundation, whose network was then the backbone of much of the Internet's traffic, complained to Malamud that Blue Book downloads from his server and its mirrors were stressing NSF bandwidth. Given this flood of requests, the ITU's head, under internal pressure, sent Malamud a letter asking him to take the standards down.

"It was pro-forma, and everybody knew it," remembers Rutkowski. "The site had been replicated in a dozen places all over the world and it had been copied thousands of times." Once free, there was no stopping the data.

"It just convinced me of two things," Malamud says, looking back. "One, the power of open standards and why that's so important to society, but also the power of putting large document archives online. Aggressively."

And so, on and off for the last eighteen years, Malamud has been involved in or led a spate of impish efforts to pry public domain information—like building codes, law books, and court records—out of hidebound government entities. Now, via a Web-focused viral campaign, he's unabashedly asking President Obama to make him the nation's twenty-sixth Public Printer and put him in charge of one such very large government entity, the Government Printing Office.

The campaign, such as it is, is centered around Malamud's lovingly named YesWeScan.org (http://www.yeswescan.org/), where he lays out his platform and collects endorsements. At first blush it doesn't look so different from any political campaign site, except that, in the end, it's targeted at a single voter. "The best I can do is make my case," says Malamud. "This is up to a fickle selectorate, if you will."

"I have never in my life been asked to endorse a candidate for appointed office," says OMB Watch executive director Gary Bass, a longtime fixture in Washington's transparency and good government communities, who is supporting Malamud's effort. "That's not the way it's usually done."

But who said Malamud was very concerned about the way things are usually done? In 1993, in an early domestic example of what *The Atlantic*'s James Fallows once described (http://jamesfallows.theatlantic.com/archives/2007/03/another_win_for_carl_malamud_o.php) as his "guerrilla/jiujitsu approach," Malamud was part of a team that coaxed vital data out of the Securities and Exchange Commission. The group then hosted the information on its own computer, upon which thousands of users—regulators, financiers, investors—came to depend.

And then the team put a notice on the portal, warning that the site—and visitors' easy, free, access to data—would disappear in sixty days. Users were invited to click to learn more about the situation, and to contact the SEC.

"And people clicked," says Malamud. The SEC brought the system under its wing. The database, known as EDGAR, runs to this day, and remains one of the most user-friendly online government databases.

In just the last two years, Malamud, as the sole staffer of Public.Resource.Org (http://public.resource.org/), a 501c3 nonprofit based in Sebastopol, California, has posted over 80 million pages of legal documents on his Web site, many of them federal appeals court decisions. He's also freed (http://public.resource.org/justice.gov/index.html) from private control the only remaining copy of a massive Navy-created database of legal decisions, placed (http://bulk.resource.org /codes.gov/) building codes from all fifty states online, and convinced (http://public.resource.org /oregon.gov/index.html) the Oregon legislature to cease claiming copyright over the state's laws. It's all been done by pointing out that documents created at public expense are, under U.S. law, considered the property of the public.

"Ultimately my goal has always been policy change, and that's something that some people don't get. They think that this is all about shaming the government, and it's not," says Malamud. "Wanting to run GPO is the ultimate in policy change, because then I'm not telling GPO how to do it right, I've actually got the ability to do it right."

33

You may never have heard of it, but the GPO does a lot. They administer the Federal Depository Library Program, manufacture the nation's passports, host a slew of online databases, and run a 1.5 million square foot plant in downtown Washington that prints the Congressional Record and the Federal Register, among other documents.

Malamud wants it to do more. He has a broad agenda for the GPO, which he briefly lays out in a seven point platform on YesWeScan.org. (Points three and five are both "Jobs," perhaps in a concession to the times.) His position papers—repurposed from earlier submissions to the Obama transition team—lay out an agenda spanning the ambitious and the obvious. Why not create an art-book quality "Library of the U.S.A." whose writers, editors, and printers could count towards the administration's job creation promises? What if the GPO enabled streaming video for all agency hearing rooms? Why not post 55,000 government produced (and therefore copyright free) archival films and photographs in the next year? What if the full collections of the National Archives were digitized? Why not design a more user-friendly online Federal Register, one that's linkable, easier to read, and cross-referenced with hyperlinks? Why not make the GPO a leader and a nexus in efforts to make bulk data widely available?

While Malamud has plans for the agency, he's neither a former congressional staffer, major political donor, or presidential buddy, nor has he held a senior government position. So how does Malamud think he might get the appointment?

Malamud points to another government outsider. Enter Augustus E. Giegengack, Franklin Roosevelt's colorful Public Printer.

*The New Yorker* described Giegengack, in a magnificent three-part 1943 profile by Geoffrey Hellman, as "a connoisseur of girls, beer, and anecdote." He worked in or managed a series of newspaper and commercial printing plants before finding himself in Europe as an army sergeant in the First World War, where he won the job of running *Stars and Stripes*'s Paris-based press. Fifteen years later, at the dawn of a new administration, he waged a successful campaign to become Public Printer.

The YesWeScan.org website sets Carl as Gus 2.0, if you will, down to balancing Malamud's Shepard Fairey-style "SCAN" poster with a charcoal cartoon portrait cribbed from Gus's *New Yorker* profile. And Malamud is relying on Giegengack's by-the-bootstraps tale to power his way into the GPO. Here's how he told the story in an online interview (http://cachefly.oreilly.com/broadcast/2009/02/carl-malamud-128kbps.mp3), shortly after launching his campaign:

> *He was what you would call a regular apron man. A real working printer. Blue collar. When FDR was elected, Augustus was a New York resident and he was really inspired and he wanted to become Public Printer of the United States. But he didn't know FDR. So he went and spoke at a couple of Rotary clubs and asked everybody to send him endorsements and they all sent him these letters of endorsements, and he bound them up and sent them to FDR. He knew a guy who worked in the White House who knew somebody who knew somebody, and they sent it in. And FDR looked over the book and said, "Well, this is our man."*

What Malamud's retelling neglects to mention is that the guy who took the bound letters, the guy "who

knew somebody who knew somebody," was James Farley, FDR's campaign manager; after the 1932 election, the president installed him as Postmaster General and chair of the Democratic National Committee. Giegengack got to know Farley by joining his Long Island bedroom community's Democratic local, and then engineering a major fundraising dinner in Farley's honor.

"He's a totally different kind of person," Malamud admits. "But I was inspired by the story." Still, he points to his relationship with John Podesta, who led the Obama transition team, and has his fingers in many Washington pots.

The two met in the summer of 1993, when the Clinton White House contacted Malamud, then running an Internet radio broadcast from a few blocks away at the National Press Club, for assistance in setting up a infrared link for an online demonstration. ("They asked whether I could see the White House lawn from the press building, and we went up to the roof, and we could," remembers Malamud.) He later served as the Chief Technology Officer of Podesta's Center for American Progress, where he mixed policy work with upgrading and overseeing the nonprofit's computer systems.

Alas, when *The New York Times* recently asked (http://www.nytimes.com/2009/02/13/us /13records.html) Podesta about Malamud's efforts to earn an appointment, they got a non-committal "He would certainly shake things up."

There's another big difference between Malamud and Giegengack. Giegengack was a press and ink printer—he'd managed several print operations with staffs numbering into the hundreds; by the time of his appointment, he'd held the presidencies of the International Association of Printing House Craftsmen and the New York State Typographers Association.

In fact, 44 USC Sec. 301 explicitly says that the Public Printer "must be a practical printer and versed in the art of bookbinding."

But as Malamud points out, like many an ambassador whose diplomatic qualifications stop at having a well-stamped passport, the requirement has often been ignored or lightly enforced.

"I'm doing a positive campaign, but go look at the current Public Printer's resume, and look at how many years he spent as a congressional aide and in office, and I think you'll find—he designed menus in high school. That's what he did," says Malamud.

In any case, Malamud is ready to tick off his qualifications.

"I typeset all eight of my books. I worked in newsrooms, I have run Linotypes. Actually my first book, I typeset running troff (http://en.wikipedia.org/wiki/Troff) on a Windows 3.1 machine and hooking it up directly to a film based type setter," said Malamud. "I created the first radio station (http://museum.media.org/radio/) on the Internet. I think that's skilled in the publishing arts and, as we know, that language is more general than simply printing.

"Most importantly, when it comes to publishing government information, I published in 2008 32.4 million pages, and so far in 2009 I've published 50 million pages. So I think by the definition of printing today, I definitely am skilled.

"And I would hire a very skilled deputy public printer who really understood production printing. I'm no dummy."

Malamud is working hard on rallying a posse to support his bid.

He's asking the public (and potential endorsees) to vet him, and, on his Web site offers a handy timeline (http://public.resource.org/timeline/) of his writings, press clips, and other documents that might illuminate his life (in 1986, he spent a year at Georgetown Law netting (http://public.resource.org/archive/1986_07_11_george.pdf) two B-pluses and an A-minus). He's held a Twitter rally, where, shortly before doling out a thirteen-part speech (http://legalresearchplus.com /2009/03/09/twitter-rally-transcript-yeswescan/) in 140 characters or less, he recommended attendees stream a Marine band performance (http://www.archive.org/details /PatrioticMedleyFeaturingTheMilitaryBands) of Fanfare for the Common Man, among other tunes available from the Library of Congress's public domain collection.

And he's collecting endorsements from the lights of the technology focused transparency movement, like Stanford law professor Larry Lessig, and Ellen Miller of the Sunlight Foundation, which supports CJR's transparency reporting. Those will be compiled, along with about a thousand other endorsements that Malamud has collected—tweets, blog posts, e-mails, and maybe even Facebook campaign friends—into Giegengack style books. They'll be available for public download, and he plans to FedEx them to the White House personnel director, and to give copies to people he knows who work for or are close to the president, including Podesta.

"If they like the book, maybe they will shuttle it over to someplace that matters," says Malamud. "There is at least a possibility that the people appointing this position might think it's time for a change."

Malamud says he won't stop his campaign until he or someone else is appointed public printer—and he admits the latter scenario is "highly likely." Even if he doesn't get the job, he sees reasons to be pleased with the campaign.

"We've had a couple of very successful outcomes so far. A good five, ten thousand people, maybe much more, now know what the Government Printing Office is and what it does. There's a thousand people who care enough about this to want to influence this agency. I think that's really key," says Malamud. "It's been a valuable exercise if nothing else."

"I want the job and I'm willing to be patient. If they want to come back in three years, I'll probably still do it then," he says. "And I'll continue to do GPO-like work anyway."

---

Clint Hendler is the managing editor of *Mother Jones*, and a former deputy editor of CJR.

# TAB 1-3

# EXHIBIT 3

# YES WE SCAN

## SUPPORT THE 2014 SUMMER OF CODE!

Help us raise funds to scan the Official Codes of our Official States with your tax-deductible contribution!

For 2014, we are proud to have selected the great states of Georgia, Idaho, and Mississippi. As a special bonus, we have all the Official Codes for the District of Columbia dating back to World War II and would like to scan and post those as well.

This summer, give the tax-deductible gift of law! We've established 4 separate Indiegogo campaigns, one for each of our specially selected jursidictions.



| | D.C. | GEORGIA | IDAHO | MISSISSIPPI |
|---|---|---|---|---|
| Minimum Amount Needed: | $3,000 | $3,000 | $3,000 | $3,000 |
| Amount We Can Put To Use: | $12,000 | $12,000 | $12,000 | $12,000 |
| Amount Raised So Far: | $3,075 | $3,035 | $3,775 | $3,885 |
| CLICK TO GO TO INDIEGOGO! | GOGO D.C.! | GOGO GEORGIA! | GOGO IDAHO! | GOGO MISSISSIPPI! |

Your tax-deductible contribution goes to Public.Resource.Org, a 501(c)(3) certified non-profit. Our complete due diligence information is on-line and we maintain a GuideStar Gold Seal of Excellence for nonprofit transparency and accountability. You may also donate directly to us via PayPal.





*The Proclamation Was Dispatched on March 15, 2014*

## PROCLAMATION OF PROMULGATION

### » ATTENTION! YOUR RESPONSE MUST BE RECEIVED BY MAY 1, 2014! «

- Mr. V. David Zvenyach, General Counsel of the District of Columbia

- The Honorable Joshua McKoon, Chairman of the Georgia Code Revision Commission
- The Honorable Ben Ysura, Secretary of State of the State of Idaho, and the Idaho Code Commission
- The Honorable Jim Hood, Attorney General of the State of Mississippi
- Mr. Bubba Neely and Mr. Ronny Frith, Co-Counsels, Joint Legislative Code Committee of Mississippi
- Mr. Mike Walsh, Chief Executive Officer, LexisNexis
- Mr. Ian McDougall, Executive Vice President & General Counsel, LexisNexis
- Mr. Anders Ganten, Senior Director of Government Content Acquisition, LexisNexis

**WHEREAS,** the District of Columbia Official Code is "the only version of the District of Columbia Code that is reviewed and approved by the government of the District of Columbia" and is considered the definitive and authoritative statement of the law of the District of Columbia; and

**WHEREAS,** the Official Code of Georgia Annotated is the "Official version of the Georgia statutes, including guidance from the Georgia Code Commission" and is considered the definitive and authoritative statement of the law of the State of Georgia; and

**WHEREAS,** the Idaho Code is "the only official source in Idaho for primary law" and is considered the definitive and authoritative statement of the law of the State of Idaho; and

**WHEREAS,** the Mississippi Code of 1972 Annotated is published by the Mississippi Joint Legislative Committee on Compilation, Revision, and Publication of Legislation which "maintains careful editorial control over the publication of the official code" and is considered the only official "correct statement of the law" of the State of Mississippi; and

**WHEREAS,** Public.Resource.Org has posted on the global Internet computer network all four of these Official Codes for the purpose of providing the citizenry the information by which they may inform themselves of their rights and obligations under the law; and

**WHEREAS,** the freedom to read, know, and speak the law is essential to our democracy, and is a fundamental underpinning of the doctrines of the rule of law, equal protection, due process, and access to justice; therefore

**BE IT RESOLVED,** this promulgation will be continued and greatly expanded during the 2014 Summer of Code with the aim of providing accurate, up-to-date, and comprehensive access to the Official Codes through the mechanisms of crowdsourcing the funding of scanning of the codes, by facilitating the gatherings of developers across the nation to make the codes more useful, and through the mass distribution throughout the named jurisdictions of free thumb drives containing copies of the codes.

**NOTICE IS HEREBY GIVEN** that any that wish to object to these constitutionally protected activities should state their objections before May 1, 2014.

---

*This Section Published on March 15, 2014*

# ABOUT THE 2014 SUMMER OF CODE

*Caveat Coders! The 2014 Summer of Code is not affiliated with, endorsed by, or in any way related to any other "summer of code" efforts, including such wonderful programs as those that allow students to spend the summer working on open source projects with a worthy mentor. Thank you for your understanding.*

The 2014 Summer of Code will use the mechanism of "crowdfunding" as a way to fund the scanning of the official codes and to make them broadly available throughout the named jurisdictions. This effort kicks off on May 1, a day known throughout the world as "Law Day." *We are presently in the comment period. Check back here on May 1 for specifics on the crowdfunding effort.*

POOR LARRY'S
ALMANAC

"CODE IS
LAW!"

Here's how it's going to work:



(BEN WOULD APPROVE!)

- Your tax-deductible contribution to Public.Resource.Org will be earmark for a particular state (Georgia, Idaho, or Mississippi) or the District of Columbia, and will be used to pay for the scanning of the official code at a nonprofit, open source scanning center such as the one operated by the Internet Archive.
- If you contribute at higher levels, we will send a *Freedom Drive* (a USB flash drive) containing the contents of the Official Code and public safety codes (such as the building, fire, electrical, plumbing, fuel & gas, mechanical, and energy codes) to a library, school, or other public endeavor in that state.
- You—the patriotic and generous donor—will be given the title of Patron of the Law and we will send you a handsome Certificate of Promulgation (suitable for framing!) along with a picture of the worthy library, school, or other public endeavor to which we sent the *Freedom Drive*.
- Any excess funds raised will be used to create XML-compatible data in the open source States Decoded format and in other ways that add value to Official Codes to make them more useful.

***About the Comment Period:*** Public.Resource.Org sent the *Proclamation of Promulgation* to the Official Code Officials of Georgia, Idaho, Mississippi, and the District of Columbia, as well as their vendor, on March 15, 2014 with a 45-day comment period. We believe that the Official Code Officials are the ones that should be making these codes available—without restrictions on use—because the law belongs to the people.

It is our sincere and express hope that the Official Code Officials will consult with the citizens of their jurisdictions and then take steps so that they would be the ones promulgating the official codes, in an appropriate manner befitting edicts of government. Only if no such action occurs will the Summer of Code begin, an effort to make the law available for all to read, know, and speak so that we may be informed of our rights and our obligations.

Public.Resource.Org sent 19 hardcopies of the *Proclamation of Promulgation* to the Official Code Officials, their vendor, selected officials of the federal government, and members of the mainstream media. You may view the snailmail version (5.1 mbytes) of the *Proclamation of Promulgation* and pictures of the public printing production process in the Codes of the World photoset. Enjoy!

(Looking for the 2013 code double-key YesWeScan page?)
(Looking for the 2011 scan all of .gov YesWeScan page?)
(Looking for the 2010 federal reporter YesWeScan page?)
(Looking for the 2009 public printer YesWeScan page?)

# TAB 1-4

# EXHIBIT 4

41



## The General Assembly

### Atlanta, Georgia 30334

July 25, 2013

Carl Malamud
Public.Resource.Org
1005 Gravenstein Highway North
Sebastopol, California 95472

VIA CERTIFIED MAIL

Dear Mr. Malamud:

On behalf of the Georgia Code Revision Commission, we are writing to notify you that your unlawful copying of the Official Code of Georgia Annotated infringes upon the exclusive copyright of the State of Georgia. Accordingly, you are hereby directed to

### CEASE AND DESIST ALL COPYRIGHT INFRINGEMENT.

The State of Georgia, acting through the Georgia Code Revision Commission, is the owner of a copyright in various aspects of the Official Code of Georgia Annotated. Under United States copyright law, the State of Georgia's copyright has been in effect since the original date of creation of such official Code in 1983. All copyrightable aspects of the Official Code of Georgia Annotated are copyrighted under United States copyright law. The state asserts no copyright in the statutory text itself or in the numbering of the Code sections.

We received your letter dated May 30, 2013, to Honorable David Ralston, Speaker of the House of Representatives of Georgia, and Mr. Wayne Allen, Legislative Counsel for the Georgia General Assembly, containing notice that you have scanned the Official Code of Georgia Annotated, as evidenced by the USB Thumb Drive which was enclosed with the letter. It has also come to our attention that such files can be freely accessed from the internet (https://law.resource.org/pub/us/code/ga/georgia.scan.2012/) with no restrictions to its access.

Therefore, we demand that you immediately: (a) cease and desist your unlawful copying of the Official Code of Georgia Annotated; (b) remove any and all files containing the Official Code of Georgia Annotated from the internet; (c) destroy any and all files containing the Official Code of Georgia Annotated from the internet; and (d) provide us with prompt written assurance within 10 days of receiving this letter that all such steps have been taken and that you will cease and desist from any further infringement of the copyrighted Official Code of Georgia Annotated.

Mr. Carl Malamud
July 25, 2013
Page 2

If you do not comply with this cease and desist demand within this time period, the State of Georgia, through the Georgia Code Revision Commission, is entitled to use your failure to comply as evidence of willful infringement and seek monetary damages and equitable relief for your copyright infringement.

For your information, the unannotated Georgia Code, including Code section designations and headings, is available to the public at no charge at www.legis.ga.gov.

If you are represented by legal counsel, please direct this letter to your attorney immediately and have your attorney notify us of such representation.

                              Sincerely,

                              Chairman Josh McKoon
                              Georgia Code Revision Commission

cc:    Code Commission members

# TAB 1-5

# EXHIBIT 5



**PUBLIC.RESOURCE.ORG** ~ *A Nonprofit Corporation*

**Public Works for a Better Government**

July 30, 2013

Hon. Joshua McKoon, Chairman
Georgia Code Revision Commission
319–A Coverdell Legislative Office Building
Atlanta, Georgia 30334

Hon. David Ralston
Speaker of the House
House of Representatives of Georgia
Atlanta, Georgia 30334

Hon. David Shafer
President Pro Tempore
Georgia State Senate
321 State Capitol
Atlanta, GA 30334

Dear Senator McKoon, Speaker Ralston, and President Pro Tempore Shafer:

Public.Resource.Org is in receipt of the communication of July 25, 2013 from Senator
McKoon concerning your notice of purported copyright infringement. Your notice
claims copyright infringement for the publication of the Official Code of Georgia
Annotated. Your letter claims "all copyrightable aspects of the Official Code of Georgia
Annotated are copyrighted under United States copyright law" and disclaims any
copyright "in the statutory text itself or in the number of the Code sections."

We respectfully decline to remove the Official Code of Georgia Annotated and
respectfully reject the distinction between "the statutory text itself" and additional
materials, as both are integral part and parcel of the only Official Code of Georgia
Annotated, such material constituting the official law as published by the State.

It is a long–held tenet of American law that there is no copyright in the law. This is
because the law belongs to the people and in our system of democracy we have the
right to read, know, and speak the laws by which we choose to govern ourselves.
Requiring a license before allowing citizens to read or speak the law would be a
violation of deeply–held principles in our system that the laws apply equally to all.

