NO. 17-11589

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CODE REVISION COMMISSION on behalf of and for the benefit of THE
GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA,
*Plaintiffs/appellees,*
v.
PUBLIC.RESOURCE.ORG, INC.,
*Defendant/appellant.*

On Appeal from the United States District Court
for the Northern District of Georgia

BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF GEORGIA, INC., SOUTHERN POVERTY LAW CENTER, CENTER
FOR DEMOCRACY & TECHNOLOGY, AND GEORGIA COALITION
FOR THE PEOPLE'S AGENDA

Esha Bhandari
ebhandari@aclu.org
Lee Rowland
Vera Eidelman
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
Fax: 212-549-2654

## CERTIFICATE OF INTERESTED PERSONS

### Code Revision Commission et al. v. Public.Resource.Org, Inc.
### No. 17-11589

*Amici Curiae* file this Certificate of Interested Persons and Corporate Disclosure Statement, as required by Eleventh Circuit Rules 26.1-1, 28-1(b), and 29-2.

American Civil Liberties Union Foundation (*Amicus curiae*)

American Civil Liberties Union Foundation of Georgia, Inc. (*Amicus curiae*)

Bhandari, Esha (Counsel for *Amici curiae*)

Center for Democracy & Technology (*Amicus curiae*)

Eidelman, Vera (Counsel for *Amici curiae*)

Georgia Coalition for the People's Agenda (*Amicus curiae*)

Rowland, Lee (Counsel for *Amici curiae*)

Southern Poverty Law Center (*Amicus curiae*)

Pursuant to Eleventh Circuit Rule 26.1-2(b), this Certificate includes only persons and entities omitted from the Certificate contained in Appellants' Initial Brief.

ii

## CORPORATE DISCLOSURE STATEMENT

*Amici Curiae* American Civil Liberties Union Foundation, American Civil Liberties Union Foundation of Georgia, Inc., Southern Poverty Law Center, Center for Democracy & Technology, and Georgia Coalition for the People's Agenda are non-profit entities that do not have parent corporations. No publicly held corporation owns 10 percent or more of any stake or stock in *amici curiae*.

/s/ *Esha Bhandari*

Esha Bhandari
ebhandari@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
Fax: 212-549-2654

## STATEMENT REGARDING ORAL ARGUMENT

*Amici curiae* submit that oral argument is appropriate in this case because the copyright question on appeal is an issue of first impression in this Circuit. *Amici curiae* respectfully seek leave to participate in oral argument on the constitutional implications of the district court's erroneous ruling because their participation may be helpful to the Court in addressing the novel and important issues presented by this appeal. *See* Fed. R. App. P. 29(a)(8). Appellant consents and joins in our request.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... ii

CORPORATE DISCLOSURE STATEMENT .................................................. iii

STATEMENT REGARDING ORAL ARGUMENT .............................................. iv

TABLE OF AUTHORITIES ......................................................................... vi

INTEREST OF AMICI CURIAE .....................................................................1

STATEMENT OF THE ISSUES .......................................................................4

SUMMARY OF ARGUMENT ........................................................................4

ARGUMENT ..............................................................................................6

   I.  The O.C.G.A. Constitutes the Official Law of Georgia ....................................6

      A.  All Three Branches of Georgia's Government Hold Out the O.C.G.A. as the State's Law .............................................................................6

      B.  The Differences Between the Unannotated and Annotated Codes Can Have a Real Impact on People's Lives ............................................10

   II.  As the State's Official Law, the O.C.G.A. Cannot Be Copyrighted ...............13

      A.  Official State Law Is Not Copyrightable ..............................................13

      B.  Granting Copyright in the O.C.G.A. Would Violate the Public's First Amendment Right of Access ......................................................16

      C.  Granting Copyright in the O.C.G.A. Would Violate Due Process .........................18

CONCLUSION .........................................................................................20

CERTIFICATE OF COMPLIANCE ...............................................................21

CERTIFICATE OF SERVICE ........................................................................22

# TABLE OF AUTHORITIES

## Cases

*Banks v. Manchester*, 128 U.S. 244 (1888) ................................................... 13, 14

*Building Officials & Code Adm. v. Code Technology*,
    628 F.2d 730 (1st Cir. 1980) ............................................................ 14, 15, 18

*Connally v. Gen. Constr. Co*., 269 U.S. 385 (1926) ......................................... 18

