Case No. 17-11589

# United States Court of Appeals

*for the*

# Eleventh Circuit

CODE REVISION COMMISSION on behalf of and for the benefit of THE GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA

*Plaintiff-Appellee*,

v.

PUBLIC.RESOURCE.ORG, INC.

*Defendant-Appellant*.

*Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division
Case No. 1:09-CV-02594-RWS*

**BRIEF OF APPELLEE CODE REVISION COMMISSION ON BEHALF OF AND FOR THE BENEFIT OF THE GENERAL ASSEMBLY OF GEORGIA, AND THE STATE OF GEORGIA**

ANTHONY B. ASKEW
LISA C. PAVENTO
WARREN J. THOMAS
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700

*Counsel for Appellee-Plaintiff*                    June 30, 2017

*Code Revision Commission et al. v. Public.Resource.Org*
No. 17-11589-HH

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellees Code Revision Commission on behalf of and for the benefit of The General Assembly of Georgia, and The State of Georgia provides the following Certificate of Interested Persons and Corporate Disclosure Statement:

- Acton, Anne M. (Amicus Curiae)

- Adelman, Beth (Amicus Curiae)

- Alston & Bird, LLP (Counsel for Defendant-Appellant)

- American Civil Liberties Union Foundation (Amicus Curiae)

- American Civil Liberties Union Foundation of Georgia, Inc. (Amicus Curiae)

- Anzalone, Filippa Marullo (Amicus Curiae)

- Askew, Anthony B. (Counsel for Plaintiff-Appellees)

- Bhandari, Esha (Counsel for Amici Curiae American Civil Liberties Union Foundation and American Civil Liberties Union Foundation of Georgia, Inc.)

- Bowler, John M. (Counsel for Amicus Matthew Bender & Co., Inc.)

- Butler, Brandon C. (Amicus Curiae)

- Carrier, Michael A. (Amicus Curiae)

*Code Revision Commission et al. v. Public.Resource.Org*
No. 17-11589-HH

- CaseText (Amicus Curiae)

- Chisolm, Tuneen (Amicus Curiae)

- Clifford, Ralph D. (Amicus Curiae)

- Code Revision Commission (Plaintiff-Appellee, on behalf of and for the benefit of the General Assembly, and the State of Georgia)

- Cohen, Hon. Mark H. (U.S. District Court Judge for the Northern District of Georgia (originally assigned))

- Courtney, Kyle K. (Amicus Curiae)

- Danner, Richard A. (Amicus Curiae)

- Duan, Charles (Counsel for Amici Curiae Public Knowledge, The American Library Association, The Association of Research Libraries, The Association of College and Research Libraries, The Organization for Transformative Works, The Institute of Intellectual Property and Social Justice and forty-one (41) librarians and professors of law (identified on this form with an asterisk))

- Durie Tangri, LLP (Counsel for Defendant-Appellant)

- Emerson, Amy A. (Amicus Curiae)

- Fastcase, Inc. (Legal publisher having an interest in offering its subscribers the Official Code of Georgia, Annotated without the need for a license)

- Ford, Roger Allan (Amicus Curiae)

*Code Revision Commission et al. v. Public.Resource.Org*
No. 17-11589-HH

- Fortney, Katie (Amicus Curiae)

- Free Law Project (Amicus Curiae)

- Frye, Brian L. (Amicus Curiae)

- General Assembly of Georgia (Beneficiary of Plaintiffs-Appellees)

- Georgia Attorney General's Office (Counsel for State of Georgia)

- Ghosh, Shubha (Amicus Curiae)

- Gratz, Joseph C. (Counsel for Defendant-Appellant)

- Halperin, David (Counsel for Defendant-Appellant)

- Hansen, David R. (Amicus Curiae)

- Heald, Paul Justin (Amicus Curiae)

- Hirsch, Kenneth J. (Amicus Curiae)

- Hirsch, Michelle J. (Counsel for State of Georgia)

- Hobbs, Michael B. (Counsel for Amicus Matthew Bender & Co., Inc.)

- Joergensen, John (Amicus Curiae)

- Johnson, Eric E. (Amicus Curiae)

- Judicata (Amicus Curiae)

- Juelsgaard Intellectual Property and Innovation Clinic (Counsel for Amici Curiae Casetext, Free Law Project, Judicata, OpenGov Foundation, and Ravel)

- Keele, Benjamin J. (Amicus Curiae)

*Code Revision Commission et al. v. Public.Resource.Org*
No. 17-11589-HH

- Kennedy, Jocelyn (Amicus Curiae)

- Klinefelter, Anne (Amicus Curiae)

- LaFantano, Sarah Parker (Counsel for Defendant-Appellant)

- Lantagne, Stacey M. (Amicus Curiae)

- Lee, Sarah Hooke (Amicus Curiae)

- Leiter, Richard (Amicus Curiae)

- Lexis/Nexis Group (Parent of Amicus Curiae Matthew Bender & Co., Inc.)

- Liebesman, Yvette Joy (Amicus Curiae)

- Love, Brian J. (Amicus Curiae)

- Macklin, Lisa A. (Amicus Curiae)

- Malamud, Carl (President and Founder of Defendant-Appellant)

- Malone, Phillip R. (Counsel for Amici Curiae Casetext, Free Law Project, Judicata, OpenGov Foundation, and Ravel)

- Matthew Bender & Co., Inc. (Amicus Curiae and licensee of Plaintiffs-Appellees)

- Mayer, John (Amicus Curiae)

- Meunier Carlin & Curfman LLC (Counsel for Plaintiffs-Appellees)

- Mills Legal Clinic at Stanford Law School (Counsel for Amici Curiae Casetext, Free Law Project, Judicata, OpenGov Foundation, and Ravel)

- Mtima, Lateef L. (Amicus Curiae)

*Code Revision Commission et al. v. Public.Resource.Org*
No. 17-11589-HH

- OpenGov Foundation (Amicus Curiae)

- Pavento, Lisa C. (Counsel for Plaintiffs-Appellees)

- Pearlman, Jeffrey (Counsel for Amici Curiae Casetext, Free Law Project, Judicata, OpenGov Foundation, and Ravel)

- Public.Resource.Org, Inc. (Defendant-Appellant)

- Rader, Elizabeth H. (Counsel for Defendant-Appellant)

- Ravel (Amicus Curiae)

- Rosenberg, Jason D. (Counsel for Defendant-Appellant)

- Schemmel, Lawrence A. (Counsel for State of Mississippi)

- Seipp, David J. (Amicus Curiae)

- Selby, Courtney (Amicus Curiae)

- Silbey, Jessica (Amicus Curiae)

- Smith, Kevin L. (Amicus Curiae)

- Sorkin, David E. (Amicus Curiae)

- State of Georgia (Plaintiff-Appellee)

- State of Mississippi (State alleging Defendant-Appellant infringes copyright in its official code)

- Street, Leslie (Amicus Curiae)

- Story, Hon. Richard W. (U.S. District Judge for the Northern District of Georgia)

*Code Revision Commission et al. v. Public.Resource.Org*
No. 17-11589-HH

- Thomas, Warren J. (Counsel for Plaintiffs-Appellees)

- Troutman Sanders LLP (Counsel for Amicus Curiae Matthew Bender & Co., Inc.)

- Tushnet, Rebecca (Amicus Curiae)

- Walters, Edward (Co-Founder and CEO of Fastcase, Inc.)

- Wheeler, Ronald E. (Amicus Curiae)

- Williams, Beth (Amicus Curiae)

- Zimmerman, Katie (Amicus Curiae)

- Zittrain, Jonathan L. (Amicus Curiae)

## STATEMENT REGARDING ORAL ARGUMENT

The district court properly held that the OCGA annotations are copyrightable and applied the fair use factors in a manner that is consistent with this Court's prior rulings, existing Supreme Court and other precedent. Nonetheless, oral argument may be appropriate and helpful. Appellees request the opportunity to present oral argument in support of the trial court's judgment.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................ i

TABLE OF CONTENTS......................................................................... ii

TABLE OF CITATIONS .........................................................................v

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....x

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE..................................................................2

   I.    NATURE OF THE CASE ...........................................................2

   II.   STATEMENT OF THE FACTS ..................................................3

      A.   CREATION AND COPYRIGHT REGISTRATION OF THE OCGA
         ANNOTATIONS ...........................................................3

      B.   THE STATE MAKES THE GEORGIA CODE, OCGA AND MANY
         OTHER GOVERNMENT DOCUMENTS ACCESSIBLE ................6

      C.   PUBLIC RESOURCE..........................................................8

      D.   DISTRICT COURT PROCEEDING ................................11

   III.  STANDARD OF REVIEW .......................................................14

   IV.  SUMMARY OF THE ARGUMENT ........................................14

   V.   ARGUMENT ...........................................................................17

      A.   THE STATE'S PURPOSE IN PUBLISHING THE OCGA AND
         USING A PUBLIC-PRIVATE PARTNERSHIP TO DO SO WAS
         FOR THE BENEFIT OF THE CITIZENS OF GEORGIA ................17

B.    THE DISTRICT COURT CORRECTLY FOCUSED ON THE
       COPYRIGHTABILITY OF A SUBSET OF THE
       ANNOTATIONS—THE JUDICIAL DECISION SUMMARIES.....20

C.    THE OCGA JUDICIAL DECISION SUMMARIES ARE
       COPYRIGHTABLE............................................................................22

       1.  The OCGA judicial decision summaries are original and creative ...

            ..........................................................................................22

       2.  The merger doctrine is inapplicable to the OCGA judicial decision
            summaries...................................................................................24

D.    THE OCGA ANNOTATIONS ARE PROTECTABLE ELEMENTS
       WITHIN THE OCGA ....................................................................26

       1.  Judicial precedent requires that copyrightability is considered with
            respect to the protectable elements within a work. .......................27

       2.  This Court should not strip the OCGA annotations of their
            copyrightability ...........................................................................29

            i.    There is no state-created right of Georgia's citizens to the
                   annotations ............................................................................29

            ii.   Official state documents are copyrightable. ............................29

            iii. The inclusion of law in an official state document does not
                   render it uncopyrightable. ......................................................30

E.    THE OCGA ANNOTATIONS ARE NOT THE LAW......................36

F.    DEFENDANT'S COPYING WAS NOT A FAIR USE....................38

       1.  Factor 1...........................................................................................39

            i.    Public Resource's use does not serve a nonprofit educational
                   purpose. ...............................................................................39

            ii.   Public Resource's use is not transformative. ...........................43

iii

2. Factor 2 .................................................................................... 46

3. Factor 3 .................................................................................... 47

4. Factor 4 .................................................................................... 48

G.    CONCLUSION ......................................................................... 52

CERTIFICATE OF COMPLIANCE ....................................................... 54

CERTIFICATE OF SERVICE .................................................................. 55

## <u>TABLE OF CITATIONS</u>

## CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ........................................................ 45

*Am. Geophysical Union v. Texaco*,
60 F.3d 913 (2d Cir. 1994)............................................................. 44