This principle was strongly set out by the U.S. Supreme Court under Chief Justice John
Marshall when they stated "the Court is unanimously of opinion that no reporter has or
can have any copyright in the written opinions delivered by this Court, and that the
judges thereof cannot confer on any reporter any such right." Wheaton v. Peters, 33
U.S. (8 Pet.) 591 (1834). The Supreme Court specifically extended that principle to
state law, such as the Official Code of Georgia Annotated, in Banks v. Manchester (128
U.S. 244, 1888) , where it stated that "the authentic exposition and interpretation of

45

PROMULGATION RESTRICTIONS ON THE OFFICIAL CODE OF GEORGIA ANNOTATED, PAGE 2

the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute."

This principle has become embedded clearly throughout our country. The Court of Appeals for the Sixth Circuit has stated that "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book be the property of the state or the property of an individual." Howell v. Miller, 91 F. 129, 137 (6th Cir. 1898) (Harlan, J.).

These strong precedents are reflected in the official policy statement of the U.S. Copyright Office:

> "Edicts of government, such as judicial opinions, administrative rulings, legislative enactments, public ordinances, and similar official legal documents are not copyrightable for reasons of public policy. This applies to such works whether they are Federal, State, or local as well as to those of foreign governments."  Compendium II: Copyright Office Practices § 206.01 (1984)

The principle that there is no copyright in the law, and that no license is therefore needed, has been fundamental to the evolution of our legal system. West Law could never have built that magnificent edifice of American jurisprudence, the Federal Reporter, if each court had imposed restrictions on promulgation. If citizens are required to obtain a permission before repeating the law, does that not strike at the very heart of our rights of free speech under the First Amendment? If ignorance of the law is no excuse, how can we restrict dissemination of those laws?

The distinction between "the statutory text itself" and additional materials perhaps would have some bearing if the publication in question were the independent commercial endeavor of a publication firm. If such a firm were to copy the state statutes and compile that information with additional analyses and summaries and were to do so as a strictly commercial endeavor, we understand and respect that this material would be their private property.

However, the publication in question is not by some independent endeavor, it is by the Official Georgia Code Revision Commission and the document is clearly labeled as the official Official Code of Georgia Annotated. Your hired sub-contractor states this clearly in their marketing materials:

> "The **Official Code of Georgia Annotated (OCGA)** provides users with the official Georgia statutes, fully annotated and including guidance from the Georgia Code Commission. If you live or work in Georgia, the OCGA is the essential reference you need to guide you quickly and efficiently in understanding the Georgia statutory scheme." [Emphasis in the Original]

The Official Code of Georgia Annotated is a publication of the State and it is the definitive statement by the State of the law. Any lawyer would ignore this publication and any of its components at his or her peril. Any citizen wishing to read the Official Official Code of Georgia Annotated would have trouble distinguishing between the "statutory text itself" and those materials outside the box. No matter how you slice that cheese, it all looks the same. The Official Code of Georgia Annotated, every component of it, is the official law.

46

PROMULGATION RESTRICTIONS ON THE OFFICIAL CODE OF GEORGIA ANNOTATED, PAGE 3

Your letter also notes that "the unannotated Georgia Code...is available to the public at no charge at www.legis.ga.gov." In addition to numerous technical and usability deficiencies, this site is subject to two different terms of use. The first, which must be accepted before entering the site, stresses that only "the latest print version" of the Code is official and authoritative. The second set of terms has 8 parts and 35 subparts and permits only "insubstantial" uses and even prohibits use of the Code in "newsletters" and "articles." As you can see, when copyright prohibits citizens from speaking the law of the land, substantial concerns are raised under the U.S. and Georgia Constitutions.

A similar situation occurred in the great state of Oregon when we received a Cease and Desist notice on April 7, 2008 for publishing online the Oregon Revised Statutes. As with the present situation, lawyers for that state demanded licenses as a condition to publication and attempted to make a distinction between the law and the additional organization of that material by the Legislative Counsel of Oregon.

I am pleased to tell you that the State of Oregon decided that this was an issue that should be decided by the people of Oregon and their elected officials. The Speaker of the House and the Senate President called a hearing of the Legislative Counsel Committee, listened to citizens and to their own legislative counsel, kindly invited us to speak, and at the end of the day unanimously waived any assertion of copyright in the Oregon Revised Statutes.

Not only was copyright waived, something very special happened. With the restrictions on use of the Oregon Revised Statutes lifted, a law student at the Lewis & Clark Law School was able to take this material and develop a vastly better version of the Oregon Revised Statutes for the people of his state to use. Restricting use of the codes restricts innovation, making it harder for citizens and lawyers to know and understand the law. Restrictions on the Official Code of Georgia Annotated hurts democracy and the citizens of Georgia by making their laws less accessible.

In Oregon, the assertion of copyright dated back to the 1940s and the state had carried that policy forward. When the people of Oregon looked at the issue in the light of our modern era, the decision was very clear. Is it not time, in light of developments such as the Internet, to revisit those restrictions?

Our publication of the Official Code of Georgia Annotated should be encouraged, not threatened. Our publication of the Official Code of Georgia Annotated is unimpeachable act, not one that should be prosecuted. I would be more than happy to come to Georgia to discuss the matter with you, and would strongly encourage you to discuss the issue with the people of Georgia.

Sincerely yours,



Digitally signed by Carl
Malamud
DN: cn=Carl Malamud,
o=Public.Resource.Org,
ou, email=carl@media.org,
c=US
Date: 2013.07.30 10:50:23
-07'00'

Carl Malamud
Public.Resource.Org

# TAB 1-6

# EXHIBIT 6

## O.C.G.A. Works Copied by Defendant

| No. | Volume | Titles | Chapters | Edition/ Supplement | Copyright Reg. Nos. |
|-----|--------|--------|----------|---------------------|---------------------|
| 1 | 1 | | | 2007 | TX 6-913-180<br>TX 5-954-373 |
| 2 | 2 | | | 2007 | TX 6-913-180<br>TX 6-830-237<br>TX 5-954-373<br>TX 5-594-374 |
| 3 | 3 | 1,2,3 | | 2000 | TX 5-297-038<br>TX 5-954-378 |
| 4 | 5 | 7,8 | | 2004 | TX 6-075-716<br>TX 5-954-375 |
| 5 | 6 | 9 | 1-10 | 2007 | TX 6-913-180<br>TX 5-954-373 |
| 6 | 7 | 9 | 11-15 | 2014 | TX 7-898-935<br>TX 5-954-371 |
| 7 | 9 | 11 | | 2002 | TX 5-626-881<br>TX 5-594-377 |
| 8 | 12 | 14 | | 2003 | TX 5-866-857<br>TX 5-880-238<br>TX 5-954-376 |
| 12 | 13 | 15 | | 2014 | TX 7-898-935<br>TX 5-954-371 |
| 13 | 14 | 16 | 1-6 | 2011 | TX 7-413-966<br>TX 5-954-370 |
| 14 | 14A | 16 | 7-11 | 2011 | TX 7-413-966<br>TX 5-954-370 |
| 15 | 14B | 16 | 12-17 | 2011 | TX 7-413-966<br>TX 5-954-370 |
| 16 | 15 | 17 | | 2013 | TX 7-948-091<br>(Need copy) |
| 17 | 17 | 20 | | 2012 | TX 7-564-165<br>TX 5-954-380 |
| 18 | 21 | 25, 26 | | 2014 | TX 7-898-935 |

49

| No. | Volume | Titles | Chapters | Edition/ Supplement | Copyright Reg. Nos. |
|---|---|---|---|---|---|
| | | | | | TX 5-954-371 |
| 19 | 22 | 27,28, 29,30 | | 2007 | TX 6-913-180<br>TX 6-830-237<br>TX 5-954-373<br>TX 5-954-374 |
| 20 | 23 | 31,32 | | 2012 | TX 7-564-165<br>TX 5-954-380 |
| 21 | 24 | 33 | 1-22 | 2014 | TX 7-898-935<br>TX 5-954-371 |
| 22 | 27 | 35,36 | | 2012 | TX 7-564-165<br>TX 5-954-380 |
| 23 | 28 | 37,38, 39 | | 2012 | TX 7-564-165<br>TX 5-954-380 |
| 24 | 29 | 40 | | 2014 | TX 7-898-935<br>TX 5-954-371 |
| 25 | 30 | 43 | | 2011 | TX 7-413-966<br>TX 5-954-370 |
| 26 | 32 | 44 | 8-15 | 2002 | TX 5-626-881<br>TX 5-594-377 |
| 27 | 33 | 45 | | 2002 | TX 5-626-881<br>TX 5-594-377 |
| 28 | 34 | 46 | | 2004 | TX 6-030-866<br>TX 6-075-716<br>TX 5-954-375 |
| 29 | 37 | 48 | 7-18 | 2013 | TX 7-948-091<br>TX 5-594-372 |
| 30 | 38 | 49, 50 | 1-12 | 2013 | TX 7-948-091<br>TX 5-594-372 |
| 31 | 39 | 51 | | 2000 | TX 5-297-038<br>TX 5-954-378 |
| 32 | 40 | 52,53 | | 2011 | TX 7-413-966<br>TX 5-954-370 |
| 33 | 1 (Supp) | | | 2007/2014 | TX 7-898-935<br>TX 5-954-371 |
| 34 | 2 (Supp) | | | 2007/2014 | TX 7-898-935<br>TX 5-954-371 |
| 35 | 3 (Supp) | 1-3 | | 2000/2014 | TX 7-898-935<br>TX 5-954-371 |
| 36 | 4 (Supp) | 4-6 | | 2013/2014 | TX 7-898-935<br>TX 5-954-371 |
| 37 | 5 (Supp) | 7, 8 | | 2004/2014 | TX 7-898-935<br>TX 5-954-371 |
| 38 | 6 (Supp) | 9 | | 2007/2014 | TX 7-898-935<br>TX 5-954-371 |

50

| No. | Volume | Titles | Chapters | Edition/Supplement | Copyright Reg. Nos. |
|-----|--------|--------|----------|-------------------|---------------------|
| 39 | 8 (Supp) | 10 | | 2009/2014 | TX 7-898-935<br>TX 5-954-371 |
| 40 | 9 (Supp) | 11 | | 2002/2014 | TX 7-898-935<br>TX 5-954-371 |
| 41 | 10 (Supp) | 12 | | 2012/2014 | TX 7-898-935<br>TX 5-954-371 |
| 42 | 11 (Supp) | 13 | | 2010/2014 | TX 7-898-935<br>TX 5-954-371 |
| 43 | 12 (Supp) | 14 | | 2003/2014 | TX 7-898-935<br>TX 5-954-371 |
| 44 | 14 (Supp) | 16 | 1-6 | 2011/2014 | TX 7-898-935<br>TX 5-954-371 |
| 45 | 14A (Supp) | 16 | 7-11 | 2011/2014 | TX 7-898-935<br>TX 5-954-371 |
| 46 | 14B (Supp) | 16 | 12-17 | 2011/2014 | TX 7-898-935<br>TX 5-954-371 |
| 47 | 15 (Supp) | 17 | | 2013/2014 | TX 7-898-935<br>TX 5-954-371 |
| 48 | 16 (Supp) | 18, 19 | | 2010/2014 | TX 7-898-935<br>TX 5-954-371 |
| 49 | 17 (Supp) | 20 | | 2012/2014 | TX 7-898-935<br>TX 5-954-371 |
| 50 | 18 (Supp) | 21 | | 2008/2014 | TX 7-898-935<br>TX 5-954-371 |
| 51 | 19 (Supp) | 22, 23 | | 2014 | TX 7-898-935<br>TX 5-954-371 |
| 52 | 20 (Supp) | 24 | | 2013/2014 | TX 7-898-935<br>TX 5-954-371 |
| 53 | 22 (Supp) | 27-30 | | 2007/2014 | TX 7-898-935<br>TX 5-954-371 |
| 54 | 23 (Supp) | 31, 32 | | 2012/2014 | TX 7-898-935<br>TX 5-954-371 |
| 55 | 25 (Supp) | 33 | 23-64 | 2013/2014 | TX 7-898-935<br>TX 5-954-371 |
| 56 | 26 (Supp) | 34 | | 2008/2014 | TX 7-898-935<br>TX 5-954-371 |
| 57 | 27 (Supp) | 35, 36 | | 2012/2014 | TX 7-898-935<br>TX 5-954-371 |
| 58 | 28 (Supp) | 37-39 | | 2012/2014 | TX 7-898-935<br>TX 5-954-371 |
| 59 | 30 (Supp) | 43 | | 2011/2014 | TX 7-898-935 |

51

| No. | Volume | Titles | Chapters | Edition/ Supplement | Copyright Reg. Nos. |
|---|---|---|---|---|---|
| | | | | | TX 5-954-371 |
| 60 | 31 (Supp) | 44 | 1-7 | 2010/2014 | TX 7-898-935 TX 5-954-371 |
| 61 | 32 (Supp) | 44 | 8-15 | 2002/2014 | TX 7-898-935 TX 5-954-371 |
| 62 | 33 (Supp) | 45 | | 2002/2014 | TX 7-898-935 TX 5-954-371 |
| 63 | 34 (Supp) | 46 | | 2004/2014 | TX 7-898-935 TX 5-954-371 |
| 64 | 35 (Supp) | 47 | | 2010/2014 | TX 7-898-935 TX 5-954-371 |
| 65 | 36 (Supp) Reprint | 48 | 1-6 | 2010/2014 | TX 7-898-935 TX 5-954-371 |
| 66 | 37 (Supp) | 48 | 7-18 | 2013/2014 | TX 7-898-935 TX 5-954-371 |
| 67 | 38 (Supp) | 49, 50 | 1-12 (50) | 2013/2014 | TX 7-898-935 TX 5-954-371 |
| 68 | 38A (Supp) | 50 | 13-38 | 2013/2014 | TX 7-898-935 TX 5-954-371 |
| 69 | 39 (Supp) | 51 | | 2000/2014 | TX 7-898-935 TX 5-954-371 |
| 70 | 40 (Supp) | 52, 53 | | 2011/2014 | TX 7-898-935 TX 5-954-371 |

52

# TAB 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION<br>on Behalf of and For the Benefit of the<br>GENERAL ASSEMBLY OF GEORGIA,<br>and the STATE OF GEORGIA,<br><br>          Plaintiff,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>          Defendant. | CIVIL ACTION<br>NO. 1:15-cv-2594-MHC<br><br>**JURY TRIAL DEMANDED** |

## ANSWER AND COUNTERCLAIM OF
## DEFENDANT PUBLIC.RESOURCE.ORG, INC.

Defendant Public.Resource.Org, Inc. ("Public Resource") responds to the

Complaint as follows:

## NATURE OF THIS ACTION

1.      Public Resource admits that this action arises from its copying and

distribution of the Official Code of Georgia Annotated ("O.C.G.A.") through the

distribution of thumb drives containing copies of the O.C.G.A. and the posting of

the O.C.G.A. on two websites.  Public Resource denies that the Plaintiff holds any

valid copyright in the O.C.G.A., including its annotations, and therefore denies that

Public Resource – or anyone – requires authorization to copy it.  Public Resource admits that it has facilitated, enabled, encouraged and induced others to view, download, print, copy and distribute the O.C.G.A. without limitation or compensation.  Public Resource admits that it has also created works containing the O.C.G.A.  All other allegations of paragraph 1 are denied.

2.      Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence in paragraph 2, and therefore denies them.  Public Resource admits that the annotations to the O.C.G.A. include synopses of cases that interpret the O.C.G.A., summaries of Opinions of the Attorney General of Georgia and summaries of research references related to the O.C.G.A.  Public Resource denies the remaining allegations of paragraph 2.

## JURISDICTION AND VENUE

3.      Public Resource admits the allegations of paragraph 3.

4.      Public Resource admits the allegations of paragraph 4.

5.      Public Resource admits that this Court has personal jurisdiction over it.  Public Resource admits doing the acts alleged in paragraph 5 but denies that Plaintiff owns a valid copyright in the annotations, and further denies that Public Resource has infringed any copyright held by the State of Georgia.

LEGAL02/35827060v1

6.      Public Resource admits that venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

## PARTIES

7.      Public Resource admits that the Georgia General Assembly enacts laws on behalf of the State of Georgia.  As to the remainder of the allegations in paragraph 7, Public Resource lacks knowledge or information sufficient to form a belief as to their truth or falsity, and therefore denies them.

8.      Public Resource admits the allegation in paragraph 8.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiffs and Their Infringed Copyrighted Works

9.      Public Resource admits the allegations in the first two sentences of paragraph 9.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 9 and therefore denies them.

10.      Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 10 and therefore denies them.

11.    Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 11 and therefore denies them.

12.    Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 12 and therefore denies them.

13.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by copyright or otherwise owned by the State of Georgia, and thus denies that Plaintiff's "Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 13 and therefore denies them. Public Resource denies the allegations in the third sentence of paragraph 13, all of which are legal conclusions to which no response is legally required.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth sentence of paragraph 13 and therefore denies them.

14.    Public Resource admits that Plaintiff does not assert copyright in the O.C.G.A. statutory text itself because the laws of Georgia are and should be free to

56

the public.  Public Resource lacks sufficient information to admit or deny the remaining allegations in paragraph 14 and therefore denies them.

### Defendant's Copying and Distribution of Plaintiffs' Copyrighted Annotations

15.    Public Resource admits it has copied at least 140 different volumes/supplements containing the O.C.G.A. and that each of these works has been posted by it on at least one of its websites and is available to the public for downloading, viewing and printing, and that the electronic nature of these documents and their availability on the Internet, magnifies the ease and speed with which they may be copied and distributed to others.  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.

16.    Public Resource admits that it has copied the O.C.G.A. prior to posting it on its website. Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed. Public Resource denies the remaining allegations in paragraph 16.

LEGAL02/35827060v1

17.    Public Resource admits that it has distributed/uploaded the entire O.C.G.A. to the website www.archive.org ("Internet Archive website"). Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed. Public Resource admits that it has labeled all the works with the "CCO 1.0 Universal license" which indicates that members of the public may "copy, modify, distribute and perform the work." Public Resource admits that individual volumes of the O.C.G.A. have been viewed or downloaded on the Internet Archive website thousands of times. Public Resource denies the remaining allegations in paragraph 17.

18.    Public Resource admits that in January of 2014, Carl Malamud, its founder and president, testified before the U.S. House of Representatives, House Judiciary Committee, to advance an amendment to the U.S. Copyright Act making state and local official legal documents uncopyrightable for reasons of public policy. Public Resource admits that no such amendment has been adopted by Congress. Public Resource admits that Carl Malamud has not been nominated for the office of United States Public Printer. Public Resource denies the remaining allegations of paragraph 18.

6

19.    Public Resource admits that Carl Malamud, its founder and president, made the statements attributed to him in Exhibit 2, an article published in Columbia Journalism Review.  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource denies the remaining allegations of paragraph 19.

20.    Public Resource admits to the copying and distribution of the entire O.C.G.A. on its website at htpps://law.resource.org. Public Resource vehemently denies the bizarre, defamatory and gratuitous allegation that it has a "strategy of terrorism."  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource admits that it posted on its website and delivered to Plaintiff a Proclamation of Promulgation stating that its deliberate copying and distribution of the O.C.G.A. would be greatly expanded in 2014.  Public Resource admits that it instituted a public funding campaign on the website www.indiegogo.com to support its continued

LEGAL02/35827060v1

copying and distribution of the O.C.G.A. and raised approximately $3000.00. Public Resource denies the remaining allegations of paragraph 20.

21.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. published by the Georgia Code Revision Commission are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource otherwise admits the remaining allegations in paragraph 21.

22.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed. Public Resource otherwise admits the remaining allegations in paragraph 22.

23.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.   Public Resource otherwise admits the remaining allegations in paragraph 23.

## CLAIMS FOR RELIEF

8

## **FIRST CLAIM**

24.    Public Resource's responses to paragraphs 1 through 23 above are incorporated by reference as if set forth fully in this paragraph.

25.    Public Resource denies the allegations in paragraph 25.

26.    Public Resource denies the allegations in paragraph 26.

27.    Public Resource denies the allegations in paragraph 27.

28.    Public Resource denies the allegations in paragraph 28.

29.    Public Resource denies the allegations in paragraph 29.

## **SECOND CLAIM**

30.    Public Resources responses to paragraphs 1 through 23 above are incorporated by reference as if set forth fully in this paragraph.

31.    Public Resource denies the allegations in paragraph 31.

32.    Public Resource denies the allegations in paragraph 32.

33.    Public Resource denies the allegations in paragraph 33.

34.    Public Resource denies the allegations in paragraph 34.

35.    Public Resource denies the allegations in paragraph 35.

LEGAL02/35827060v1

61

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The complaint and each cause of action alleged fails to allege facts sufficient to state a cause of action.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has no copyrights in works that government entities have enacted as law. The O.C.G.A. including annotations, regardless of how they were authored, is the law of Georgia, and the law should be free to the public. As such, the O.C.G.A. is not copyrightable subject matter and is in the public domain.

### THIRD AFFIRMATIVE DEFENSE

Lack of ownership of the asserted copyrights bars Plaintiff's copyright infringement claims.

### FOURTH AFFIRMATIVE DEFENSE

The fair use doctrine bars Plaintiff's claims.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's failure obtain a registration from the U.S. Copyright Office for the allegedly infringed material prior to filing suit bars Plaintiff's claims.

### SIXTH AFFIRMATIVE DEFENSE

Failure to comply with formalities required under the Copyright Act bars Plaintiff's claims.

LEGAL02/35827060v1

### SEVENTH AFFIRMATIVE DEFENSE

The doctrine of copyright misuse bars Plaintiff's claims.

### EIGHTH AFFIRMATIVE DEFENSE

The equitable doctrine of waiver bars Plaintiff's claims.

### NINTH AFFIRMATIVE DEFENSE

Lack of irreparable injury bars Plaintiff's demand for an injunction.