*Cox v. Fowler*, 279 Ga. 501 (2005) .................................................................... 9

*FCC v. Fox Television Stations, Inc*., 132 S. Ct. 2307 (2012) .......................... 18

*G.I.R. Sys., Inc. v. Lance,* 219 Ga. App. 829 (1995) .......................................... 9

*Gable v. Jenkins*, 309 F. Supp. 998 (N.D. Ga. 1969), *aff'd*,
    397 U.S. 592 (1970) ..................................................................................... 12

*Globe Newspaper Co. v. Super. Ct. for Cty. of Norfolk*,
    457 U.S. 596 (1982) ....................................................................... 16, 17, 20

*Harrison Co. v. Code Revision Comm'n*, 244 Ga. 325 (1979) .......................... 13

*Jackson v. S. Pan & Shoring Co*., 258 Ga. 401 (1988) ........................................ 9

*Marbury v. Madison*, 5 U.S. 137 (1803) ......................................................... 4, 15

*Powell v. State*, 270 Ga. 327 (1998) .................................................................. 12

*Press-Enter. Co. v. Super. Ct. of Cal. for Cty. of Riverside*,
    478 U.S. 1 (1986) ......................................................................................... 17

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ......................... 16

*Roth v. United States,* 354 U.S. 476 (1957) ...................................................... 16

*Serv. Corp. Int'l v. H.M. Patterson & Son, Inc*., 263 Ga. 412 (1993) ................. 9

*Shorter Coll. v. Baptist Convention of Georgia,* 279 Ga. 466 (2005) ................. 9

*State of Ga. v. Harrison Co.*, 548 F. Supp. 110 (N.D. Ga. 1982)................. 7, 13

*United States v. Ignasiak*, 667 F.3d 1217 (11th Cir. 2012) .............................. 17

*Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791 (5th Cir. 2002)... 13, 14, 15, 19

*Watts v. U.S.*, 394 U.S. 705 (1969) ................................................................. 16

*Wheaton v. Peters,* 33 U.S. 591 (1834) ........................................... 4, 13, 14, 16

## Other Authorities

Georgia Dep't of Law Consumer Protection Unit, *Statutes We Enforce*,
   http://consumer.georgia.gov/about-us/statutes-we-enforce ............................8

Georgia Dep't of Veterans Service, *O.C.G.A. References*,
   https://veterans.georgia.gov/book-page/ocga-references ................................8

LexisNexis Store, http://www.lexisnexis.com/store/catalog/booktemplate/
   productdetail.jsp?prodId=6647 ..................................................................... 10

Ga. Att'y Gen. Op. No. 97-24 (Aug. 11, 1997),
   http://law.ga.gov/opinion/97-24-0 ..................................................................8

The Bluebook: A Uniform System of Citation T.1
   (Columbia Law Review Ass'n et al. Eds, 20th ed. 2015)............................... 10

Westlaw Store, http://legalsolutions.thomsonreuters.com/law-products/Court-
   Rules/Westsreg-Code-of-Georgia-Annotated/p/100027635 .......................... 10

## Statutes and Rules

17 U.S.C. § 105 .................................................................................................. 15

17 U.S.C. § 201 ....................................................................................................8

2014 Ga. Laws § 866 .......................................................................................... 11

2015 Ga. Laws § 54 ............................................................................................ 11

Ga. Code Ann. (Unannotated) § 16-12-80.................................................. 12, 19

Ga. Code Ann. (Unannotated) § 16-6-2..................................................... 12, 19

Ga. Code Ann. § 1-1-1 ..................................................................................... 7, 11

Ga. Code Ann. § 1-1-7 ........................................................................................ 11

U.S. Const. art. 1, § 8 ......................................................................................... 14

# INTEREST OF AMICI CURIAE[1]

The American Civil Liberties Union Foundation ("ACLU") is a nationwide nonpartisan organization of more than 1.2 million members, dedicated to protecting the fundamental liberties and basic civil rights guaranteed by state and federal constitutions. Founded in 1920, the ACLU has vigorously defended the freedoms enshrined in the First Amendment for nearly a century in state and federal courts across the country. As part of this work, the ACLU has been at the forefront of efforts to ensure that government policy and practice remain accountable to and accessible by the people. The American Civil Liberties Union Foundation of Georgia, Inc., a state affiliate of the national ACLU, is devoted to advocacy on behalf of more than 20,000 statewide members and supporters.