*Am. Educ. Research Assoc., et al. v. Public Resource.org, Inc.*,
No. 14-CV-0857 (TSC), 2017 WL 473822 (D.D.C. Feb. 2, 2017) ............. 10-11

*Am. Soc'y for Testing & Materials, et al. v. Public Resource.org, Inc.*,
No. 13-CV-1215 (TSC), 2017 WL 473822 (D.D.C. Feb. 2, 2017) ................... 10

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015)........................................................ 43, 51

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014)............................................................. 43

*A.V. ex rel v. iParadigms, LLC.*,
562 F.3d 630 (4th Cir. 2009) .......................................................... 44

*Banks v. Manchester*,
128 U.S. 244 (1888) ................................................................... 31

*Bateman v. Mnemonics, Inc.*,
79 F.3d 1532 (11th Cir. 1996) ........................................................ 21

*Bldg. Officials & Code Adm. v. Code Tech., Inc.*,
628 F.2d 730 (1st Cir. 1980) .......................................................... 35

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
489 F.3d 1129 (11th Cir. 2007) ........................................... 24, 25, 26

*Callaghan v. Myers*,
128 U.S. 617 (1888) ......................................................... 12, 28, 30, 32

*Cambridge Univ. Press v. Patton*,
769 F.3d 1232 (11th Cir. 2014) .................................................. passim

v

*Campbell v. Acuff-Rose Music Inc.*,
510 U.S. 569 (1994) ............................................................... 38, 43, 45

*CCC Info. Servs. v. Maclean Hunter Mkt. Reports, Inc.*,
44 F.3d 61 (2d Cir. 1994) ................................................................. 33

*County of Suffolk, New York v. First Am. Real Estate Sols.*,
261 F.3d 179 (2d Cir. 2001) ....................................................... 32, 35

*Davidson v. Wheelock*,
27 F. 61 (Minn. Cir. Ct. 1866) ........................................................ 31

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ...................................................... 20, 22, 23, 27

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ............................................... 14, 40, 42, 48, 51

*Infinity Broad. Corp. v. Kirkwood*,
150 F.3d 104 (2d Cir. 1998) ............................................................ 45

*Katz v. Google*,
802 F.3d 1178 (11th Cir. 2015) ...................................................... 38

*Latimer v. Roaring Toyz, Inc.*,
601 F.3d 1224 (11th Cir. 2010) ...................................................... 21

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
158 F.3d 674 (2d Cir. 1998) ............................................................ 24

*Microdecisions, Inc. v. Skinner*,
889 So. 2d 871 (Fla. 2d Dist. App. 2004) ....................................... 29

*MiTek Holdings, Inc. v. Arce Eng'g, Inc.*,
89 F.3d 1548 (11th Cir.1996) ......................................................... 27

*Montgomery v. Noga*,
168 F.3d 1282 (11th Cir. 1999) ...................................................... 14

*Pacific & Southern Co. v. Duncan*,
744 F.2d 1490 (11th Cir. 1984) ...................................................... 14

*Perfect 10, Inc. v. Amazon.com, Inc.,*
508 F.3d 1146 (9th Cir. 2007) ........................................................... 45

*Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*,
533 F.3d 1287 (11th Cir. 2008) ....................................... 20, 27, 39, 43

*Peter Veeck v. Southern Bldg. Code Congress Int'l, Inc*.,
293 F.3d 791 (5th Cir. 2002) ....................................................... 31, 33

*Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*,
121 F.3d 516 (9th Cir. 1997) ....................................................... 33, 35

*Proudfoot Consulting Co. v. Gordon*,
576 F.3d 1223 (11th Cir. 2009) ........................................................ 14

*Rose v. Locke*,
423 U.S. 48 (1975) ............................................................................ 31

*Seltzer v. Green Day, Inc*.,
725 F.3d 1170 (9th Cir. 2013) ........................................................... 45

*State of Georgia v. The Harrison Co*.,
548 F. Supp. 110, 112 (N.D. Ga. 1982) *vacated at request of parties*
559 F. Supp. 37 (N.D. Ga. 1983) ......................................... 17, 18, 29

*Soc'y of Holy Transfiguration Monastery. Inc. v. Gregory*,
689 F.3d 29 (1st Cir. 2012) ............................................................... 42

*Sony Corp. of Am. v. Universal City Studios, Inc*.,
464 U.S. 417 (1984) ......................................................................... 51

*Swatch Grp. Mgm't. Serv. Ltd. v. Bloomberg L.P*.,
756 F.3d 73 (2d Cir. 2014) ............................................................... 44

*Weismann v. Freeman*,
868 F.2d 1313 (2d Cir. 1989) ........................................................... 42

*West Publ'g Co. v. Mead Data Cent., Inc*.,
799 F.2d 1219 (8th Cir. 1986) ........................................................... 23

*Wheaton v. Peters*,
33 U.S. (8 Pet.) 591 (1834) ........................................................ 31, 32

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
227 F.3d 1110 (9th Cir. 2000) ........................................................ 42


## STATUTES

17 U.S.C. § 102(a) ........................................................ 22

17 U.S.C. § 105 ........................................................ 29

17 U.S.C. § 107 ........................................................ 38, 47

17 U.S.C. § 410(c)) ........................................................ 21

28 U.S.C. § 1291 ........................................................ x

28 U.S.C § 1331 ........................................................ x

28 U.S.C § 1338 ........................................................ x

2014 Ga. Laws 866 § 54 ........................................................ 37

2015 Ga. Laws 5 § 54 ........................................................ 37

2016 Ga. Laws 864 § 54 ........................................................ 37

2017 Ga. Laws 774 § 54 ........................................................ 37

OCGA § 1-1-1 ........................................................ 2, 36

OCGA § 1-1-7 ........................................................ 37


## OTHERS

*Compendium of U.S. Copyright Office Practices*
§ 3163.6(C)(1) (3d Ed.) (2014) ........................................................ 12, 30

Article III, section 1, paragraph 1, of the Georgia Constitution ........................................................ 37

Pierre N. Leval, *Toward a Fair Use Standard*,
103 Harv. L. Rev. 1105, 1107 (1990) ................................................................ 44

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court possessed subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) because this is a civil action arising under the Copyright Act and the dispute presents a federal question. This Court possesses appellate jurisdiction pursuant to 28 U.S.C. § 1291 for claims preserved for appellate review.

## <u>STATEMENT OF THE ISSUES</u>

1.  Did the district court correctly conclude that Public Resource infringed Commission's copyrights in OCGA annotations when the court focused on the copyrightability of a group of OCGA judicial summaries and held that the OCGA annotations are not uncopyrightable as the law, under the merger doctrine, or based on the annotations being created as a work for hire?

2.  In concluding that Public Resource infringed Commission's copyrights in the OCGA annotations, did the district court correctly reject Public Resource's arguments that Commission's holding that the copyrights impinge upon citizens' due process rights when citizens have ample notice and fair warning of Georgia's laws?

3.  Did the district court correctly conclude that Public Resource's verbatim copying and internet distribution of hundreds of OCGA works in their entireties is not a fair use when Public Resource's central business purpose is the unauthorized copying and internet dissemination of government documents and Commission has established that its markets for the OCGA works are printed publications, CD-ROM, and subscription services.

## STATEMENT OF THE CASE

### I.    NATURE OF THE CASE

This appeal arises from the district court's decision regarding the deliberate copying of hundreds of entire volumes and supplements of the Official Code of Georgia Annotated ("OCGA") by Defendant-Appellant Public.Resource.Org, Inc. ("Public Resource"). There are two primary components of the OCGA as published by LexisNexis: 1) the statutory language as passed by the Georgia General Assembly, and 2) annotations created by LexisNexis as a work for hire for the State of Georgia, such as summaries of judicial decisions and editor's notes. The district court correctly found that the annotations in the OCGA are copyrightable, were properly registered with the U.S. Copyright Office, and Public Resource infringed those copyrights by deliberately copying hundreds of entire volumes of the OCGA. In granting Plaintiff-Appellee Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia ("Commission")'s request for partial summary judgment[1], the district court further held that Public Resource's copying does not avoid infringement as a fair use.

---

[1] Commission did not move for summary judgment as to its subsequent 2015 OCGA works since those had not been registered at the time of summary judgment briefing.

2

## II.   STATEMENT OF THE FACTS

Since 1982, certain laws have been published by the State of Georgia in codified form in the OCGA, or the Official Code of Georgia Annotated. Doc. No. 33-1 ¶ 59. The OCGA contains the official, or State of Georgia-approved, codified statutory text (OCGA § 1-1-1). A second annotated code publication is West's Code of Georgia Annotated, published by West Publishing. *Id*. ¶ 63. The statutory text in West's Code of Georgia Annotated is not approved by the State. *Id*. ¶ 64. As each publication's name indicates by the term "annotated," neither is a mere listing of the statutes of the State of Georgia, but is instead a compilation of the statutes and other non-statutory materials such as annotations. *Id*. ¶¶ 59, 63.

### A.   CREATION AND COPYRIGHT REGISTRATION OF THE OCGA ANNOTATIONS

The OCGA annotations are a combination of original text and original compilation, and their purpose is to assist in the understanding of the Georgia statutes. Doc. No. 30-3 ¶ 4. Summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, and summaries of research references are all annotations in the OCGA volumes and supplements at issue in this case. Doc. No. 17 ¶¶ 1, 4, 10, 18, 26. The non-statutory annotations in each of these OCGA publications were prepared as a work for hire by Mathew Bender and Company, Inc., a member of the LexisNexis Group ("Lexis"), under contract for the State of Georgia. *Id*. ¶¶ 4, 5, 11, 19, 27; Doc. No. 33-1 ¶ 4. Under

3

the contract, the annotations remain the property of the State of Georgia. Doc. No. 30-4, Agreement for Publication (Contract) § 6.1.

Lexis is granted the exclusive right to publish and sell the OCGA according to the prices set in the contract, with any price increases at the sole discretion of the Commission. *Id*. §§ 5, 8. The ability of the State to keep the price of the OCGA low for the benefit of the citizens of Georgia was an important consideration of the Commission when entering the contract with LexisNexis. Doc. 33-1 ¶ 62. The 2016 price of a complete OCGA set was $404.00 while a complete set of West's Code of Georgia Annotated cost much more—$2,570.00. *Id*. ¶ 65. Doc. No. 30-3 ¶ 9.