### TENTH AFFIRMATIVE DEFENSE

An injunction would be inimical to the public interest, and thus the public

interest bars Plaintiff's demand for an injunction.

11

## COUNTERCLAIM FOR DECLARATORY RELIEF

Public Resource.Org, Inc. ("Public Resource") alleges the following against Plaintiff-Counterclaim Defendant Code Revision Commission:

## NATURE OF THE ACTION

1.     Public Resource seeks a declaratory judgment that its copying and distributing the text of the Official Code of Georgia Annotated "(O.C.G.A.") do not infringe any copyright because laws enacted by government entities such as the State of Georgia Legislature are not copyrightable subject matter and are in the public domain.

## THE PARTIES

2.     Public Resource is a California nonprofit corporation with its principal place of business at 1005 Gravenstein Highway North, Sebastopol, California 95472.  Its mission is to improve public access to government records and the law.

3.     As part of its mission to protect and promote the right of the public to know and speak the laws that govern it, Public Resource has undertaken to make certain edicts of government widely available to the public on a noncommercial basis.

12

64

4.    Counterclaim-defendant Georgia Code Revision Commission purports to act on behalf of and for the benefit of the General Assembly of Georgia and the State of Georgia.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over the counterclaim pursuant to 17 U.S.C. § 101 et seq (the Copyright Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (exclusive federal copyright jurisdiction); and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

6.    This Court has personal jurisdiction over the Code Revision Commission because the Commission resides, may be found in, or transacts business in this District.

7.    This Court also has personal jurisdiction over the Code Revision Commission because it submitted to jurisdiction for purposes of this Counterclaim by filing the underlying suit against Public Resource in this District.

8.    To the extent that Code Revision Commission had sovereign immunity against suit as an arm of the State of Georgia, it waived such immunity by filing the underlying suit against Public Resource in this District.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Commission may be found in this District and transacts business in this District

and because a substantial part of the events giving rise to this counterclaim,

including the filing of the underlying lawsuit, occurred in this District.

## FACTS

10.    Carl Malamud founded Public Resource in 2007 and serves as its

president.  While the Code Revision Commission falsely (and offensively) alleges

that he practices a "strategy of terrorism," Mr. Malamud is recognized by

government officials and others for his advocacy, over thirty years, for public

access to sources of law and for privacy rights.  Among his notable successes was

helping to persuade the Securities and Exchange Commission to make EDGAR, its

database of corporate filings, available to the public free of charge.

11.    In 1992, Mr. Malamud played a leadership role in the deliberations of

the Internet Engineering Task Force ("IETF") on questions of governance of the

Internet Standards process.  In 2004, he served as a consultant to the IETF and the

Internet Architecture Board on questions of strategic direction and governance.  He

is the author or co-author of six Requests for Comments ("RFCs") and several

Internet-Drafts, technical memoranda on Internet architecture published by the

IETF.  The IETF has designated some of his RFCs as Internet Standards and two

more as Proposed Standards.

LEGAL02/35827060v1

12.    Mr. Malamud has also served as the Founding Chairman of the Board of Directors of the Internet Systems Consortium and the Internet Multicasting Service.  The non-profit Internet Systems Consortium operates a key piece of Internet infrastructure, the "F" root Domain Name Server and is responsible for producing the open source software "BIND," which is considered the standard Domain Name Server software.  The non-profit Internet Multicasting Service operated the first radio station on the Internet, was responsible for placing the SEC EDGAR and US Patent databases on the Internet for the first time, and ran the Internet 1996 World Exposition, a world's fair for the Internet which received the endorsement of 12 heads of state including Presidents Clinton and Yeltsin and participation from 70 countries.  Mr. Malamud's book on the Internet 1996 World Exposition was published by MIT Press in 1997 and included a foreword from His Holiness, the Dalai Lama.

13.    In a letter dated July 16, 2008, the Judicial Conference of the United States recognized Mr. Malamud's work on the subject of privacy violations in the dockets of the U.S. District Courts.  A copy of this letter is attached as Exhibit A and also may be viewed at https://public.resource.org/scribd/7512576.pdf. Also in 2008, he advised the Federal Trade Commission and the Office of the Inspector General, U.S. Department of Defense, on the appearance of Social Security

15

Numbers in the Congressional Record and private databases.  Also in 2008, he served as an advisor to the Presidential Transition Team on Federal Register issues, an effort that led to fundamental changes in the mechanics of distribution of the Official Journals of Government.

14.    In 2009, Carl Malamud was considered by the Office of Presidential Personnel for the position of Public Printer of the United States.

15.    On December 16, 2009, Mr. Malamud testified before the U.S. House of Representatives Oversight Committee in a hearing about the strategic direction of the National Archives and Records Administration, the parent entity of the Office of the Federal Register.   Mr. Malamud's testimony may be viewed at http://www.archives.gov/era/acera/pdf/malamud-testimony.pdf.

16.    In 2007 and 2011, Mr. Malamud submitted reports to the Speaker of the U.S. House of Representatives about the accessibility and preservation of video used in Congressional hearings.  On January 5, 2011, the Speaker of the House publicly thanked him for those efforts.  Speaker Boehner's letter to Mr. Malamud is attached as Exhibit B and also may be viewed at https://law.resource.org/rfcs/gov.house.20110105.pdf.  At Speaker Boehner's request, Mr. Malamud worked with Chairman Darrell Issa of the Committee on Oversight and Government Reform and placed online over 14,000 hours of video

16

from Congressional hearings that had not been previously available.  Mr. Malamud also worked with the Committee staff to add closed-captioning to House Oversight hearings, the first time congressional hearings were available for people with hearing impairments.

17.    From 2008 to 2015, Public Resource processed over 8 million Form 990 reports of Exempt Organizations it purchased from the Internal Revenue Service and made these reports available on the Internet.  Public Resource identified a large number of privacy violations, such as Social Security Numbers, in these forms. Public Resource's effort resulted in a change in the Internal Revenue Manual to allow the IRS to better redact and protect personal information released by the government.  Public Resource also successfully brought an action under the Freedom of Information Act to compel release of machine-processable (e-filed) versions of Exempt Organization returns, an effort that led to a 2015 decision by the IRS that this information will be released in bulk starting in 2016. The action was docket 3:13-cv-02789 in the Northern District of California before the Hon. William H. Orrick.

18.    On December 12, 2012, Mr. Malamud was appointed as a member of the Administrative Conference of the United States, a federal agency that "promotes improvements in the efficiency, adequacy, and fairness of the

17

procedures by which federal agencies conduct regulatory programs, administer

grants and benefits, and perform related governmental functions." Mr. Malamud

was a member of the committee that held hearings and drafted ACUS

Recommendation 2011-5, "Incorporation by Reference." Mr. Malamud also was

one of the signatories of a petition to the Office of the Federal Register that led to

a rulemaking procedure that was initiated in 78 Federal Register 60784 and Federal

Docket OFR-2010-0001. This led to a change in the procedures specified by

incorporation by reference in 1 CFR Part 51 in a final rule that was published

November 7, 2014, in 79 FR 66267.

19. On January 14, 2014, Mr. Malamud testified before the U.S. House of

Representatives Judiciary Committee on the Scope of Copyright Protection and

submitted a petition from 115 law professors and librarians that proposed the

following amendment to the Copyright Act to reinforce longstanding public policy

and judicial opinions making state and local official legal documents

uncopyrightable for reasons of public policy:

> Edicts of government, such as judicial opinions, administrative
> rulings, legislative enactments, public ordinances, and similar official
> legal documents are not copyrightable for reasons of public policy.
> This applies to such works whether they are Federal, State, or local as
> well as to those of foreign governments.

LEGAL02/35827060v1

20.    This language comes directly from Section 206.01, Compendium of Office Practices II, U.S. Copyright Office (1984). It reflects clear and established Supreme Court precedent on the matter in cases such as *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834) and *Banks v. Manchester*, 128 U.S. 244 (1888). The law belongs to the people, who should be free to read, know, and speak the laws by which they choose to govern themselves.

21.    To accomplish its mission, Public Resource acquires copies of government records, including legal decisions, tax filings, statutes and regulations, and posts them online in easily accessible formats that make them more useful to readers, entirely free of charge.

22.    Public Resource operates the websites public.resource.org, law.resource.org, house.resource.org, bulk.resource.org, yeswecan.org and others.

23.    Public Resource also operates a program that helps the public access over 6,000 U.S. Government-produced videos (such as training and historical films), called FedFlix, which Public Resource originally developed in a joint venture with the National Technical Information Service and subsequently in cooperation with the Archivist of the United States.  FedFlix content has been viewed on YouTube.com more than thirty-eight million times, and all the content

LEGAL02/35827060v1

is also available on the Internet Archive.  The YouTube channel may be found at

https://www.youtube.com/user/PublicResourceOrg.

24.    Public Resource reformats some of the laws it posts, in order to make

them easier to find, more useful and more accessible to the public.

25.    This reformatting includes putting some codes into standard Hypertext

Markup Language (HTML), converting graphics into the standard Scalable Vector

Graphics (SVG) format, and converting mathematical formulas into the standard

Mathematical Markup (MathML) language, all of which are open standards

supported by modern web browsers

26.    These steps make the codes, including the diagrams and formulae they

contain, viewable with many kinds of computer hardware and software, more

accessible to people with disabilities, and easier to translate and annotate.

27.    Public Resource applies rigorous quality control and proofreading

when it reformats codes, including the O.C.G.A. at issue in this case.

28.    The growth of the Internet provides a tremendous opportunity for

government to inform its citizens in a broad and timely manner about the laws they

must follow in carrying out their daily activities.  It also allows business

enterprises, university professors and students, non-profits and citizens to better

organize and use this information.

LEGAL02/35827060v1

29.    Public Resource maintains an agent, registered with the U.S. Copyright Office, to receive notifications of claims of copyright infringement, pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(2).  Public Resource provides contact information for that agent at https://public.resource.org/copyright_policy.html.

30.    Public Resource does not sell any copies of the laws to which it provides access or charge money for such access.

31.    Like many charities, Public Resource offers for sale items bearing its logo, such as stickers, T-shirts and books by its founder.  Total revenue from sales of these products since Public Resource's founding has amounted to less than $100.  Other than sales of such items, all of Public Resource's funding comes from charitable donations.  No text or links soliciting donations appear on pages where codes or laws are displayed within Public Resource's websites.

32.    The State of Georgia enacts and promulgates the laws of the state through its legislature.  The state laws are provided in Code sections.  Periodically, the Georgia General Assembly ("Legislature") revises, modifies and amends its laws through supplemental laws and amendments.  Every single bill introduced in the Georgia Legislature begins with the incantation in the form: "An Act … To amend Article [3] of Chapter [11] of Title [16] of the Official Code of Georgia

LEGAL02/35827060v1

Annotated." (Numbering of bill relating to invasions of privacy supplied as an

example).  http://www.legis.ga.gov/Legislation/20072008/69691.pdf

33.    The Legislature is assisted by Plaintiff-Counterclaim Defendant in

publishing the Georgia state laws.  Plaintiff-Counterclaim Defendant does not

assert copyright in the O.C.G.A. statutory text because it recognizes that the laws

of Georgia are not copyrightable subject matter and should be free to the public.

34.    Plaintiff-Counterclaim Defendant, however, claims copyright and

asserts copyright in additions to the statutory text in the O.C.G.A, allegedly made

by Matthew Bender and Company, a member of the LexisNexis Group

("Lexis/Nexis"), a division of Reed Elsevier Properties, Inc.  These include single-

paragraph summaries of judicial decisions interpreting sections of the Code, which

are derivative works of the judicial decisions themselves, which are not

copyrightable subject matter.  They also include "notes and other original and

creative works added," allegedly by LexisNexis, "to the Georgia statutory text."

They include summaries of Opinions of the Attorney General of Georgia and

summaries of research references related to the O.C.G.A., cross references,

Editor's notes, and Code Commission Notes.  The annotations include notice that

"The Official Code publication controls over unofficial compilations" and that

"[a]ttorneys who cite unofficial publications …do so at their peril."  O.C.G.A.

LEGAL02/35827060v1

Annotations 1-1-1 and 1-1-10 are attached as Exhibits C and D and can also be viewed at line at https://archive.org/stream/govlawgacode20003#page/2/mode/2up.

35.    Plaintiff-Counterclaim Defendant has alleged that the Code Publishing Contract between LexisNexis and the State of Georgia requires that LexisNexis publish on the Internet, free of charge, the statutory text of the O.C.G.A., and that these "free" Code publications are accessible.

36.    To access the O.C.G.A. via the website link found on the State of Georgia website, www.legis.ga.gov, one must accept the terms of use for the LexisNexis site that govern use of all areas of LexisNexis, ("LexisNexis Terms of Use") even though the Georgia site states that the terms and conditions do not apply to the statutory text and numbering. These terms and conditions are complicated and onerous.  For example, paragraph 22 of the LexisNexis Terms of Use states "Governing Law and Jurisdiction.  The Terms of Use are governed by and construed in accordance with the laws of the State of New York and any action arising out of or relating to these terms shall be filed only in state or federal courts located in New York and you hereby consent to and submit to the personal jurisdiction of such courts for the purpose of litigating any such action."  The LexisNexis Terms of Use also purport to prohibit "public or nonprofit use."  A copy of these terms of use is attached as Exhibit E.

LEGAL02/35827060v1

37.     The Georgia Code available "free" on the LexisNexis site does not contain the Annotations, such as the Judicial Summaries, Code Revision Commission Notes, and Attorney General Opinions, and therefore, by definition, is not the "Official" Code of Georgia.

38.     Until at least May 28, 2014, the notice displayed before users could access the "free" online publication included a banner page that the user had to acknowledge before access was granted.  That banner page noted clearly that only the "latest print version of the O.C.G.A. is the authoritative version."  A true copy of this banner page is provided as Exhibit F and can be viewed at:https://web.archive.org/web20140528092032/http://www.lexisnexis.com/hottopics/gacode/layout.htm].

39.     A marketing page for the print version of the O.C.G.A. stresses that the print version is the only official version of the Official Code of Georgia Annotated.  The word "Official" is emphasized throughout this marketing page, including boldface and underlining.  A true copy of this page is provided as Exhibit G and can also be viewed at:

http://www.lexisnexis.com/store/catalog/booktemplate/productdetail.jsp?catld=prod15710352&prodId=6647]

24

76

40.    In addition to onerous terms of use and lack of content, the website which the State of Georgia offers as the only place citizens can and should view the O.C.G.A. on the Internet suffers from numerous technical deficiencies.  For example, it is impossible to "bookmark" a section of the code, requiring a user to navigate through each of the volumes, sections and subsections by clicking little boxes before being able to view a relevant paragraph of text.  The lack of a bookmark and the terms of use prohibition against copying means that a citizen cannot readily communicate a section of the code to another citizen.  The system also suffers from numerous technical and security errors in the HTML and other underlying code, meaning that the pages will display differently or not at all on different kinds of web browsers. Finally, the site is highly inaccessible to those that are visually impaired.

## **COUNT I**

[Declaratory Relief Pursuant to 28 U.S.C. § 2201, et seq. (Declaratory Judgment Act) and the Copyright Act (U.S.C. Title 17)].

41.    Public Resource incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

42.    The people are the authors of the law, regardless of who first pens the words that later become law through enactment by a legislature or public agency.

LEGAL02/35827060v1

43.    The principle that the law must be public and available to citizens to read and speak has its roots in the concept of the rule of law itself.

44.    The legal principle that ignorance of the law is no defense presumes that all citizens have access to the law.

45.    The First, Fifth and Fourteenth Amendments to the Constitution require that all people have the power to read, speak and disseminate the law.

46.    Laws and regulations are in the public domain and not subject to copyright.

47.    Law and regulations do not lose their public domain status and become subject to copyright because they were drafted by a private party as "works for hire."

48.    Laws and regulations do not lose their public domain status and become subject to copyright because they incorporate material that private parties have drafted or prepared.

49.    There is only one way to express a particular law fully and authoritatively, namely with explicit reference to any matters that the law incorporates into itself.

LEGAL02/35827060v1

50.    Once the Legislature incorporates material into the official version of the Code, use of that material by the public or private parties is lawful through the doctrine of merger.

51.    Public Resource's purpose in using the O.C.G.A. is to facilitate scholarship, criticism and analysis of the Official Code, to inform the public about the laws that govern it, for educational purposes and to encourage public engagement with the law.

52.    Upon their incorporation into law, incorporated expressions are factual as statements of the law.  Public Resource publishes the O.C.G.A. in its entirety.  Scholarship, analysis and other public engagement with the law is not possible without access to the complete Official Code, including summaries of judicial opinions and attorney generals' opinions. Therefore, Public Resource publishes as much of the O.C.G.A. as is necessary to fulfill its purpose.

53.    Even if copyright law protected authorship by private parties after it is incorporated into law, which it does not, Public Resource's use of the complete O.C.G.A. is fair use and therefore not copyright infringement.

54.    There is a real and actual controversy between Public Resource and the Code Revision Commission regarding whether Public Resource's copying,

27

publication and reformatting of the O.C.G.A. constitutes infringement of any valid copyright owned by the State of Georgia.

55.     The Code Revision Commission is seeking an injunction against Public Resource that would hinder Public Resource's activities in furtherance of its mission to make the law accessible to all.

56.     The Georgia legislature regularly enacts amendments of the O.C.G.A, not of unofficial publications, and will likely continue to do so.

57.     The Code Revision Commission is likely to assert copyright in the so-called Copyrighted Annotations in future editions of the O.C.G.A. to restrict the public's expression of and distribution of, and access to, those codes.  It would then have the power to inhibit public discourse about and public use of the official code.

58.     The controversy between Public Resource and the Code Revision Commission is thus real and substantial and demands specific relief through a conclusive judicial decree.

59.     Public Resource is entitled to a declaratory judgment that its copying, posting and reformatting of the O.C.G.A., including the annotations, does not infringe any copyright rights owned by the States of Georgia.

LEGAL02/35827060v1

WHEREFORE, Defendant prays:

1.    That the Court denies Plaintiff the relief sought in the Complaint;

2.    That the Court adjudge and decree that the State of Georgia has no valid copyright in any portion of the O.C.G.A. because the O.C.G.A. is in the public domain;

3.    That Public Resource's acts of copying, posting and distributing the O.C.G.A. does not infringe, directly or indirectly, any copyright;

4.    That Public Resource is entitled to its reasonable attorney fees, costs and expenses in this action;

5.    For such other relief as the Court deems just.

## JURY TRIAL DEMAND

Counterclaimant Public Resource demands a jury trial of all issues properly triable to a jury.

Respectfully submitted this 14th day of September, 2015, in accordance with the formatting guidelines approved by the Court in Local Rule 5.1B.

By:    /s/ Jason D. Rosenberg
Jason D. Rosenberg
Georgia Bar No. 510855
jason.rosenberg@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone 404-881-7461
Fax (404) 253-8861

Elizabeth H. Rader
(motion for admission *pro hac vice* to be

29

filed)
elizabeth.rader@alston.com
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Telephone:  202-239-3008
Fax: (202) 239-3333

Attorneys for Defendant

LEGAL02/35827060v1

82

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, September 14, 2015, I electronically filed the foregoing ANSWER AND COUNTERCLAIM OF DEFENDANT Public.Resource.Org, Inc. with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record in this case.

<div style="margin-left:40%">

By:    /s/ Jason D. Rosenberg
Jason D. Rosenberg
Georgia Bar No. 510855
jason.rosenberg@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone 404-881-7461
Fax (404) 253-8861

</div>

31

83

# TAB 6-1

# Exhibit A

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE

OF THE

JUDICIAL CONFERENCE OF THE UNITED STATES

WASHINGTON, D.C. 20544

LEE H. ROSENTHAL
CHAIR

PETER G. McCABE
SECRETARY

July 16, 2008

CHAIRS OF ADVISORY COMMITTEES

CARL. E. STEWART
APPELLATE RULES

LAURA TAYLOR SWAIN
BANKRUPTCY RULES

MARK R. KRAVITZ
CIVIL RULES

RICHARD C. TALLMAN
CRIMINAL RULES

ROBERT L. HINKLE
EVIDENCE RULES

Mr. Carl Malamud
Public.Resource.Org, Inc.
1005 Gravenstein Highway North
Sebastopol, CA 95472

Dear Mr. Malamud:

Thank you for the materials you provided on personal identifiers in appellate opinions. It is enormously helpful to have the benefit of the empirical research that you have done. As you know, the Judicial Conference Rules Committees and the Committee on Court Administration and Case Management have implemented the E-Government Act requirements by developing rules and procedures to protect personal identifiers from being included in court filings, particularly those that are remotely accessible electronically. We are continuing to work to ensure that this implementation is effective and efficient. I hope you will keep us informed about your ongoing work.

I am sending a copy of your materials to Judge Carl Stewart, Chair of the Appellate Rules Committee, as well. Thank you for your commitment to improving the court system.

Very truly yours,

Lee H. Rosenthal

cc:   The Hon. Carl Stewart
      Peter McCabe, Esq.
      John Rabiej, Esq.

# TAB 6-2

# Exhibit B

## Congress of the United States
### Washington, DC 20515

January 5, 2011

Carl Malamud
President & CEO
Public.Resource.Org, Inc.
1005 Gravenstein Highway North
Sebastopol, CA 95472

Dear Carl:

We're writing today to thank you for your nearly two decades of work to increase the availability of public data, and more recently your efforts to publish proceedings of the House Oversight and Government Reform Committee online in their entirety.