The Southern Poverty Law Center ("SPLC") has provided *pro bono* civil rights representation to low income persons in the Southeast since 1971, with particular focus on combating unlawful discrimination. SPLC has litigated numerous cases to enforce equal access to essential services, including access to justice for people living in poverty, including litigating against debtors prisons in cases such as *Foster v. Alexander City*, No. 15-647 (M.D. Ala.); protecting access

---

[1] This brief is being tendered with a motion for leave to file this brief. Pursuant to the Federal Rules of Appellate Procedure 29(4)(E), counsel for *amici curiae* states that no counsel for a party authored this brief in whole or in part, and no person other than *amici curiae*, their members, or their counsel made a monetary contribution to its preparation or submission.

to Medicaid in *Wilson v. Gordon*, No. 14-1492 (M.D. Tenn.); and advocating for an end to discriminatory wealth-based bail practices in *Edwards v. Cofield*, No. 17-321 (M.D. Ala.). SPLC's commitment to fighting discrimination in Georgia has resulted in litigation challenging the racial profiling of immigrants in *GLAHR v. Deal*, No. 11-1804 (N.D. Ga.) and a challenge to the discriminatory denial of driver's licenses to certain immigrants in *Das v. Brantley*, No. 16-1367 (N.D. Ga.). SPLC has a strong interest in the defeat of state efforts to deny access to justice.

The Center for Democracy & Technology ("CDT") is a nonprofit public interest organization working to ensure that the human rights we enjoy in the physical world are realized online, and that technology serves as an empowering force for people worldwide. Integral to this work is CDT's representation of the public interest in the creation of an open, innovative, and decentralized Internet that promotes the constitutional and democratic values of free expression, privacy, and individual liberty. CDT advocates in support of laws and policies to expand access to information and promote the vibrant exchange of ideas. Ensuring public access to information is fundamental to CDT's work and the preservation of constitutional principles.

Georgia Coalition for the People's Agenda ("GCPA") is dedicated to increasing civic engagement and voter participation in Black and underserved communities throughout the state of Georgia as part of a nationwide effort. The

2

Coalition strives to encourage full participation in a barrier-free democracy and envisions a nation in which all people, from youth to seniors, have the tools to participate fully in the democratic process at the local, state, national and global levels. The Coalition seeks to promote greater social and economic justice to enhance the quality of African American life.

The ACLU, the ACLU of Georgia, SPLC, CDT, and GCPA are well positioned to submit an *amicus* brief in this case. They have long been committed to defending individuals' constitutional rights of access, freedom of speech, and due process.

## STATEMENT OF THE ISSUES

Whether the State of Georgia may use federal copyright law to prevent the public, including those subject to criminal prosecution under the Official Code of Georgia Annotated ("O.C.G.A."), from accessing the O.C.G.A. without paying money—when the state legislature commissions, editorially controls, and endorses the O.C.G.A. as the official law of the state; when the state executive agencies enforce the O.C.G.A.; and when the state judiciary applies and interprets the O.C.G.A.

## SUMMARY OF ARGUMENT

Over two hundred years ago, the Supreme Court famously held that it is "emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). And just three decades later, the Supreme Court scoffed at the "absurd" idea that a government could copyright its laws. *Wheaton v. Peters*, 33 U.S. 591, 615–16 (1834). Our legal tradition has thus long accepted the dual precepts that "the law" reaches beyond mere statutory text to encompass judicial interpretation, and that the government may not hide that law from its people. Yet two hundred years later, the state of Georgia seeks to upend these established precedents by obscuring its official state code from the public in a cloud of expensive copyright. This Court should reject Georgia's latest attempt to charge its citizens for access to the very laws that govern them.

4

The Official Code of Georgia Annotated ("O.C.G.A.") constitutes the law of Georgia. "Official" not only in name, but also in content and function, the O.C.G.A. is the law that the state of Georgia commissions, endorses, and enforces. Georgia contracts with a private company that creates the entirety of the O.C.G.A.—including relevant case citations, evidence of legislative intent, and other annotations to the statutory text—as a work for hire that the state then owns and exercises ultimate editorial control over. In addition, the state legislature enacts the O.C.G.A. as official Georgia law, the state executive agencies enforce and execute the O.C.G.A., and the state judiciary interprets and applies the O.C.G.A. as controlling law. Critically, the state and its subdivisions routinely hold the O.C.G.A. out to the public as the official law of the land.