Under the terms of the contract, Lexis filed for and obtained copyright registrations for the original and creative annotations in the OCGA volumes and supplements as shown in the parties' Stipulation of Facts, Exhibit A (those pre-2015 works being referred to hereinafter as the "OCGA Works"). Doc. No. 17 ¶ 17; Doc. No. 17-1; Doc. No. 30-4 § 6.1(c). The original and creative annotations in the OCGA Works encompassed by these registrations include the summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, and compilations thereof. Doc. No. 17 ¶ 40; Doc. No. 30-3 ¶ 4.

Lexis created the summaries of judicial decisions in the OCGA Works using a lengthy process of selection, analysis and summarization. Doc. No. 30-5 ¶¶ 3-17.

4

Lexis identified and read each potentially relevant judicial decision, determined how the judicial decision relates to a statute, and then determined the type of annotation that should be created. *Id*. ¶¶ 4, 5. For those cases of significance, Lexis created an original several line summary of the case that distills the case's relevant holding relating to the statute. *Id*. ¶¶ 6, 7. An exemplary summary of a judicial decision is provided below next to a comparable judicial summary in West's Code of Georgia Annotated demonstrating the differences between the summaries' text, and the original and creative nature of the OCGA judicial summaries. *Id*. ¶ 13; Doc. No. 33-1 ¶ 81; Doc. No. 41-1 ¶ 4.

| OCGA § 34-9-260 | West's Ga. Code Ann. § 34-9-260 |
|---|---|
| Average weekly wage calculated correctly. – Award of workers' compensation benefits was upheld because there was some evidence to support the administrative law judge's calculation of the claimant's average weekly wage under OCGA § 34-9-260(3) based on the claimant's testimony that the claimant was supposed to work from the car wash's opening until its close. *Cho Carwash Property, LLC. v. Everett*, 326 Ga. App. 6, 755 S.E.2d 823 (2014). | Some evidence supported ALJ's calculation that workers' compensation claimant worked 38 hours per week when he was injured during training and thus that claimant's average weekly wage was $323, although claimant had worked only three days before being injured, and although employer testified that claimant would have been placed on part-time schedule once training had been completed; evidence indicated that lube technicians, such as claimant, worked four days per week, employer's business was open ten hours per day for six days of the week, claimant was supposed to work from time that business opened until it closed, and employees took 30-minute lunch. *Cho Carwash Property, LLC v. Everett*, |

|  | 2014, 326 Ga.App. 6, 755 S.E.2d 823. |

Each of the OCGA Works further contains original and creative compilations of: summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, summaries of research references. Doc. No. 30-5 ¶ 18. Each judicial decision summary, editor's note, and summary of an opinion of the Attorney General of Georgia was first selected for inclusion in the OCGA by Lexis. *Id*. ¶ 16. Each selection was then coordinated with a particular codified statute of Georgia. *Id*. When multiple summaries or editor's notes were coordinated with a single code section, each was arranged in a particular order. *Id*. ¶ 17. Accordingly, each of the OCGA Works contains numerous selections, coordinations, and arrangements that are encompassed by the copyright registrations asserted in this proceeding. Doc. No. 17 ¶¶ 6-9, 12-14, 20-25, 28-33. These compilations are original and creative. Doc. No. 30-5 ¶ 18.

There are three existing markets for the OCGA: printed publications, CD-ROM, and subscription services (with Public Resource itself purchasing from the first market). Doc. No. 33-1 ¶¶ 32, 65, 77; Doc. No. 41-1 ¶¶ 5–7.

## B.    THE STATE MAKES THE GEORGIA CODE, OCGA AND MANY OTHER GOVERNMENT DOCUMENTS ACCESSIBLE

The entire OCGA, including the annotations, is available for viewing on compact disc at over 60 state- and county-operated facilities, such as state and county libraries, state universities, and county law enforcement offices, within the

State of Georgia. Doc. No. 33-1 ¶ 66; *see also* Doc. No. 30-4 Ex. C. The State of

Georgia has further placed the statutory text of the OCGA on the internet for even

easier access by its citizens. Doc. No. 17 ¶¶ 73-77; Doc. No. 33-1 ¶ 67. The

statutory text and numbering of the OCGA can be accessed via several websites

maintained by the Georgia General Assembly—www.legis.ga.gov,

www.senate.ga.gov and www.house.ga.gov. *Id.*

Georgia provides access to numerous government documents through these

three websites including the ability to search pending legislation, obtain contact

information for legislators, and obtain state budget documents, among other things.

Doc. No. 33-1 ¶¶ 67, 68. Further, in 1994, the Board of Regents of the University

System of Georgia, an arm of the state, created GALILEO, the first state wide

digital library (http://dlg.galileo.usg.edu). *Id.* ¶¶ 69, 70. GALILEO provides access

to the *Georgia Laws*, which is a publication of Georgia laws (both codified and

uncodified) as enacted by the Georgia Legislature. *Id.* ¶ 71. In 1996, the Georgia

Government Publications database (GGP) was created as GALILEO's first digital

conversion initiative of publications released by agencies of Georgia's executive

branch. *Id.* ¶ 72. The GGP database consists of over 70,000 documents produced

by Georgia state agencies, and Georgia law (OCGA 20-5-2) requires Georgia state

agencies to submit publications to GALILEO that they produce for the public. *Id.*

¶¶ 73, 74.

### C.    PUBLIC RESOURCE

Public Resource deliberately copied and distributed the entirety of hundreds of printed OCGA Works, front and back covers included. Doc. No. 17 ¶¶ 34, 36, 38–41, 46, 48–50, 52, 54, 55, 63–65, 79. Public Resource's copies look identical to the printed OCGA—including the front cover with the official State of Georgia seal—and mimic the page turning of the printed OCGA. *Id*. at ¶ 37, Doc. No. 17-2. Public Resource admitted to posting these copies on two websites, https://law.resource.org and www.archive.org, for the purpose of facilitating, enabling, encouraging and inducing others to view, download, print, copy and distribute those volumes and supplements of the OCGA. *Id*. ¶¶ 48, 54. These internet postings by Public Resource resulted in several thousand copies of the OCGA Works being made by members of the public. *Id*. ¶ 55.

Public Resource both planned and solicited funds for its infringement of the OCGA Works. Doc. No. 17 ¶¶ 42, 43. Public Resource received monies as a result of those solicitations. Doc. No. 17 ¶ 62. Following Public Resource's copying of the OCGA, it sent a thumb drive containing those copies to Honorable David Ralston, Speaker of the House; Georgia House of Representatives; and Mr. Wayne Allen, Office of Legislative Counsel. *Id*. ¶¶ 63, 64. Correspondence that accompanied the thumb drive stated, in part:

> I am pleased to enclose for your consideration a George Washington
> USB Thumb Drive containing a scanned version of the Official Code

8

of Georgia Annotated as well as XML-encoded version of the code.

*Id*. ¶ 67, Doc. No. 17-3. Public Resource sent additional thumb drives containing similar OCGA copies to at least eight institutions in and around the state. Doc. No. 17 ¶ 64. In multiple letters, Commission demanded that Public Resource cease and desist its infringement. *Id*. ¶¶ 69-71. Public Resource refused, ultimately sending Commission a "Proclamation of Promulgation" that indicated its intention to continue to copy and distribute the OCGA. *Id*. ¶¶ 68, 69.

The actions taken by Public Resource in relation to the State of Georgia fall squarely within Public Resource's business. Mr. Malamud founded Public Resource because it felt that the technology employed by states in publishing the states' statutes and regulations "did not . . . take advantage of the features of the Internet and its potential." Doc. No. 29-1 ¶¶ 2-4.  In order to remedy the problems it perceives, Public Resource has copied and distributed on the internet many governmental publications including the Oregon Revised Statutes, California Code of Regulations, District of Columbia Code, Chicago Building, Municipal and Zoning Codes (*Id*. ¶ 5), as well as hundreds of annotated state codes of Georgia, Mississippi and Idaho (Doc. No. 17 ¶¶ 34, 36, 38–41, 46, 48–50, 52, 54, 55, 63–65, 79, Doc. No. 33-1 ¶ 75).

Public Resource published *10 Rules for Radicals* in order to teach others its techniques for forcing government institutions to publish their documents on the

9

internet. Doc. No. 41-1 ¶¶ 2, 3; Doc. No. 34-1 pp. PRO-000571, PRO-000601.

Rule 8 is "Get them to threaten you." Doc. No. 34-1 at PRO-000601. The *10 Rules for Radicals* publication also describes Mr. Malamud's experience with placing a copy of a publication on the internet and his response when he was asked to take it down from the internet: "there was not much that could be done as the proverbial cat had escaped from the proverbial bag." *Id*. at PRO-000586.

Public Resource is a non-profit institution that is paid in the form of grants and contributions. Doc. No. 41-1 ¶ 1. Its *10 Rules for Radicals* publication indicates that those grants and contributions are paid to Public Resource "to help [it] change our legal system by making the law more freely available." Doc. No. 34-1 at PRO-000591. As Public Resource's business is the copying and distribution of government documents, Public Resource has had interactions with other states and businesses similar to its interactions with Georgia: It sent correspondence to Mississippi, Idaho, Oregon and Delaware similar to that sent to Georgia's Speaker of the House as referenced above, including threatening Oregon with a declaratory judgment action. Doc. Nos. 58-4, 58-5, 58-6, 58-7 and 58-8. Public Resource is also currently a defendant in two other copyright infringement lawsuits that involve its willful infringement of copyrighted standards. *Am. Soc'y for Testing & Materials, et al*. *v. Public Resource.org, Inc.*, No. 13-CV-1215 (TSC), 2017 WL 473822 (D.D.C. Feb. 2, 2017); *Am. Educ. Research Assoc.*, *et al*.

*v. Public Resource.org, Inc.*, No. 14-CV-0857 (TSC), 2017 WL 473822 (D.D.C. Feb. 2, 2017). There, the District Court for the District of Columbia rejected Public Resource's arguments, held that the standards at issue were not uncopyrightable as the law, and enjoined the infringement of the asserted copyrights. *Id*. at *15.

Public Resource's efforts to place more government documents on the internet also include administrative and legislative advocacy. Mr. Carl Malamud, Public Resource's founder, tried unsuccessfully to become the U.S. Public Printer and previously advocated for an amendment to the U.S. Copyright Act making state and local official legal documents uncopyrightable for reasons of public policy. Doc. No. 17 ¶¶ 59, 60. No such amendment has been adopted by Congress. *Id*. ¶ 59.