A major pillar of House Republicans' *Pledge to America* is that of reforming Congress and restoring public trust so that we can put power back in the hands of the people. Increasing transparency by making more high-quality government video available and easy-to-find represents a significant step in doing just that. It's our hope that this project is only the beginning of an effort to eventually bring all congressional committee video online.

Thank you again for your continued work. We look forward to working with you and the many other civic-minded technologists that will help this new majority leverage modern tools in making The People's House more open and accessible to all Americans.

Sincerely,

Rep. John A. Boehner
Speaker of the House

Rep. Darrell Issa
Chairman
House Oversight and Government Reform

PRINTED ON RECYCLED PAPER

# TAB 6-3

# Exhibit C

# CHAPTER 1

## GENERAL PROVISIONS

Sec.
1-1-1.   Enactment of Code.
1-1-2.   Legislative intent.
1-1-3.   Severability.
1-1-4.   Validating Acts.
1-1-5.   Effect of adoption of Code upon rules or regulations.
1-1-6.   Effect of adoption of Code upon terms of office and rights of officials or employees.

Sec.
1-1-7.   Notes and catchlines of Code sections not part of law.
1-1-8.   References to state law or this Code.
1-1-9.   Effective date of Code.
1-1-10.  Specific repealer; provisions saved from repeal.
1-1-11.  General repealer.

### 1-1-1. Enactment of Code.

The statutory portion of the codification of Georgia laws prepared by the Code Revision Commission and the Michie Company pursuant to a contract entered into on June 19, 1978, is enacted and shall have the effect of statutes enacted by the General Assembly of Georgia. The statutory portion of such codification shall be merged with annotations, captions, catchlines, history lines, editorial notes, cross-references, indices, title and chapter analyses, and other materials pursuant to the contract and shall be published by authority of the state pursuant to such contract and when so published shall be known and may be cited as the "Official Code of Georgia Annotated." (Ga. L. 1982, p. 3, § 1.)

**Cross references.** — Powers and duties of Code Revision Commission regarding publication of Code, § 28-9-3. Authorization to use state emblem on cover of official Code, § 50-3-8(b).

**Editor's notes.** — For the Acts reenacting the Official Code of Georgia Annotated as amended by the text and numbering contained in the 1982 through 2000 supplements, see Ga. L. 1983, p. 3, § 1; Ga. L. 1984, p. 22, § 54; Ga. L. 1985, p. 149, § 54; Ga. L. 1986, p. 10, § 54; Ga. L. 1987, p. 3, § 54; Ga. L. 1988, p. 13, § 54; Ga. L. 1989, p. 14, § 54; Ga. L. 1990, p. 8, § 54; Ga. L. 1991, p. 94, § 54; Ga. L. 1992, p. 6, § 5; Ga. L. 1993, p. 91, § 54; Ga. L. 1994, p. 97, § 54; Ga. L. 1995, p. 10, § 54; Ga. L. 1996, p. 6, § 54; Ga. L. 1997, p. 143, § 54; Ga. L. 1998, p. 128, § 54; Ga. L. 1999, p. 81, § 54; and Ga. L. 2000, p. 136, § 54, respectively.

Ga. L. 2000, p. 136, § 54, not codified by the General Assembly, provides: "Except for Title 47, the text of Code sections and title, chapter, article, part, subpart, Code section, subsection, paragraph, subparagraph, division, and subdivision numbers and designations as contained in the Official Code of Georgia Annotated published under authority of the state by The Michie Company in 1982 and contained in Volumes 3 through 40 of such publication or replacement volumes thereto, as amended by the text and numbering of Code sections as contained in the 1999 supplements to the Official Code of Georgia Annotated published under authority of the state in 1999 by LEXIS Publishing, is reenacted and shall have the effect of statutes enacted by the General Assembly of Georgia. Annotations; editorial notes; Code Revision Commission notes; research references; notes on law review articles; opinions of the Attorney General of Georgia; indexes; analyses; title, chapter, article, part, and subpart captions or headings, except as otherwise provided in the Code; catchlines of Code sections or portions thereof, except as otherwise provided in the Code; and rules and regulations of state agencies, depart-

**1-1-2**                              GENERAL PROVISIONS                              **1-1-2**

ments, boards, commissions, or other entities which are contained in the Official Code of Georgia Annotated are not enacted as statutes by the provisions of this Act. Material which has been added in brackets or parentheses and editorial, delayed effective date, effect of amendment, or other similar notes within the text of a Code section by the editorial staff of the publisher in order to explain or to prevent a misapprehension concerning the contents of the Code section and which is explained in an editorial note is not enacted by the provisions of this section and shall not be considered a part of the Official Code of Georgia Annotated. The reenactment of the statutory portion of the Official Code of Georgia Annotated by this Act shall not affect, supersede, or repeal any Act of the General Assembly, or portion thereof, which is not contained in the Official Code of Georgia Annotated and which was not repealed by Code Section 1-1-10, specifically including those Acts which have not yet been included in the text of the Official Code of Georgia Annotated because of effective dates which extend beyond the effective date of the Code or the publication date of the Code or its supplements. The provisions contained in other sections of this Act and in the other Acts enacted at the 2000 regular session of the General Assembly of Georgia shall supersede the provisions of the Official Code of Georgia Annotated reenacted by this section.''

**Law reviews.** — For article, ''Researching Georgia Law,'' see 9 Ga. St. U.L. Rev. 585 (1993).

### JUDICIAL DECISIONS

**Official Code publication controls over unofficial compilation.** — Attorneys who cite unofficial publication of 1981 Code do so at their peril; in any situation wherein defendant's compilation differs in any way from statutory provisions of the Official Code of Georgia Annotated as published by Michie, it is the Michie publication which is controlling. Georgia ex rel. Gen. Ass'y v. Harrison Co., 548 F. Supp. 110 (N.D. Ga. 1982), orders vacated, 559 F. Supp. 37 (N.D. Ga. 1983).

**Cited** in Axson v. State, 174 Ga. App. 236, 329 S.E.2d 566 (1985).

## 1-1-2. Legislative intent.

The enactment of this Code is intended as a recodification, revision, modernization, and reenactment of the general laws of the State of Georgia which are currently of force and is intended, where possible, to resolve conflicts which exist in the law and to repeal those laws which are obsolete as a result of the passage of time or other causes, which have been declared unconstitutional or invalid, or which have been superseded by the enactment of later laws. Except as otherwise specifically provided by particular provisions of this Code, the enactment of this Code by the General Assembly is not intended to alter the substantive law in existence on the effective date of this Code.

**Cross references.** — Effective date of Code, § 1-1-9.

**Law reviews.** — For survey article on trial practice and procedure, see 34 Mercer L. Rev. 299 (1982).

### JUDICIAL DECISIONS

**Official Code publication controls over unofficial compilation.** — Attorneys who cite unofficial publication of 1981 Code do so at their peril; in any situation wherein defendant's compilation differs in any way from statutory provisions of the Official Code of

3

# TAB 6-4

# Exhibit D

**1-1-10**      GENERAL PROVISIONS      **1-1-10**

**Valid statute erroneously omitted still in force.** — A valid statute of this state in existence at the date of the adoption of the Code, but omitted therefrom through oversight or mistake, is still in force unless expressly or by necessary implication repealed by a subsequent or coordinate provision of the Code. Georgia R.R. & Banking v. Wright, 124 Ga. 596, 53 S.E. 251, aff'd, 125 Ga. 589, 54 S.E. 52 (1906), rev'd on other grounds, 207 U.S. 127, 28 S. Ct. 47, 52 L. Ed. 134 (1907); Hicks v. Moore, 10 Ga. App. 488, 73 S.E. 754 (1912); Farley v. State, 13 Ga. App. 643, 77 S.E. 1131 (1913); Wiggins v. State, 17 Ga. App. 748, 88 S.E. 411 (1916).

**Where part of a statute omitted may be restored without inconsistency, there is no repeal.** Daniel v. Jackson, 53 Ga. 87 (1874).

**Such as Act relating to costs on discharge before magistrate.** — The 1811 Act relating to costs on discharge before the magistrate, though not embodied in the Code, not being inconsistent with any of the provisions thereof, is still of force. Gault v. Wallis, 53 Ga. 675 (1875).

**Discrepancies reconciled by court.** — Because the subjects of the Code were written by different men, it is the duty of the court to reconcile discrepancies. Greer v. Haugabook, 47 Ga. 282 (1872). See also Gillis v. Gillis, 96 Ga. 1, 23 S.E. 107, 51 Am. St. R. 121, 30 L.R.A. 143 (1895).

**Section not retroactive.** — The Code is intended to apply to future contracts, and this section does not have a retroactive operation. Bass v. Wolff, 34 Ga. 381 (1866); Bryan v. Doolittle, 38 Ga. 255 (1868); Napier v. Jones, 45 Ga. 520 (1872); Gholston v. Gholston, 54 Ga. 285 (1875).

**Sale by executor under will made prior to Code valid.** — Where the will of a testator who died prior to the adoption of the Code created a general power of sale in the executors for certain purposes named, a private sale was valid though not made until after the Code was adopted. Smith v. Hulsey, 62 Ga. 341 (1879).

**Certain decisions made before the adoption of the Code are not now law.** Adams v. Barlow, 69 Ga. 302 (1882).

Cited in Eaves v. J.C. Bradford & Co., 173 Ga. App. 470, 326 S.E.2d 830 (1985).

**1-1-10. Specific repealer; provisions saved from repeal.**

(a) The following Codes, laws, and parts of laws are repealed, except as otherwise provided in this Code section:

(1) The Code of Georgia of 1933, as amended;

(2) All general laws enacted by the General Assembly of Georgia prior to June 1, 1981, except this Code and except as otherwise provided in this Code section; and

(3) All codes enacted or approved by the General Assembly prior to the Code of Georgia of 1933.

(b) The following laws and parts of laws are not repealed by the adoption of this Code and shall remain of full force and effect until otherwise repealed, amended, superseded, or declared invalid or unconstitutional:

(1) Acts and resolutions conveying, granting, leasing, encumbering, selling, exchanging, or authorizing easements in specific state-owned property or rights therein;

(2) Acts and resolutions providing for appropriations of state funds;

(3) Acts and resolutions granting compensation to persons, firms, partnerships, corporations, and private or governmental entities injured by the state or its officials, officers, employees, or agents;

8

**1-1-10**      GENERAL PROVISIONS      **1-1-10**

(4) Local Acts and resolutions of the General Assembly which are in effect on November 1, 1982, and which are not in conflict with this Code;

(5) Acts and resolutions which by their terms are applicable to a named superior court or judicial circuit, including but not limited to Acts fixing the terms of court and Acts providing for judges, district attorneys, or other personnel or their compensation, powers, or duties;

(6) Resolutions proposing amendments to the Constitution or proposing a new Constitution or portions thereof;

(7) Acts and resolutions ceding jurisdiction over territory within the state to the federal government;

(8) Acts and resolutions creating committees or commissions of the General Assembly or authorizing studies;

(9) Acts and resolutions providing for the furnishing of law books to various courts, governmental entities, libraries, and public officials;

(10) Acts and resolutions designating or naming highways, bridges, buildings, ferries, dams, structures, parks, natural resources, or other property or authorizing the placement of statues, plaques, memorials, portraits, or monuments;

(11) Resolutions relating to or providing for the internal operation of the General Assembly;

(12) Resolutions not intended to have the force and effect of law;

(13) General Acts of local application which are based on population and which have not been specifically repealed or declared invalid or unconstitutional;

(14) Acts and resolutions honoring, commending, or recognizing individuals, groups, principles, or ideas or urging that certain acts be done or refrained from by the federal, state, or local governments or by individuals, groups, or entities; and

(15) Acts and resolutions relieving sureties or bondsmen.

(c) The following specific laws and parts of laws are not repealed by the adoption of this Code and shall remain of full force and effect, pursuant to their terms, until otherwise repealed, amended, superseded, or declared invalid or unconstitutional:

(1) An Act for reviving and enforcing certain laws therein mentioned and adopting the common laws of England as they existed on May 14, 1776, approved February 25, 1784. (For the adopting Act of 1784, see Prince's 1822 Digest, p. 570; Cobb's 1851 Digest, p. 721; and Code of 1863, Section 1, paragraph 6.)

9

# TAB 6-5

# Exhibit E





Home › Terms

✉ E-mail    🖶 Print

**Terms**

> Annual Maintenance Plan Agreement for PCLaw® Time Matters® and Billing Matters®

> End User License Agreement

> Juris® Subscription Agreement

> Juris® Perpetual Software Agreement

> Juris Software Maintenance and Technical Support Agreement (November 2008)

> Juris® Software Maintenance and Technical Support Agreement (Prior to November 2008)

> LexisNexis® Digital Library Terms and Conditions

> LexisNexis® Matthew Bender® Master Agreement

> LexisNexis® Matthew Bender® print product

> LexisNexis® Matthew Bender® CD product

> LexisNexis Total Practice Advantage™

> Professional Services Agreement

> Software Policies and FAQ for Time Matters®, Billing Matters® and PCLaw®

> Terms of Sale for PCLaw®, Time Matters® and Billing Matters®

## Terms & Conditions

**Terms and Conditions of Use**
January 7, 2013

**YOUR USE OF THIS WEB SITE CONSTITUTES YOUR AGREEMENT TO BE BOUND BY THESE TERMS AND CONDITIONS OF USE.**

This web site, including all of its features and content (this "Web Site") is a service made available by LexisNexis, a division of Reed Elsevier Inc., or its affiliates ("Provider") and all content, information, services and software ordered or provided on or through this Web Site ("Content") may be used solely under the following terms and conditions ("Terms of Use").

**1. Web Site Limited License.** As a user of this Web Site you are granted a nonexclusive, nontransferable, revocable, limited license to access and use this Web Site and Content in accordance with these Terms of Use. Provider may terminate this license at any time for any reason.

**2. Limitations on Use; Third Party Communications**

**2.1. Limitations on Use.** The Content on this Web Site is for your personal use only and not for commercial exploitation. Notwithstanding the foregoing and to the extent this Web Site provides electronic commerce, such buying opportunities may be made available for group as well as personal purchasing, so long as you are authorized to make purchases on behalf of such group. You may not use the Content to determine a consumer's eligibility for: (a) credit or insurance for personal, family, or household purposes; (b) employment; or (c) a government license or benefit. You may not decompile, reverse engineer, disassemble, rent, lease, loan, sell, sublicense, or create derivative works from this Web Site or the Content. Nor may you use any network monitoring or discovery software to determine the site architecture, or extract information about usage, individual identities or users. You may not use any robot, spider, other automatic software or device, or manual process to monitor or copy our Web Site or the Content without Provider's prior written permission. You may not use this Web Site to transmit any false, misleading, fraudulent or illegal communications. You may not copy, modify, reproduce, republish, distribute, display, or transmit for commercial, non-profit or public purposes all or any portion of this Web Site, except to the extent permitted above. You may not use or otherwise export or re-export this Web Site or any portion thereof, or the Content in violation of the export control laws and regulations of the United States of America. Any unauthorized use of this Web Site or its Content is prohibited.

**2.2. Third Party Communications.** Provider disclaims all liability for any Third Party Communications you may receive or any actions you may take or refrain from taking as a result of any Third Party Communications. You are solely responsible for assessing and verifying the identity and trustworthiness of the source and content of any Third Party Communications. Provider assumes no responsibility for verifying, and makes no representations or warranties regarding, the identity or trustworthiness of the source or content of any Third Party Communications. As used herein, "Third Party Communications" means any communications directed to you from any third party directly or indirectly in connection with this Web Site.

**3. Not Legal Advice.** Content is not intended to and does not constitute legal advice and no attorney-client relationship is formed, nor is anything submitted to this Web Site treated as confidential. The accuracy, completeness, adequacy or currency of the Content is not warranted or guaranteed. Your use of Content on this Web Site or materials linked from this Web Site is at your own risk.

**4. Intellectual Property Rights.**

**4.1** Except as expressly provided in these Terms of Use, nothing contained herein shall be construed as conferring on you or any third party any license or right, by implication, estoppel or otherwise, under any law (whether common law or statutory law), rule or regulation including, without limitation those related to copyright or other intellectual property rights. You agree that the Content and Web Site are protected by copyrights, trademarks, service marks, patents or other proprietary rights and laws. For further information see **Copyright**. RELX Group and the RE symbol are trademarks of Reed Elsevier Properties SA, used under license.

**4.2** This Web site contains interactive areas which includes, without limitation, any blogs, wikis, bulletin boards, discussion boards, chat rooms, email forums, and question and answer features (the "Interactive Areas"). You grant to Provider an irrevocable, non-exclusive, royalty-free, perpetual, worldwide license to use, authorize use of and have used on its behalf any ideas, expression of ideas, text, graphics, messages, blogs, links, data, information and other materials you submit (collectively, "Postings") to this Web Site. Said license is without restrictions of any kind and

94

without any payment due from Provider to you or permission or notification, to you or any third party. The license includes, the right to make, use, sell, reproduce, publish, modify, adapt, prepare derivative works from, combine with other works, translate, distribute -, display, perform and sublicense Postings- in any form, medium, or technology now known or hereafter developed.

4.3. You certify and warrant that the Postings: (i) are your original works or that the owner of such works has expressly granted to Provider a perpetual worldwide royalty-free irrevocable, non-exclusive license for said works with all of the rights granted by you in section 4.2 of these Terms of Use and (ii) do not violate and will not violate the rights of any third party including any right of publicity, right of privacy , copyright, patent or other intellectual property right or any proprietary right.

4.4. You acknowledge and agree that your submitting Postings to this Web Site does not create any new or alter any existing relationship between you and Provider.

4.5. If you have submitted a photo to your profile on lawyers.com you agree that this photo may be included in the Interactive Areas, including with your Postings. If you have not submitted a photo then Provider may, but is not obligated to, display a stock photo or legal image with your Postings. You hereby consent to the use of such stock photos or images in the Interactive Areas.

4.6. By submitting Postings to this Web Site, you acknowledge and agree that Provider may create on its own ideas that may be, or may obtain submissions that may be, similar or identical to Postings you submit. You agree that you shall have no recourse against Provider for any alleged or actual infringement or misappropriation of any proprietary or other right in the Postings you provide to Provider.

4.7. Provider shall have the exclusive option to purchase from you and acquire all right, title and interest in any Postings containing patentable subject-matter that you submit to this Web Site. The option shall be exercisable by Provider from the date you submit such Posting until one year from that date. If Provider exercises its option under this section 4.6, you agree to accept payment in the amount of $1,000.00 USD or value in kind at Provider's discretion as full and sufficient consideration for such purchase, and you agree to execute, acknowledge and deliver any and all instruments required to transfer legal ownership of Postings to Provider. Such instruments include, but are not limited to, assignments and declarations executed by you.

4.8. Additional Intellectual Property Terms for Ask A Lawyer

4.8.1 Notwithstanding the licenses granted in these Terms of Use, Attorneys who participate in Ask A Lawyer ("AAL") agree that their Postings, and all intellectual property rights therein, including, without limitation, all copyrights and moral rights, (collectively, "IP Rights") will be owned exclusively by Provider. You agree that Provider has commissioned you to provide such Postings, and that the Postings are works made for hire. To the extent ownership of Your Postings does not vest in Provider as a work made for hire, you hereby assign to Provider all IP Rights in and to the Postings. You also agree to promptly execute, acknowledge, and deliver to Provider any additional assignments or other documents that may be reasonably requested by Provider to effectuate the intent of the foregoing sentences. You acknowledge and agree that Provider, its parent and affiliated companies and their licensees and assigns, may use the Postings in any manner that deems appropriate without any attribution or payment to you of any sort. This paragraph will survive any termination of your participation in AAL.

4.8.2 Provider grants you a nonexclusive, nontransferable limited license to use your Postings within your Social Media Syndication. Your Social Media Syndication includes your firm's website, blog, Facebook, LinkedIn, and Twitter accounts and may includes any other appropriate social media site you use for professional purposes. This limited license refers to the specific content which represents the questions to which you responded via AAL and your Postings (the "Designated Content") under the following terms and conditions:

4.8.2.a. Each use of the Designated Content includes a hyperlink to the most recent AAL Q&A or other pages in AAL as designated by Provider, and

4.8.2.b. Each use of the Designated Content is solely for the purposes of promoting and marketing AAL and/or your contribution of the Designated Content (collectively the "Purpose").

4.8.2.c. The Marks, Link and Designated Content shall not be used in any media of or which benefits any Provider competitor.

4.8.2.d. You represent that (i) you shall comply with all policies and terms established by Provider for hyperlinking, use of Marks, or use of any Provider content, including the Designated Content including but not limited to Provider's positioning, messaging, and trademark and logo usage policies, as may be communicated from time to time; (ii) you shall only use the Mark provided to you by Provider according to these Terms Of Use, and you will not use any other mark without Provider's prior written consent; (iii) you shall not to create any combination mark with any Provider Mark; and (iv) you do not acquire any rights to Provider copyrights, marks, or any other intellectual property under these Terms of Use except the limited rights necessary to fulfill the Purpose for the service under these Terms of Use.

4.8.3. Provider may immediately terminate, in whole or with regard to a specific use, your license to use any Mark if Provider determines in its sole discretion that such use dilutes, diminishes, or blurs the value of the any of the Marks or does not comply with Provider's usage policies. Upon Provider's request you agree to remove the Designated Content, Marks and Links within 14 days of Provider's notice to you.

95

4.8.4. You authorized Provider to publish or distribute, at its sole discretion, advertising or promotional materials including your firm name, personal name, trademarks, service marks, logos, image, and photos, for the purpose of promoting the Interactive Areas of this Web Site.