The only version of Georgia law that the public can access without paying money is stripped of the O.C.G.A.'s annotations and therefore fails to inform the public whether or not a particular law is enforceable, and on what terms. As a result, the unannotated code reflects a misleading and outdated version of Georgia law. Nevertheless, the State seeks to enforce a private, for-profit copyright in the O.C.G.A. If the Court accepts the State's position, accessing the law in Georgia will cost each member of the public $431.61—not including tax.

Allowing Georgia to charge people money for accessing their own laws would violate three constitutional principles. First, it would usurp ownership of the

law from its true authors: the citizens of the state. Second, it would obstruct the public's First Amendment right to access the law that governs it. Finally, it would deprive individuals of notice regarding the law to which they are subject—which would not only violate Fourteenth Amendment due process rights, but would also undermine the law's ability to serve as a guide or deterrent to public behavior.

For these reasons, the Court should find that a state's official law falls outside the bounds of copyright protection and reverse the decision below.

## ARGUMENT

All three branches of Georgia's government have held out the Official Code of Georgia ("O.C.G.A.")—and not the unannotated version—as the official law of Georgia. Thus, allowing Georgia to prevent the public from accessing the O.C.G.A. without paying money would raise serious First Amendment and Fourteenth Amendment due process concerns. For these reasons and as discussed further below, the district court's decision should be reversed.

## I.    The O.C.G.A. Constitutes the Official Law of Georgia

### A.    All Three Branches of Georgia's Government Hold Out the O.C.G.A. as the State's Law

The Official Code of Georgia Annotated is "the only official Code of Georgia." Doc. 44 at 8. All branches of Georgia government cite to the O.C.G.A. and endorse it as the law: the legislature commissions it and controls its content, the state's executive agencies enforce it, and the courts apply and interpret it.

Perhaps most importantly, anyone relying on or citing to any compilation other than the O.C.G.A. does so at her peril: In the case of any conflict, the O.C.G.A. controls. *State of Ga. v. Harrison Co.*, 548 F. Supp. 110, 115 (N.D. Ga. 1982) *vacated sub nom. State of Ga. on Behalf of Gen. Assembly of Georgia By & Through Code Revision Comm'n v. Harrison Co.*, 559 F. Supp. 37 (N.D. Ga. 1983) ("anyone citing [any other compilation of Georgia law] will do so at his peril if there is any inaccuracy in that publication or any discrepancy between" the O.C.G.A. and that compilation).

The Georgia legislature expressly enacted the O.C.G.A. as the law of Georgia on November 1, 1982, *id.* at 114, and the state holds the O.C.G.A.—complete with annotations—out as the law to the public.  Pursuant to O.C.G.A. § 1-1-1, the O.C.G.A. includes "annotations, captions, catchlines, history lines, editorial notes, cross-references, indices, title and chapter analyses, and other materials" and that full body of law is "published by authority of the state . . . and may be cited as the 'Official Code of Georgia Annotated.'"

This is by the State's design: the State enters into an agreement with a private publisher that specifically "requires the official Code"—the O.C.G.A.—"to include not only the statutory provisions, but also 'annotations . . . and other material[.]'" Doc. 44 at 3. Furthermore, the State, rather than the private publisher, exercises "the ultimate right of editorial control" (internal quotation marks

omitted) over the O.C.G.A. and, as a work for hire, the O.C.G.A. becomes state

property upon completion. *Id.*; *see also* 17 U.S.C. § 201(b). Though the State also

requires that an unannotated version of the code be made available without charge,

the State does not consider that free version—which we refer to as the

"Unannotated Code"—official law; moreover, as discussed further below, because

it is stripped of any annotations, the Unannotated Code offers only an inaccurate

and outdated representation of Georgia law.

In the executive branch, the Office of the Attorney General of Georgia cites

the O.C.G.A. as the law in its official and unofficial opinions.[2]  The Georgia

Department of Law Consumer Protection Unit, the agency tasked with protecting

Georgians from legal abuse by informing them of their rights and the law,

identifies O.C.G.A. sections as the "statutes we enforce."[3] And the Georgia

Department of Veterans similarly identifies the O.C.G.A. as the "relevant law" for

its work.[4]

With respect to the judicial branch, the state courts of Georgia treat the

O.C.G.A. as the official law of Georgia—and, thus, federal courts do as well. Not

---

[2] *See, e.g.,* Ga. Att'y Gen. Op. No. 97-24 (Aug. 11, 1997),
http://law.ga.gov/opinion/97-24-0 .