## D.    DISTRICT COURT PROCEEDING

Commission filed its Complaint against Public Resource on July 1, 2015 for infringement of the copyrights in the annotations of the pre-2015 OCGA Works. Doc. No. 1. Public Resource filed an Answer and a Counterclaim for Declaratory Relief requesting a judgment of non-infringement; Commission answered. Doc. Nos. 6, 10. With full knowledge of Commission's Complaint, Public Resource then copied and distributed on the internet the entirety of all of the volumes and supplements of the subsequent 2015 edition of the OCGA. Doc. No. 17 ¶¶ 46, 52. Commission amended its Complaint to include infringement of the copyrights for

11

the annotations in those subsequent 2015 works on October 8, 2015, and Public

Resource again answered and counterclaimed. Doc. Nos. 11, 16.

Having admitted to its copying and distribution of the annotations in the

OCGA Works, Public Resource asserted the following defenses and arguments

relating to its infringement: 1) the annotations in the OCGA are not copyrightable

because they are the law, 2) the annotations in the OCGA are not copyrightable for

lack of originality, 3) the OCGA annotations are not copyrightable based on the

merger doctrine, and 4) fair use. Doc. No. 6. Public Resource further sought a

declaratory judgment of non-infringement because it alleged that the OCGA,

including its annotations, is the law and not copyrightable. *Id*. at p. 12 ¶ 1.

On May 15, 2017, the parties filed cross motions for summary judgment.

Doc. Nos. 29 and 30. Commission moved for partial summary judgment, excluding

from its motion the subsequent 2015 OCGA works that had not yet registered at

the time of summary judgment briefing. Doc. No. 30. On April 23, 2017, the

district court granted Commission's motion and denied Public Resource's motion.

In its order, the district court found that the parties had stipulated that the

annotations in the pre-2015 works at issue (referred to herein as "OCGA Work")

are the subject of a copyright registration and that such registration "constituted

prima facie evidence of the validity of the copyright and of the facts stated in the

certificate." Doc. No. 44 at 9. Relying on *Callaghan v. Myers*, 128 U.S. 617

(1888), current Georgia law, and the *Compendium of U.S. Copyright Office Practices*, the district court further held that the annotations in the OCGA do not have the force of law and are copyrightable. *Id*. at 11-12 ("The entire O.C.G.A. is not enacted into law by the Georgia legislature and does not have the force of law.").  The district court rejected Public Resource's merger doctrine arguments as well as its fair use arguments. *Id*. at 13-14, 22.

With respect to the four fair use factors, the district court held that three of the four factors weighed in Commission's favor and that factor four was neutral. *Id*. at 22. Public Resource's uses were found to be non-transformative and for a commercial purpose, causing factor one to weigh against fair use. *Id*. at 16, 18. Factor two was held to be neutral because the annotations in the OCGA Works are a combination of both fact and evaluative, analytical, or subjectively descriptive material. *Id*. at 19. The district court held that factor three disfavored fair use because Public Resource "misappropriated every single word of every annotation using a bulk industrial electronic scanner." *Id*. at 20. Finally, finding that Commission had established a market for the annotations in the OCGA Works and that "people would be less likely to pay for annotations when they are available for free online," the district court held that factor four disfavored fair use. *Id*. at 21.

In response to the district court's order, the parties submitted a joint motion for entry of a proposed permanent injunction. Doc. No. 48. The district court

accepted the proposal and issued a permanent injunction order that enjoined Public

Resource from "all unauthorized use, including through reproduction, display,

distribution, or creation of derivative works," of the OCGA and ordered its

removal of all versions of the OCGA from its website and any other website within

its possession or control. Doc. No. 46. Judgment was issued against Public

Resource, and the case was dismissed on April 7, 2017.  Doc. No. 52.  Public

Resource filed its notice of appeal that same day. Doc. No. 49.

## III.    STANDARD OF REVIEW

This Court reviews the district court's factual findings for clear error and its

legal findings *de novo. Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230

(11th Cir. 2009). The originality of elements in a copyrighted work is a question of

fact and reviewed under the clearly erroneous standard.  *Montgomery v. Noga*, 168

F.3d 1282, 1291 n. 14 (11th Cir. 1999). The fair use analysis involves questions of

both law and fact. *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539,

560 (1985) (citing *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1495 n.8

(11th Cir. 1984)).

## IV.    SUMMARY OF THE ARGUMENT

This Court should affirm the district court's holdings because it correctly

held that there was no dispute as to a material fact as to originality or fair use and

its legal findings were well-reasoned and correct.

First, the district court correctly found that the OCGA annotations are not edicts of government that have the force of law.  Annotations in the OCGA are not laws, and the State of Georgia has passed several laws making this clear. Accordingly, this Court should affirm that holding and find that the cases cited by Public Resource regarding the uncopyrightability of the law are inapposite.

Second, it was entirely appropriate for the district court to focus on one type or group of annotations within the OCGA in its originality findings. Public Resource copied every single annotation in hundreds of OCGA volumes and supplements—certainly amounting to tens of thousands of annotations even before compilation originality is taken into account. Yet Public Resource failed to specifically address the lack of originality of those multiple thousands of annotations. Public Resource instead argued the originality of groups of annotations, the judicial summaries being one such group. Once the district court found that one of the groups of annotations copied by Public Resource was original and creative—a group of annotations found in each of the OCGA Works at issue— there was a sufficient basis for finding that Public Resource infringed the copyrights in the annotations of the OCGA Works.

The district court further correctly found that the OCGA judicial summary annotations are copyrightable as original and creative elements of the OCGA and that the merger doctrine does not preclude their copyrightability.  The court

correctly rejected Public Resource's arguments that due process considerations should strip the annotations of their copyrightability. This Court should affirm these holdings.

Finally, the district court correctly found that Public Resource's use is not a fair use. The court correctly held that factor one disfavors fair use upon considering evidence that Public Resource's use was not transformative and had a commercial purpose, which evidence included Public Resource's receipt of monies in association with its copying of the OCGA. The district court further correctly held that factor two is neutral due to the mix of fact and analytical material in the OCGA annotations and the failure of Public Resource to submit evidence regarding the dominance of either type of material. Factor three was found to disfavor fair use based on Public Resource's copying 100% of the OCGA annotations, and this holding was correct considering Public Resource's nontransformative and commercial purpose. If everyone could make the same verbatim copies of all of the annotations in hundreds of OCGA volumes and supplements, there would be substantial harm to Commission's markets for the OCGA annotations, and accordingly, the district court correctly found that factor four disfavors fair use. This Court should uphold the district court's fair use findings.

## V.    ARGUMENT

### A.    THE STATE'S PURPOSE IN PUBLISHING THE OCGA AND USING A PUBLIC-PRIVATE PARTNERSHIP TO DO SO WAS FOR THE BENEFIT OF THE CITIZENS OF GEORGIA

The State of Georgia did not contract with Lexis to produce and publish the OCGA in order to hide Georgia law from its citizens as Public Resource and the *Amici Curiae* contend.  Just the opposite is the case.

Over thirty years ago in 1982, the Georgia General Assembly decided that an Official Code of Georgia Annotated ("OCGA"), an annotated version of the Georgia Code, should be published, the publication itself being handled by a third party publisher. *State of Georgia v. The Harrison Co*., 548 F. Supp. 110, 112 (N.D. Ga. 1982) (emphasis added) *vacated at request of parties* 559 F. Supp. 37 (N.D. Ga. 1983). Prior to 1982, the State only published its post-1933 laws in the *Georgia Laws* (an uncodified version of the laws still published today).

The State of Georgia's Constitution does not require the State to issue an "official" code publication, nor does it require that such publication contain annotations. However, in 1976, the General Assembly created a Code Revision Study Committee to study the need for a recodification of the Georgia Code as it had not been recodified since 1933. *Harrison,* 548 F. Supp. at 112*.* As this Court is aware, a codification is an organization of laws, here statutes, that traditionally

17

uses a system of numbering to group laws so that those laws are more easily identified and understood.

During the recodification process, an unauthorized working draft of the new codification was obtained by a third party publisher and used to publish a Georgia Code Annotated. *Id*. at 113. That working draft was later changed over 1,000 times before being passed by the 1982 General Assembly, making the prior third party Georgia Code Annotated publication incorrect and possibly misleading to the citizens of Georgia. *Id*. at 113-114. In *Harrison*, the State sought copyright protection for its Official Code of Georgia Annotated, including its statutes, in order to prevent third parties from publishing incorrect statutory language and harming Georgia citizens. *Id*. at 114-115. The court correctly did not grant the State copyright protection for its statutes, noting that it was not necessary because the citizens of Georgia could rely on the accuracy of the State's own publication of the laws and that any citizen using a third party publication did "so at his peril if there is any inaccuracy in that publication or any discrepancy between what the [State] published and the [third party had] published." *Id*. at 115.

Accordingly, the State was not required to issue an official codification of its laws, but did so in an effort to better inform its citizens. The State could have issued its official codification without annotations, but again, the State's interest was and is to help its citizens understand the laws of Georgia, so those annotations

18

were included. The State further devised a low cost method for creating an annotated code publication by partnering with a non-government publisher. Under the Commission's agreement with its current publisher, Lexis, the publisher bears the costs of publication in exchange for the exclusive right to sell the Official Code of Georgia Annotated and the right to a share of the profits from those sales. Doc. No. 33-1 ¶ 77, Ex. 2, Doc. No. 30-4 § 8.1. The agreement regulates the cost of the OCGA Works, requires internet distribution of the Georgia Code, and requires distribution of CD-ROM versions of the OCGA Works to many public libraries within the State. Doc. No. 30-4 §§ 2.8(b), 5, 4.2 and Ex. C; Doc. No. 33-1 ¶ 66.

Public Resource labels this agreement "unusual," but unusual or not, it reflects the success of the Georgia General Assembly in providing tangible benefits—annotations that assist in understanding the Georgia statutes—to its citizens while still maintaining a small government footprint and low taxes. The ability of the State to keep the price of the OCGA low for the benefit of the citizens of Georgia was an important consideration of the Commission when entering the contract with Lexis. Doc. No. 33-1 ¶ 62. The price of a complete OCGA set in 2016 was $404.00 while a complete set of West's Code of Georgia Annotated cost *over six times* more—$2,570.00. *Id.* ¶ 65; Doc. No. 30-3 ¶ 9.

It is clear the State of Georgia and Commission created and published the OCGA in order to benefit the citizens of Georgia, not to hide the law from them.