5. Digital Millennium Copyright Act - Notification of Alleged Copyright Infringement. Provider has registered an agent with the United States Copyright Office in accordance with the terms of the Digital Millennium Copyright Act (the "Act") and avails itself of the protections under the Act. Provider reserves the right to remove any Content that allegedly infringes another person's copyright. Provider will terminate, in appropriate circumstances, subscribers and account holders of Provider's system or network who are repeat infringers of another person's copyright. Notices to Provider regarding any alleged copyright infringement should be directed to the LexisNexis Chief Legal Officer via mail or courier at 9443 Springboro Pike, Miamisburg, Ohio 45342, via fax at 937-865-1211 or via email at legalnotices@lexisnexis.com.

6. Linking to this Web Site. You may provide links to this Web Site, provided that (a) you do not remove or obscure, by framing or otherwise, any portion of this Web Site, including any advertisements, terms of use, copyright notice, and other notices on this Web Site, (b) you immediately deactivate and discontinue providing links to this Web Site if requested by Provider, and (c) Provider may deactivate any link(s) at its discretion.

7. No Solicitation. You shall not distribute on or through this Web Site any Postings containing any advertising, promotion, solicitation for goods, services or funds or solicitation for others to become members of any enterprise or organization without the express written permission of Provider. Notwithstanding the foregoing, in any interactive areas of this Web Site, where appropriate you a) may list along with your name, address and email address, your own web site's URL and b) may recommend third party web sites, goods or services so long as you have no financial interest in and receive no direct or indirect benefit from such recommended web site, product or service or its recommendation. In no event may any person or entity solicit anyone with data retrieved from this Web Site.

8. Advertisers. This Web Site may contain advertising and sponsorship. Advertisers and sponsors are responsible for ensuring that material submitted for inclusion on this Web Site is accurate and complies with applicable laws. Provider will not be responsible for the illegality of or any error or inaccuracy in advertisers' or sponsors' materials or for the acts or omissions of advertisers and sponsors.

9. Registration. Certain sections of this Web Site require you to register. If registration is requested, you agree to provide accurate and complete registration information. It is your responsibility to inform Provider of any changes to that information. Each registration is for a single individual only, unless specifically designated otherwise on the registration page. Provider does not permit a) anyone other than you to use the sections requiring registration by using your name or password; or b) access through a single name being made available to multiple users on a network or otherwise. You are responsible for preventing such unauthorized use. If you believe there has been unauthorized use, you must notify Provider immediately by emailing legalnotices@lexisnexis.com.

10. Postings in Interactive Areas of this Web Site.

10.1. Postings to be Lawful. If you participate in Interactive Areas on this Web Site, you shall not post, publish, upload or distribute any Postings which are unlawful or abusive in any way, including, but not limited to, any Postings that are defamatory, libelous, pornographic, obscene, threatening, invasive of privacy or publicity rights, inclusive of hate speech, or would constitute or encourage a criminal offense, violate the rights of any party, or give rise to liability or violate any local, state, federal or international law, or the regulations of the U.S. Securities and Exchange Commission, any rules of any securities exchange such as the New York Stock Exchange, the American Stock Exchange, or the NASDAQ, either intentionally or unintentionally. Provider may delete your Postings at any time for any reason without permission from you.

10.2. Postings to be in Your Name. Your Postings shall be accompanied by your real name and shall not be posted anonymously. Notwithstanding the previous sentence, if the applicable registration page for your participation in any of the Interactive Areas allows you to create a screen name, you may also select and use an appropriate screen name that is not your real name, provided that you use your real name when registering for participation in the Interactive Area and attorneys agree their real name may always be posted. Participants in Interactive Areas shall not misrepresent their identity or their affiliation with any person or entity.

10.3. Postings shall not contain protected health information. You are strictly prohibited from submitting Postings that are considered protected health information under the Health Accountability and Portability Protection Act of 1996 (HIPAA) or the Health Information Technology for Economic and Clinical Health Act of 2009 (HITECH).

10.4. No Monitoring of Postings. Provider has no obligation to monitor or screen Postings and is not responsible for the content in such Postings or any content linked to or from such Postings. Provider however reserves the right, in its sole discretion, to monitor Interactive Areas, screen Postings, edit Postings, cause Postings not to be posted, published, uploaded or distributed, and remove Postings, at any time and for any reason or no reason.

10.5. Non-Commercial Use only of Interactive Areas. Interactive Areas are provided solely for your personal use. Any unauthorized use of the Interactive Areas of this

Web Site, its Content, or Postings is expressly prohibited.

**11. Errors and Corrections.** Provider does not represent or warrant that this Web Site or the Content or Postings will be error-free, free of viruses or other harmful components, or that defects will be corrected or that it will always be accessible. Provider does not warrant or represent that the Content or Postings available on or through this Web Site will be correct, accurate, timely, or otherwise reliable. Provider may make improvements and/or changes to its features, functionality or Content or Postings at any time.

**12. Third Party Content.** Third party content (including, without limitation, Postings) may appear on this Web Site or may be accessible via links from this Web Site. Provider shall not be responsible for and assumes no liability for any infringement, mistakes, misstatements of law, defamation, slander, libel, omissions, falsehood, obscenity, pornography or profanity in the statements, opinions, representations or any other form of content contained in any third party content appearing on this Web Site. You understand that the information and opinions in the third party content is neither endorsed by nor does it reflect the belief or opinion of Provider. Further, information and opinions provided by employees and agents of Provider in Interactive Areas are not necessarily endorsed by Provider and do not necessarily represent the beliefs and opinions of Provider.

**13. Attorney Ethics Notice; Posting Rules.** If you are an attorney participating in any aspect of this Web Site, including but not limited to Interactive Areas, a) you agree not to provide specific legal advice in any of your Postings and to draft Postings which are appropriate, educational, and in accordance with attorney ethics requirements, b) you represent and warrant that you are an attorney in good standing with a license to practice law in at least one of the 50 United States of America or the District of Columbia, c) you agree to promptly notify Provider of any grievance, claim, reprimand, or censure brought against you, as well as resignation or other loss of license, d) you acknowledge that the Rules of Professional Conduct of the jurisdictions where you are licensed ("Rules") apply to all aspects of your participation and that you will abide by these Rules. These Rules include, but are not limited to, the rules relating to advertising, solicitation of clients, rules regarding the establishment of attorney-client relationships, failure to maintain client confidences, unauthorized practice of law, and misrepresentations of fact. Provider disclaims all responsibility for your compliance with these Rules. You further agree and acknowledge that when you participate in any of the Interactive Areas on this Web Site, that you will not offer legal advice, but will only provide general information. Provider highly recommends that you include a disclaimer at the end of every Posting regarding the aforementioned advertising and ethics issues. Provider will have no liability to you arising out of or related to your compliance or noncompliance with such laws and rules, or related to Provider's inclusion or failure to include a disclaimer in the Interactive Areas.

**14. Additional Terms for Attorney's Participating in Ask A Lawyer**

**14.1.** You agree that your participation is as an unpaid, volunteer, and that the purpose of such participation is to provide public education on legal matters and to provide you and your firm national exposure. You may terminate your participation in AAL at any time for any reason or no reason by providing Provider with notice of termination at least three days prior to the effective date of termination at mhcr@martindale.com.

**14.2.** Your name will be associated with each of your Postings in AAL when one of your Responses is included in the "Most Recent Q&A" section of AAL. Each question and corresponding Response may be archived and searchable on AAL and in other site searches associated with Lawyers.com and Provider's media outlets. Visitors currently have the ability to view these archives, but such public access to the archives is not guaranteed. Provider, at its discretion, may associate your name with your archived Responses; however Provider is not required to do so.

**14.3.** You are prohibited from responding to questions via personal and professional email, telephone or otherwise. You will not directly contact visitors who post questions on AAL prior to posting your response on AAL and any contact should be in compliance with attorney ethics requirements. All Responses must be submitted through the Administrative Page.

**14.4.** You represent and warrant to Provider that (a) you will perform your duties for the Ask a Lawyer service in a highly professional manner, (b) except for public domain materials, your Responses will not infringe any third party rights, (c) your Responses will be your original work not previously published and will not contain libelous, obscene, or unlawful material, (d) the Responses will not invade anyone's privacy rights, and (e) your participation in the Ask a Lawyer service presents no conflicts of interest for you, and You assume all liability for any claims, suits, or grievances filed against you, including any and all damages related, due to your participation as a National Attorney Panelist.

**15. Assumption of Risk.** You assume all liability for any claims, suits or grievances filed against you, including all damages related to your participation in any of the Interactive Areas.

**16. DISCLAIMER.** THIS WEB SITE, THE INTERACTIVE AREAS, THE CONTENT, AND POSTINGS ARE PROVIDED ON AN "AS IS, AS AVAILABLE" BASIS. PROVIDER EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. PROVIDER DISCLAIMS ALL RESPONSIBILITY FOR ANY LOSS, INJURY, CLAIM, LIABILITY, OR DAMAGE OF ANY KIND RESULTING FROM, ARISING OUT OF OR ANY WAY RELATED TO (A) ANY ERRORS IN OR OMISSIONS FROM THIS WEB SITE, THE INTERACTIVE AREAS, THE CONTENT, AND THE POSTINGS

INCLUDING, BUT NOT LIMITED TO, TECHNICAL INACCURACIES AND TYPOGRAPHICAL ERRORS, (B) THIRD PARTY COMMUNICATIONS, (C) ANY THIRD PARTY WEB SITES OR CONTENT THEREIN DIRECTLY OR INDIRECTLY ACCESSED THROUGH LINKS IN THIS WEB SITE, INCLUDING BUT NOT LIMITED TO ANY ERRORS IN OR OMISSIONS THEREFROM, (D) THE UNAVAILABILITY OF THIS WEB SITE, THE INTERACTIVE AREAS, THE CONTENT, THE POSTINGS, OR ANY PORTION THEREOF, (E) YOUR USE OF THIS WEB SITE, THE INTERACTIVE AREAS, THE CONTENT, OR THE POSTINGS, OR (F) YOUR USE OF ANY EQUIPMENT OR SOFTWARE IN CONNECTION WITH THIS WEB SITE, THE INTERACTIVE AREAS, THE CONTENT, OR THE POSTINGS.

17. LIMITATION OF LIABILITY. PROVIDER SHALL NOT BE LIABLE FOR ANY LOSS, INJURY, CLAIM, LIABILITY, OR DAMAGE OF ANY KIND RESULTING FROM YOUR USE OF THIS WEB SITE, THE CONTENT, THE POSTINGS, THE INTERACTIVE AREAS, ANY FACTS OR OPINIONS APPEARING ON OR THROUGH ANY OF THE INTERACTIVE AREAS, OR ANY THIRD PARTY COMMUNICATIONS. PROVIDER SHALL NOT BE LIABLE FOR ANY SPECIAL, DIRECT, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) IN ANY WAY DUE TO, RESULTING FROM, OR ARISING IN CONNECTION WITH THE USE OF OR INABILITY TO USE THIS WEB SITE, THE INTERACTIVE AREAS, THE CONTENT, THE POSTINGS, OR ANY THIRD PARTY COMMUNICATIONS. TO THE EXTENT THE FOREGOING LIMITATION OF LIABILITY IS PROHIBITED OR FAILS OF ITS ESSENTIAL PURPOSE, PROVIDER'S SOLE OBLIGATION TO YOU FOR DAMAGES SHALL BE LIMITED TO $100.00.

18. Indemnification. You agree to indemnify, defend and hold Provider, its officers, directors, employees, agents, licensors, suppliers and any third party information providers to this Web Site harmless from and against all claims, losses, expenses, damages and costs, including reasonable attorneys' fees, resulting from any violation of these Terms of Use by you or arising from or related to any Postings uploaded or submitted by you.

19. Third Party Rights. The provisions of paragraphs 14 (Disclaimer), 15 (Limitation of Liability), and 16 (Indemnification) are for the benefit of Provider and its officers, directors, employees, agents, licensors, suppliers, and any third party information providers to this Web Site. Each of these individuals or entities shall have the right to assert and enforce those provisions directly against you on its own behalf.

20. Unlawful Activity; Termination of Access. Provider reserves the right to investigate complaints or reported violations of our Terms of Use and to take any action we deem appropriate including but not limited to reporting any suspected unlawful activity to law enforcement officials, regulators, or other third parties and disclosing any information necessary or appropriate to such persons or entities relating to user profiles, e-mail addresses, usage history, posted materials, IP addresses and traffic information. Provider may discontinue any party's participation in any of the Interactive Areas at any time for any reason or no reason.

21. Remedies for Violations. Provider reserves the right to seek all remedies available at law and in equity for violations of these Terms of Use, including but not limited to the right to block access from a particular internet address to this Web Site and any other Provider web sites and their features.

22. Governing Law and Jurisdiction. The Terms of Use are governed by and construed in accordance with the laws of the State of New York and any action arising out of or relating to these terms shall be filed only in state or federal courts located in New York and you hereby consent and submit to the personal jurisdiction of such courts for the purpose of litigating any such action.

23. Privacy. Except with respect to Martindale-Hubbell Connected, your use of this Web Site is subject to Provider's Privacy Policy. With respect to Martindale-Hubbell Connected, your use of such Web Site is subject to this Privacy Policy.

24. Additional Terms for LexisNexis Services. Your use of the LexisNexis Online Services, case law, legal forms and other related legal materials ("LexisNexis Services") is also governed by the General Terms and Conditions for Use of the LexisNexis Services, and if applicable the LexisNexis Services Supplemental Terms for Specific Materials, (collectively the "Provider Services Terms") which are provided during the registration process for these LexisNexis Services, all of which are incorporated by reference herein. Your completion of the LexisNexis Services registration process constitutes your acceptance of the Provider Services Terms. If you do not agree with any Provider Services Terms, you are not permitted to access the LexisNexis Services.

25. Severability of Provisions. These Terms of Use incorporate by reference any notices contained on this Web Site, the Privacy Policy and the Provider Services Terms and constitute the entire agreement with respect to access to and use of this Web Site, the Interactive Areas, and the Content and Postings. If any provision of these Terms of Use is unlawful, void or unenforceable, or conflicts with the Provider Services Terms then that provision shall be deemed severable from the remaining provisions and shall not affect their validity and enforceability. Notwithstanding anything to the contrary in these Terms of Use, if you have a separate signed written agreement with a Provider that applies to your use of any of that Provider's Content, that agreement constitutes the entire agreement between you and that Provider with respect to the affected Content subject thereto (the "Otherwise Covered Content"), and these Terms of Use shall be treated as having no force or effect with respect to the Otherwise Covered Content.

26. Modifications to Terms of Use. Provider reserves the right to change these Terms

of Use at any time. Updated versions of the Terms of Use will appear on this Web Site and are effective immediately. You are responsible for regularly reviewing the Terms of Use. Continued use of this Web Site after any such changes constitutes your consent to such changes.



Law Firms    Corporate & Professional    Risk Solutions    Academic    Government

Terms & Conditions | Privacy Policy | Consumer Access | Products Index | Site Map | Contact Us                    [+] Feedback

Copyright © 2015 LexisNexis. All rights reserved.

RELX Group™

# TAB 6-6

# Exhibit F

### GEORGIA CODE – FREE PUBLIC ACCESS

The Official Code of Georgia Annotated (O.C.G.A.) is copyrighted by the State of Georgia. By using this website, the user acknowledges the State's copyright interests in the O.C.G.A. Neither the O.C.G.A. nor any portions thereof shall be reproduced in any form without written permission from the Georgia Code Revision Commission, except for: (1) fair use under the copyright laws of the United States; or (2) those limited portions that are in the public domain (statute text and numbering).

Use of this website and the downloading or copying of any material there from shall be subject to the Terms and Conditions of LexisNexis®, which is the official publisher of the O.C.G.A. and maintains this website at its own expense to provide free public access to the law. It is not intended to replace professional legal consultation or advanced legal research tools. Please note that the latest print version of the O.C.G.A. is the authoritative version; and in case of any conflict between the materials on this website and the latest print version of the O.C.G.A., the print version shall control. To report errors regarding this website, please complete the publisher's Feedback Form.

Legislative staff of the Georgia General Assembly cannot respond to requests for legal advice or the application of the law to specific facts from anyone except members of the Georgia General Assembly. Therefore, to understand and protect your legal rights, you should consult your own private lawyer. Please refer legal questions elsewhere.



Welcome to LexisNexis

**Close**



PRINT PAGE

### Official Code of Georgia Annotated



| Format | ISBN | Your Price |
|---|---|---|
| Print Book | 9780327110743 | **$378.00** |

#### Description

The *Official Code of Georgia Annotated (OCGA)* provides users with the <u>official</u> Georgia statutes, fully annotated and including guidance from the Georgia Code Commission. If you live or work in Georgia, the *OCGA* is the essential reference you need to guide you quickly and efficiently in understanding the Georgia statutory scheme. Key features include:

• 48 volumes plus current cumulative supplement including three index volumes
• Official state statutes, fully annotated with explanatory notes
• Comprehensive index, replaced annually
• Fully annotated cumulative supplements published annually within 75 days of receipt of all acts from the legislature

The *Official Code of Georgia's* copious annotations help you expand your research and include:

• Decisions of the U.S. Supreme Court, the Supreme Court of Georgia, the Courts of Appeals of Georgia, and all federal cases arising in Georgia
• Opinions of the Georgia Attorney General
• State law reviews
• *ALR*
• *American Jurisprudence*
• *American Jurisprudence, Pleading and Practice*
• *American Jurisprudence, Proof of Facts*
• *American Jurisprudence, Trials*
• *Corpus Juris Secundum*
• *Uniform Laws Annotated*
• Cross reference notes to statutes, rules, and regulations including the *United States Code* and the *Official Compilation of the Rules and Regulations of the State of Georgia*
• All case citations are *Shepardized®* for accuracy and relevant subsequent history

The fully annotated Georgia Rules of Court is available separately in a convenient softbound format at an affordable price, as well as on CD-ROM and online at **lexis.com**. *Georgia Advance Annotated Service (AAS)*, published quarterly, and the *Citator*, providing comprehensive citations, are also available separately.

*Take advantage of this special low price for customers residing in Georgia, or call 1-800-223-1940 for out-of-state pricing.*

<u>Table of Contents</u>

Title 1. General Provisions
Title 2. Agriculture
Title 3. Alcoholic Beverages
Title 4. Animals
Title 5. Appeal and Error
Title 6. Aviation
Title 7. Banking and Finance
Title 8. Buildings and Housing
Title 9. Civil Practice
Title 10. Commerce and Trade
Title 11. Commercial Code
Title 12. Conservation and Natural Resources
Title 13. Contracts
Title 14. Corporations, Partnerships, and Associations
Title 15. Courts
Title 16. Crimes and Offenses

102

Title 17. Criminal Procedure
Title 18. Debtor and Creditor
Title 19. Domestic Relations
Title 20. Education
Title 21. Elections
Title 22. Eminent Domain
Title 23. Equity
Title 24. Evidence
Title 25. Fire Protection and Safety
Title 26. Food, Drugs, and Cosmetics
Title 27. Game and Fish
Title 28. General Assembly
Title 29. Guardian and Ward
Title 30. Handicapped Persons
Title 31. Health
Title 32. Highways, Bridges, and Ferries
Title 33. Insurance
Title 34. Labor and Industrial Relations
Title 35. Law Enforcement Officers and Agencies
Title 36. Local Government
Title 37. Mental Health
Title 38. Military, Emergency Management, and Veterans Affairs
Title 39. Minors
Title 40. Motor Vehicles and Traffic
Title 41. Nuisances
Title 42. Penal Institutions
Title 43. Professions and Businesses
Title 44. Property
Title 45. Public Officers and Employees
Title 46. Public Utilities and Public Transportation
Title 47. Retirement and Pensions
Title 48. Revenue and Taxation
Title 49. Social Services
Title 50. State Government
Title 51. Torts
Title 52. Waters Of The State, Ports, and Watercraft
Title 53. Wills, Trusts, and Administration Of Estates
United States Constitution
Georgia Constitution
Tables of Comparative Provisions and Laws Codified
Indexes

**To order or for current pricing go to:**
**www.lexisnexis.com/store/us or call 1-800-223-1940**

Price subject to change. Shipping, handling, and sales tax will be added where applicable. LexisNexis, the Knowledge Burst logo, and lexis.com are registered trademarks of Reed Elsevier Properties Inc., used under license. Matthew Bender is a registered trademark of Matthew Bender properties Inc. Other products or services may be trademarks or registered trademarks of their respective companies. Copyright 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved. No part of these materials including graphics or logos, may be copied, photocopied, reproduced, translated or reduced to any electronic medium or machine-readable form, in whole or in part, without specific written permission of LexisNexis. Distribution for commercial purposes is prohibited

103

# TAB 11

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on behalf of and for the benefit of THE GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:15-CV-02594-MHC |
| PUBLIC.RESOURCE.ORG, INC. | |
| Defendant. | |

## AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff Code Revision Commission on Behalf of and For the Benefit of the General Assembly of Georgia and the State of Georgia ("Commission"), hereby states its first amended complaint for injunctive relief against Public.Resource.Org, Inc. ("Defendant") and alleges, on information and belief, the following against Defendant:

## NATURE OF THIS ACTION

1.    This action for injunctive relief arises from Defendant's systematic, widespread and unauthorized copying and distribution of the copyrighted

104

annotations in the Official Code of Georgia Annotated ("O.C.G.A.") through the

distribution of thumb drives containing copies of the O.C.G.A. and the posting of

the O.C.G.A. on various websites.  Defendant has facilitated, enabled, encouraged

and induced others to view, download, print, copy, and distribute the O.C.G.A.

copyrighted annotations without limitation, authorization, or appropriate

compensation.  On information and belief, Defendant has also created

unauthorized derivative works containing the O.C.G.A. annotations by re-keying

the O.C.G.A. in order to make it possible for members of the public to copy and

manipulate the O.C.G.A., thereby also encouraging the creation of further

unauthorized derivative works.