[3] Georgia Dep't of Law Consumer Protection Unit, *Statutes We Enforce*,
http://consumer.georgia.gov/about-us/statutes-we-enforce.

[4] Georgia Dep't of Veterans Service, *O.C.G.A. References*,
https://veterans.georgia.gov/book-page/ocga-references.

only do they consider it controlling law and rely on it for statutory text, but they also look to its editor's notes and comments for guidance on statutory meaning and legislative intent. *See, e.g., Shorter Coll. v. Baptist Convention of Georgia,* 279 Ga. 466, 469 (2005) (relying on comment to O.C.G.A. to determine meaning of statute); *Cox v. Fowler*, 279 Ga. 501, 502 (2005) (relying on comment to O.C.G.A. to determine "the legal effect of [a] code section"); *G.I.R. Sys., Inc. v. Lance,* 219 Ga. App. 829, 832 (1995) (relying on comment to O.C.G.A. as evidence of "the intent of the legislature"); *Serv. Corp. Int'l v. H.M. Patterson & Son, Inc*., 263 Ga. 412, 415 (1993) (relying on comment to O.C.G.A. to discern the meaning and reach of the statutory text); *Jackson v. S. Pan & Shoring Co*., 258 Ga. 401, 402 (1988) (relying on comment to O.C.G.A. to determine "[t]he express intent" of the statute).

Indeed, it is both difficult and awkward to cite to anything other than the O.C.G.A. as the source of Georgia law in court filings. Even if litigants rely on the free version of Georgia statutes, both the rules of this Court and the Bluebook Citation System require litigants to nevertheless cite to the Unannotated Code as though it were the O.C.G.A. *See* The Bluebook: A Uniform System of Citation

T.1 at 259 (Columbia Law Review Ass'n et al. Eds, 20th ed. 2015) (requiring that all citations to Georgia law read "Ga. Code Ann. § X-X-X.").[5]

Yet Georgia offers members of the public—and even litigants—no way to access the O.C.G.A. without paying money. Instead, individuals must either purchase fifty-two printed volumes each year—at a price of $431.61, not including tax[6]—or pay for a customized LexisNexis subscription in order to see the law that governs them.[7]

### B. The Differences Between the Unannotated and Annotated Codes Can Have a Real Impact on People's Lives

Georgia does not recognize the Unannotated Code as official law—and for good reason. The actual law differs dramatically from the statutory text of the Unannotated Code. Rather than offer a free substitute for the O.C.G.A., the Unannotated Code lacks the O.C.G.A.'s judicial interpretations and references to

---

[5] Per the rules, this brief cites to any statutory provision of the Georgia Code, annotated or not, as an O.C.G.A. section and indicates when the section is drawn from the Unannotated Code.

[6] This is the price of the hard-copy annotated code plus estimated domestic shipping. LexisNexis Store, http://www.lexisnexis.com/store/catalog/booktemplate/productdetail.jsp?prodId=6 647 (last visited May 24, 2017).

[7] The West Publishing Company also publishes an unofficial annotated compilation of Georgia law, but this document is not the official law of Georgia— nor is it free. Westlaw Store, http://legalsolutions.thomsonreuters.com/law-products/Court-Rules/Westsreg-Code-of-Georgia-Annotated/p/100027635 (last visited May. 24, 2017).

related common law statutes, constitutional provisions, treatises, and articles. As a result, it presents a flawed, misleading, and outdated reflection of Georgia law. As discussed further below, these differences are not merely academic, but can have a real impact on people's lives.