Nevertheless, Public Resource and the *Amici Curiae* are of the opinion that the State of Georgia has not done enough for its citizens—arguing that the State is *required* to provide its citizens with a code labeled "official," the "official" code must include annotations (the OCGA), the OCGA must be published on the internet in its entirety, and the State, and its tax payers, must bear the entire cost of the OCGA publication. These irresponsible and uninformed opinions of third parties should not dictate how the sovereign State of Georgia provides benefits to its citizens.

## B.    THE DISTRICT COURT CORRECTLY FOCUSED ON THE COPYRIGHTABILITY OF A SUBSET OF THE ANNOTATIONS—THE JUDICIAL DECISION SUMMARIES

In order to establish a case of direct copyright infringement, Commission must demonstrate that 1) it owns a valid copyright in the allegedly infringing works and 2) Public Resource copied the protected elements of the works. *Peter Letterese & Assocs. v. World Inst. Of Scientology Enters., Int'l*, 533 F.3d 1287, 1300 (11th Cir. 2008) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Public Resource admitted to copying the printed OCGA Works in their entireties, front and back covers included (Doc. No. 17 ¶¶ 34, 36, 38–41, 46, 48–50, 52, 54, 55, 63–65, 79). Public Resource has further conceded that the State of Georgia holds copyright registrations for the annotations in the OCGA Works (*Id.* ¶ 17). Both parties agree that the statutory portions of the OCGA are

not subject to copyright as is reflected in the registrations themselves. *Id*. ¶ 45.

Accordingly, the sole issue appealed by Public Resource in relation to copyright

infringement is whether the non-statutory material, the annotations, are

copyrightable. Appellant Opening Brief ("Opening Brief") at 16.

The district court correctly held that Public Resource bears the burden of

demonstrating that the elements it copied in the OCGA Works are not

copyrightable. Doc. No. 44 p. 9 (citing *Latimer v. Roaring Toyz, Inc*., 601 F.3d

1224, 1233 (11th Cir. 2010); 17 U.S.C. § 410(c)) ("A certificate of copyright

registration made within five years after first publication of the work constitutes

"*prima facie* evidence of the validity of the copyright and of the facts stated in the

certificate."). The district court also correctly focused on the copyrightability of the

judicial decision group of annotations in holding that Public Resource did not meet

its burden. Doc. No. 44 at 11. Public Resource copied *all* of the non-statutory

elements including annotations in each OCGA Work. Accordingly, to meet its

burden, Public Resource had to demonstrate that *each* of the elements it copied

were not protectable by copyright. *Bateman v. Mnemonics, Inc*., 79 F.3d 1532,

1541 (11th Cir. 1996) (accused infringer must prove "the portion of the copyright

work actually taken is unworthy of copyright protection").

Likely because it copied multiple thousands of different annotations, Public

Resource did not provide evidence regarding the uncopyrightability of each of the

specific annotations that it copied. Public Resource instead generally argued the uncopyrightability of entire groups of annotations, one of those groups being the judicial decision summaries.[2] Based on the lack of evidence proffered by Public Resource, it was appropriate for the district court to focus on one type of annotation in its originality and copyrightability findings. Once the district court determined that one of the groups of annotations was copyrightable, Public Resource failed to meet its burden to identify a dispute as to any material fact that the OCGA is not copyrightable.

## C.    THE OCGA JUDICIAL DECISION SUMMARIES ARE COPYRIGHTABLE

### 1.    The OCGA judicial decision summaries are original and creative.

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). The term "original" merely requires "that the work was independently created by the author (as opposed to copied from other works)" and that it possess "more than a *de minimis* quantum of creativity." *See Feist*, 499 U.S. at 345, 363. Copyright protection is provided "no matter how crude, humble or obvious [the work] might be." *Id*. at

---

[2] *See* Doc. No. 29-2, pp. 11–12 (arguing in its motion for summary judgment that merger doctrine precluded copyrightability of OCGA in general but identifying no material fact in support); Doc. No. 33, pp. 8–12 (arguing in opposition to Commission's motion for summary judgment that the OCGA in general is not sufficiently original or creative because of merger and because Commission's publication manual dictated the "overall selection and arrangement" such that they did not originate with Lexis).

345-46. This originality can not only be found in text, but also in a compilation of facts. *Id*. at 348. A compilation copyright is inevitably thin and covers the original selection, coordination or arrangement of facts, but not the underlying facts themselves. *Id*. at 349. In *Feist*, an alphabetization of names and addresses in a white pages telephone directory did not meet the *de minimis* amount of creativity required for a compilation because alphabetization was "an age-old" practice that was expected in a telephone directory. *Id*. at 363.

The OCGA judicial decision summaries are original (independently created by the author) and meet the *de minimis* quantum of creativity required by *Feist*. Commission has demonstrated that the judicial summaries in all of the OCGA Works are created using a lengthy process of selection, analysis and summarization. Doc. No. 33-1 ¶¶ 78-81. The layered and subjective decision making process used to create these annotations results in original and creative judicial decision summaries that are distinct from those generated by West Publishing. *Supra* section II.A., Doc. No. 17 ¶ 81, Doc. No. 41-1 ¶ 4. The creativity required for a judicial decision summary far exceeds the mere alphabetization in *Feist*, making these elements of the OCGA original, creative, and copyrightable. *See also West Publ'g Co. v. Mead Data Cent., Inc*., 799 F.2d 1219, 1227 (8th Cir. 1986) (holding that "West's case arrangements easily meet this standard.")

The case of *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 674 (2d Cir. 1998), has not held to the contrary. There, the court only found that the following elements of a judicial summary lacked the requisite originality: 1) arrangement of information specifying the parties, court and date of decision, 2) selection and arrangement of attorney information, 3) arrangement of subsequent procedural information, and 4) parallel and alternative citations. *Id.* at 681. Finally, Public Resource itself admits that the judicial decision summary annotations would be copyrightable if included in an unofficial reporter. Doc. No. 33-1, Doc. No. 17-4, p. 2.

There is no dispute of material fact that the OCGA annotations are original and embody a modicum of creativity, and this Court should affirm that finding.

2.   The merger doctrine is inapplicable to the OCGA judicial decision summaries.

Under the doctrine of copyright merger, "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *BUC Int'l Corp. v. Int'l Yacht Council Ltd*., 489 F.3d 1129, 1142 (11th Cir. 2007) (internal quotation marks omitted). Judge Tjoflat illustrated the doctrine well when he explained:

> To illustrate this point, imagine the symbol often used on public signs displaying a circle with a diagonal line crossed through it. When, for example, an image of a cigarette is centered in the middle of the circle

> with the line through it, this visual sign expresses the idea that smoking is not allowed. This same symbol is used in a wide variety of contexts to express that something is prohibited, e.g., no swimming, no food or drink, no cell phone. Since there are effectively only a few ways of visually presenting the idea that an activity is not permitted, copyright law would not protect the expression in this case, i.e., the circle with the line through it.

*Id*. The first step in determining whether the merger doctrine applies is to identify the "idea" and the "expression." *Id*. The "idea" should not be narrowly tailored to fit the expression at issue as this would "swallow up" the merger doctrine and it would become the rule rather than the exception. *Id*. at 1144. In *BUC International*, the Eleventh Circuit defined the idea broadly as presenting yacht owners information about boats when the compilation at issue provided information about yachts for sale. *Id*. The Court held that the merger doctrine did not preclude copyright in section headings such as "mechanical equipment" and "accommodations" in the compilation because different headings were selected for different yacht listings, and "BUC'S selection of section headings did not merge with the larger idea of describing a yacht." *Id*.

Here, the "idea" of the OCGA annotations is providing information about the statutes of Georgia. The OCGA annotations simply do not limit expression of that idea. Public Resource fails to even identify the "idea" at issue and merely argues that some judicial decision summaries in the OCGA and West's Code Annotated "home in on the same facts." Opening Brief at 26. But homing in on the

25

same facts is not the test under the copyright merger doctrine—as indicated in

*BUC International*, the test is whether a copyright in the expression would

preclude another's expression of the entire broad idea. Public Resource's own

examples regarding Section 50-2-1 of the Georgia Code demonstrate that there is

no merger because each of the OCGA's and West's summaries regarding the same

judicial decision are different and can be separately copyrightable as such. Doc.

No. 29-1 ¶¶ 46-51.

The district court correctly found that "the mere fact that the judicial

summaries in the O.C.G.A. are distinctly different from corresponding annotations

in West's Code Annotated belies the applicability of the merger doctrine." Doc.

No. 44 at 13.

### D. THE OCGA ANNOTATIONS ARE PROTECTABLE ELEMENTS WITHIN THE OCGA

There is no disagreement between the parties as to the uncopyrightability of

the law. The law cannot be copyrighted and Commission does not argue otherwise.

The true question at hand is whether the State of Georgia can hold a copyright in

the non-statutory protectable elements such as the annotations in the OCGA.

Public Resource argues that there are no protectable elements in the OCGA

because copyrightability of the OCGA must be considered based on the work as a

whole—that the statutory material in the OCGA renders the entire work

uncopyrightable. Several of the amicus briefs make a further argument (one now

largely ignored by Public Resource) that the OCGA annotations are the law, and

therefore uncopyrightable. The district court rejected each of these arguments and

correctly held that the OCGA annotations are copyrightable. Doc. No. 44 at 11-13.

1.    <u>Judicial precedent requires that copyrightability is considered with respect to the protectable elements within a work.</u>

Public Resource argues that the copyrightability of the annotations in the

OCGA is an all-or-nothing proposition; however, neither Public Resource nor the

*Amici Curiae* have pointed to a single case that supports this all-or-nothing

approach. Case law makes clear that copyrightability is considered with respect to

the copyrightable elements within a work. *Peter Letterese*, 533 F.3d at 1300 ("To

make out a prima facie case of copyright infringement, a plaintiff must show that

(1) it owns a valid copyright in the book and (2) defendants copied protected

elements from the book"); *MiTek Holdings, Inc. v. Arce Eng'g, Inc*., 89 F.3d 1548,

1554 (11th Cir.1996) ("*Feist's* second prong . . . entails proof of whether, as a

mixed issue of fact and law, those elements of the [copyrighted work] that have

been copied are protected expression . . . ."); *Feist*, 499 U.S. at 348 (establishing

that copyright is available for a work's compilation (selection, coordination or

arrangement) "even [when the work] contains absolutely no protectable written

expression, only facts.").

The Supreme Court has further confirmed that the protectable elements

analysis should be employed even with respect to a state-approved judicial

decision reporter. *Callaghan*, 128 U.S. at 650 ("The general proposition that the reporter of a volume of law reports can obtain a copyright for it as an author, and that such copyright will cover the parts of the book of which he is the author, although he has no exclusive right in the judicial opinions published, is supported by authority.")