      2.     The copyrighted annotations include analysis and guidance that are

added to the O.C.G.A. by a third party publisher of the O.C.G.A. as a work for

hire.  These annotations include synopses of cases that interpret the O.C.G.A.,

summaries of Opinions of the Attorney General of Georgia, and summaries of

research references related to the O.C.G.A.  Each of these annotations is an

original and creative work of authorship that is protected by copyrights owned by

the State of Georgia.  Without providing the publisher with the ability to recoup its

costs for the development of these copyrighted annotations, the State of Georgia

will be required to either stop publishing the annotations altogether or pay for

105

development of the annotations using state tax dollars.  Unless Defendant's

infringing activities are enjoined, Plaintiff and citizens of the State of Georgia, will

face losing valuable analysis and guidance regarding their state laws.

## JURISDICTION AND VENUE

3.     This is a civil action seeking injunctive relief for copyright

infringement under the Copyright Act of 1976, as amended, specifically 17 U.S.C.

§§ 101, *et seq*.

4.     This Court has jurisdiction in and over this copyright infringement

action pursuant to 17 U.S.C. §§ 101, *et seq*., and 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has personal jurisdiction over Defendant. Defendant has

infringed the State of Georgia's copyright in Georgia by distributing infringing

copies of the O.C.G.A including copyrighted annotations to persons in Georgia, to

Georgia Speaker of the House David Ralston and Georgia Legislative Counsel

Wayne R. Allen at locations within the State of Georgia on or about May 30, 2013.

On or about September 24, 2013, Defendant further distributed infringing copies of

the O.C.G.A. including copyrighted annotations on thumb drives to at least eight

(8) institutions in and around the State of Georgia.  Defendant further presented

copies of the O.C.G.A. including copyrighted annotations on at least one Internet

website (https://public.resource.org, https://bulk.resource.org, and/or https://law.resource.org) that attracts citizens from Georgia as viewers and actively encourages all such individuals to copy, use, and disseminate to others in Georgia and elsewhere, and to create derivative works of the O.C.G.A.  Defendant still further solicited and continues to solicit funds on one of its own websites (https://yeswescan.org) and a crowd funding website (www.indiegogo.com/projects/the-laws-of-georgia) to help Defendant scan and post the O.C.G.A. including copyrighted annotations, which websites attract and affect citizens from the State of Georgia.  Defendant's website at https://yeswescan.org indicates that $3,035 dollars were raised as of June 15, 2015 to assist Defendant in infringing the State of Georgia's copyrights in the O.C.G.A. copyrighted annotations.  Individual visitors are also encouraged to provide financial donations on several of the Defendant's websites via a PayPal account, and Defendant offers for sale multiple products via the Internet, including phone cases, caps, stickers, stamps, mugs, bags, and prints at http://www.zazzle.com/carlmalamud/.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 since a substantial number of the claims recited in this Complaint arose in the State

107

of Georgia and the Defendant does business in this state.  Paragraph 5 above is

incorporated by reference as if set forth fully herein.

## PARTIES

7.      Plaintiff Georgia Code Revision Commission is acting on behalf of

and for the benefit of the General Assembly of Georgia and the State of Georgia.

The Georgia Code Revision Commission is composed of fifteen members selected

from the Georgia House, the Georgia Senate and the State Bar of Georgia

including a judge of the superior courts and a district attorney.  The Georgia Code

Revision Commission compiles and obtains the publication of the O.C.G.A. The

Georgia General Assembly enacts laws on behalf of the State of Georgia.

8.      Defendant Public Resource.Org is a California corporation with its

principal place of business located at 1005 Gravenstein Highway North,

Sebastopol, California  95472.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiffs and Their Infringed Copyrighted Works

9.      The State of Georgia enacts and promulgates the laws of the state

through its legislature.  The state laws are provided in Code sections.  Periodically,

5

typically annually, the Georgia General Assembly ("Legislature") revises, modifies, and amends its laws through supplemental laws and amendments. The Georgia General Assembly is assisted by the Code Revision Commission in publishing the Georgia state laws.

10.    The Legislature contracts with a publisher, currently Matthew Bender and Company, Inc., a member of the LexisNexis Group ("LexisNexis"), a division of Reed Elsevier Properties, Inc., to publish an annotated version of the State laws as the O.C.G.A.  Pursuant to this contract ("Code Publishing Contract"), and in order to allow LexisNexis to recoup its publishing costs, LexisNexis is permitted to sell the O.C.G.A., with the copyrighted annotations, in both hard bound book and electronic format for a set fee.

11.    In its capacity as publisher of the O.C.G.A., and through its own original creation, selection, coordination and/or arrangement, LexisNexis makes additions to the statutory text of the state laws previously approved and enacted by the Legislature.  One example of additions made by LexisNexis is a summary of a judicial decision that relates to a particular Code section and illustrates and informs as to an interpretation of that Code section.  This judicial summary is added at the end of the relevant Code section under the heading "Judicial Decisions."  *See*

6

109

Exhibit 1 for examples of O.C.G.A. judicial summaries.  The judicial summary is only added in the annotated publication and is not enacted as law.

12.    In order to create judicial summaries as original and creative works of authorship, LexisNexis selects and reads relevant judicial decisions.  LexisNexis then distills each relevant decision down to a single paragraph.  The succinctness and accuracy of the judicial summaries are in large part what make them valuable to attorneys and others researching the Code.  Accordingly, the text of the judicial summaries of the O.C.G.A. must be and is carefully crafted by LexisNexis in order to illustrate and interpret the Code sections of the O.C.G.A.

13.    These judicial summaries, along with notes and other original and creative non-statutory text added by LexisNexis to the Georgia statutory text, and the compilations thereof, are prepared as works made for hire for the State of Georgia and are protected by copyright.  These judicial summaries and additional non-statutory text are further selected, coordinated and/or arranged in an original manner in the O.C.G.A and protected by compilation copyright. Accordingly, the O.C.G.A. contains individual judicial summaries, non-statutory text, and compilations thereof, which are separately copyrightable and copyrighted. The judicial summaries and other non-statutory text together with the compilations thereof are referred to herein as the "Copyrighted Annotations." The Copyrighted

7

110

Annotations are created by LexisNexis for the State of Georgia pursuant to the state's Code Publishing Contract with LexisNexis. Therefore, each of Plaintiff's Copyrighted Annotations, as to which infringement is specifically alleged below, are original works of authorship protected by copyright, and exclusive rights under these copyrights are owned by Plaintiff. These copyrights have been registered with the United States Copyright Office, or have an application for registration pending with the United States Copyright Office.

14.    Plaintiff does not assert copyright in the O.C.G.A. statutory text itself since the laws of Georgia are and should be free to the public. The Code Publishing Contract between LexisNexis and the State of Georgia requires that LexisNexis publish on the internet, free of charge, the statutory text of the O.C.G.A. These free Code publications are available 24 hours each day, 7 days a week, and include all statutory text and numbering; numbers of titles, chapters, articles, parts, and subparts; captions and headings; and history lines. The free Code publications are fully searchable, and the catchlines, captions and headings are accessible by links from the table of contents. The free Code publication of the State of Georgia is accessible via a website link found on the State of Georgia website www.legis.ga.gov.

## **Defendant's Copying and Distribution of Plaintiffs' Copyrighted Annotations**

15.    On information and belief, Defendant has, without authorization, copied at least 140 different volumes/supplements containing the O.C.G.A. Copyrighted Annotations, including the original selection, coordination and arrangement therein, the copyrights for which are owned by the State of Georgia. Each of these copied works has been posted by the Defendant on at least one of its websites, https://public.resource.org, https://law.resource.org, and https://bulk.resource.org, and is available to members of the public for downloading, viewing, and printing.  *See* https://law.resource.org/pub/us/code/ga/georgia.scan.2013/.   The electronic nature of these documents, and their availability on the Internet, magnifies the ease and speed with which they may be copied and distributed to others.

16.    On information and belief, Defendant has, without authorization, copied or "rekeyed" at least some of Plaintiff's Copyrighted Annotations prior to posting them on Defendant's website(s) to make the Copyrighted Annotations easier for members of the public to copy and manipulate, thereby encouraging the creation of works that are derivative of Plaintiff's Copyrighted Annotations.

112

17.    On information and belief, Defendant has, without authorization, distributed/uploaded hundreds of Plaintiff's Copyrighted Annotations to the website www.archive.org ("Internet Archive Website").  On information and belief, Defendant has further falsely indicated that PublicResource.Org is the owner of Plaintiff's Copyrighted Annotations by uploading those works to the Internet Archive Website with an indication that Defendant has dedicated the work to the public and with an instruction that members of the public "can copy, modify, distribute and perform the work, even for commercial purposes, all without asking permission."  *See*, for example, https://archive.org/details/govlawgacode392000, which indicates that O.C.G.A. Volume 39, 2000 Edition, Title 51 is subject to a "CC0 1.0 Universal" license. Following the CC0 1.0 Universal link on that web page directs one to http://creativecommons.org/publicdomain/zero/1.0/ where the quoted language can be found.  As a result, Plaintiff's Copyrighted Annotations have been downloaded by the public from the Internet Archive Website thousands of times.  *See*

https://archive.org/search.php?query=georgia%20code%20and%20public%20resource.

18.    On information and belief, subsequent to the filing of Plaintiff's original Complaint (Dkt. No. 1), Defendant has, without authorization, copied at

10

113

least 52 different volumes/supplements containing the 2015 O.C.G.A. Copyrighted Annotations, including the original selection, coordination and arrangement therein, the copyrights for which are owned by the State of Georgia. Each of these copied works has been posted by the Defendant on at least one of its websites, https://public.resource.org, https://law.resource.org, and https://bulk.resource.org, and is available to members of the public for downloading, viewing, and printing. *See* https://law.resource.org/pub/us/code/ga/georgia.scan.2015/?C=N;O=A. The electronic nature of these documents, and their availability on the Internet, magnifies the ease and speed with which they may be copied and distributed to others.

19.    On information and belief, Defendant's ongoing and widespread copying and distribution of Plaintiff's Copyrighted Annotations are deliberate and willful acts of copyright infringement that are part of a larger plan designed to challenge the letter of U.S. copyright law and force government entities (in the U.S. and elsewhere) to expend tax payer dollars in creating annotated state codes and making those annotated codes easily accessible by Defendant. Defendant's websites https://public.resource.org and https://yeswescan.org are dedicated to these efforts, and in January of 2014, Carl Malamud, Defendant's founder and president, testified in front of the U.S. House of Representatives, House Judiciary

11

114

Committee, to advance an amendment to the U.S. Copyright Act making state and local official legal documents uncopyrightable for reasons of public policy.  No such amendment has been adopted by Congress.  On information and belief, Carl Malamud has engaged in an 18 year-long crusade to control the accessibility of U.S. government documents by becoming the United States' Public Printer – an individual nominated by the U.S. President and who is in control of the U.S. Government Printing Office.  Carl Malamud has not been so nominated.

20.    On information and belief, Defendant is employing a deliberate strategy of copying and posting large document archives such as the O.C.G.A. (including the Copyrighted Annotations) in order to force the State of Georgia to provide the O.C.G.A., in an electronic format acceptable to Defendant.  Defendant's founder and president, Carl Malamud, has indicated that this type of strategy has been a successful form of "terrorism" that he has employed in the past to force government entities to publish documents on Malamud's terms.  *See* Exhibit 2.

21.    Consistent with its self-described strategy of mass publication terrorism, Defendant freely admits to the copying and distribution of massive numbers of Plaintiff's Copyrighted Annotations on at least its https://yeswescan.org website.  *See* Exhibit 3.  Defendant also announced on the

115

https://yeswescan.org website that it has targeted the States of Mississippi, Georgia, and Idaho and the District of Columbia for its continued, deliberate and willful copying of copyrighted portions of the annotated codes of those jurisdictions.  Defendant has further posted on the https://yeswescan.org website, and delivered to Plaintiffs, a "Proclamation of Promulgation," indicating that its deliberate and willful copying and distribution of Plaintiff's Copyrighted Annotations would be "greatly expanded" in 2014.  Defendant has further instituted public funding campaigns on a website www.indiegogo.com to support its continued copying and distribution of Plaintiff's Copyrighted Annotations. Defendant has raised thousands of dollars to assist Defendant in infringing the O.C.G.A. Copyrighted Annotations.

22.    Defendant deliberately and willfully distributed USB thumb drives containing scanned copies of Plaintiff's Copyrighted Annotations to members of the State of Georgia Legislature.

23.    Defendant mailed at least ninety (90) different volumes/supplements of the O.C.G.A. Copyrighted Annotations published over several years to Honorable David Ralston, Speaker of the House, Georgia House of Representatives and Mr. Wayne Allen, Legislative Counsel, Office of Legislative Counsel, Georgia General Assembly, and, on information and belief, later mailed

116

USB thumb drives containing copies of the same O.C.G.A. Copyrighted

Annotations to at least eight (8) institutions in and around the State of Georgia.

24.    Plaintiff has not authorized Defendant to copy, distribute or make

derivative works of Plaintiff's Copyrighted Annotations.  The State of Georgia

demanded that Defendant cease and desist its infringement of the O.C.G.A.

Copyrighted Annotations on at least July 25, 2013 (*see* Exhibit 4). Defendant has

refused to remove any and all copies of Plaintiff's Copyrighted Annotations from

its website(s) (*see* Exhibit 5).


## CLAIMS FOR RELIEF

### First Claim
### Direct Copyright Infringement in Violation of 17 U.S.C. § 106


25.    Paragraphs 1 through 23 above are incorporated by reference as set

forth fully herein.

26.    By scanning, copying, displaying, distributing, and creating derivative

works of Plaintiff's Copyrighted Annotations—including but not limited to each

copyrighted work identified on Exhibit 6—on a widespread and continuing basis

via Defendant's website(s) and the Internet Archive Website, Defendant's conduct

constitutes infringement of Plaintiff's copyrights and exclusive rights under

copyright in violation of one or more of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

27.     By scanning, copying and distributing Plaintiff's Copyrighted Annotations in at least twenty one (21) different volumes/supplements of the O.C.G.A. identified on Exhibit 6 on USB thumb drives via a mail service to multiple entities, Defendant's conduct constitutes infringement of Plaintiff's copyrights and exclusive rights under copyright in violation of one or more of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

28.     Defendant's acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiff's rights.

29.     As a direct and proximate result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under copyright, and because there is no adequate remedy at law, Plaintiff is entitled to injunctive relief.  Unless enjoined by the Court, Defendant's conduct will continue to cause severe and irreparable harm to Plaintiff.

30.     Plaintiff is entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**Second Claim**
**Indirect Copyright Infringement in Violation of 17 U.S.C. § 106**

31.    Paragraphs 1 through 23 above are incorporated by reference as set forth fully herein.

32.    By facilitating, encouraging and inducing members of the public to copy, display, distribute, and create derivative works of Plaintiff's Copyrighted Annotations—including, but not limited to each copyrighted work identified on Exhibit 6—on a widespread and continuing basis via Defendant's website(s) and the Internet Archive Website, Defendant has contributorily infringed Plaintiff's copyrights and exclusive rights under copyright in violation of one or more of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

33.    Defendant has actual and constructive knowledge that members of the public have copied and displayed Plaintiff's copyrighted material, and Defendant knowingly encouraged members of the public to do so.

34.    Defendant's acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiff's rights.

35.    As a direct and proximate result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under copyright, and because there is no

119

adequate remedy at law, Plaintiff is entitled to injunctive relief.  Unless enjoined by the Court, Defendant's conduct will continue to cause severe and irreparable harm to Plaintiff.

36.   Plaintiff is entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**WHEREFORE**, Plaintiff prays:

1.   That this Court enter an order pursuant to 17 U.S.C. § 502 granting permanent injunctive relief enjoining Defendant and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with any of them, now or in the future, without seeking the appropriate authorization from Plaintiff, from creating derivative works of, or copying, displaying, or distributing electronic or paper copies of, any of Plaintiff's copyrighted works to anyone, in the manner described above—namely, via the posting on a website or the distribution of a USB thumb drive or otherwise;

2.   That this Court enter an order pursuant to 17 U.S.C. § 502 granting permanent injunctive relief enjoining Defendant and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all

17

120

others in privity or acting in concert with any of them, now or in the future, without seeking the appropriate authorization from Plaintiff, from facilitating or encouraging others to create derivative works of, or copy, display or distribute electronic or paper copies of, any of Plaintiff's copyrighted works to anyone, in the manner described above—namely, via the posting on a website or otherwise;

3.    That this Court enter an order pursuant to 17 U.S.C. § 503 for seizure to recover, impound, and destroy all things infringing Plaintiff's copyrighted works that are in the custody or control of Defendant;

4.    That this Court award Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 17 U.S.C. § 505; and

5.    That this Court grant such other and further relief as it deems just and proper.

121

Respectfully submitted, this 8th day of October, 2015.

/s/ Anthony B. Askew

Anthony B. Askew (G.A. Bar: 025300)
Lisa C. Pavento (G.A. Bar: 246698)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE
Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: taskew@mcciplaw.com
lpavento@mcciplaw.com
wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia*

122

## CERTIFICATE OF COMPLIANCE

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District of Georgia, the foregoing Amended Complaint for Injunctive Relief complies with the font and point selections approved by the Court in L.R. 5.1C. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

/s/ Anthony B. Askew
Anthony B. Askew (G.A. Bar: 025300)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE
Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: taskew@mcciplaw.com

## CERTIFICATE OF SERVICE

I certify that on Thursday, October 8, 2015, I electronically filed the

foregoing Amended Complaint for Injunctive Relief with the Clerk of Court using

the CM/ECF system, which constitutes service of the filed document on all counsel

of record in this proceeding under LR 5.1(A)(3), N.D. Ga.


By:    */s/ Anthony B. Askew*
      Anthony B. Askew (G.A. Bar: 025300)
      Lisa C. Pavento (G.A. Bar: 246698)
      Warren Thomas (G.A. Bar: 164714)
      Meunier Carlin & Curfman LLC
      999 Peachtree Street, NE, Suite 1300
      Atlanta, Georgia 30309
      Phone: 404-645-7700
      Fax: 404-645-7707
      taskew@mcciplaw.com
      lpavento@mcciplaw.com
      wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia*

124

# TAB 10

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on behalf of and for the benefit of THE GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA, <br><br> Plaintiff, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC. <br><br> Defendant. | CIVIL ACTION NO. <br><br> 1:15-CV-02594-MHC |

## ANSWER TO AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Plaintiff and Counterclaim-Defendant the Code Revision Commission, on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia ("Commission"), answers the Affirmative Defenses and Counterclaim as follows:

### AFFIRMATIVE DEFENSES

The Commission denies the allegations of defendant's affirmative defenses one through ten.

## COUNTERCLAIM FOR DECLARATORY RELIEF

### NATURE OF THE ACTION

1.     The Commission admits that defendant seeks a declaratory judgment that its copying and distributing the texts of the Official Code of Georgia Annotated ("O.C.G.A") do not infringe any copyright.  The Commission denies the remaining allegations of paragraph 1.

### THE PARTIES

2.     The Commission admits that Public Resource is a California nonprofit corporation with its indicated principal place of business.  The Commission lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 2 and therefore denies them.

3.     The Commission admits that Public Resource has undertaken to make many documents widely available to the public on a noncommercial basis. The Commission lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 3 and therefore denies them.

4.     The Commission admits that the Georgia Code Revision Commission acts on behalf of and for the benefit of the General Assembly of Georgia and the

126

State of Georgia pursuant to and within the statutory provisions of Title 28,

Chapter 9 of the O.C.G.A.

**JURISDICTION AND VENUE**

5.      The Commission admits that this Court has subject matter

jurisdiction over the counterclaim as alleged in paragraph 5 except to the extent

that state sovereign immunity applies to the allegations of that counterclaim.

6.      Admitted.

7.      Admitted.

8.      Denied.

9.      Admitted.

**FACTS**

10.     The Commission admits the first sentence of this paragraph. With

respect to the allegations of falsity in the second sentence of this paragraph, the

Commission denies that any allegations of its original complaint are false. The

Commission lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the remaining allegations in paragraph 10 and therefore denies

them.

11.     The Commission admits that during 2004 Mr. Malamud had a

contract to provide consulting services to the Internet Engineering Task Force. The

3

Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 11 and therefore denies them.

12.   The Commission admits that Mr. Malamud is a founder of the Internet Systems Consortium.   The Commission admits that the Internet Systems Consortium: (1) operates the F-Root domain name server and (2) produces the BIND domain name system software. The Commission admits that the book "A World's Fair for the Global Village" (ISBN 978-0262133388) was authored by Mr. Malamud, published by MIT Press in 1997, and includes a foreword by the Dalai Lama. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 12 and therefore denies them.

13.   The Commission admits that a letter from The Hon. Lee H. Rosenthal to Mr. Malamud, dated July 16, 2008, is attached as Exhibit A to defendant's counterclaim. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 13 and therefore denies them.

14.   The Commission admits that Carl Malamud campaigned for the position of Public Printer of the United States. The Commission lacks knowledge

4

128

or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 14 and therefore denies them.

15.    The Commission admits that on December 16, 2009, Mr. Malamud testified before the Subcommittee on Information Policy, Census, and National Archives of the House Committee on Oversight and Government Reform, and that Mr. Malamud's prepared statement for that hearing may be viewed at http://www.archives.gov/era/acera/pdf/malamud-testimony.pdf. The Commission admits that the Office of the Federal Register is one of the offices within the National Archives and Records Administration. The Commission denies the remaining allegations of paragraph 15.