In failing to recognize the gravity of these differences, the District Court erred in holding that the O.C.G.A. is copyrightable because it includes annotations to the statutory text. Doc. 44 at 11–14. This conclusion reflects a misunderstanding of the breadth of what "the law" encompasses, as shown by the very three statutes that the district court concluded required this holding. *Id* at 12 – 13. Two of those statutes provide only that the O.C.G.A.'s annotations and other non-statutory materials are not Georgia's statutes. *See* Ga. Code Ann. § 1-1-1 (providing that Georgia's statues "merged with annotations . . . and other materials . . . shall be published by authority of the state . . . as the 'Official Code of Georgia Annotated.'"); 2014 Ga. Laws § 866, 2015 Ga. Laws, § 54 (providing that annotations and other materials in the O.C.G.A. are "not enacted as statutes."). But, as discussed above, "the law" embodies more than the mere text of every statute. The third statute the district court cited provides that "the descriptive headings. . . and title and chapter analyses do not constitute part of the law and shall in no manner limit or expand the construction of any Code section." Ga. Code Ann. § 1-1-7. However, the O.C.G.A.'s annotations do, in fact, constitute "the law" and

expressly "limit or expand the construction of" code sections by identifying which laws remain enforceable and under what terms.

The substantial differences between the Unannotated Code and the O.C.G.A. highlight this point. For example, a Georgian who looks to the inferior Unannotated Code will believe that there is such a thing as the "offense of sodomy" and that it can "be punished by imprisonment for not less than one nor more than 20 years." Ga. Code Ann. (Unannotated) § 16-6-2(a)(1) and (b)(1). Only by paying money for the O.C.G.A. could that Georgian learn that the statute is invalid because it "manifestly infringes upon a constitutional provision which guarantees to the citizens of Georgia the right of privacy." *Powell v. State*, 270 Ga. 327, 336 (1998) (quotation marks omitted). Similarly, a person relying on the Unannotated Code will believe that ownership of pornography is illegal, Ga. Code Ann. (Unannotated) § 16-12-80, but one who has paid for access to the O.C.G.A. will know that courts have limited the statute's text to bar such an unconstitutional result.[8] Thus, the actual law, embodied in the O.C.G.A., differs dramatically from the statutory text of the Unannotated Code. And because the State hides the official law of Georgia behind a paywall, an average Georgian is left ignorant of the true law that governs her, and that can potentially put her in jail.

---

[8] *See Gable v. Jenkins*, 309 F. Supp. 998 (N.D. Ga. 1969), *aff'd*, 397 U.S. 592 (1970) (Private possession of obscene material is protected under the First Amendment of the U.S. Constitution).

## II.    As the State's Official Law, the O.C.G.A. Cannot Be Copyrighted

### A.    Official State Law Is Not Copyrightable

From as early as 1834, the Supreme Court has held that it would be "absurd" for the government to claim copyright in its laws. *Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791, 795 n.3 (5th Cir. 2002) (en banc) (quoting *Wheaton*, 33 U.S. at 616). For just as long, the Supreme Court has recognized that "the law" encompasses significantly more than a state's statutory text. *See Banks v. Manchester*, 128 U.S. 244, 253 (1888) (holding that state judicial opinions are not copyrightable); *Wheaton*, 33 U.S. at 618 (holding that Supreme Court opinions are not copyrightable).

Nevertheless, in 2017, Georgia is attempting to claim a copyright in the state's official law. Georgia previously asserted a copyright over the statutes compiled in the O.C.G.A, and its claims failed. *State of Ga.*, 548 F. Supp. at 114 – 15; *Harrison Co. v. Code Revision Comm'n*, 244 Ga. 325, 329 (1979) ("[A] state's laws are public records open to inspection, digesting and compiling by anyone."). The State now appears to agree that the statutory text itself, as reflected in the Unannotated Code, cannot be copyrighted, but seeks a second bite at charging the public for the O.C.G.A.'s remaining content.

This attempt, too, must fail. The O.C.G.A.'s annotations include judicial opinions that the Supreme Court has squarely held are not copyrightable. *Banks*,

128 U.S. at 253; *Wheaton*, 33 U.S. at 618; *see also Building Officials & Code Adm. v. Code Technology*, 628 F.2d 730, 733 (1st Cir. 1980) (both "judicial opinions and statutes are in the public domain and are not subject to copyright.").

In addition, content that, like the remainder of the O.C.G.A.'s annotations, is authored by private organizations enters the public domain as soon as a state adopts it as official law, as Georgia has done with the O.C.G.A. *Veeck*, 293 F.3d at 796 (holding that privately-drafted building codes "cannot be copyrighted" once they become "governing law"); *Building Officials*, 628 F.2d at 736 (holding that privately-drafted building codes lose copyright protection "through adoption as state law.").[9] The Court should hold that, in choosing to require annotations in the *official* law of Georgia, the state has voluntarily deprived the O.C.G.A. of any copyrightable interest.