Public Resource fails to understand the concept of "protectable elements" and asserts that Commission has claimed that the OCGA constitutes "multiple works" and that the district court erred in accepting that claim. Opening Brief at 19. Commission does not claim, nor did the district court accept, that the OCGA Works comprise multiple works. Each OCGA volume and supplement is a single work. The district court correctly found that there are protectable elements in the OCGA Works and that Public Resource copied those protectable elements, which was unquestionable since Public Resource copied the Works in their entireties. The district court correctly then analyzed if the protectable elements in the OCGA Works should be stripped of their copyrightability—concluding that they should not. Doc. No. 44 at 11, 14.

2.    This Court should not strip the OCGA annotations of their copyrightability.

  i. *There is no state-created right of Georgia's citizens to the annotations.*

Public Resource and the *Amici Curiae* fail to articulate a public policy or other argument that would support a watershed holding by this Court that denies copyrightability of official or state-approved materials such as annotations on the basis that the material is published with the law. Although authored by the State and contained within one publication of the laws of Georgia, the OCGA annotations are not the law. They are merely provided as an additional benefit to the citizens of Georgia. The State of Georgia's Constitution does not require the State to issue an "official" code publication, nor does it require that such publication contain annotations. The General Assembly only decided to publish an official code with annotations in 1982, and such was the State's first recodification of its laws since 1933. *Harrison,* 548 F. Supp. at 112.[3]

  ii. *Official state documents are copyrightable*.

Although publications authored by the federal government are not copyrightable under 17 U.S.C. § 105, there is no similar prohibition in relation to

_____

[3] There is also no state law that prohibits the state from holding a copyright in the OCGA annotations. *See, e.g., Microdecisions, Inc. v. Skinner*, 889 So. 2d 871, 876 (Fla. 2d Dist. App. 2004) (holding that the Florida public records law prevented a county property appraiser from holding a copyright in Geographic Information Systems (GIS) maps).

works authored by states. The U.S. Copyright Office even declares that official

state annotations are copyrightable as long as those annotations do not have the

force of law:

> A work that does not constitute a government edict may be registered, even if it was prepared by an officer or employee of a state, local, territorial, or foreign government while acting within the course of his or her official duties. For example, the Office may register a tourist magazine written and published by Arizona's department of tourism or a map created and published by the public transit authority for the city of Detroit. <u>Likewise, the Office may register annotations that summarize or comment upon legal materials issued by a federal, state, local, or foreign government, unless the annotations themselves have the force of law</u>. *See* Chapter 700, Section 717.1.

*Compendium of U.S. Copyright Office Practices* § 313.6(C)(2) (3d ed. 2014)

(emphasis added). As discussed in section V.E. *infra*, the OCGA annotations do

not have the force of law, and therefore, fall within the group of materials that can

be copyrighted by a state. The official or state-approved nature of the OCGA does

not render the annotations therein uncopyrightable.

> ### iii.    *The inclusion of law in an official state document does not render it uncopyrightable.*

The inclusion of law in an "official" or state-approved publication also does

not render the OCGA annotations uncopyrightable. In *Callaghan v. Myers*, the

Supreme Court held that annotations of judicial decisions are copyrightable when

included in a publication containing the law as created by the state's "official

reporter." *Callaghan,* 128 U.S. 617, 623, 645-46, 649-50 (1888). The Court

specifically rejected the argument that the copyrightable material in a reporter was "public and common property, forming part of the law of the state" because it was created by the state's "official reporter." *Id*. at 623, 647 ("Even though a reporter may be a sworn public officer, appointed by the authority of the government which creates the court of which he is made the reporter, and even though he may be paid a fixed salary for his labors . . . he is not deprived of the privilege of taking out a copyright which would otherwise exist.").[4]

There is further no due process violation that is created by the inclusion of law in the OCGA. With respect to notice of the law, "[a]ll the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke*, 423 U.S. 48, 50 (1975). The citizens' fundamental right to notice and fair warning of the law underlies the prohibition of copyright in the law itself. *See, e.g*., *Banks v. Manchester*, 128 U.S. 244, 253 (1888) (finding that judicial decisions were not copyrightable because the law must be "free for publication to all."); *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 668 (1834) (holding that judicial decisions, judge made law, cannot be copyrighted); *Davidson v. Wheelock,* 27 F. 61 (Minn. Cir. Ct. 1866) (holding that a state's statutes and constitution are not copyrightable); *Peter Veeck v. Southern*

---

[4] Notably, the district court correctly relied on the holding in *Callaghan* as well as several of Georgia's laws to support its holding that the OCGA annotations are copyrightable. The district court did not rely solely on the Copyright Compendium for its holding, and there was no legal error as suggested by Public Resource.

31

*Bldg. Code Congress Int'l, Inc.*, 293 F.3d 791, 804-805 (5th Cir. 2002) (holding that model building codes incorporated into city building codes were uncopyrightable as the law).

Yet the Supreme Court has recognized that the law and annotations of the law are distinct, and that a copyright in the annotations does not preclude notice and fair warning of the laws. *Wheaton*, 33 U.S. (8 Pet.) at 622 ("compilations [of law] . . . may be of great utility, but they are not the law. Exclude or destroy them, and the law and the knowledge of it still exists."). This holds true even when the law and annotations of the law are found within a single state-approved work. *Callaghan*, 128 U.S. at 623, 645-46, 649-50. Other courts have similarly held that law-related official state documents are copyrightable because the copyright does not prevent fair warning of the laws. *County of Suffolk, New York v. First Am. Real Estate Sols.*, 261 F.3d 179, 194-95 (2d Cir. 2001) (finding official county tax maps were copyrightable by the county because, although the tax maps were used by the county to assess tax amounts, the tax maps themselves created no legal obligations and the citizens of the county otherwise had access to and fair warning of the laws).

Even when states have required a citizen's consideration of "official" or "state-approved" non-statutory materials in order to comply with the laws, thus getting closer to due process fair warning implications, courts have held that the

32

non-statutory materials are copyrightable. *CCC Info. Servs. v. Maclean Hunter Mkt. Reports, Inc*., 44 F.3d 61, 73 (2d Cir. 1994) (holding that a state law's requirement to consult a Red Book to determine a vehicle's value did not render the Red Book uncopyrightable); *Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*, 121 F.3d 516, 519 (9th Cir. 1997) (holding that a state law's requirement to consult American Medical Association Model Codes did not render the Codes uncopyrightable), *opinion amended by* 133 F.3d 1140 (9th Cir. 1998). Only when courts have found that materials are directly incorporated into the law, have those incorporated materials been found to be uncopyrightable. *Peter Veeck,* 293 F.3d at 804-805 (holding that model building codes that were incorporated into city building codes were uncopyrightable as the law). In *Peter Veeck*, the Fifth Circuit distinguished un-incorporated materials, stating that "copyrighted works do not 'become law' merely because a statute refers to them" and specifically noted that state-approved school books should not be stripped of copyrightability merely because they were state-approved. *Id*.

Here, the copyright in the OCGA annotations in no way prevents fair warning of the laws of Georgia. The citizens of Georgia have ample notice of Georgia's laws because they are generally available to them by the exercise of simple diligence—through the *Georgia Laws* publications, through the Georgia Code provided by the State on the Internet through links on both the Georgia

House and Senate websites, and through the wide availability of the entire OCGA for viewing, such as at public libraries around the state. Doc. No. 33-1 ¶¶ 66, 67. Indeed, between 2007 and 2015, the Georgia Code was accessed via the Georgia General Assembly websites almost 79 million times. Doc. No. 33-1 ¶ 68. There is simply no proof that Commission's copyright in the OCGA annotations has or ever will deprive the citizens of Georgia of fair warning or notice of the laws. Both Public Resource and the *Amici Curiae* make much of the fact that the Georgia Code, available through links on both the Georgia House and Senate websites, does not contain the term "official." Yet the mere location of the links on the official Georgia House and Senate websites (http://www.legis.ga.gov, http://www.house.ga.gov, and http://www.senate.ga.gov) indicates that the Georgia Code accessible through those websites is official.

There are no valid due process considerations here. There is no requirement or need for the citizens of Georgia to consult the OCGA annotations in order to comply with the laws of Georgia. Public Resource itself states that "only the laziest student or lawyer would rely on a judicial summary . . . without reading the actual judicial decision, which is in the public domain." Doc. No. 29-2 at 23-24.  The OCGA annotations are benefits that the State of Georgia may or may not provide to its citizens. If statutory annotations were necessary for fair warning and notice of the laws, then it seems that all states would be required under the Due Process

Clause to create state-approved annotations and provide them to their citizens,

which is not the case.

*iv. OCGA creation relies upon copyright protection incentives.*

A final consideration of courts analyzing the copyrightability of official state

documents is "whether the entity or individual who created the work needs an

economic incentive to create or has a proprietary interest in creating the work."

*County of Suff*olk, 261 F.3d at 194 (citing *Practice Mgmt.*, 121 F.3d at 518–19;

*Bldg. Officials & Code Adm. v. Code Tech., Inc*., 628 F.2d 730, 734-35 (1st Cir.

1980)).

In *County of Suffolk*, the Second Circuit recognized that judges do not

require an incentive to write judicial opinions because they receive a salary to

prepare such opinions. *Id*. at 194 (explaining one reasoning for the holding in

*Banks v. Manchester*). Similarly, legislators do not require an incentive to enact

laws. *Id*. However, "[m]any works of government, . . . due to their expense, may

require additional incentives in order to justify their creation." *Id*. The court noted

that the tax maps could be just such an expensive work of government requiring a

copyright incentive, but ultimately remanded due to lack of argument and evidence

on the subject. *Id*.

Here, the OCGA annotations are not the law and their creation has been and

continues to be directly incentivized by the availability of copyright protection for

35

those annotations. The General Assembly's initial decision to create the OCGA

hinged upon the publisher bearing the OCGA creation costs in return for an

exclusive copyright license and share of the profits. *See supra* sections II.A. and

V.A. The OCGA is a voluntary but extensive fifty-two volume publication created

by the State, the publication of which is directly incentivized by and reliant upon

copyright protections for the annotations therein.

In sum, the copyrightability of the OCGA annotations should be determined

on the same basis as all other works—the protectable elements within the work.

The fact that the OCGA is an official, state- authored work that contains

uncopyrightable law does not render all else in the OCGA uncopyrightable.

### E.    THE OCGA ANNOTATIONS ARE NOT THE LAW

Although Public Resource now states that there is no dispute that the

General Assembly does not individually enact the annotations as laws (Opening

Brief at 21), several of the amicus briefs have carried forward Public Resource's

previous arguments in the district court that the OCGA annotations and/or the

entire OCGA are uncopyrightable as law. Public Resource also continues to cite a

multitude of cases that find materials are not copyrightable because they have the

force of law. *See supra* section V.D.2.iii.