16.    The Commission admits that a letter dated January 5, 2011, from Reps. John Boehner and Darrell Issa to Mr. Malamud is attached to the counterclaim as Exhibit B and available at the alleged URL. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 16 and therefore denies them.

17.    The Commission admits that Public Resource brought an action against the IRS under the Freedom of Information Act, Civil Action No. 3:13-cv-02789-WHO, in the Northern District of California, and that the district court entered judgment in favor of Public.Resource.Org on the claims alleged in that

5

complaint. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 17 and therefore denies them.

18.   The Commission admits that Mr. Malamud was at one time a member of the Administrative Conference of the United States (ACUS) but denies that Mr. Malamud was appointed on the date alleged in paragraph 18. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 18 and therefore denies them.

19.   The Commission admits that Mr. Malamud testified regarding the "Scope of Copyright Protection" before the U.S. House of Representatives Judiciary Committee, Subcommittee on Courts, Intellectual Property, and the Internet, on January 14, 2014, that he submitted a petition with 115 signatories, and that the petition proposed the amendment to the Copyright Act as quoted in paragraph 19. The Commission denies the remaining allegations of paragraph 19.

20.   The Commission admits the first sentence of paragraph 20. The remainder of this paragraph consists of legal arguments and conclusions that require no response.

21.   The Commission admits that Public Resource acquires copies of documents containing government records, legal decisions, tax filings, statutes, and

regulations, and posts them online to be accessed without monetary cost to readers. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 21 and therefore denies them.

22.     The Commission admits that Public Resource operates the websites public.resource.org, law.resource.org, house.resource.org, bulk.resource.org and others.  On information and belief, Public Resource does not operate the website yeswecan.org and therefore the Commission denies this allegation.

23.     The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 23 and therefore denies them.

24.     The Commission admits that Public Resource reformats at least some of the documents containing laws it posts. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 24 and therefore denies them.

25.     The Commission admits that Public Resource's reformatting includes putting some documents containing codes into standard HTML format. The Commission lacks knowledge or information sufficient to form a belief about the

131

truth or falsity of the remaining allegations of paragraph 25 and therefore denies them.

26.    The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 26 and therefore denies them.

27.    The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 27 and therefore denies them.

28.    The Commission admits that the growth of the Internet provides an opportunity for government to inform some of its citizens about the laws they must follow in carrying out their daily activities.  The Commission denies the remaining allegations in paragraph 28.

29.    Admitted.

30.    The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 30 and therefore denies them.

31.    The Commission admits that Public Resource offers for sale items bearing its logo, such as stickers, T-shirts and books by its founder.  The Commission lacks knowledge or information sufficient to form a belief about the

truth or falsity of the remaining allegations in paragraph 31 and therefore denies them.

32.    The Commission admits that it is common for bills introduced in the Georgia General Assembly ("Legislature") to begin, "An Act . . . To amend Article . . . Chapter . . . of Title . . . of the Official Code of Georgia Annotated." However, the Commission lacks knowledge or information sufficient to form a belief about the truth of the allegation that "every single bill" so introduced recites the same language. The remaining allegations of paragraph 32 are admitted.

33.    The Commission admits that the Legislature is assisted by Plaintiff-Counterclaim Defendant in publishing the laws enacted by the Legislature. Plaintiff-Counterclaim Defendant does not assert copyright in the O.C.G.A. statutory text because the enacted laws are not copyrightable subject matter and should be free to the public.

34.    The Commission admits that it claims copyright and asserts copyright in original and creative works added by Mathew Bender and Company, a member of the LexisNexis Group, a division of Reed Elsevier Properties, Inc. ("LexisNexis"), to the Georgia statutory text.  These original and creative works include the addition of single-paragraph summaries of judicial decisions interpreting sections of the Code, summaries of Opinions of the Attorney General

9

133

of Georgia, summaries of research references related to the O.C.G.A., summaries of cross references, Editor's notes, and summaries of Code Commission Notes, all selected, coordinated or arranged by LexisNexis. The Commission admits that the judicial decisions themselves are not copyrightable subject matter.  The Commission denies that the judicial decision summaries are derivative works. As to the fifth sentence of paragraph 34, the Commission admits that the quoted language is an excerpt from a Copyrighted Judicial Decision Annotation accompanying O.C.G.A. §§ 1-1-1 and 1-1-2. As to the sixth sentence of paragraph 34, the Commission: (1) admits that Exhibit C contains annotations to O.C.G.A. § 1-1-1; (2) admits that Exhibit D contains a portion of the statutory text for O.C.G.A. § 1-1-10 but denies that Exhibit D contains any annotations to O.C.G.A. § 1-1-10; and (3) admits that the O.C.G.A pages shown in Exhibits C and D are available on the defendant's website at the URL alleged in paragraph 34. The Commission denies the remaining allegations of paragraph 34.

35.    Admitted.

36.    The Commission admits that to access the statutory text and numbering in the O.C.G.A. via the website link found on the State of Georgia website, www.legis.ga.gov, one must accept the terms of use for the LexisNexis site ("LexisNexis Terms of Use") and that the LexisNexis Terms of Use do not

10

134

apply to the O.C.G.A. statutory text and numbering.  The Commission denies sentence 2 of paragraph 36.  The Commission admits the language of sentence 3 of paragraph 36 and that the language of this sentence does not apply to the statutory text and numbering.  The Commission admits that Exhibit E is a copy of the LexisNexis Terms of Use, and that these Terms of Use indicate that restrictions on unpermitted uses extend to all commercial, non-profit and public purposes, but these restrictions do not apply to the statutory text and numbering.  The Commission denies the remaining allegations in paragraph 36.

37.    The Commission admits that the O.C.G.A statutory text and numbering that is available for free on the LexisNexis site does not contain the Annotations, such as the Judicial Summaries, summaries of Code Revision Commission Notes, summaries of Attorney General Opinions, and compilations thereof. The Commission denies the remaining allegations of paragraph 37.

38.    Admitted.

39.    The Commission admits that Exhibit G and the alleged URL contain a LexisNexis marketing page for the print version of the Official Code of Georgia Annotated wherein the term "official" is included within boldface and underlined type. The Commission denies the remaining allegations of this paragraph, including the defendant's characterizations of the content of that marketing page.

11

135

40.    Denied.

## **COUNT I**

41.    In response to this paragraph, the Commission incorporates its responses to the allegations of the proceeding paragraphs as if fully set forth in this paragraph.

42.    This paragraph consists of legal arguments and conclusions that require no response.

43.    This paragraph consists of legal arguments and conclusions that require no response.

44.    This paragraph consists of legal arguments and conclusions that require no response.

45.    This paragraph consists of legal arguments and conclusions that require no response.

46.    The Commission admits that laws are in the public domain and not subject to copyright.  The remaining allegations consist of legal arguments and conclusions that require no response, but to the extent that a response is required, the Commission denies them.

47.    The Commission admits that laws do not lose their public domain status and become subject to copyright.  The Commission denies that a private

12

party drafts laws whether as works for hire or otherwise. The remaining allegations consist of legal arguments and conclusions that require no response, but to the extent that a response is required, the Commission denies them.

48.    The Commission admits that laws do not lose their public domain status and become subject to copyright. The remaining allegations consist of legal arguments and conclusions that require no response, but to the extent that a response is required, the Commission denies them.

49.    Denied.

50.    Denied.

51.    The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 51 and therefore denies them.

52.    The Commission admits that the defendant copies and publishes the O.C.G.A. in its entirety. The remaining allegations of paragraph 52 are denied.

53.    Denied.

54.    Admitted.

55.    The Commission admits it seeks an injunction against the defendant. The Commission denies the remaining allegations of paragraph 55.

13

56.     The Commission admits that the Georgia legislature regularly enacts amendments of the statutes of the O.C.G.A. and will likely continue to do so.  The Commission denies the remaining allegations of paragraph 56.

57.     The Commission admits that it is likely to assert its rights in the Copyrighted Annotations in future editions of the O.C.G.A. The Commission denies the remaining allegations of paragraph 57.

58.     Admitted.

59.     Denied.


Respectfully submitted, this 8th day of October, 2015.

                          */s/ Anthony B. Askew*

                          Anthony B. Askew (G.A. Bar: 025300)
                          Lisa C. Pavento (G.A. Bar: 246698)
                          Warren Thomas (G.A. Bar: 164714)
                          Meunier Carlin & Curfman LLC
                          999 Peachtree Street, NE, Suite 1300
                          Atlanta, Georgia 30309
                          Phone: 404-645-7700
                          Fax: 404-645-7707
                          taskew@mcciplaw.com
                          lpavento@mcciplaw.com
                          wthomas@mcciplaw.com

                          *Counsel for the Plaintiff, Code Revision
                          Commission on behalf of and for the benefit
                          of the General Assembly of Georgia, and the
                          State of Georgia*

14

138

## CERTIFICATE OF COMPLIANCE

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District of Georgia, the foregoing Answer to Affirmative Defenses and Counterclaim complies with the font and point selections approved by the Court in L.R. 5.1C. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/ Anthony B. Askew*
Anthony B. Askew (G.A. Bar: 025300)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: taskew@mcciplaw.com

## CERTIFICATE OF SERVICE

I certify that on Thursday, October 8, 2015, I electronically filed the

foregoing Answer to Affirmative Defenses and Counterclaim with the Clerk of

Court using the CM/ECF system, which constitutes service of the filed document

on all counsel of record in this proceeding under LR 5.1(A)(3), N.D. Ga.


By:   */s/ Anthony B. Askew*
      Anthony B. Askew (G.A. Bar: 025300)
      Lisa C. Pavento (G.A. Bar: 246698)
      Warren Thomas (G.A. Bar: 164714)
      Meunier Carlin & Curfman LLC
      999 Peachtree Street, NE, Suite 1300
      Atlanta, Georgia 30309
      Phone: 404-645-7700
      Fax: 404-645-7707
      taskew@mcciplaw.com
      lpavento@mcciplaw.com
      wthomas@mcciplaw.com

      *Counsel for the Plaintiff, Code Revision*
      *Commission on behalf of and for the benefit*
      *of the General Assembly of Georgia, and the*
      *State of Georgia*

140

# TAB 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION ) | |
| on Behalf of and For the Benefit of the ) | CIVIL ACTION |
| GENERAL ASSEMBLY OF GEORGIA, ) | NO.  1:15-cv-2594-MHC |
| and the STATE OF GEORGIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PUBLIC.RESOURCE.ORG, INC., ) | |
| ) | |
| Defendant. ) | |

**ANSWER TO AMENDED COMPLAINT AND
COUNTERCLAIM OF DEFENDANT PUBLIC.RESOURCE.ORG, INC.**

Defendant Public.Resource.Org, Inc. ("Public Resource") responds to the

Amended Complaint as follows:

## NATURE OF THIS ACTION

1.    Public Resource admits that this action arises from its copying and

distribution of the Official Code of Georgia Annotated ("O.C.G.A.") through the

distribution of thumb drives containing copies of the O.C.G.A. and the posting of

the O.C.G.A. on two websites.  Public Resource denies that the Plaintiff holds any

valid copyright in the O.C.G.A., including its annotations, and therefore denies that

Public Resource – or anyone – requires authorization to copy it. Public Resource admits that it has facilitated, enabled, encouraged and induced others to view, download, print, copy and distribute the O.C.G.A. without limitation or compensation. Public Resource admits that it has also created works containing the O.C.G.A. All other allegations of paragraph 1 are denied.

2.      Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence in paragraph 2, and therefore denies them. Public Resource admits that the annotations to the O.C.G.A. include synopses of cases that interpret the O.C.G.A., summaries of Opinions of the Attorney General of Georgia and summaries of research references related to the O.C.G.A. Public Resource denies the remaining allegations of paragraph 2.

### JURISDICTION AND VENUE

3.      Public Resource admits the allegations of paragraph 3.

4.      Public Resource admits the allegations of paragraph 4.

5.      Public Resource admits that this Court has personal jurisdiction over it. Public Resource admits doing the acts alleged in paragraph 5 but denies that Plaintiff owns a valid copyright in the annotations, and further denies that Public Resource has infringed any copyright held by the State of Georgia.

2

LEGAL02/35827060v1

142

6.      Public Resource admits that venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

## PARTIES

7.      Public Resource admits that the Georgia General Assembly enacts laws on behalf of the State of Georgia.  As to the remainder of the allegations in paragraph 7, Public Resource lacks knowledge or information sufficient to form a belief as to their truth or falsity, and therefore denies them.

8.      Public Resource admits the allegation in paragraph 8.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiffs and Their Infringed Copyrighted Works

9.      Public Resource admits the allegations in the first two sentences of paragraph 9.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 9 and therefore denies them.

10.     Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 10 and therefore denies them.

143

11.    Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 11 and therefore denies them.

12.    Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 12 and therefore denies them.

13.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by copyright or otherwise owned by the State of Georgia, and thus denies that Plaintiff's "Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 13 and therefore denies them. Public Resource denies the allegations in the second, third and sixth sentence of paragraph 13, all of which are legal conclusions to which no response is legally required.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of paragraph 13 and therefore denies them.

14.    Public Resource admits that Plaintiff does not assert copyright in the O.C.G.A. statutory text itself because the laws of Georgia are and should be free to

the public.  Public Resource lacks sufficient information to admit or deny the

remaining allegations in paragraph 14 and therefore denies them.

### Defendant's Copying and Distribution of Plaintiffs' Copyrighted Annotations

15.    Public Resource admits it has copied at least 140 different

volumes/supplements containing the O.C.G.A. and that each of these works has

been posted by it on at least one of its websites and is available to the public for

downloading, viewing and printing, and that the electronic nature of these

documents and their availability on the Internet, magnifies the ease and speed with

which they may be copied and distributed to others.  Public Resource denies that

judicial summaries, notes and other components of the O.C.G.A. are protected by a

copyright owned by the State of Georgia, and thus denies that "O.C.G.A.

Copyrighted Annotations" is an accurate description of what was copied and

distributed.

16.    Public Resource admits that it has copied the O.C.G.A. prior to

posting it on its website. Public Resource denies that judicial summaries, notes and

other components of the O.C.G.A. are protected by a copyright owned by the State

of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an

accurate description of what was copied and distributed. Public Resource denies

the remaining allegations in paragraph 16.

LEGAL02/35827060v1

17.    Public Resource admits that it has distributed/uploaded the entire O.C.G.A. to the website www.archive.org ("Internet Archive website").  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource admits that it has labeled all the works with the "CC0 1.0 Universal license" which indicates that members of the public may "copy, modify, distribute and perform the work."  Public Resource admits that individual volumes of the O.C.G.A. have been viewed or downloaded on the Internet Archive website thousands of times. Public Resource denies the remaining allegations in paragraph 17.

18.    Public Resource admits that it has uploaded 52 volumes of the 2015 edition of the O.C.G.A on at least one of its websites and is available to members of the public for downloading, viewing, and printing.  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "2015 O.C.G.A. Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource denies the remaining allegations in paragraph 18.

19.     Public Resource admits that in January of 2014, Carl Malamud, its founder and president, testified before the U.S. House of Representatives, House Judiciary Committee, to advance an amendment to the U.S. Copyright Act making state and local official legal documents uncopyrightable for reasons of public policy.  Public Resource admits that no such amendment has been adopted by Congress.  Public Resource admits that Carl Malamud has not been nominated for the office of United States Public Printer.  Public Resource denies the remaining allegations of paragraph 19.

20.     Public Resource admits that Carl Malamud, its founder and president, made the statements attributed to him in Exhibit 2, an article published in Columbia Journalism Review.  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource denies the remaining allegations of paragraph 20.

21.     Public Resource admits to the copying and distribution of the entire O.C.G.A. on its website at htpps://law.resource.org. Public Resource vehemently denies the bizarre, defamatory and gratuitous allegation that it has a "strategy of mass publication terrorism."  Public Resource denies that judicial summaries, notes

LEGAL02/35827060v1

and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource admits that it posted on its website and delivered to Plaintiff a Proclamation of Promulgation stating that its deliberate copying and distribution of the O.C.G.A. would be greatly expanded in 2014.  Public Resource admits that it instituted a public funding campaign on the website www.indiegogo.com to support its continued copying and distribution of the O.C.G.A. and raised approximately $3000.00.  Public Resource denies the remaining allegations of paragraph 21.

22.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. published by the Georgia Code Revision Commission are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource otherwise admits the remaining allegations in paragraph 22.

23.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate

8

description of what was copied and distributed. Public Resource otherwise admits the remaining allegations in paragraph 23.

24.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.   Public Resource otherwise admits the remaining allegations in paragraph 24.

## CLAIMS FOR RELIEF

## FIRST CLAIM

25.    Public Resource's responses to paragraphs 1 through 24 above are incorporated by reference as if set forth fully in this paragraph.

26.    Public Resource denies the allegations in paragraph 26.

27.    Public Resource denies the allegations in paragraph 27.

28.    Public Resource denies the allegations in paragraph 28.

29.    Public Resource denies the allegations in paragraph 29.

30.    Public Resource denies the allegations in paragraph 30.

## SECOND CLAIM

31.    Public Resources responses to paragraphs 1 through 24 above are incorporated by reference as if set forth fully in this paragraph.

LEGAL02/35827060v1

149

32.    Public Resource denies the allegations in paragraph 32.

33.    Public Resource denies the allegations in paragraph 33.

34.    Public Resource denies the allegations in paragraph 34.

35.    Public Resource denies the allegations in paragraph 35.

36.    Public Resource denies the allegations in paragraph 36.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The complaint and each cause of action alleged fails to allege facts sufficient to state a cause of action.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has no copyrights in works that government entities have enacted as law. The O.C.G.A. including annotations, regardless of how they were authored, is the law of Georgia, and the law should be free to the public. As such, the O.C.G.A. is not copyrightable subject matter and is in the public domain.

### THIRD AFFIRMATIVE DEFENSE

Lack of ownership of the asserted copyrights bars Plaintiff's copyright infringement claims.

### FOURTH AFFIRMATIVE DEFENSE

The fair use doctrine bars Plaintiff's claims.

### FIFTH AFFIRMATIVE DEFENSE

10

Plaintiff's failure obtain a registration from the U.S. Copyright Office for the allegedly infringed material prior to filing suit bars Plaintiff's claims.

### SIXTH AFFIRMATIVE DEFENSE

Failure to comply with formalities required under the Copyright Act bars Plaintiff's claims.

### SEVENTH AFFIRMATIVE DEFENSE

The doctrine of copyright misuse bars Plaintiff's claims.

### EIGHTH AFFIRMATIVE DEFENSE

The equitable doctrine of waiver bars Plaintiff's claims.

### NINTH AFFIRMATIVE DEFENSE

Lack of irreparable injury bars Plaintiff's demand for an injunction.

### TENTH AFFIRMATIVE DEFENSE

An injunction would be inimical to the public interest, and thus the public interest bars Plaintiff's demand for an injunction.

LEGAL02/35827060v1

## COUNTERCLAIM FOR DECLARATORY RELIEF

Public Resource.Org, Inc. ("Public Resource") alleges the following against Plaintiff-Counterclaim Defendant Code Revision Commission:

## NATURE OF THE ACTION

1.      Public Resource seeks a declaratory judgment that its copying and distributing the text of the Official Code of Georgia Annotated ("O.C.G.A.") do not infringe any copyright because laws enacted by government entities such as the State of Georgia Legislature are not copyrightable subject matter and are in the public domain.

## THE PARTIES

2.      Public Resource is a California nonprofit corporation with its principal place of business at 1005 Gravenstein Highway North, Sebastopol, California 95472.  Its mission is to improve public access to government records and the law.

3.      As part of its mission to protect and promote the right of the public to know and speak the laws that govern it, Public Resource has undertaken to make certain edicts of government widely available to the public on a noncommercial basis.

12

152

4.      Counterclaim-defendant Georgia Code Revision Commission purports to act on behalf of and for the benefit of the General Assembly of Georgia and the State of Georgia.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the counterclaim pursuant to 17 U.S.C. § 101 et seq. (the Copyright Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (exclusive federal copyright jurisdiction); and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

6.      This Court has personal jurisdiction over the Code Revision Commission because the Commission resides, may be found in, or transacts business in this District.

7.      This Court also has personal jurisdiction over the Code Revision Commission because it submitted to jurisdiction for purposes of this Counterclaim by filing the underlying suit against Public Resource in this District.

8.      To the extent that Code Revision Commission had sovereign immunity against suit as an arm of the State of Georgia, it waived such immunity by filing the underlying suit against Public Resource in this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Commission may be found in this District and transacts business in this District

LEGAL02/35827060v1

and because a substantial part of the events giving rise to this counterclaim, including the filing of the underlying lawsuit, occurred in this District.

**<u>FACTS</u>**

10.    Carl Malamud founded Public Resource in 2007 and serves as its president.  While the Code Revision Commission falsely (and offensively) alleges that he practices a "strategy of terrorism," Mr. Malamud is recognized by government officials and others for his advocacy, over thirty years, for public access to sources of law and for privacy rights.  Among his notable successes was helping to persuade the Securities and Exchange Commission to make EDGAR, its database of corporate filings, available to the public free of charge.

11.    In 1992, Mr. Malamud played a leadership role in the deliberations of the Internet Engineering Task Force ("IETF") on questions of governance of the Internet Standards process.  In 2004, he served as a consultant to the IETF and the Internet Architecture Board on questions of strategic direction and governance.  He is the author or co-author of six Requests for Comments ("RFCs") and several Internet-Drafts, technical memoranda on Internet architecture published by the IETF.  The IETF has designated some of his RFCs as Internet Standards and two more as Proposed Standards.