Accepting the State's position to the contrary would not promote the goals of copyright protection. The purpose of copyright is to promote science and the arts by granting *authors* temporary exclusive rights in their work, *see* U.S. Const. art. 1, § 8, cl. 8, but applying a conception of "authorship" to the law is an odd fit. It "ignores the democratic process," *Veeck*, 293 F.3d at 799, wherein "[t]he citizens

---

[9] If the Court declines to join the First and Fifth Circuits in holding that any content enacted into law enters the public domain and instead holds only that statutory text and judicial opinions are uncopyrightable, it should specify which pieces of the O.C.G.A.'s annotations remain subject to copyright given that holding. Otherwise, the entirety of the O.C.G.A. may be bootstrapped into speech governed by exclusive property rights.

are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public." *Building Officials*, 628 F.2d at 734; *see also Madison*, 5 U.S. at 177 (holding that judges author the final determination of "what the law is"). Accepting the State's position in this case would rob the public of ownership in, and even more troublingly access to, their work.

For this reason, state law, "whether it has its source in judicial opinions or statutes, ordinances or regulations, is not subject to federal copyright law." *Veeck*, 293 F.3d at 800; *see also* 17 U.S.C. § 105 (excluding "any work of the United States government" from copyright protection). Rather, "'the law' is in the 'public domain' for whatever use the citizens choose to make of it," whether that is "guid[ing] their actions," "influenc[ing] future legislation," or, as in Public.Resource.Org's case, "educat[ing]" one another. *Veeck*, 293 F.3d at 799.

Public.Resource.Org's stated goal is to "Mak[e] Government Information More Accessible." True to its mission, Appellant uploaded a PDF copy of the O.C.G.A. online, making Georgia law freely accessible to the people of Georgia, the media, and other interested members of the public—something Georgia not only refused to do, but also hopes to put an end to with this lawsuit.

Allowing the law to become private property would put it "in the power of an individual to shut out the light by which we guide our actions." *Wheaton*, 33

15

U.S. at 621. The Supreme Court refused to impose "so great an evil" through including the law within the scope of copyright protection. *Id.* So, too, should this Court.

### B.  Granting Copyright in the O.C.G.A. Would Violate the Public's First Amendment Right of Access

Public access to the law is a critical piece of the First Amendment. Because the First Amendment exists to enable and protect "uninhibited, robust, and wideopen" debate on public issues, *Watts v. U.S.*, 394 U.S. 705, 708 (1969), "for the bringing about of political and social changes desired by the people," *Roth v. United States,* 354 U.S. 476, 484 (1957), truthful speech on matters of public concern lies at the core of our right to free speech. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980). It is hard to imagine truthful speech of greater public concern than the content of the law: the foundational rules of our democracy. To engage in public debate about policy and law, the public must be informed of the laws that govern.

The "First Amendment embraces a right of access" for this very purpose: "to ensure that [the] constitutionally protected 'discussion of governmental affairs' is an informed one" so that "the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Super. Ct. for Cty. of Norfolk*, 457 U.S. 596, 604 (1982).

This includes access to legal proceedings. "[T]here exists a presumption of openness in all legal proceedings," *United States v. Ignasiak*, 667 F.3d 1217, 1238 (11th Cir. 2012), which must be protected because it "plays a particularly significant role in the functioning of the judicial process and the government as a whole." *Globe Newspaper Co.*, 457 U.S. at 606 (holding that the public has a right of access to criminal proceedings). Specifically, public access "enhances the quality and safeguards the integrity" of the judicial process, "heighten[s] public respect" for that process, and "permits the public to participate in and serve as a check upon the judicial process." *Globe Newspaper Co.*, 457 U.S. at 606; *see also Press-Enter. Co. v. Super. Ct. of Cal. for Cty. of Riverside*, 478 U.S. 1, 8 (1986) (establishing a right of access to criminal proceedings where "the place and process have historically been open to the press and general public" and where "public access plays a significant positive role in the functioning of the particular process in question").