Neither the OCGA annotations nor the entire OCGA are the law. The

Georgia General Assembly has passed not just one, but three different statutes to

make clear that the OCGA contains both law and commentary compiled into a single publication. OCGA § 1-1-1 distinguishes the statutory and non-statutory commentary portions of the OCGA:

> The statutory portion of the codification of Georgia laws prepared by the Code Revision Commission and the Michie Company pursuant to a contract entered into on June 19, 1978, is enacted and shall have the effect of statutes enacted by the General Assembly of Georgia. The statutory portion of such codification shall be merged with annotations, captions, catchlines, history lines, editorial notes, cross-references, indices, title and chapter analyses, and other materials pursuant to the contract and shall be published by authority of the state pursuant to such contract and when so published shall be known and may be cited as the "Official Code of Georgia Annotated."

OCGA § 1-1-7 first enacted as a session law in 1982 further states:

> Unless otherwise provided in this Code, the descriptive headings or catchlines immediately preceding or within the text of the individual Code sections of this Code, except the Code section numbers included in the headings or catchlines immediately preceding the text of the Code sections, and title and chapter analyses do not constitute part of the law and shall in no manner limit or expand the construction of any Code section. All historical citations, title and chapter analyses, and notes set out in this Code are given for the purpose of convenient reference and do not constitute part of the law.

Finally, the State of Georgia session laws include the following:

> Annotations; editorial notes; Code Revision Commission notes; research references; notes on law review articles; opinions of the Attorney General of Georgia; indexes; analyses; title, chapter, article, part, and subpart captions or headings, except as otherwise provided in the Code; catchlines of Code sections or portions thereof, except as otherwise provided in the Code; and rules and regulations of state agencies, departments, boards, commissions, or other entities which are contained in the Official Code of Georgia Annotated *are not enacted as statutes by the provisions of this Act*. (emphasis added)

37

2014 Ga. Laws 866 § 54, 2015 Ga. Laws 5 § 54, 2016 Ga. Laws 864 § 54, 2017 Ga. Laws 774 § 54.

The power to enact law is conferred solely upon the General Assembly (Ga. Const. Art. 3, § 1, ¶ 1) and neither the annotations nor the entirety of the OCGA content is voted upon and enacted by the General Assembly. Accordingly, this Court should affirm the district court's holding that the entire OCGA is not the law.[5]

## F.    DEFENDANT'S COPYING WAS NOT A FAIR USE

In deciding whether Public Resource's copying of the OCGA Works constitutes fair use, this Court should consider the following four factors: 1) the purpose and character of the allegedly infringing use; 2) the nature of the copyrighted work; 3) the amount of the copyrighted work used; 4) and the effect of the use on the potential market or value of the copyrighted work. 17 U.S.C. § 107. The four statutory factors are not to be treated in isolation from one another, but are to be weighed together, in light of the purposes of copyright. *Katz v. Google*, 802 F.3d 1178, 1181-82 (11th Cir. 2015) (citing *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 578 (1994)). Since fair use is an affirmative defense, Public Resource bears the burden of proof in demonstrating that it applies. *Cambridge*

---

[5] Public Resource's arguments regarding the outsourcing of the preparation of the OCGA to Lexis being a means to circumvent U.S. copyright law are only relevant if this Court finds that the OCGA annotations are the law. States are permitted to hold copyright in state-authored works.

*Univ. Press v. Patton*, 769 F.3d 1232, 1259 (11th Cir. 2014). This Court should affirm the district court's finding that Public Resource has not met its burden.

    1.    <u>Factor One.</u>

With respect to factor one, the Court should consider 1) whether the use serves a nonprofit educational purpose, as opposed to a commercial purpose; and 2) the degree to which the use is a "transformative" one. *Peter Letterese*, 533 F.3d at 1309. Public Resource deliberately copied the entirety of 114 OCGA volumes and supplements and then notified the State of Georgia of its actions in order to challenge the current state of the law. Doc. No. 17 ¶¶ 34, 36, 38–41, 46, 48–50, 52, 54, 55, 63–65, 79. Public Resource took similar actions with the states of Mississippi and Idaho and the District of Columbia. Doc. No. 33-1 ¶ 75. Deliberate copying for the purpose of invoking a lawsuit cannot be considered either transformative or a non-profit educational purpose—even when Defendant declares that its purpose in deliberately copying the OCGA annotations was to educate the public about the law.

        i.    *Public Resource's use does not serve a nonprofit educational purpose.*

Public Resource is not a non-profit educational institution like a university or college whose teaching purpose is clear. *See Cambridge*, 769 F.3d at 1264 (use "in the teaching of university courses is clearly for educational purposes.")  Public Resource argues that by copying the OCGA annotations in their entirety, it

"teaches" the public about the law. Opening Brief at 33. Public Resource's argument turns the fair use educational analysis on its head since, if accepted, anyone and everyone could claim its benefits by espousing a teaching/educational purpose in relation to its copying of any work. Public Resource is not a teacher, and its use is not educational. Education requires more than copying a work to provide it to the public free of charge. Public Resource provides no education by doing so.

If Public Resource truly wanted to educate the public about Georgia's laws, it could copy the publicly available Georgia Code, create its own annotations if it so desired, and disseminate the Code and its annotations to the public at no charge. Yet Public Resource's true impetus for its actions and this case is its perception of a lack of internet expertise on the part of the government at all levels and in multiple countries.

In its factor one analysis, the district court correctly noted that "the crux of the profit/nonprofit distinctions in not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Doc. No. 44 at 16-17 (citing *Harper & Row*, 471 U.S. at 562). The district court held that Public Resource's use was neither nonprofit nor educational because Public Resource's

business is the copying and distribution of government documents and it receives

grants and contributions to further that practice. *Id*. at 18.

As established by Public Resource's own admissions, Public Resource's

copying and internet distribution of government documents is not ancillary to its

business, it is the entire point of its business. Doc. No. 29-1 ¶¶ 2-5, Doc. No. 30-2

¶ 75. In its publication *10 Rules for Radicals*, Public Resource also encourages

others to copy and distribute government documents in the same manner that

Public Resource does, including explaining how to get the governmental entity to

threaten them following the copying. Doc. No. 41-1 ¶¶ 2, 3, Doc. No. 34-1 pp.

PRO-000571, PRO-000601. That publication further discusses the tactic of

disseminating documents via the internet in order to obtain irreparable harm by an

uncontrollable mass distribution. *Id*. at PRO-000586.

Public Resource is paid in the form of grants and contributions (Doc. 41-1 ¶

1), and its own *10 Rules for Radicals* publication indicates that those grants and

contributions are paid to Public Resource to help it achieve its goals (Doc. No. 34-

1 at PRO-000591). Public Resource both planned its infringement and solicited

funds for its infringement of the copyrights in the annotations in the OCGA Works

(Doc. No. 17 ¶¶ 42, 43), receiving monies as a result of those plans and

solicitations. *Id*. ¶ 78. Accordingly, Public Resource did in fact "profit from

exploiting the [copyrights in the OCGA annotations] without paying the customary

price" because it received monies that it would not have otherwise received if not for its infringement. *See Harper & Row*, 471 U.S. at 562. Both the monies solicited for the purpose of infringement and the monies it received in contributions and grants are considered profit.

Although it needed no further justification for its finding that Public Resource's use was neither non-profit nor educational, the district court also found that Public Resource "profits" through the attention and recognition it receives. Doc. No. 44 at 18. The cases on which the district court relied relating to non-monetary benefits have not been rejected by the Eleventh Circuit as Public Resource contends. *See Soc'y of Holy Transfiguration Monastery. Inc. v. Gregory*, 689 F.3d 29, 61 (1st Cir. 2012)*; Weismann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989); *Worldwide Church of God v. Philadelphia Church of God, Inc*., 227 F.3d 1110, 1117-18 (9th Cir. 2000). In *Cambridge*, the Eleventh Circuit mentioned the non-monetary benefit cases but determined that the benefit at issue there was not paying a license fee and decided that such benefit was not a profit under *Harper*. *Cambridge*, 769 F.2d at 1265. None of the other cases cited by Public Resource as support for its argument that Public Resource's activities are not commercial are instructive—none of those cases deal with a business whose central purpose is the unauthorized copying and distribution of copyrighted documents.

Accordingly, this Court should uphold the district court's findings of fact and conclusions of law with respect to Public Resource's commercial purpose.

ii.    *Public Resource's use is not transformative*.

The district court further held that Public Resource's use is not transformative. A transformative use "adds something new, with a further purpose or different character, altering the first [work] with new expression, meaning or message." *Campbell*, 510 U.S. at 579. A typical transformative work is a parody or satire that comments on an original work. *See Peter Letterese*, 533 F.3d at 1311. A work that is not transformative does not involve the free speech implications of criticism and comment and instead "merely supersede[s] the objects of the original creation." *Campbell*, 510 U.S. at 579.

Public Resource did not add new expression, meaning or message to the OCGA annotations and instead copied the entirety of each OCGA Work at issue verbatim. Although several recent cases in the Second Circuit have found verbatim copying of a work transformative, this case is very different. In both *Authors Guild v. Google, Inc*., 804 F.3d 202 (2d Cir. 2015) *cert denied*, 136 S. Ct. 1658 (2016) ("*Google Books*"), and *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014), the use was found to be transformative because, although the entire original work was copied, none (*HathiTrust*) or only a snippet (*Google Books*) of the copied works were disseminated to the public. *Google Books*, 804 F.3d at 217–18

43

(noting that "*HathiTrust* did not display to the user any text from the underlying copyrighted work" and *Google Books* provided only snippets of the work that did not amount to "revealing so much as to threaten the author's copyright interests"). No part of the verbatim copied student thesis was distributed in *A.V. ex rel v. iParadigms, LLC*. 562 F.3d 630, 633 (4th Cir. 2009) (describing that the student works were archived for comparison to other students' works in the future). The dissemination distinction is important in a transformativeness analysis because it is the dissemination of the entire work that causes the copied work to supersede the original.

Although the Second Circuit has held that dissemination of an entire sound recording was transformative, it was because the dissemination was viewed as news reporting, an accepted transformative use, because the SEC had mandated public release of the information in the recording, but it had not been so released. *Swatch Grp. Mgm't. Serv. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 82 (2d Cir. 2014). Public Resource's use is not news reporting and there is no law requiring dissemination of the OCGA annotations.