LEGAL02/35827060v1

12.    Mr. Malamud has also served as the Founding Chairman of the Board of Directors of the Internet Systems Consortium and the Internet Multicasting Service.  The non-profit Internet Systems Consortium operates a key piece of Internet infrastructure, the "F" root Domain Name Server and is responsible for producing the open source software "BIND," which is considered the standard Domain Name Server software.  The non-profit Internet Multicasting Service operated the first radio station on the Internet, was responsible for placing the SEC EDGAR and US Patent databases on the Internet for the first time, and ran the Internet 1996 World Exposition, a world's fair for the Internet which received the endorsement of 12 heads of state including Presidents Clinton and Yeltsin and participation from 70 countries.  Mr. Malamud's book on the Internet 1996 World Exposition was published by MIT Press in 1997 and included a foreword from His Holiness, the Dalai Lama.

13.    In a letter dated July 16, 2008, the Judicial Conference of the United States recognized Mr. Malamud's work on the subject of privacy violations in the dockets of the U.S. District Courts.  A copy of this letter is attached as Exhibit A and also may be viewed at https://public.resource.org/scribd/7512576.pdf. Also in 2008, he advised the Federal Trade Commission and the Office of the Inspector General, U.S. Department of Defense, on the appearance of Social Security

15

Numbers in the Congressional Record and private databases.  Also in 2008, he served as an advisor to the Presidential Transition Team on Federal Register issues, an effort that led to fundamental changes in the mechanics of distribution of the Official Journals of Government.

14.     In 2009, Carl Malamud was considered by the Office of Presidential Personnel for the position of Public Printer of the United States.

15.     On December 16, 2009, Mr. Malamud testified before the U.S. House of Representatives Oversight Committee in a hearing about the strategic direction of the National Archives and Records Administration, the parent entity of the Office of the Federal Register.   Mr. Malamud's testimony may be viewed at http://www.archives.gov/era/acera/pdf/malamud-testimony.pdf.

16.     In 2007 and 2011, Mr. Malamud submitted reports to the Speaker of the U.S. House of Representatives about the accessibility and preservation of video used in Congressional hearings.  On January 5, 2011, the Speaker of the House publicly thanked him for those efforts.  Speaker Boehner's letter to Mr. Malamud is attached as Exhibit B and also may be viewed at https://law.resource.org/rfcs/gov.house.20110105.pdf.  At Speaker Boehner's request, Mr. Malamud worked with Chairman Darrell Issa of the Committee on Oversight and Government Reform and placed online over 14,000 hours of video

16

from Congressional hearings that had not been previously available.  Mr. Malamud also worked with the Committee staff to add closed-captioning to House Oversight hearings, the first time congressional hearings were available for people with hearing impairments.

17.    From 2008 to 2015, Public Resource processed over 8 million Form 990 reports of Exempt Organizations it purchased from the Internal Revenue Service and made these reports available on the Internet.  Public Resource identified a large number of privacy violations, such as Social Security Numbers, in these forms. Public Resource's effort resulted in a change in the Internal Revenue Manual to allow the IRS to better redact and protect personal information released by the government.  Public Resource also successfully brought an action under the Freedom of Information Act to compel release of machine-processable (e-filed) versions of Exempt Organization returns, an effort that led to a 2015 decision by the IRS that this information will be released in bulk starting in 2016. The action was docket 3:13-cv-02789 in the Northern District of California before the Hon. William H. Orrick.

18.    On December 12, 2012, Mr. Malamud was appointed as a member of the Administrative Conference of the United States, a federal agency that "promotes improvements in the efficiency, adequacy, and fairness of the

LEGAL02/35827060v1

procedures by which federal agencies conduct regulatory programs, administer

grants and benefits, and perform related governmental functions."  Mr. Malamud

was a member of the committee that held hearings and drafted ACUS

Recommendation 2011-5, "Incorporation by Reference." Mr. Malamud also was

one of the signatories of a petition to the Office of the Federal Register that led to a

rulemaking procedure that was initiated in 78 Federal Register 60784 and Federal

Docket OFR-2010-0001.  This led to a change in the procedures specified by

incorporation by reference in 1 CFR Part 51 in a final rule that was published

November 7, 2014, in 79 FR 66267.

19.    On January 14, 2014, Mr. Malamud testified before the U.S. House of

Representatives Judiciary Committee on the Scope of Copyright Protection and

submitted a petition from 115 law professors and librarians that proposed the

following amendment to the Copyright Act to reinforce longstanding public policy

and judicial opinions making state and local official legal documents

uncopyrightable for reasons of public policy:

> Edicts of government, such as judicial opinions, administrative
> rulings, legislative enactments, public ordinances, and similar official
> legal documents are not copyrightable for reasons of public policy.
> This applies to such works whether they are Federal, State, or local as
> well as to those of foreign governments.

18

20.    This language comes directly from Section 206.01, Compendium of Office Practices II, U.S. Copyright Office (1984). It reflects clear and established Supreme Court precedent on the matter in cases such as *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834) and *Banks v. Manchester*, 128 U.S. 244 (1888). The law belongs to the people, who should be free to read, know, and speak the laws by which they choose to govern themselves.

21.    To accomplish its mission, Public Resource acquires copies of government records, including legal decisions, tax filings, statutes and regulations, and posts them online in easily accessible formats that make them more useful to readers, entirely free of charge.

22.    Public Resource operates the websites public.resource.org, law.resource.org, house.resource.org, bulk.resource.org, yeswescan.org and others.

23.    Public Resource also operates a program that helps the public access over 6,000 U.S. Government-produced videos (such as training and historical films), called FedFlix, which Public Resource originally developed in a joint venture with the National Technical Information Service and subsequently in cooperation with the Archivist of the United States.  FedFlix content has been viewed on YouTube.com more than thirty-eight million times, and all the content

LEGAL02/35827060v1

is also available on the Internet Archive.  The YouTube channel may be found at

https://www.youtube.com/user/PublicResourceOrg.

24.    Public Resource reformats some of the laws it posts, in order to make

them easier to find, more useful and more accessible to the public.

25.    This reformatting includes putting some codes into standard Hypertext

Markup Language (HTML), converting graphics into the standard Scalable Vector

Graphics (SVG) format, and converting mathematical formulas into the standard

Mathematical Markup (MathML) language, all of which are open standards

supported by modern web browsers

26.    These steps make the codes, including the diagrams and formulae they

contain, viewable with many kinds of computer hardware and software, more

accessible to people with disabilities, and easier to translate and annotate.

27.    Public Resource applies rigorous quality control and proofreading

when it reformats codes, including the O.C.G.A. at issue in this case.

28.    The growth of the Internet provides a tremendous opportunity for

government to inform its citizens in a broad and timely manner about the laws they

must follow in carrying out their daily activities.  It also allows business

enterprises, university professors and students, non-profits and citizens to better

organize and use this information.

LEGAL02/35827060v1

29.    Public Resource maintains an agent, registered with the U.S. Copyright Office, to receive notifications of claims of copyright infringement, pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(2).  Public Resource provides contact information for that agent at https://public.resource.org/copyright_policy.html.

30.    Public Resource does not sell any copies of the laws to which it provides access or charge money for such access.

31.    Like many charities, Public Resource offers for sale items bearing its logo, such as stickers, T-shirts and books by its founder.  Total revenue from sales of these products since Public Resource's founding has amounted to less than $100.  Other than sales of such items, all of Public Resource's funding comes from charitable donations.  No text or links soliciting donations appear on pages where codes or laws are displayed within Public Resource's websites.

32.    The State of Georgia enacts and promulgates the laws of the state through its legislature.  The state laws are provided in Code sections.  Periodically, the Georgia General Assembly ("Legislature") revises, modifies and amends its laws through supplemental laws and amendments.  Every single bill introduced in the Georgia Legislature begins with the incantation in the form: "An Act … To amend Article [3] of Chapter [11] of Title [16] of the Official Code of Georgia

LEGAL02/35827060v1

Annotated." (Numbering of bill relating to invasions of privacy supplied as an

example).  http://www.legis.ga.gov/Legislation/20072008/69691.pdf

33.    The Legislature is assisted by Plaintiff-Counterclaim Defendant in

publishing the Georgia state laws.  Plaintiff-Counterclaim Defendant does not

assert copyright in the O.C.G.A. statutory text because it recognizes that the laws

of Georgia are not copyrightable subject matter and should be free to the public.

34.    Plaintiff-Counterclaim Defendant, however, claims copyright and

asserts copyright in additions to the statutory text in the O.C.G.A, allegedly made

by Matthew Bender and Company, a member of the LexisNexis Group

("Lexis/Nexis"), a division of Reed Elsevier Properties, Inc.  These include single-

paragraph summaries of judicial decisions interpreting sections of the Code, which

are derivative works of the judicial decisions themselves, which are not

copyrightable subject matter.  They also include "notes and other original and

creative works added," allegedly by LexisNexis, "to the Georgia statutory text."

They include summaries of Opinions of the Attorney General of Georgia and

summaries of research references related to the O.C.G.A., cross references,

Editor's notes, and Code Commission Notes.  The annotations include notice that

"The Official Code publication controls over unofficial compilations" and that

"[a]ttorneys who cite unofficial publications …do so at their peril."  O.C.G.A.

22

Annotations 1-1-1 and 1-1-10 are attached as Exhibits C and D and can also be viewed at line at https://archive.org/stream/govlawgacode20003#page/2/mode/2up.

35.    Plaintiff-Counterclaim Defendant has alleged that the Code Publishing Contract between LexisNexis and the State of Georgia requires that LexisNexis publish on the Internet, free of charge, the statutory text of the O.C.G.A., and that these "free" Code publications are accessible.

36.    To access the O.C.G.A. via the website link found on the State of Georgia website, www.legis.ga.gov, one must accept the terms of use for the LexisNexis site that govern use of all areas of LexisNexis, ("LexisNexis Terms of Use") even though the Georgia site states that the terms and conditions do not apply to the statutory text and numbering. These terms and conditions are complicated and onerous.  For example, paragraph 22 of the LexisNexis Terms of Use states "Governing Law and Jurisdiction.  The Terms of Use are governed by and construed in accordance with the laws of the State of New York and any action arising out of or relating to these terms shall be filed only in state or federal courts located in New York and you hereby consent to and submit to the personal jurisdiction of such courts for the purpose of litigating any such action."  The LexisNexis Terms of Use also purport to prohibit "public or nonprofit use."  A copy of these terms of use is attached as Exhibit E.

LEGAL02/35827060v1

37.    The Georgia Code available "free" on the LexisNexis site does not contain the Annotations, such as the Judicial Summaries, Code Revision Commission Notes, and Attorney General Opinions, and therefore, by definition, is not the "Official" Code of Georgia.

38.    Until at least May 28, 2014, the notice displayed before users could access the "free" online publication included a banner page that the user had to acknowledge before access was granted.  That banner page noted clearly that only the "latest print version of the O.C.G.A. is the authoritative version."  A true copy of this banner page is provided as Exhibit F and can be viewed at:

https://web.archive.org/web20140528092032/http://www.lexisnexis.com/hottopics/gacode/layout.htm].

39.    A marketing page for the print version of the O.C.G.A. stresses that the print version is the only official version of the Official Code of Georgia Annotated.  The word "Official" is emphasized throughout this marketing page, including boldface and underlining.  A true copy of this page is provided as Exhibit G and can also be viewed at:

http://www.lexisnexis.com/store/catalog/booktemplate/productdetail.jsp?catId=prod15710352&prodId=6647]

40.    In addition to onerous terms of use and lack of content, the website which the State of Georgia offers as the only place citizens can and should view the O.C.G.A. on the Internet suffers from numerous technical deficiencies.  For example, it is impossible to "bookmark" a section of the code, requiring a user to navigate through each of the volumes, sections and subsections by clicking little boxes before being able to view a relevant paragraph of text.  The lack of a bookmark and the terms of use prohibition against copying means that a citizen cannot readily communicate a section of the code to another citizen.  The system also suffers from numerous technical and security errors in the HTML and other underlying code, meaning that the pages will display differently or not at all on different kinds of web browsers. Finally, the site is highly inaccessible to those that are visually impaired.

## **COUNT I**

[Declaratory Relief Pursuant to 28 U.S.C. § 2201, et seq. (Declaratory Judgment Act) and the Copyright Act (U.S.C. Title 17)].

41.    Public Resource incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

42.    The people are the authors of the law, regardless of who first pens the words that later become law through enactment by a legislature or public agency.

LEGAL02/35827060v1

43.    The principle that the law must be public and available to citizens to read and speak has its roots in the concept of the rule of law itself.

44.    The legal principle that ignorance of the law is no defense presumes that all citizens have access to the law.

45.    The First, Fifth and Fourteenth Amendments to the Constitution require that all people have the power to read, speak and disseminate the law.

46.    Laws and regulations are in the public domain and not subject to copyright.

47.    Law and regulations do not lose their public domain status and become subject to copyright because they were drafted by a private party as "works for hire."

48.    Laws and regulations do not lose their public domain status and become subject to copyright because they incorporate material that private parties have drafted or prepared.

49.    There is only one way to express a particular law fully and authoritatively, namely with explicit reference to any matters that the law incorporates into itself.

LEGAL02/35827060v1

50.    Once the Legislature incorporates material into the official version of the Code, use of that material by the public or private parties is lawful through the doctrine of merger.

51.    Public Resource's purpose in using the O.C.G.A. is to facilitate scholarship, criticism and analysis of the Official Code, to inform the public about the laws that govern it, for educational purposes and to encourage public engagement with the law.

52.    Upon their incorporation into law, incorporated expressions are factual as statements of the law.  Public Resource publishes the O.C.G.A. in its entirety.  Scholarship, analysis and other public engagement with the law is not possible without access to the complete Official Code, including summaries of judicial opinions and attorney generals' opinions. Therefore, Public Resource publishes as much of the O.C.G.A. as is necessary to fulfill its purpose.

53.    Even if copyright law protected authorship by private parties after it is incorporated into law, which it does not, Public Resource's use of the complete O.C.G.A. is fair use and therefore not copyright infringement.

54.    There is a real and actual controversy between Public Resource and the Code Revision Commission regarding whether Public Resource's copying,

LEGAL02/35827060v1

publication and reformatting of the O.C.G.A. constitutes infringement of any valid copyright owned by the State of Georgia.

55.    The Code Revision Commission is seeking an injunction against Public Resource that would hinder Public Resource's activities in furtherance of its mission to make the law accessible to all.

56.    The Georgia legislature regularly enacts amendments of the O.C.G.A, not of unofficial publications, and will likely continue to do so.

57.    The Code Revision Commission is likely to assert copyright in the so-called Copyrighted Annotations in future editions of the O.C.G.A. to restrict the public's expression of and distribution of, and access to, those codes.  It would then have the power to inhibit public discourse about and public use of the official code.

58.    The controversy between Public Resource and the Code Revision Commission is thus real and substantial and demands specific relief through a conclusive judicial decree.

59.    Public Resource is entitled to a declaratory judgment that its copying, posting and reformatting of the O.C.G.A., including the annotations, does not infringe any copyright rights owned by the States of Georgia.

LEGAL02/35827060v1

WHEREFORE, Defendant prays:

1.    That the Court denies Plaintiff the relief sought in the Complaint;

2.    That the Court adjudge and decree that the State of Georgia has no valid copyright in any portion of the O.C.G.A. because the O.C.G.A. is in the public domain;

3.    That Public Resource's acts of copying, posting and distributing the O.C.G.A. does not infringe, directly or indirectly, any copyright;

4.    That Public Resource is entitled to its reasonable attorney fees, costs and expenses in this action;

5.    For such other relief as the Court deems just.

By:   /s/ Jason D. Rosenberg
      Jason D. Rosenberg
      Georgia Bar No. 510855
      jason.rosenberg@alston.com
      ALSTON & BIRD LLP
      One Atlantic Center
      1201 West Peachtree Street
      Atlanta, GA  30309-3424
      Telephone 404-881-7461
      Fax (404) 253-8861

      Elizabeth H. Rader
      *Admitted Pro Hac Vice*
      elizabeth.rader@alston.com
      ALSTON & BIRD LLP
      950 F Street, NW
      Washington, DC 20004
      Telephone:  202-239-3008
      Fax: (202) 239-3333

      Sarah P. LaFantano
      Georgia Bar No. 734610
      sarah.lafantano@alston.com

                          29

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone (404) 881-7811
Fax (404) 881-7777

Attorneys for Defendant

LEGAL02/35827060v1

170

## CERTIFICATE OF SERVICE

I hereby certify that on Thursday, October 22, 2015, I electronically filed the

foregoing ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM OF

DEFENDANT PUBLIC.RESOURCE.ORG, INC. with the Clerk of Court using

the CM/ECF system, which will automatically send email notification of such

filing to all counsel of record in this case.

By:    /s/ Jason D. Rosenberg
       Jason D. Rosenberg
       Georgia Bar No. 510855
       jason.rosenberg@alston.com
       ALSTON & BIRD LLP
       One Atlantic Center
       1201 West Peachtree Street
       Atlanta, GA  30309-3424
       Telephone 404-881-7461
       Fax (404) 253-8861

LEGAL02/35827060v1

# TAB 16-7

# EXHIBIT G

172

**Close**

 LexisNexis·  PRINT PAGE

### Official Code of Georgia Annotated

| Format | ISBN | Your Price |
|--------|------|------------|
| Print Book | 9780327110743 | **$378.00** |

__Description__

The *Official Code of Georgia Annotated (OCGA)* provides users with the __official__ Georgia statutes, fully annotated and including guidance from the Georgia Code Commission. If you live or work in Georgia, the *OCGA* is the essential reference you need to guide you quickly and efficiently in understanding the Georgia statutory scheme. Key features include:

• 48 volumes plus current cumulative supplement including three index volumes
• Official state statutes, fully annotated with explanatory notes
• Comprehensive index, replaced annually
• Fully annotated cumulative supplements published annually within 75 days of receipt of all acts from the legislature

The *Official Code of Georgia's* copious annotations help you expand your research and include:

• **Decisions of the U.S. Supreme Court, the Supreme Court of Georgia, the Courts of Appeals of Georgia, and all federal cases arising in Georgia**
• **Opinions of the Georgia Attorney General**
• **State law reviews**
• *ALR*
• *American Jurisprudence*
• *American Jurisprudence, Pleading and Practice*
• *American Jurisprudence, Proof of Facts*
• *American Jurisprudence, Trials*
• *Corpus Juris Secundum*
• *Uniform Laws Annotated*
• **Cross reference notes to statutes, rules, and regulations including the** *United States Code* **and the** *Official Compilation of the Rules and Regulations of the State of Georgia*
• **All case citations are** *Shepardized*® **for accuracy and relevant subsequent history**

The fully annotated Georgia Rules of Court is available separately in a convenient softbound format at an affordable price, as well as on CD-ROM and online at __lexis.com__. *Georgia Advance Annotated Service (AAS)*, published quarterly, and the *Citator*, providing comprehensive citations, are also available separately.

*Take advantage of this special low price for customers residing in Georgia, or call 1-800-223-1940 for out-of-state pricing.*

__Table of Contents__

Title 1. General Provisions
Title 2. Agriculture
Title 3. Alcoholic Beverages
Title 4. Animals
Title 5. Appeal and Error
Title 6. Aviation
Title 7. Banking and Finance
Title 8. Buildings and Housing
Title 9. Civil Practice
Title 10. Commerce and Trade
Title 11. Commercial Code
Title 12. Conservation and Natural Resources
Title 13. Contracts
Title 14. Corporations, Partnerships, and Associations
Title 15. Courts
Title 16. Crimes and Offenses

173

Title 17. Criminal Procedure
Title 18. Debtor and Creditor
Title 19. Domestic Relations
Title 20. Education
Title 21. Elections
Title 22. Eminent Domain
Title 23. Equity
Title 24. Evidence
Title 25. Fire Protection and Safety
Title 26. Food, Drugs, and Cosmetics
Title 27. Game and Fish
Title 28. General Assembly
Title 29. Guardian and Ward
Title 30. Handicapped Persons
Title 31. Health
Title 32. Highways, Bridges, and Ferries
Title 33. Insurance
Title 34. Labor and Industrial Relations
Title 35. Law Enforcement Officers and Agencies
Title 36. Local Government
Title 37. Mental Health
Title 38. Military, Emergency Management, and Veterans Affairs
Title 39. Minors
Title 40. Motor Vehicles and Traffic
Title 41. Nuisances
Title 42. Penal Institutions
Title 43. Professions and Businesses
Title 44. Property
Title 45. Public Officers and Employees
Title 46. Public Utilities and Public Transportation
Title 47. Retirement and Pensions
Title 48. Revenue and Taxation
Title 49. Social Services
Title 50. State Government
Title 51. Torts
Title 52. Waters Of The State, Ports, and Watercraft
Title 53. Wills, Trusts, and Administration Of Estates
United States Constitution
Georgia Constitution
Tables of Comparative Provisions and Laws Codified
Indexes

To order or for current pricing go to:
www.lexisnexis.com/store/us or call 1-800-223-1940

Price subject to change. Shipping, handling, and sales tax will be added where applicable. LexisNexis, the Knowledge Burst logo, and lexis.com are registered trademarks of Reed Elsevier Properties Inc., used under license. Matthew Bender is a registered trademark of Matthew Bender properties Inc. Other products or services may be trademarks or registered trademarks of their respective companies. Copyright 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved. No part of these materials including graphics or logos, may be copied, photocopied, reproduced, translated or reduced to any electronic medium or machine-readable form, in whole or in part, without specific written permission of LexisNexis. Distribution for commercial purposes is prohibited

174