The State's attempt to shield the O.C.G.A. from public view in this case violates that right of access in multiple ways. First, litigants (especially *pro se* individuals) are effectively denied access to the courts outright if they cannot access the O.C.G.A. when drafting their pleadings—all of which must cite to the O.C.G.A. pursuant to the rules of Georgia courts and the rules of this Court as well. *See* Part I.A, *supra*. Second, the State's position then blocks the public from

seeing any relevant decision that is then reported in the O.C.G.A. in response to those pleadings. In other words, the State's position blocks access to content on its way both in and out of the courtroom. Third, without access to the law, Georgians cannot fulfill their duties as electors and policy advocates, nor can they be expected to maintain any faith in a state that hides the law from them. But providing the public with access to the law would encourage participation and enable them to act as a check within the democratic process.

### C. Granting Copyright in the O.C.G.A. Would Violate Due Process

To allow the state to keep the law secret would violate the fundamental due process principle "that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc*., 132 S. Ct. 2307, 2317 (2012); *see also Connally v. Gen. Constr. Co*., 269 U.S. 385, 391 (1926) (holding that the law cannot force "men of common intelligence [to] . . . guess at its meaning and . . . application").

The First Circuit has refused to extend copyright protection to the law for this reason. The court explained that "[s]o long as the law is generally available for the public to examine, then everyone may be considered to have constructive notice of it." *Building Officials*, 628 F.2d at 734. But as soon as access to the law is limited, people may "be thereby deprived of the notice to which due process entitles them." *Id.* In addition to being unconstitutional, this result "is against

18

sound public policy." *Veeck*, 293 F.3d at 795. And it runs counter to the goal of judicial efficiency, as it would require a court in each criminal case to determine whether the particular defendant before it had adequate notice of a particular law.

Moreover, by denying its citizens the O.C.G.A., the State usurps the role of the judiciary, whose rulings are reflected in the annotations, and strips Georgians of the rights that the judiciary has protected. To hold that the Unannotated Code rather than the O.C.G.A. is the law would be to hold that statutes that courts have struck down as unconstitutional, *see* Ga. Code Ann. (Unannotated) § 16-6-2, or limited to avoid constitutional infirmities, *see* Ga. Code Ann. (Unannotated) § 16-12-80, remain the law.

If a person is criminally charged in Georgia, that process will begin with an arrest by police officers empowered by the O.C.G.A., continue with a criminal charge brought under the O.C.G.A., and will play out in courts applying the O.C.G.A., argued by attorneys who will consult and cite the O.C.G.A. *See* Part I, *supra*. Due process principles require that the very same O.C.G.A., without the omissions and redactions of the Unannotated Code, be made public to them with no admission fee. This Court should not endorse the State's attempt to profit off of the public's access to the law.

The State can no more bar the most important judicial material—the law itself—from the public eye than it could order a blanket sealing order barring any

19

testimony from view in a particular case. *See Globe Newspaper*, 457 U.S. at 610–11. There is no single document that is more necessary for understanding and checking the Georgia state government than the O.C.G.A. Without free access to the O.C.G.A., members of the public, the media, and the bar are left only with the unconstitutional, outdated, and inaccurate text of the Unannotated Code, and the courts are left with more work to do. This Court should not allow that result.

## CONCLUSION

Because the O.C.G.A. constitutes the official law of Georgia, this Court should hold that it cannot be copyrighted.

Respectfully Submitted,

Dated: May 24, 2017                    By: *Esha Bhandari*

Esha Bhandari
ebhandari@aclu.org
Lee Rowland
Vera Eidelman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
Fax: 212-549-2654

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of
   Appellate Procedure 32(a) because it contains 4,042 words, excluding the
   parts of the brief exempted by Federal Rule of Appellate Procedure
   32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of
   Appellate Procedure 32(a)(5) and the type-style requirements of Federal
   Rule of Appellate Procedure 32(a)(6) because it has been prepared in a
   proportionally spaced typeface using Microsoft Word 2010 in 14-point
   Times New Roman.

*/s/ Esha Bhandari*

Esha Bhandari
ebhandari@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
Fax: 212-549-2654

May 24, 2017

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of May, 2017, the foregoing Amici Curiae Brief for the American Civil Liberties Union Foundation, American Civil Liberties Union Foundation of Georgia, Inc., Southern Poverty Law Center, Center for Democracy & Technology, and Georgia Coalition for the People's Agenda was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

/s/ *Esha Bhandari*

Esha Bhandari
ebhandari@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
Fax: 212-549-2654