Verbatim copying of a work for the purpose of putting it in a more useful format also is not transformative. *Am. Geophysical Union v. Texaco*, 60 F.3d 913, 923-24 (2d Cir. 1994) (explaining that copyright protection in literary works subsists in the original work of authorship 'regardless of the nature of the material

objects ... in which they are embodied'"); *Infinity Broad. Corp. v. Kirkwood*, 150

F.3d 104, 108 & n.2 (2d Cir. 1998) ("a change of format, though useful, is not

technically a transformation" and "use of copyrighted material that 'merely

repackages or republishes the original' is unlikely to be deemed a fair use" (citing

Leval, Toward a Fair Use Standard, 103 Harv. L.Rev. 1105, 1111 (1990)); *Seltzer

v. Green Day, Inc*., 725 F.3d 1170, 1177 (9th Cir. 2013) ("In the typical "non-

transformative" case, the use is one which makes no alteration to the expressive

content or message of the original work."); *A&M Records, Inc. v. Napster, Inc*.,

239 F.3d 1004, 1015 (9th Cir. 2001), as amended (Apr. 3, 2001), *aff'd sub nom.

A&M Records, Inc. v. Napster, Inc*., 284 F.3d 1091 (9th Cir. 2002), and *aff'd sub

nom. A&M Records, Inc. v. Napster, Inc*., 284 F.3d 1091 (9th Cir. 2002) ("Courts

have been reluctant to find fair use when an original work is merely retransmitted

in a different medium.").

    In order for a use to be transformative, the use must serve a different

purpose than the original work. *Campbell*, 510 U.S. at 579; *Perfect 10, Inc. v.

Amazon.com, Inc.,* 508 F.3d 1146, 1165-66 (9th Cir. 2007) (holding that a search

engine purpose was different than the artistic expression purpose of the original

copyrighted picture). Public Resource's addition of metadata to the OCGA

annotations does not amount to a transformation because the copies disseminated

by Public Resource still serve the identical purpose as the OCGA—to inform

45

individuals about the Georgia statutes and the annotations related thereto. *Perfect 10* does not support Public Resource's arguments because the purpose of the copyrighted picture in *Perfect 10* was not as a literary, informative work, and Public Resource is not providing something equivalent to a Google search engine that allows the searching of millions of documents on the internet.  If the addition of metadata to a literary work were to amount to a transformative use that does not substitute for the original work, then every copyrighted literary work could be copied and published on the internet with metadata at will.

Public Resource did not transform the OCGA Works, its use was for commercial purposes, and this Court should uphold the district court's finding that factor one disfavors fair use.

### 2.    Factor Two.

An analysis of factor two requires a consideration of the factual and/or fictional nature of the original work and the unpublished nature of a work. *Cambridge*, 769 F.3d at 1268. When the "evaluative, analytical or subjectively descriptive material" dominates, factor two disfavors fair use and when the factual material dominates, factor two favors fair use. *See Cambridge*, 769 F.3d at 1270. Commission submitted evidence demonstrating the evaluative and analytical nature of the judicial decision summaries. *See supra* section II.A. Despite Public Resource having the burden of proof with respect to factor two, it failed to produce

any evidence regarding the amount of factual or subjectively descriptive material in the annotations of each OCGA Work and whether either type of material dominated.

Based on the evidence submitted, it was not clear error for the district court to find that the OCGA Work annotations contain a mix of fact and subjectively descriptive material, rendering factor two neutral. This Court should affirm the district court's factor two findings.

3.    Factor Three.

Factor three is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107. There is no question that Public Resource copied hundreds of OCGA volumes and supplements in their entirety. *See supra* section II.A. As noted by the Eleventh Circuit in *Cambridge*, "there are ample precedents that explain that excessive verbatim copying weighs against fair use under factor three." *Cambridge*, 769 F.3d at 1274.

Public Resource argues that its copying of 100% of the OCGA Work annotations does not cause factor three to disfavor fair use because it was only posting as much of the OCGA as it needed to fulfill its purpose. However, Public Resource could easily post the statutory portion alone and, in fact, has already done so: it created and distributed a structured, XML-encoded version of the OCGA that does not include any annotations. Doc. No. 41-1 ¶¶ 10–12. This Court should also

47

not accept Public Resource's argument that it needs to post the entire OCGA

Works because it wants to inform the public about the entire OCGA Works. Such

an approach would render factor three meaningless.

Public Resource's verbatim copying and distribution of the entire OCGA far

exceeds what is even arguably necessary.  The district court correctly rejected

Public Resource's arguments, and this Court should uphold its finding that factor

three disfavors fair use.

    4.    <u>Factor Four.</u>

Under factor four, the Court should consider "(1) the extent of the market

harm caused by the particular actions of the alleged infringer, and (2) whether

unrestricted and widespread conduct of the sort engaged in by the defendant would

result in a substantially adverse impact on the potential market." *Cambridge*, 769

F.3d at 1275 (internal quotation marks omitted). This factor is concerned with "use

that supplants any part of the normal market for a copyrighted work." *Harper &*

*Row*, 471 U.S. at 568.

Public Resource has the ultimate burden of proof under factor four and must

demonstrate that Commission's market would not be substantially adversely

impacted *if everyone performed the same acts of copying and distribution*

*undertaken by Public Resource*. *Cambridge*, 769 F.3d at 1275, 1279 (holding that

"the evidentiary burden on all four of its factors rests on the alleged infringer").

Commission only bears the burden to establish a market it argues as relevant. *Id.* (holding that the plaintiff there had to demonstrate the existence of a book excerpt licensing market when it argued that only the excerpt licensing market, and not the market for the whole book, was relevant to factor four).[6] Here, Commission has met its burden and established that there are three existing markets for the OCGA: printed publications, CD-ROM, and subscription services (with Public Resource itself purchasing from the first market). Doc. No. 33-1 ¶¶ 32, 65, 77; Doc. No. 41-1 ¶¶ 5–7.

Public Resource has not met its burden and established that widespread copying of the OCGA annotations followed by its dissemination on the internet by anyone and everyone would not result in a substantially adverse impact on the potential market. Public Resource did not copy small excerpts of the annotations in the OCGA Works, but instead copied hundreds of them in their entirety. When a defendant's use is nontransformative and serves the identical purpose as the copyrighted work, the threat of market substitution is great. *Cambridge*, 769 F.3d at 1275. There is no question that Public Resource's nontransformative, mirror-image copies fulfill the same purpose as, and directly substitute for, the original OCGA Work annotations—the threat of market substitution could be no greater. If

---

[6] *Cambridge* does not hold that a plaintiff must establish actual market harm in order for a court to find that factor four disfavors fair use as posited by Public Resource.

everyone could copy and distribute on the internet every volume of the OCGA in its entirety, at a minimum, there would be no market for the CD-ROM OCGA Work annotations. Since the OCGA distributed by Public Resource is also searchable and similar to that distributed via online subscription, there would also be no market for the OCGA on-line subscription. The market for the printed OCGA would also be affected because Public Resource's electronic OCGA copies look identical to the printed OCGA—including the front cover with the official State of Georgia seal—and mimic the page turning of the printed OCGA. Doc. No. 17 ¶ 37, Doc. No. 17-2.

Public Resource cites a litany of unsubstantiated facts in its factor four arguments as "support" for its argument that there would be no substantially adverse impacts on Commission's established markets if everyone copied and distributed on the internet hundreds of OCGA Work annotations. Opening Brief at 44-45. Public Resource provides no evidence to support statements such as "most libraries and law firms within Georgia will prefer to continue purchasing the printed, bound volumes for their patrons use, as they have done since the O.C.G.A. was first published." It is more likely that most law firms have moved away from printed volumes and are using either the CD-ROM or on-line subscriptions—both markets that would be directly affected if everyone already had an electronic, searchable copy of all of the OCGA volumes and supplements.

"To negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the potential market for the copyrighted work.'" *Harper & Row*, 471 U.S. at 568 (emphasis added in original). Commission has established that the infringing materials created by Public Resource fall within its established markets. If everyone had possession of those infringing materials, they would have little or no need for either the OCGA CD-ROM or the OCGA on-line subscriptions and adversely affect each of those two markets for the OCGA Works.

Finally, neither the *Google Books* nor the *Sony* case cited by Public Resource support a holding that factor four favors fair use in this case. In *Google Books*, the defendant was only distributing a small snippet of the copyrighted work and that small snippet did not substitute for the work. 804 F.3d at 224. Here, Public Resource distributes copies of the OCGA Works in their entireties, which do substitute for the OCGA Works. Further, the *Sony* case dealt with time-shifting (taping for later viewing) of television shows that were broadcast for free on public television, not sold to the public. 464 U.S. at 425, 448. (noting that "timeshifting merely enables a viewer to see such a work which he had been invited to witness in its entirety free of charge.") The time-shifting was an activity conducted entirely within the home, not a mass distribution of the television show on the internet. *Id.* at 448. There are no similarities between the in-home taping of free public

television and Public Resource's mass internet distribution of OCGA Works that are sold the public.

The district court correctly applied the facts as submitted by the parties to the relevant law and held that factor four disfavors fair use. The district court further correctly weighed all of the factors and held that since at least factors one, three and four disfavor fair use Public Resource's use was not fair as a matter of law. This Court should uphold both the district court's factor four decision as well as its overall fair use decision.

### G.    CONCLUSION

Commission respectfully submits that the district court's orders and judgments should be affirmed, including the March 23, 2017 Order, April 7, 2017 Order, and April 7, 2017 Judgment.

RESPECTFULLY SUBMITTED this 30th day of June 2017.

MEUNIER CARLIN & CURFMAN LLC

/s/*Anthony B. Askew*
Anthony B. Askew
Georgia Bar No. 025300
Lisa C. Pavento
Georgia Bar No. 246698
Warren J. Thomas
Georgia Bar No. 164714
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404) 645-7707

Email: taskew@mcciplaw.com
lpavento@mcciplaw.com
wthomas@mcciplaw.com


*Counsel for Appellee-Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,686 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as counted by Microsoft® Word 2010, the word processing software used to prepare this brief.

This brief complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2010, Times New Roman, 14 point.

/s/ *Anthony B. Askew*
Anthony B. Askew
Georgia Bar No. 025300
Dated:  June 30, 2017

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 30th day of June 2017, I have electronically filed the foregoing **BRIEF OF APPELLEE CODE REVISION COMMISSION ON BEHALF OF AND FOR THE BENEFIT OF THE GENERAL ASSEMBLY OF GEORGIA, AND THE STATE OF GEORGIA** with the Clerk of The Court using the CM/ECF system, which I understand will automatically send e-mail notification of such filing to counsel of record for this matter.

/s/*Anthony B. Askew*
Anthony B. Askew
Georgia Bar No. 025300