Case No. 17-11589

# United States Court of Appeals

*for the*

# Eleventh Circuit

CODE REVISION COMMISSION on behalf of and for the benefit of THE
GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA

*Plaintiff-Appellee*,

v.

PUBLIC.RESOURCE.ORG, INC.

*Defendant-Appellant.*

Appeal from the United States District Court
*for the Northern District of Georgia, Atlanta Division*
*Case No. 1:09-CV-02594-RWS*

**APPELLEE'S SUPPLEMENTAL APPENDIX VOLUME I**

ANTHONY B. ASKEW
LISA C. PAVENTO
WARREN J. THOMAS
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700

*Counsel for Appellee-Plaintiff*                    July 7, 2017

# APPELLEE'S SUPPLEMENTAL APPENDIX VOLUME I

## <u>INDEX</u>

| DOCKET/<br>TAB # | <u>DESCRIPTION</u> |
|---|---|
| 10 | Answer To Affirmative Defenses And Counterclaim |
| 29 | Defendant's Motion For Summary Judgment |
| 29-1 | Defendant's Local Rule 56.1 Statement Of Undisputed Material Facts In Support Of Its Motion For Summary Judgment |
| 29-2 | Defendant's Memorandum Of Law In Support of Its Motion For Summary Judgment |
| 30 | Plaintiff's Motion For Partial Summary Judgment |
| 30-2 | Plaintiff's Local Rule 56.1 Statement Of Undisputed Material Facts In Support of Its Motion For Summary Judgment |
| 30-3 | Exhibit 1 to Plaintiff's Motion For Partial Summary Judgment – Declaration of Elizabeth P. Howerton |
| 30-4 | Exhibit 2 to Plaintiff's Motion For Partial Summary Judgment – Agreement for Publication, December 27, 2006 |
| 30-5 | Exhibit 3 to Plaintiff's Motion For Partial Summary Judgment – Declaration of Anders P. Ganten |

# DKT 10

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on behalf of and for the benefit of THE GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:15-CV-02594-MHC |
| PUBLIC.RESOURCE.ORG, INC. | |
| Defendant. | |

## ANSWER TO AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Plaintiff and Counterclaim-Defendant the Code Revision Commission, on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia ("Commission"), answers the Affirmative Defenses and Counterclaim as follows:

## AFFIRMATIVE DEFENSES

The Commission denies the allegations of defendant's affirmative defenses one through ten.

## COUNTERCLAIM FOR DECLARATORY RELIEF

## NATURE OF THE ACTION

1.     The Commission admits that defendant seeks a declaratory judgment that its copying and distributing the texts of the Official Code of Georgia Annotated ("O.C.G.A") do not infringe any copyright.  The Commission denies the remaining allegations of paragraph 1.

## THE PARTIES

2.     The Commission admits that Public Resource is a California nonprofit corporation with its indicated principal place of business.  The Commission lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 2 and therefore denies them.

3.     The Commission admits that Public Resource has undertaken to make many documents widely available to the public on a noncommercial basis. The Commission lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 3 and therefore denies them.

4.     The Commission admits that the Georgia Code Revision Commission acts on behalf of and for the benefit of the General Assembly of Georgia and the

State of Georgia pursuant to and within the statutory provisions of Title 28,

Chapter 9 of the O.C.G.A.

## JURISDICTION AND VENUE

5.       The Commission admits that this Court has subject matter

jurisdiction over the counterclaim as alleged in paragraph 5 except to the extent

that state sovereign immunity applies to the allegations of that counterclaim.

6.       Admitted.

7.       Admitted.

8.       Denied.

9.       Admitted.

## FACTS

10.       The Commission admits the first sentence of this paragraph. With

respect to the allegations of falsity in the second sentence of this paragraph, the

Commission denies that any allegations of its original complaint are false. The

Commission lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the remaining allegations in paragraph 10 and therefore denies

them.

11.       The Commission admits that during 2004 Mr. Malamud had a

contract to provide consulting services to the Internet Engineering Task Force. The

Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 11 and therefore denies them.

12.     The Commission admits that Mr. Malamud is a founder of the Internet Systems Consortium.   The Commission admits that the Internet Systems Consortium: (1) operates the F-Root domain name server and (2) produces the BIND domain name system software. The Commission admits that the book "A World's Fair for the Global Village" (ISBN 978-0262133388) was authored by Mr. Malamud, published by MIT Press in 1997, and includes a foreword by the Dalai Lama. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 12 and therefore denies them.

13.     The Commission admits that a letter from The Hon. Lee H. Rosenthal to Mr. Malamud, dated July 16, 2008, is attached as Exhibit A to defendant's counterclaim. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 13 and therefore denies them.

14.     The Commission admits that Carl Malamud campaigned for the position of Public Printer of the United States. The Commission lacks knowledge

or information sufficient to form a belief about the truth or falsity of the remaining

allegations of paragraph 14 and therefore denies them.

15.    The Commission admits that on December 16, 2009, Mr. Malamud

testified before the Subcommittee on Information Policy, Census, and National

Archives of the House Committee on Oversight and Government Reform, and that

Mr. Malamud's prepared statement for that hearing may be viewed at

http://www.archives.gov/era/acera/pdf/malamud-testimony.pdf. The Commission

admits that the Office of the Federal Register is one of the offices within the

National Archives and Records Administration. The Commission denies the

remaining allegations of paragraph 15.

16.    The Commission admits that a letter dated January 5, 2011, from

Reps. John Boehner and Darrell Issa to Mr. Malamud is attached to the

counterclaim as Exhibit B and available at the alleged URL. The Commission

lacks knowledge or information sufficient to form a belief about the truth or falsity

of the remaining allegations of paragraph 16 and therefore denies them.

17.    The Commission admits that Public Resource brought an action

against the IRS under the Freedom of Information Act, Civil Action No. 3:13-cv-

02789-WHO, in the Northern District of California, and that the district court

entered judgment in favor of Public.Resource.Org on the claims alleged in that

complaint. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 17 and therefore denies them.

18. The Commission admits that Mr. Malamud was at one time a member of the Administrative Conference of the United States (ACUS) but denies that Mr. Malamud was appointed on the date alleged in paragraph 18. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 18 and therefore denies them.

19. The Commission admits that Mr. Malamud testified regarding the "Scope of Copyright Protection" before the U.S. House of Representatives Judiciary Committee, Subcommittee on Courts, Intellectual Property, and the Internet, on January 14, 2014, that he submitted a petition with 115 signatories, and that the petition proposed the amendment to the Copyright Act as quoted in paragraph 19. The Commission denies the remaining allegations of paragraph 19.

20. The Commission admits the first sentence of paragraph 20. The remainder of this paragraph consists of legal arguments and conclusions that require no response.

21. The Commission admits that Public Resource acquires copies of documents containing government records, legal decisions, tax filings, statutes, and

regulations, and posts them online to be accessed without monetary cost to readers. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 21 and therefore denies them.

22.     The Commission admits that Public Resource operates the websites public.resource.org, law.resource.org, house.resource.org, bulk.resource.org and others.  On information and belief, Public Resource does not operate the website yeswecan.org and therefore the Commission denies this allegation.

23.     The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 23 and therefore denies them.

24.     The Commission admits that Public Resource reformats at least some of the documents containing laws it posts. The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 24 and therefore denies them.

25.     The Commission admits that Public Resource's reformatting includes putting some documents containing codes into standard HTML format. The Commission lacks knowledge or information sufficient to form a belief about the

truth or falsity of the remaining allegations of paragraph 25 and therefore denies them.

26.    The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 26 and therefore denies them.

27.    The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 27 and therefore denies them.

28.    The Commission admits that the growth of the Internet provides an opportunity for government to inform some of its citizens about the laws they must follow in carrying out their daily activities.  The Commission denies the remaining allegations in paragraph 28.

29.    Admitted.

30.    The Commission lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 30 and therefore denies them.

31.    The Commission admits that Public Resource offers for sale items bearing its logo, such as stickers, T-shirts and books by its founder.  The Commission lacks knowledge or information sufficient to form a belief about the

8

truth or falsity of the remaining allegations in paragraph 31 and therefore denies

them.

32.    The Commission admits that it is common for bills introduced in the

Georgia General Assembly ("Legislature") to begin, "An Act . . . To amend Article

. . . Chapter . . . of Title . . . of the Official Code of Georgia Annotated." However,

the Commission lacks knowledge or information sufficient to form a belief about

the truth of the allegation that "every single bill" so introduced recites the same

language. The remaining allegations of paragraph 32 are admitted.

33.    The Commission admits that the Legislature is assisted by Plaintiff-

Counterclaim Defendant in publishing the laws enacted by the Legislature.

Plaintiff-Counterclaim Defendant does not assert copyright in the O.C.G.A.

statutory text because the enacted laws are not copyrightable subject matter and

should be free to the public.

34.    The Commission admits that it claims copyright and asserts copyright

in original and creative works added by Mathew Bender and Company, a member

of the LexisNexis Group, a division of Reed Elsevier Properties, Inc.

("LexisNexis"), to the Georgia statutory text.  These original and creative works

include the addition of single-paragraph summaries of judicial decisions

interpreting sections of the Code, summaries of Opinions of the Attorney General

9

of Georgia, summaries of research references related to the O.C.G.A., summaries

of cross references, Editor's notes, and summaries of Code Commission Notes, all

selected, coordinated or arranged by LexisNexis. The Commission admits that the

judicial decisions themselves are not copyrightable subject matter.  The

Commission denies that the judicial decision summaries are derivative works. As

to the fifth sentence of paragraph 34, the Commission admits that the quoted

language is an excerpt from a Copyrighted Judicial Decision Annotation

accompanying O.C.G.A. §§ 1-1-1 and 1-1-2. As to the sixth sentence of paragraph

34, the Commission: (1) admits that Exhibit C contains annotations to O.C.G.A.

§ 1-1-1; (2) admits that Exhibit D contains a portion of the statutory text for

O.C.G.A. § 1-1-10 but denies that Exhibit D contains any annotations to O.C.G.A.

§ 1-1-10; and (3) admits that the O.C.G.A pages shown in Exhibits C and D are

available on the defendant's website at the URL alleged in paragraph 34. The

Commission denies the remaining allegations of paragraph 34.

34.    Admitted.

36.    The Commission admits that to access the statutory text and

numbering in the O.C.G.A. via the website link found on the State of Georgia

website, www.legis.ga.gov, one must accept the terms of use for the LexisNexis

site ("LexisNexis Terms of Use") and that the LexisNexis Terms of Use do not

10

apply to the O.C.G.A. statutory text and numbering.  The Commission denies

sentence 2 of paragraph 36.  The Commission admits the language of sentence 3 of

paragraph 36 and that the language of this sentence does not apply to the statutory

text and numbering.  The Commission admits that Exhibit E is a copy of the

LexisNexis Terms of Use, and that these Terms of Use indicate that restrictions on

unpermitted uses extend to all commercial, non-profit and public purposes, but

these restrictions do not apply to the statutory text and numbering.  The

Commission denies the remaining allegations in paragraph 36.

37.     The Commission admits that the O.C.G.A statutory text and

numbering that is available for free on the LexisNexis site does not contain the

Annotations, such as the Judicial Summaries, summaries of Code Revision

Commission Notes, summaries of Attorney General Opinions, and compilations

thereof. The Commission denies the remaining allegations of paragraph 37.

38.     Admitted.

39.     The Commission admits that Exhibit G and the alleged URL contain a

LexisNexis marketing page for the print version of the Official Code of Georgia

Annotated wherein the term "official" is included within boldface and underlined

type. The Commission denies the remaining allegations of this paragraph,

including the defendant's characterizations of the content of that marketing page.

40.     Denied.

## **COUNT I**

41.     In response to this paragraph, the Commission incorporates its

responses to the allegations of the proceeding paragraphs as if fully set forth in this

paragraph.

42.     This paragraph consists of legal arguments and conclusions that

require no response.

43.     This paragraph consists of legal arguments and conclusions that

require no response.

44.     This paragraph consists of legal arguments and conclusions that

require no response.

45.     This paragraph consists of legal arguments and conclusions that

require no response.

46.     The Commission admits that laws are in the public domain and not

subject to copyright.  The remaining allegations consist of legal arguments and

conclusions that require no response, but to the extent that a response is required,

the Commission denies them.

47.     The Commission admits that laws do not lose their public domain

status and become subject to copyright.  The Commission denies that a private

party drafts laws whether as works for hire or otherwise.  The remaining

allegations consist of legal arguments and conclusions that require no response, but

to the extent that a response is required, the Commission denies them.

48.     The Commission admits that laws do not lose their public domain

status and become subject to copyright.  The remaining allegations consist of legal

arguments and conclusions that require no response, but to the extent that a

response is required, the Commission denies them.

49.     Denied.

50.     Denied.

51.     The Commission lacks knowledge or information sufficient to form a

belief about the truth or falsity of the allegations of paragraph 51 and therefore

denies them.

52.     The Commission admits that the defendant copies and publishes the

O.C.G.A. in its entirety. The remaining allegations of paragraph 52 are denied.

53.     Denied.

54.     Admitted.

55.     The Commission admits it seeks an injunction against the defendant.

The Commission denies the remaining allegations of paragraph 55.

56.     The Commission admits that the Georgia legislature regularly enacts amendments of the statutes of the O.C.G.A. and will likely continue to do so.  The Commission denies the remaining allegations of paragraph 56.

57.     The Commission admits that it is likely to assert its rights in the Copyrighted Annotations in future editions of the O.C.G.A. The Commission denies the remaining allegations of paragraph 57.

58.     Admitted.

59.     Denied.

Respectfully submitted, this 8th day of October, 2015.

/s/ Anthony B. Askew

Anthony B. Askew (G.A. Bar: 025300)
Lisa C. Pavento (G.A. Bar: 246698)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
taskew@mcciplaw.com
lpavento@mcciplaw.com
wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia*

14

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District

of Georgia, the foregoing Answer to Affirmative Defenses and Counterclaim

complies with the font and point selections approved by the Court in L.R. 5.1C.

The foregoing pleading was prepared on a computer using 14-point Times New

Roman font.


*/s/ Anthony B. Askew*
Anthony B. Askew (G.A. Bar: 025300)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: taskew@mcciplaw.com

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Thursday, October 8, 2015, I electronically filed the

foregoing Answer to Affirmative Defenses and Counterclaim with the Clerk of

Court using the CM/ECF system, which constitutes service of the filed document

on all counsel of record in this proceeding under LR 5.1(A)(3), N.D. Ga.


By:   */s/ Anthony B. Askew*
      Anthony B. Askew (G.A. Bar: 025300)
      Lisa C. Pavento (G.A. Bar: 246698)
      Warren Thomas (G.A. Bar: 164714)
      Meunier Carlin & Curfman LLC
      999 Peachtree Street, NE, Suite 1300
      Atlanta, Georgia 30309
      Phone: 404-645-7700
      Fax: 404-645-7707
      taskew@mcciplaw.com
      lpavento@mcciplaw.com
      wthomas@mcciplaw.com

      *Counsel for the Plaintiff, Code Revision*
      *Commission on behalf of and for the benefit*
      *of the General Assembly of Georgia, and the*
      *State of Georgia*

16

# DKT 29

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA and the STATE OF GEORGIA, | ) ) ) ) ) | **CIVIL ACTION** **FILE NO. 1:15-CV-2594-MHC** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PUBLIC.RESOURCE.ORG, INC., | ) | |
| Defendant. | | |

**DEFENDANT PUBLIC.RESOURCE.ORG, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Public.Resource.Org., Inc. ("Public Resource") moves under Fed.

R. Civ. P. 56 for summary judgment on each claim asserted by the Code Revision

Commission ("Commission") and on Public Resource's counterclaim, and for such

other relief as the Court deems just and reasonable. Based on the evidentiary

record, there are no triable issues of material fact. The Official Code of Georgia

Annotated ("O.C.G.A.") is the only official Code of Georgia, an edict of

government, and is therefore not subject to copyright in the United States. The

O.C.G.A.'s annotations are also not protectable by copyright because they lack

sufficient originality and creativity, as there are too few ways to express the facts

the annotations convey.  Even if the O.C.G.A. were copyrightable, Public

Resource's scanning and posting of the O.C.G.A. would be fair use of it.

 For these reasons and reasons set forth more fully in the accompanying

memorandum of law, Public Resource respectfully requests that the Court grant its

motion, entering judgment in favor of Public Resource on the Commission's

claims and Public Resource's counterclaim.

Respectfully submitted this 17th day of May, 2016.

     By: /s/ Elizabeth H. Rader
       Jason D. Rosenberg
       Georgia Bar No. 510855
       jason.rosenberg@alston.com
       ALSTON & BIRD LLP
       One Atlantic Center
       1201 West Peachtree Street
       Atlanta, GA  30309-3424
       Telephone 404-881-7461
       Fax (404) 253-8861

       Elizabeth H. Rader
       *Admitted pro hac vice*
       elizabeth.rader@alston.com
       ALSTON & BIRD LLP
       950 F Street, NW
       Washington, DC 20004
       Telephone:  202-239-3008
       Fax: (202) 239-3333

       *Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA and the STATE OF GEORGIA, | ) ) ) ) ) ) | **CIVIL ACTION**  **FILE NO.   1:15-CV-2594-MHC** |
| Plaintiff, | ) | |
| v. | ) ) | |
| PUBLIC.RESOURCE.ORG, INC., | ) | |
| Defendant. | | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed the foregoing **Defendant**

**Public.Resource.Org, Inc.'s Motion for Summary Judgment** was electronically

filed with Clerk of Court using the CM/ECF system which will automatically send

notification of such filing to all attorneys of record.

*/s/ Sarah P. LaFantano*
Sarah Parker LaFantano
Georgia Bar No. 734610

# DKT 29-1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CODE REVISION COMMISSION on
Behalf of and For the Benefit of the
GENERAL ASSEMBLY OF
GEORGIA and the STATE OF
GEORGIA,

          Plaintiff,

v.

PUBLIC.RESOURCE.ORG, INC.,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION**

**FILE NO.   1:15-CV-2594-MHC**

## DEFENDANT PUBLIC.RESOURCE.ORG, INC.'S
## LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### A.   Public Resource and Its Mission

1.     Carl Malamud is the founder of the nonprofit Public.Resource.org

("Public Resource"). Declaration of Carl Malamud ("Malamud Decl."), Ex. A at ¶¶

1, 14; Ex. B.

2.     Mr. Malamud founded Public Resource in 2007 to address an absence

of primary legal materials on the Internet, including judicial opinions (and the

underlying dockets leading to those opinions), statutes and the codifications of

those statutes (including the legislative hearings that led to those statutes), and federal regulations (including the underlying notices and comments leading to those regulations).  Malamud Decl., Ex. A at ¶¶ 15, 19.

3.     Mr. Malamud found that most states' statutes, regulations, and the codification of those statutes and regulations were publicly available in some form on the Internet. *Id.* at ¶ 33.

4.     The technology employed to make those materials available to the public, however, did not provide the information in a user-friendly fashion or take advantage of the features of the Internet and its potential.  *Id.*; *see also* Declaration of Beth Noveck ("Noveck Decl."), Ex. C at ¶ 14.

5.     In an effort to remedy this shortcoming, Public Resource has made publicly available on the Internet, for example, copies of the Oregon Revised Statutes, California Code of Regulations, District of Columbia Code, and the Chicago Building, Municipal and Zoning Codes.  Malamud Decl., Ex. A at ¶¶ 31, 34, 37, 39.

6.     In each of the above instances, Public Resource's posting of these edicts of government resulted in an improved web presence coded by individuals and volunteers and increased public access for the materials.  In the cases of

Washington, D.C. and Chicago, city officials also were involved in the process.  *Id.* at ¶¶ 31-41, 44.

7.     Indeed, making edicts of government, such as legal codes, available in bulk leads to more innovation, a better-informed citizenry, and a better democracy. Noveck Decl., Ex. C at ¶ 14.

**B.     History of the Code Revision Commission & the Official Code of Georgia Annotated**

8.     The State of Georgia enacts and promulgates its laws through its legislature.  Stipulation of Facts ("Stip."), Dkt. 17 at ¶ 44.

9.     Georgia's Constitution provides that "[t]he General Assembly shall provide for the publication of the laws passed at each session."  Ga. Const., Art. 3, Section 5, ¶ 1.

10.    It is typical for bills introduced in the General Assembly to begin, "an Act to amend Article…Chapter…Title of the Official Code of Georgia, Annotated," Stip., Dkt. 17 at ¶ 81, as required by Georgia's Constitution, Ga. Const., Art. 3, Section 5, ¶ 4.

11.    Each year the General Assembly passes a bill to reenact the statutory portions of the O.C.G.A.  Senate Bill 340 (2014), Ex. M.

12.     The Code Revision Commission assists the legislature in publishing the laws it enacts in the Official Code of Georgia ("O.C.G.A.").  Stip., Dkt. 17 at ¶ 82.

13.     The Commission was created by the General Assembly in 1977 and tasked with selecting a publishing firm "possessing the necessary expertise and manpower to accomplish a complete recodification [of the state's laws] as quickly as possible."  Ga. Code Ann., Foreword, Ex. D at ix-x.

14.     The Code Revision Study Committee, also created by the General Assembly, concluded that a complete revision and recodification of the state's laws was "long overdue" and that "the most economical and satisfactory method to accomplish code revision within the State of Georgia is through a negotiated contract with a publishing firm possessing the necessary expertise and manpower to accomplish a complete recodification as quickly as possible."  *Id.* at ix.

15.     Upon the Study Committee's recommendation, the General Assembly created the Commission to select a publishing firm and "resolve the myriad of details connected with the code revision project."  *Id.* at ix-x.

16.     The Commission is composed of the Lieutenant Governor, four members of the Senate, the Speaker of the House of Representatives and four additional members of the House of Representatives, and four members appointed

by the State Bar of Georgia, one of whom is a judge or senior judge of the State

Superior Courts and one of whom is a State district attorney.  *Id.* at x.

17.     From five law publishers, the Commission selected The Michie

Company to prepare and publish what would become the O.C.G.A., and entered

into a contract.  *Id.*

###     C.     The Publication Agreement between Lexis/Nexis & the Commission Regarding the O.C.G.A.

18.     Despite contracting with Michie, the Commission itself developed the

uniform numbering system and rules of style used in the new (1981) Code and

adopted an arrangement into 53 Code titles.  *Id.* at xi.

19.     Upon completion of the editorial process, a manuscript entitled the

*Code of Georgia 1981 Legislative Edition*, was prepared, presented to the General

Assembly, and enacted at the 1981 extraordinary session of the General Assembly.

Annotations, indexes, editorial notes and other materials have been added to that

manuscript to produce the Official Code of Georgia Annotated, the first official

Code to be published under authority of the State of Georgia since the Code of

1933.  *Id.*; Terry A. McKenzie, *The Making of A New Code*, 18 Ga. St. B.J. 3

(1982), Ex. E at 2.

20.     On October 3, 2006, the Commission issued a Request for Proposals,

and on December 27, 2006, entered into a new Agreement for Publication

- 5 -

("Agreement") with Matthew Bender & Co. Inc. ("Lexis/Nexis").  Publication

Agreement, Ex. F at 1.

21.    The Agreement requires the official Code to include not only the

statutory provisions, but also "annotations, captions, catchlines, headings, history

lines, editorial notes, cross-references, indices, title and chapter analyses, research

references, amendment notes, Code Commission notes, and other material related

to or included in such Code at the direction of the Commission."  *Id.* at 2.

22.    Each O.C.G.A. volume and supplement therefore contains statutory

text and non-statutory annotation text, including judicial decision summaries,

editor's notes, research references, notes on law review articles, summaries of the

opinions of the Attorney General of Georgia, indexes, and title, chapter, article,

part and subpart captions, and others (collectively, "annotations") that are prepared

by Lexis/Nexis under the requirements of the agreement.  Stip., Dkt. 17 at ¶ 1-3, 9,

18, 26.

23.    The Commission has regularly asserted copyright in the "catchlines of

Code sections; names of Titles, Chapters, Articles, Parts, and Subparts; history

lines; editor's notes; Code Commission notes; annotations; research references;

cross-references; indexes; and other such materials."  Dkt. 17-8 at 1.

24.    The Agreement requires Lexis/Nexis to adhere to the organization and numbering used by the previous publisher.  Publication Agreement, Ex. F at 3.

25.    The Agreement also provides that the Commission, not its hired publisher, has "the ultimate right of editorial control" both over all material contained in the O.C.G.A. and over what material is selected to become part of the O.C.G.A.  *Id.* at 2.

26.    The Agreement requires Lexis/Nexis to follow the Commission's detailed publication manual, which "reflect[s] those specific content, style and publishing standards of the Code as adopted, approved or amended from time to time by the Commission or its staff pursuant to Code Section 28-9-3 of the Official Code of Georgia Annotated." *Id.*.

27.    Lexis/Nexis does not choose which cases to summarize in the Code's annotations, as the Agreement requires Lexis/Nexis to summarize "all published opinions of the Georgia Supreme Court and the Court of Appeals of Georgia, and all published opinions of the United States Supreme Court and other federal courts that arose in Georgia and construed Georgia general statues, whether such decisions favor plaintiffs, defendants, or the prosecution."  *Id.* at 3.

28.    The Agreement similarly requires that the Annotations include research references and legislative history.  *Id.* at 4-5.

- 7 -

29.    The Commission's Publication Manual is even more detailed in its directions to Lexis/Nexis, for example providing nine pages of instruction in the proper formulation of amendment notes and ten pages to that of Editor's Notes. Publication Manual, Ex. G at 78-87, 99-109.

30.    The Agreement requires that Lexis/Nexis provide Georgia's statutes unannotated ("Unannotated Code") on a website that the public can access for free using the Internet. *Id.* at 11-12; Stip., Dkt. 17 at ¶ 73-75.

31.    The free public website contains only the statutory text and numbering of the O.C.G.A., stripped of its Annotations.  Stip., Dkt. 17 at ¶¶ 73, 75.

32.    The Agreement requires Lexis/Nexis to track usage of the Unannotated Code on the public website and to report annually to the Commission the amount of usage and whether its sales of, or subscriptions to, the printed O.C.G.A, the C.D. ROM version and similar commercial versions have decreased. Publication Agreement, Ex. F at 12; 2015 Usage Report, Ex. H..

33.    The Agreement requires Lexis/Nexis to provide appropriate copyright notices on both the free public website for the unannotated Code and the online O.C.G.A. available as part of Lexis/Nexis for-profit online services and to notify visitors that any reproduction of the O.C.G.A. other than the statutory text and numbering is prohibited. *Id.* at 12.

34.     According to Lexis/Nexis's representative, Anders Ganten, the Agreement between Georgia, through the Commission, and the O.G.C.A.'s publisher is unique.  Commission Minutes, Ex. I at 2.

35.     "In other states, the work on annotations is done in house or contracted as a fee for service arrangement." *Id.*

36.     In Georgia, Lexis/Nexis has the exclusive right to publish and sell the O.C.G.A. as a printed publication, on CD-ROM, and in an online version and receives income from its sales of the O.C.G.A.  Stip., Dkt. 17 at ¶¶ 84-85.

37.     The Commission, however, only receives royalties from the licensing fees for the CD-ROM and online versions of the O.C.G.A.  Pl.'s Resp. to D.'s Interrogatories, Ex. O at 14.

38.     In fiscal year 2014, the Commission received $85,747.91 in licensing fee royalties.  Mar. 29, 2016 Letter from L. Pavento, Ex. J at 1.

39.     For Lexis/Nexis, "the cost of publishing the Code rises each year" and "the print publication is a struggle each year."  Commission Minutes, Ex. I at 2.

40.     The Legislative Counsel publishes the *User's Guide to the Official Code of Georgia, Annotated*.  User's Guide, Ex. N.

41.     The User's Guide instructs those citing to the Code of Georgia to cite to the O.C.G.A.  *Id.* at xvii

42.     The User's Guide explains that some annotations are indexes, tables and research references that advise the reader of other materials relevant to understanding the nuances and interpretations of the statutory text itself.  *Id.* at xxi-xxii.

### D.     The O.C.G.A. as the only Official Code

43.     The Annotations to the O.C.G.A. include a summary of a vacated Northern District of Georgia case that quotes "[a]ttorneys who cite unofficial publications of 1981 code do so at their peril."  The heading of that summary reads:  "Official Code publication controls over unofficial compilation."  Ga Code Ann. § 1-1-1, note (Judicial Decisions); Stip., Dkt. 17 at ¶ 94.

44.     Lexis/Nexis markets its printed O.C.G.A. stating "the Official Code of Georgia Annotated (O.C.G.A) provides users with the *official* Georgia statutes, fully annotated."  Stip., Dkt. 17 at ¶ 95; Ex. M to Stip., Dkt. 17-13.

45.     The Honorable Johnnie Caldwell, Representative, Chairman of the Commission and a lawyer in Georgia for at least 43 years, told the Commission that he buys the O.C.G.A. for the annotations.  Commission Minutes, Ex. I at 2.

46.     The judicial summary annotation for Ga. Code Ann. § 50-2-1 for the case *Dep't of Natural Resources v. Joyner*, 241 Ga. 390 (1978) reads:

> Salt waters of this state extend from the mean low watermark of the
> foreshore three geographical miles offshore; except where a low tide

- 10 -

> elevation is situated within three nautical miles seaward of the low
> water line along the coast, the state's three mile boundary is measured
> from such low tide elevation.

Ga. Code Ann. § 50-2-1 ann.

47.    The judicial summary annotation for West's Code of Georgia

Annotated for the same case reads: "Salt waters of Georgia extend from mean low

water mark of foreshore three geographical miles offshore, except where a low tide

elevation is situated within three nautical miles seaward of low waterline along

coast, in which case state's three-mile boundary is measured from such low tide

elevation."  Ga. Code Ann. § 50-2-1 ann. (West 2016).

48.    The judicial summary annotation for Ga. Code. Ann. § 50-2-1 for the

case *State v. Bruce*, 231 Ga. 783 (1974) reads:

> Whichever line is correct, low tide or high tide, as the dividing line
> between private property sought to be registered and the state's
> property, the state is still an adjoining landowner and should have
> been so named in the petition and served other than by the
> advertisement "to whom it may concern," and a land registration
> judgment, if granted, would not be binding upon an adjoining
> landowner who was not named and served.

Ga. Code Ann. § 50-2-1.

49.    The judicial summary annotation for West's Code of Georgia

Annotated for the same case reads:

> Regardless of whether the low-tide line or the high-tide line was
> the dividing line between property sought to be registered and the

> State's property as the owner of the ocean within three
> geographical miles of ordinary low-water mark, State was an
> "adjoining landowner" and should have been so named in the
> petition and served other than by advertisement, despite contention
> that by reason of statute and revision of the Constitution petitioners
> were already owners of land between the high and low-tide marks
> and that the land which they were seeking to register, which had
> been built up by accretion, was only land above the high-tide line.

Ga. Code Ann. § 50-2-1 ann. (West 2016).

50.    The judicial summary annotation for O.C.G.A. § 50-2-1 for the case

*Ga. Ry. & Power Co. v. Wright*, 146 Ga. 29 (1916) reads:

> That part of the Savannah River which is broken by islands,
> located between an island and the Georgia mainland, is within the
> jurisdiction and sovereignty of this state by virtue of this section,
> and a dam constructed across the river from an island to the
> Georgia shore is subject to taxation in this state.

Ga. Code. Ann. § 50-2-1.

51.    The judicial summary annotation for West's Code of Georgia

Annotated for the same case reads:

> Under Beaufort Convention 1787 and Civ. Code 1910, §  16, that
> part of the Savannah river which is broken by islands, located
> between an island and the Georgia mainland, is in Georgia, and a
> dam from an island to the Georgia shore is subject to taxation in
> Georgia.

Ga. Code Ann. § 50-2-1 (West 2016).

**E.    Limitations on Public Access to the Unannotated Code**

52.     To access the unannotated code via the website link found on the Georgia website, www.legis.ga.gov, one must accept the terms and conditions of use generally applicable to the Lexis/Nexis websites.  Stip., Dkt. 17 at ¶ 86; Ex. I to Stip., Dkt. 17-9.

53.     The access page that allows users to access the online publication, however, states that the Lexis/Nexis website use terms and conditions do not apply to the O.C.G.A. statutory text and numbering.  Stip., Dkt. 17 at ¶ 86; Ex. J to Stip., Dkt. 17-10.

54.     The Lexis/Nexis website use terms and conditions are governed by New York state law and require the user to submit to the personal jurisdiction of New York state courts for the purpose of litigating any action arising out of or relating to the Lexis Nexis website use terms and conditions.  Stip., Dkt. 17 at ¶ 87.

55.     Until at least May 28, 2014, the notice displayed before users could access the unannotated code on the public access Lexis/Nexis site included a banner page that the user had to acknowledge to gain access to the Lexis/Nexis site.  *Id.* at ¶ 92; Ex. L to Stip., Dkt. 17-12.  This banner page stated "the latest print version of the O.C.G.A. is the authoritative version."  Stip., Dkt. 17 at ¶ 92.

- 13 -

56.     This 2014 banner page also did not explicitly state that the Lexis/Nexis terms and conditions of use do not apply to the Georgia Code statutory text and numbering *Id.* at ¶ 93; Ex. L to Stip., Dkt. 17-12.

57.     Once within the Lexis/Nexis public access site, one notice on the website is a hyperlink to the terms and conditions specific to the Georgia Code materials.  Stip., Dkt. 17at ¶ 88; Ex. K to Stip., Dkt. 17-11.  These terms and conditions explain that a user may copy Georgia Code sections' text and numbering.  Stip., Dkt. 17 at ¶ 90.

58.     At least one citizen of Georgia found the requirement to accept the Lexis/Nexis terms of use before being able to access the Georgia statutory materials "distasteful," particularly the provision agreeing to jurisdiction in a New York court and the provisions prohibiting use of the data even by "public and non-profit users." Declaration of Clay Johnson ("Johnson Decl."), Ex. K at ¶ 10.  The Lexis/Nexis free online site also suffers from technical challenges, including generating unwarranted security errors, displaying a blank screen in certain web browsers, lack of bookmarking function, lack of permanent links, HTML and CSS errors, and limited accessibility for the visually impaired.  *Id.* at ¶¶ 11-18.  Finally, it is unclear to users what Lexis/Nexis is doing with their search terms and navigation history.  *Id.* at ¶ 18.

## F.      Alternatives for Access to the O.C.G.A.

59.      Fastcase, Inc. ("Fastcase") provides subscribers a comprehensive legal research service, including cases, statutes, regulations, court rules and constitutions for all 50 states.  Declaration of Edward Walters ("Walters Decl."), Ex. L at ¶ 8.

60.      The Fastcase service is often offered to end users as part of an arrangement with state and local bar association, which contract with Fastcase so they may offer the service as a free benefit to their members.  *Id.* at ¶ 9.

61.      In January 2011, Fastcase and the State Bar of Georgia announced a partnership that made the Fastcase service available to the 42,000 members of the State Bar of Georgia.  *Id.* at ¶ 10.

62.      Fastcase has attempted on numerous occasions to license the O.C.G.A. from the State of Georgia and Lexis/Nexis, but has been informed that no license would be granted, at any price.  *Id.* at ¶ 11.

63.      Instead, Fastcase offers its subscribers a version of the Code of Georgia, but it is what O.C.G.A. § 1-1-1 terms an "unofficial compilation." *Id.* at ¶ 12.

64.      Fastcase would prefer to offer the O.C.G.A. to its subscribers because it is the version of these edicts of government promulgated by the State of Georgia. *Id.* at ¶ 13.

36397002_1.docx

G.   **Public Resource's Posting of the Code**

65.   To make the O.C.G.A., including the annotations, available on the Internet, Public Resource purchased the entirety of 186 printed volumes and supplements of the O.C.G.A. and copied them all, including their front and back covers, and then posted those copies on its website:  https//law.resource.org.  Stip., Dkt. 17 at ¶¶ 34-36.

66.   At least one copy of each O.C.G.A. volume and supplement that Public Resource posted on its https://law.resource.org website is in an electronic format that displays an image of the printed publication as copied by Public resource, which image allows for electronic page turning of the printed publication. *Id.* at ¶ 37.

67.   Public Resource distributed copies of the entirety of the O.C.G.A, contained on USB thumb drives, to the Speaker of the House, Georgia House of Representatives, Mr. Wayne Allen, Legislative Counsel, Office of Legislative Counsel, Georgia General Assembly, and other members of the State of Georgia Legislature.  *Id.* at ¶¶ 63-64.

68.   Public Resource's purpose in scanning and posting the O.C.G.A. was to facilitate scholarship, criticism and analysis of the official Code, to inform the

- 16 -

public about the laws that govern it, for educational purposes and to encourage public engagement with the law. (Malamud Decl., Ex. A at ¶ 45.

69.    After the Commission commenced this action, Public Resource purchased and copied the 2015 volumes and supplements of the O.C.G.A. and copied and posted them on its website.  Stip., Dkt. 17 at ¶ 46.

70.    In addition to posting volumes of the O.C.G.A. on its own website, Public Resource also posted them on the Internet Archive website, www.archive.org.  *Id.* at ¶¶ 50-52, 54-56.

71.    Each scanned copy has optimal character recognition, making it significantly more accessible to people who are visually impaired.  Malamud Decl., Ex. A at ¶ 46.

72.    The process of posting each volume includes significant metadata, such as the names of the titles included in each volume, making them more easily discovered using search engines.  *Id.*

73.    The process of posting each volume creates a version that is compatible with e-Book readers, smart phones, and tablets.  *Id.*

74.    Public Resource actively encourages all citizens to copy, use, and disseminate the O.C.G.A. volumes and to create works containing them.  *Id.*

75.     Public Resource also provides all the volumes in bulk on its servers, allowing users to quickly access the entire Code or a specific volume, and copy and paste relevant sections into their own documents.  *Id.*

76.     The Internet Archive's user interface allows readers to search a volume of the O.C.G.A., displaying "pins" for each page that contain the search term, allowing a reader to quickly look for key phrases in different locations. *Id.*

77.     In 2014, Public Resource solicited crowd funding on the website <indiegogo.com> to support its scanning and posting of the O.C.G.A.  *Id.* at ¶ 42.

78.     This campaign ended on July 11, 2014 and raised approximately $3,000 *Id.* at ¶ 42, 62.

36397002_1.docx

Respectfully submitted this 17th day of May, 2016.

By: /s/ Elizabeth H. Rader
    Jason D. Rosenberg
    Georgia Bar No. 510855
    jason.rosenberg@alston.com
    ALSTON & BIRD LLP
    One Atlantic Center
    1201 West Peachtree Street
    Atlanta, GA  30309-3424
    Telephone 404-881-7461
    Fax (404) 253-8861

    Elizabeth H. Rader
    *Admitted pro hac vice*
    elizabeth.rader@alston.com
    ALSTON & BIRD LLP
    950 F Street, NW
    Washington, DC 20004
    Telephone:  202-239-3008
    Fax: (202) 239-3333

    *Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA and the STATE OF GEORGIA, | ) ) ) ) ) **CIVIL ACTION** |
| | ) **FILE NO.   1:15-CV-2594-MHC** |
| Plaintiff, | ) ) |
| v. | ) ) |
| PUBLIC.RESOURCE.ORG, INC., | ) |
| Defendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing **Defendant**

**Public.Resource.Org, Inc.'s Local Rule 56.1 Statement of Undisputed**

**Material Facts in Support of Its Motion for Summary Judgment** was

electronically filed with Clerk of Court using the CM/ECF system which will

automatically send notification of such filing to all attorneys of record.

*/s/ Sarah P. LaFantano*
Sarah Parker LaFantano
Georgia Bar No. 734610

# DKT 29-2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA and the STATE OF GEORGIA,<br><br>               Plaintiff,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>               Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CIVIL ACTION**<br><br>**FILE NO.  1:15-CV-2594-MHC** |

## DEFENDANT PUBLIC.RESOURCE.ORG, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  SUMMARY OF FACTS AND ARGUMENTS ....................................................2

III.  LEGAL ARGUMENTS ........................................................................................5

    A.  The Standard for Summary Judgment ...................................................5

    B.  The O.C.G.A., including annotations prepared by Lexis/Nexis, is not copyrightable, because creating and maintaining the O.C.G.A. is a core legislative function. ...............................................................................5

        i.  The law of a state cannot be copyrighted under U.S. law. .........................5

        ii.  The O.C.G.A. is an edict of government because the Legislature, acting through the Code Revision Commission, requires the O.C.G.A. to include the annotations. ...........................................8

        iii.  The State's decision to outsource preparing and maintaining the O.C.G.A. to Lexis/Nexis cannot circumvent U.S. copyright law to allow Georgia to own a copyright in the annotations. .............................10

    C.  Copyright does not protect the O.C.G.A.'s annotations because there are so few ways to accurately summarize opinions and few reasonable ways to arrange research reference material that the expression lacks sufficient originality and creativity. ...................................................................11

    D.  To the extent any portion of the O.C.G.A. is copyrightable, Public Resource's scanning and posting of the O.C.G.A. is a fair use of the copyrighted works. ................................................................................13

        i.  The purpose of Public Resource's non-commercial use, to make Georgia's only official Code accessible to the public, favors fair use. ...............................................................................14

        ii.  The nature of the copyrighted work favors fair use. ...............................18

        iii.  Public Resource used no more than necessary to serve the purpose of making the official Code more available to citizens of Georgia and the general public. ...........................................................................19

        iv.  The record contains no evidence of harm to the copyright holder or the value of the O.C.G.A. ....................................................................20

IV. CONCLUSION.................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.V. ex rel Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) ................................................................15

*American Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*,
    No. 12-528, 2013 WL 4666330 (D. Minn. Aug. 30, 2013)..................15

*Authors' Guild, Inc. v. Hathitrust*,
    755 F.3d 87 (2d. Cir. 2014) ................................................................15

*Authors' Guild v. Google, Inc.*,
    804 F.3d 202 (2d. Cir. 2015) (Leval, J), *cert. denied*, No. 15-849, 2016 WL
    1551263 (April 18, 2016) ................................................ 15, 20, 21, 23

*Banks v. Manchester*,
    128 U.S. 244, 253 (1888) ................................................................6, 7

*Bellsouth Advert. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc.*,
    999 F.2d 1436 (11th Cir. 1993) (en banc) ...................................11, 18

*Building Officials & Code Adm. Int'l. Inc. v. Code Tech., Inc.*,
    628 F.2d 730 (1st Cir. 1980)................................................................7

*Campbell v. Acuff-Rose Music, Inc.*
    510 U.S. 569 (1994) ..................................................................passim

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................5

*Consumers Union of United States, Inc. v. General Signal Corp.*,
    724 F.2d 1044 (2d Cir. 1983)............................................................18

*Davidson v. Wheelock*,
    27 F. 61 (Minn. Cir. Ct.1866) ............................................................6

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) ..........................................................................13

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ....................................................................13, 18

LEGAL02/36379790v4

*Harrison Co. v. Code Revision Comm'n,*
   244 Ga. 325 (1979)..........................................................................................6

*Katz v. Google, Inc.,*
   802 F. 3d 1178 (11th Cir. 2015)............................................................. 14, 20

*Matthew Bender & Co., Inc. v. West Pub. Co.,*
   158 F.3d 674 (2d Cir. 1998) .......................................................... 12, 13, 19

*Nash v. Lathrop,*
   142 Mass. 29 (1886) 6 N.E. 559 (1886).......................................................6, 11

*Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984) ..............................20, 24

*Swatch Grp. Mgm't. Serv. Ltd. v. Bloomberg L.P.,*
   756 F.3d 73 (2d. Cir. 2014) ....................................................................15, 19

*United States v. Lanier,*
   520 U.S. 259 (1997)...........................................................................................7

*Warren Publ'g, Inc. v. Microdos Data Corp.,*
   115 F.3d 1509 (11th Cir. 1997) (en banc) ......................................................12

*Wheaton v. Peters,*
   33 U.S. 591 (1834) ........................................................................................5, 8

**RULES**

Fed. R. Civ. P. 56(c)(6) .........................................................................................5

**STATUTES**

17 U.S.C. § 107(1) .............................................................................................14

17 U.S.C. § 107(2) .............................................................................................18

17 U.S.C. § 107(3) .............................................................................................19

17 U.S.C. § 107(4) .............................................................................................20

17 U.S.C. § 201 ..................................................................................................11

17 U.S.C. § 102(b) .............................................................................................11

Ga. Code Ann. § 1-1-1 (West 2016), note...........................................................10

Ga. Code Ann. § 50-2-1 (West 2016) ........................................................................ 13

**OTHER AUTHORITIES**

Compendium of U.S. Copyright Office Practices § 313.6(c) (2) (3d ed. 2014)....................... 7, 8

Ga. Const., art. 3, Section 5, ¶ 1 ............................................................................. 9

U.S. Const., art. I, § 8, cl. 8 ................................................................................. 13, 18

LEGAL02/36379790v4

# I. __INTRODUCTION__

Civilized nations have long embraced the concept of the Rule of Law—the principle that prescribed law, rather than the whims and desires of any individual, should govern society.  The law is our central protection against tyranny and injustice.  Only if the law is truly free and available can the State reasonably expect people and enterprises to obey the law, to know their rights under the law, and to evaluate and participate in the noble work of improving the law.

Public.Resource.Org proudly scanned and posted online the Official Code of Georgia Annotated ("O.C.G.A.").  By filing this action, the State seeks to restrict citizens' access to Georgia's laws through a dubious claim of copyright in the O.C.G.A's annotations.  The Court should prevent this attempt—and grant Public Resource's motion—for two principal reasons.  First, the annotations to the O.C.G.A. are not copyrightable.  The O.C.G.A. is an edict of government and creating the annotations is a core legislative function.  Additionally, the O.C.G.A.'s annotations are not copyrightable under the merger doctrine because there are very few ways to express the ideas contained in them.  Second, even the annotations were copyrightable, Public Resource's posting them constitutes a noninfringing fair use of the copyrighted work.

LEGAL02/36379790v4

The law belongs to the people.  The O.C.G.A., including its annotations, is Georgia's only official Code. No claim of copyright can or should be used to prohibit its distribution.  Making the O.C.G.A. free, available and useable to all allows everyone, whether he or she is a lawyer or layperson, journalist, teacher or student, part of a nonprofit charitable entity or a multinational corporation, or merely a concerned citizen—everyone—to better understand, use, and comply with the law.  Granting Public Resource's motion for summary judgment will help ensure the citizens of this state, and others, fair and equal access to the laws of the State of Georgia.

## II.  SUMMARY OF FACTS AND ARGUMENTS

When Carl Malamud started Public.Resource.Org, Inc. ("Public Resource"), he believed the Rule of Law would be strengthened by the wider availability on the Internet of primary legal materials, the raw materials of our democracy. Declaration of Carl Malamud ("Malamud Decl.), Ex. A at ¶¶ 1, 14-15, 19.  In order to promote public education and public safety, equal justice for all, a better informed citizenry, more efficient markets, and the Rule of Law, Public Resource has undertaken to make edicts of government available on a noncommercial basis. *Id.* at ¶ 45.  One of these edicts is the O.C.G.A, which Public Resource purchased

from Lexis/Nexis, scanned, and posted on its website and on that of the Internet Archive.  Stipulation of Facts, Dkt. 17 ("Stip.") at ¶¶ 34-36.

The State of Georgia enacts and promulgates its laws through its legislature. *Id.* at ¶ 44.  The Code Revision Commission assists the legislature in publishing the laws it enacts in the O.C.G.A.  *Id.* at ¶ 82.  Most of the commissioners are Georgia's elected officials and the Commission's work is supervised by elected legislators.  Ex. D, Ga. Code Ann., Foreword at ix-x.  In 2006, the Commission entered into an agreement for publication with Matthew Bender & Co., Inc. ("Lexis/Nexis").  Ex. F at 1.  The Commission, however, retained oversight and ultimate control over publishing the O.C.G.A.  *Id.* at 3.  The agreement specifies the Commission's and Lexis/Nexis's respective roles in codifying, publishing, and maintaining the O.C.G.A.  It also specifies what the annotations Lexis/Nexis prepares, under the Commission's direct supervision, must contain.  *Id.* at 2, 4-5.  In return, the State gives Lexis/Nexis exclusive rights to publish the printed O.C.G.A., sell it on CD-ROMs, and provide paid subscribers access to it online. Stip. at ¶¶ 84-85.  This exclusivity produces the absurd result that Fastcase, which partners with the State Bar of Georgia to provide its legal research service free to the Bar's 42,000 members, can only provide those lawyers with an "unofficial

compilation" of the Code of Georgia, with titles and catchlines written by Fastcase. Declaration of Edward Walters ("Walters Decl."), Ex. L at ¶¶ 8-13).[1]

The publishing agreement also requires that Lexis/Nexis provide Georgia's statutes, stripped of their annotations, on a website that the public can access for free, if they first agree to accept Lexis/Nexis's terms of use.  Ex. F at 11-12; Stip. at ¶ 73-75, 86-87; Dkt. 17-10; Dkt. 17-9.  At least one citizen of Georgia found the requirement to accept those terms of use distasteful, particularly a provision requiring users to agree to jurisdiction in a New York court and provisions prohibiting reuse (such as posting) of the laws on the site even by public and non-profit users.  Declaration of Clay Johnson Ex. K at ¶ 10).  The Lexis/Nexis website also suffers from technical limitations that make it difficult for users to locate and read the laws of Georgia.  *Id.* at ¶¶ 11-18.

In addition to these shortcomings, there are other good reasons why Georgia's citizens, and others wishing to know and understand Georgia's laws, might not find the Lexis/Nexis website as useful as the printed O.C.G.A. or another website that provides functionality different from Lexis/Nexis's website. While the

---

[1] Fastcase is the plaintiff in a declaratory judgment action pending in this district concerning rights to reproduce Georgia law, *Fastcase v. Lawriter LLC, dba Casemaker*, Case No. 1:16-cv-00327-TCB.

LEGAL02/36379790v4

Lexis/Nexis free website displays the statutory text and numbering, without the annotations the statutory text simply is not the one official Code of Georgia.

## III. LEGAL ARGUMENTS

### A. The Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c)(6), summary judgment is appropriate where the pleadings, discovery, and affidavits on file show that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. The moving party meets its burden of demonstrating the absence of a genuine issue of material fact by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once this initial burden has been met, the nonmoving party must point to specific evidence of material fact from which a reasonable jury could return a verdict in its favor. *Id.* at 323-24. Here, both parties agree that summary judgment is appropriate: whether Public Resource's use of the O.C.G.A. infringes a copyright turns on issues of law.

### B. The O.C.G.A., including annotations prepared by Lexis/Nexis, is not copyrightable, because creating and maintaining the O.C.G.A. is a core legislative function.

#### i. *The law of a state cannot be copyrighted under U.S. law.*

It is well established that judicial opinions and statutes are in the public domain and not subject to copyright protection. The U.S. Supreme Court

announced this rule first in *Wheaton v. Peters*, 33 U.S. 591, 668 (1834) observing

"[t]he Court are unanimously of the opinion, that no reporter has or can have any

copyright in the written opinions delivered by this Court; and that the judges

thereof cannot confer on any reporter any such right."  Subsequent cases explained

and expanded the rule.  In *Banks v. Manchester*, the Supreme Court invalidated an

Ohio law that authorized the official reporter for the Ohio Supreme Court to obtain

copyright on that court's opinions.  128 U.S. 244, 253 (1888).  Importantly, "the

whole work done by judges constitutes the authentic exposition and interpretation

of the law, which, binding every citizen, is free for publication to all, whether it is

a declaration of unwritten law, or an interpretation of a constitution or statute."  *Id.*

The Massachusetts Supreme Judicial Court articulated the policies underlying the

rule:

> Every citizen is presumed to know the law thus declared, and it needs
> no argument to show that justice requires that all should have free
> access to the opinions, and that it is against sound public policy to
> prevent this, or to suppress and keep from the earliest knowledge of
> the public the statutes or the decisions and opinions of the justices.

*Nash v. Lathrop*, 142 Mass. 29, 35, 6 N.E. 559 (1886).

This same rule prohibits copyright in a state's constitution and statutes.  A

contract cannot grant a publisher the exclusive right to publish a state's

constitution and statutes.  *Davidson v. Wheelock*, 27 F. 61 (Minn. Cir. Ct.1866).

"States' laws are public records open to inspection, digesting and compiling by anyone." *Harrison Co. v. Code Revision Comm'n*, 244 Ga. 325, 329 (1979).  Laws are created by legislators who are government employees, so there is no justification for the copyright monopoly. *Banks*, 128 U.S. at 244.  And the public—not a state government—owns the law because "the citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process." *Building Officials & Code Adm. Int'l. Inc. v. Code Tech., Inc.*, 628 F.2d 730, 734 (1st Cir. 1980).  Citizens also must have free access to the laws that govern them to satisfy the notice requirement of the due process clause. *Id.*  "The… principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Lanier*, 520 U.S. 259, 265 (1997).

The U.S. Copyright Office recognizes that government edicts are in the public domain:

> As a matter of longstanding public policy, the U.S. Copyright Office will not register a government edict that has been issued by any state, local, or territorial government, including legislative enactments, judicial decisions, administrative rulings, public ordinances, or similar types of official legal materials.  Likewise, the Office will not register a government edict issued by any foreign government or any translation prepared by a government employee acting within the course of his or her official duties.

LEGAL02/36379790v4

Compendium of U.S. Copyright Office Practices § 313.6(c) (2) (3d ed. 2014)

(citations omitted).  The Compendium specifically addresses annotations, stating:

"…the Office may register annotations that summarize or comment upon legal

materials issued by a federal, state, local, or foreign government, unless the

annotations themselves have the force of law."  *Id.* (citations omitted).

> ii.   **The O.C.G.A. is an edict of government because the Legislature, acting through the Code Revision Commission, requires the O.C.G.A. to include the annotations.**

The Commission contends that the State owns copyright in the O.C.G.A.'s

annotations because the General Assembly enacts the statutory text, but not the

annotations.  Am. Compl., Dkt. 11 at ¶ 11 ("The judicial summary is only added in

the annotated publication and is not enacted as law.").  The first flaw in that

argument is that the rule that law is not subject to copyright does not make

enactment the sole touchstone for whether a work is an edict of government.

*Wheaton v. Peters*, for example, states that no reporter can have copyright in

written opinions delivered by the Supreme Court.  33 U.S. at 668.  Therefore, the

Court's analysis should instead focus on the Georgia Assembly's decisions to

include annotations in the State's only official Code.

There is no official code of Georgia that is not annotated.  Georgia's

Legislative Counsel publishes the *User's Guide to the Official Code of Georgia*

LEGAL02/36379790v4

*Annotated.* Ex. N.  The *Guide* underscores the annotations' importance for understanding and using the official law of Georgia.  First, it tells those who write about the Code to cite the O.C.G.A. rather than one of the unofficial codes.  *Id.* at xvii.  Second, it explains that some annotations are indexes, tables and research references that advise the reader of other materials relevant to understanding the nuances and interpretations of the statutory text itself.  *Id.* at xxi-xxii.  Third, it explains that the manuscript of 53 Code titles enacted in 1981 was not the official Code until the Annotations, indexes, editorial notes and other materials were added.  *Id.*  The General Assembly enacted a printed manuscript version, called *Code of Georgia 1981: Legislative Edition*.  Ex. D at xi.  The Legislature passes acts "to amend….the Official Code of Georgia Annotated."  Ga. Const., art. 3, Section 5, ¶ 1.  The General Assembly established the Commission to ensure, among other things, that the O.C.G.A., the State's only official Code, will contain the annotations.  Ex. D at ix-x.

Summaries of judicial decisions, opinions of the Attorney General of Georgia, and Advisory Opinions of the State Bar, are examples of annotations important to understanding Georgia's laws.  The publication agreement requires the O.C.G.A to include these.  Ex. F at 2.  Presumably, the General Assembly and Commission want a citizen, reading a statute to understand the law that governs

her conduct, to be able to learn from the O.C.G.A. how judges, Georgia's Attorney General and the State Bar have interpreted and applied that statute.  One summary warns that "[a]ttorneys who cite unofficial publications of 1981 code do so at their peril" and that "Official Code publication controls over unofficial compilation." Ga. Code Ann. § 1-1-1, note (judicial decisions).  Some buy the O.C.G.A. for its annotations.  Ex. I at 2.  For all these reasons, the O.C.G.A., including the annotations, must be treated as one work by the General Assembly and the Commission, and not subject to copyright.

        ***iii.***    ***The State's decision to outsource preparing and maintaining the O.C.G.A. to Lexis/Nexis cannot circumvent U.S. copyright law to allow Georgia to own a copyright in the annotations.***

The Commission alleges that the annotations are copyrightable because they are "original and creative works of authorship" Lexis/Nexis prepares for the O.C.G.A. as works for hire for the State of Georgia.  Am. Compl., Dkt. 11 at ¶¶ 2, 13.  But the work-for-hire doctrine cannot circumvent the time-honored rule excluding edicts of government, including official codes, from copyrightable subject matter.  That the Commission contracts with a publisher to help prepare and update the annotations that are an important part of the only official Code does not make those annotations separate copyrightable works.  The Commission is the author of the annotations it hires Lexis/Nexis to prepare just as if the

Commissioners and their legislative staff had prepared the annotations themselves. "In the case of a work for hire, the employer or other person for whom the work was prepared is considered the author." 17 U.S.C. § 201.

Many kinds of law could be considered works for hire. For example, *Nash v. Lathrop* involved a contract between Massachusetts and a publisher that purported to give the publisher the exclusive right to publish certain judicial opinions. 142 Mass 29, 6 N.E. 559 (1886). The Massachusetts Supreme Court, however, recognized that the legislature could not constitutionally contract to keep opinions or statutes out of public access. *Id.* 142 Mass at 35, 6 N.E. at 560. This Court should reach the same result.

**C.   Copyright does not protect the O.C.G.A.'s annotations because there are so few ways to accurately summarize opinions and few reasonable ways to arrange research reference material that the expression lacks sufficient originality and creativity.**

Section 102(b) of the Copyright Act, 17 U.S.C. § 102(b), precludes copyright for "any idea, procedure, process, system, method of operation, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." Under the merger doctrine, copyright does not protect expression when there is only one way, or so few ways to express an idea, that protecting the expression would effectively protect—and remove from the public domain—the idea itself. *Bellsouth Advert. & Publ'g Corp. v. Donnelly Info.*

LEGAL02/36379790v4

*Publ'g, Inc.*, 999 F.2d 1436, 1442 (11th Cir. 1993) (en banc); *Warren Publ'g, Inc.*

*v. Microdos Data Corp.*, 115 F.3d 1509, 1518 n. 27 (11th Cir. 1997) (en banc).

Courts have similarly found expression in a compilation or derivative work

not copyrightable by finding that the selections or editorial decisions lacked

sufficient creativity or originality for copyright when they were conventional and

dictated by the need the compilation serves. For example, the Second Circuit,

while declining to invoke the merger doctrine, agreed with Matthew Bender that

West Publishing's case reports lacked enough originality or creativity for copyright

because "industry conventions or other external factors so dictate selection that any

person composing a compilation of the type at issue would necessarily select the

same categories of information." *Matthew Bender & Co., Inc. v. West Pub. Co.*,

158 F.3d 674, 681-82 (2d Cir. 1998). The *Matthew Bender* court recognized that

"West's editorial work entails considerable scholarly labor and care, and is of

distinct usefulness to legal practitioners" but reasoned that, for any editor of

judicial opinions "faithfulness to the public domain original is the dominant

editorial value, so that the creative is the enemy of the true." *Id.* at 688.

That same reasoning applies to the O.C.G.A's annotations. As to the

summaries, lawyers are trained to identify an opinion's holding, operative facts and

reasoning and distill them into a more succinct summary. It is not surprising,

LEGAL02/36379790v4

therefore, that the O.C.G.A.'s case summaries home in on the same facts, language and holdings as the case summaries in West's Code of Georgia, Annotated, an unofficial compilation. *Compare* Ga. Code Ann. § 50-2-1 ann. *with* Ga. Code Ann. § 50-2-1 ann. (West 2016). Their similarities flow directly from the public domain opinions. Likewise, Editor's notes, indexes, lists of law review articles and other reference materials are meant to be accurate compilations of uncopyrightable facts about the statutes, organized, as provided in the publication agreement, so as to be most useful for legal research. Lexis/Nexis's editorial work, like West's in the *Matthew Bender* case, no matter how scholarly, laborious and useful, lacks sufficient creativity to make these annotations original or protectable aspects of the O.C.G.A.

> **D.   To the extent any portion of the O.C.G.A. is copyrightable, Public Resource's scanning and posting of the O.C.G.A. is a fair use of the copyrighted works.**

The primary objective of copyright is not to reward the labor of authors, but to "promote the Progress of Science and the useful Arts…" *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (quoting U.S. Const., art. I, § 8, cl. 8); *see also Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 574 (1994). In other words, "copyright's purpose is to promote the creation and publication of free expression." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). The fair use doctrine

exists to serve that purpose by providing for some lawful use of copyrighted materials without the copyright holder's authorization. *Campbell*, 510 U.S. at 574. Section 107 of the Copyright Act, which codifies the fair use doctrine, requires a court to consider four nonexclusive factors, each discussed below. Because the factors are nonexclusive, and fair use is an equitable doctrine, courts must consider every case on its own facts. *Id.* at 560; *Campbell*, 510 U.S. at 577-78. Whether a given secondary (allegedly infringing) use constitutes fair use may be resolved via summary judgment if a reasonable trier of fact could reach only one conclusion. *Katz v. Google, Inc.*, 802 F. 3d 1178, 1184 (11th Cir. 2015). Here, summary judgment is appropriate because the material facts are not in dispute.

> ### i.    The purpose of Public Resource's non-commercial use, to make Georgia's only official Code accessible to the public, favors fair use.

The first factor in a fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). Here, it is undisputed that Public Resource's use is for nonprofit, educational use. Stip. at ¶ 57; Malamud Decl., Ex. A at ¶ 45. Beyond that, the critical inquiry is "whether the work merely supersedes the objects of the original or instead adds something new, with a further purpose or different character." *Campbell*, 510 U.S. at 579. For example, a Second Circuit

LEGAL02/36379790v4

panel held that digitizing entire copyrighted books for Google's Library Project

and Google Books project is fair use. *Authors' Guild v. Google, Inc.*, 804 F.3d

202, 225 (2d. Cir. 2015) (Leval, J), *cert. denied*, No. 15-849, 2016 WL 1551263

(April 18, 2016). Thus, an important focus is whether the use is "transformative."

*Campbell*, 510 U.S. at 579. "Reproduction of an original without any change can

still qualify as fair use when the use's purpose and character differs from the

original, such as photocopying for use in a classroom." *American Inst. of Physics*

*v. Schwegman, Lundberg & Woessner, P.A.*, No. 12-528, 2013 WL 4666330, at

*11 (D. Minn. Aug. 30, 2013). For example, making an exact digital copy of a

student's thesis for the purpose of detecting plagiarism is a fair use. *A.V. ex rel v.*

*iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009). Likewise, a financial

reporting service's copying and dissemination of an entire sound recording of a

public company's conference call, to tell a wider audience what the company had

represented to investment analysts, was found to be fair use. *Swatch Grp. Mgm't.*

*Serv. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d. Cir. 2014). Libraries' creation

of digital copies of entire copyrighted books by scanning them to create a "digital

library" and allow the public to search that library to locate where specific words

or phrases appear in the digitized book has been held to be a fair use. *Authors'*

*Guild, Inc. v. Hathitrust*, 755 F.3d 87, 97 (2d. Cir. 2014). These cases illustrate

that the purpose of using an entire work determines whether that use qualifies as fair use.

The Commission wants Georgia lawyers and citizens to be able to read and use the O.C.G.A's annotations, but only by purchasing a printed publication, CD-ROM, or Lexis subscription service (or using one purchased by a library or other institution).  On the other hand, Public Resource's mission is to improve public access to government records and the law.  Malamud Decl., Ex. A at ¶15, 19, 45.  Public Resource's purpose in scanning and posting the O.C.G.A. was to facilitate scholarship, criticism and analysis of the official Code, to inform and educate the public about the laws that govern it, and to encourage public engagement with the law.  *Id.* at 45.  Some citizens would prefer not to have their use of their laws tracked or find Lexis/Nexis's terms of use distasteful.  Johnson Decl., Ex. K at ¶ 10.  Public Resource therefore wants the public to have free access to the official Code, including the annotations that make it official and authoritative, on a better website.  Malamud Decl., Ex. A at ¶ 45.  But Public Resource does not just want to save citizens a trip to the library or the cost of a Lexis/Nexis product.  It also wants the O.C.G.A. to be free for download so that people will be able to use the Internet and programming skills to create other websites that make the O.C.G.A. even more useful to Georgia's citizens and the general public.  Making an official code

available in bulk enables volunteers in the community to create a better web.

Declaration of Beth Noveck, Ex. C at ¶7.

By purchasing, scanning, and posting the O.C.G.A. volumes, Public

Resource strives to provide a significantly more useful version.  Malamud Decl.,

Ex. A at ¶ 45.  Each scanned volume also has Optical Character Recognition,

which makes it significantly more accessible to visually impaired people.  *Id.* at

¶46.  The process of posting each volume includes significant metadata, such as the

names of the titles included in each volume, making them more easily discovered

using search engines.  *Id.* The process of posting each volume creates a version

that is compatible with e-Book readers, smart phones, and tablets.  *Id.*  Public

Resource also provides all the volumes in bulk on its servers, allowing users to

quickly access the entire Code or a specific volume, and copy and paste relevant

sections into their own documents.  *Id.*

Additionally, the Internet Archive's user interface allows readers to search a

volume of the O.C.G.A., displaying "pins" for each page that contain the search

term, allowing a reader to quickly look for key phrases in different locations.  *Id.*

It also allows the reader to bookmark a particular page and send a link via email or

social media.  Public Resource's purpose in scanning and posting of the O.C.G.A.,

and certainly the purposes of the third party uses that Public Resource seeks to

- 17 -

enable, are therefore transformative in a way that "promotes the Progress of

Science and the useful Arts," U.S. Const. art 1 § 8 cl. 8.  Therefore, the first factor

favors a finding of fair use and not infringement.

### ii.   *The nature of the copyrighted work favors fair use.*

The second factor requires courts to consider "the nature of the copyrighted

work."  17 U.S.C. § 107(2).  "[S]ome works are closer to the core of intended

copyright protection than others, with the consequence that fair use is more

difficult to establish when the former works are copied."  *Campbell*, 510 U.S. at

586.  The scope of fair use is greater with respect to informational—as opposed to

more creative—works are involved.  *Consumers Union of United States, Inc. v.*

*General Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983).  Copyright in a factual

compilation is "thin" and does not extend to the facts themselves.  *Feist,* 499 U.S.

at 349-51; *Bellsouth*, 999 F.3d at 1445.

As discussed above, the O.C.G.A. is a compilation and primarily a factual

work. Assuming that the annotations contain sufficient original expression to be

copyrightable—if they were not part of the State's only official Code—the

O.C.G.A.'s purpose is still to impart facts.  The General Assembly and the

Commission decided that the authorized, official Code should, in one publication,

provide both the statutory text and annotations essential to understanding,

- 18 -

interpreting and using the law of Georgia.  Ex. D at xi.  The O.C.G.A's purpose is not to showcase the law drafters' form of expression, or the editors' skills in summarizing cases or preparing accurate indexes.

Moreover, most of the annotations—such as indexes, tables, and research references—are even less expressive and more factual than the summaries of judicial decisions and attorney general and state bar opinions.  See *User's Guide*, Ex. N at xxi-xxii.  In *Matthew Bender,* the court affirmed the district court's decision that West's selection and arrangement of preexisting facts in its case reports displayed insufficient creativity to be protectable.  *Matthew Bender*, 158 F.3d at 688.  For similar reasons, the second statutory factor favors holding that Public Resource's posting of the O.C.GA. is a fair use.

        **iii.**    ***Public Resource used no more than necessary to serve the purpose of making the official Code more available to citizens of Georgia and the general public.***

The third fair use factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  This factor asks whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying."  *Campbell*, 510 U.S. at 586.  Verbatim copying of a written work may sometimes be necessary to adequately convey the facts.  *Swatch*, 756 F.3d at 85.  Likewise, home videotaping of entire movies and

television shows for certain noncommercial purposes qualifies as fair use.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449-450 (1984).

Here, Public Resource posted the entire O.C.G.A. because posting only the statutory text would not serve the same purpose.  Scholarship, analysis and other public engagement with the law is undermined without access to the complete official Code, including summaries of judicial opinions and attorney generals' opinions.  Judges, lawyers and citizens treat the annotations as authoritative and rely on them to interpret the code.  Therefore, Public Resource posts as much of the O.C.G.A. as is necessary to fulfill its purpose.

> ### iv.  *The record contains no evidence of harm to the copyright holder or the value of the O.C.G.A.*

The fourth fair use factor is "the effect of the use upon the potential market for, or value of the copyrighted work."  17 U.S.C. § 107(4); *Campbell*, 510 U.S. at 590.  Specifically, courts consider whether the secondary use brings to the market a competing substitute for the original, or its derivative, "so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."  *Authors Guild v. Google*, 804 F.3d at 223.  In the *Google* case, the court considered whether snippet views of digitized books were a significantly competing substitute for the plaintiffs' copyrighted books and concluded that they were not.  *Id.* at 224.  Even if

Google's use could cause some loss of sales, because sometimes a snippet view will satisfy a searcher's need for access to a text, the Second Circuit still found fair use.  The court also reasoned that the sales lost because of a snippet view occur in relation to interests not protected by copyright, such as historical facts.  *Id.*

Here, there is no evidence that Public Resource's posting of the O.C.G.A brings to the market a competing substitute for the original so as to deprive the State of significant revenues.  First, because of the publishing agreement's unusual nature, the State does not receive revenue from royalties on the sale of printed, bound volumes of the O.C.G.A. in the first place.  Ex. O at 14.  If Lexis/Nexis loses any sales of the printed, bound volumes because citizens can read the O.C.G.A. online for free, only Lexis/Nexis is deprived of revenues, and it is not the copyright holder.  Second, while the Commission does receive royalties from the licensing fees for the CD-ROM and on-line versions of the O.C.G.A., there is no evidence that Public Resource's posting of the O.C.G.A. has lessened those royalties or is likely to do so.  In the State's fiscal year 2014, the amount of these licensing fees was $86,747.91.  Ex. J.  Even if Lexis/Nexis never sold another CD-ROM of the O.C.G.A, which is unlikely, this is hardly significant compared to the cost of paying the General Assembly's legislative staff involved in drafting laws and maintaining the Code.  Instead, the Commission alleges that if Lexis/Nexis

- 21 -

cannot recoup its costs to develop the annotations, "the State of Georgia will be required to either stop publishing the annotations altogether or pay for development of the annotations using tax dollars." Am. Compl., Dkt. 11 at ¶ 2. Assuming this were true, it is not harm to the market for the O.C.G.A.  It is a different kind of harm.

Importantly, the publishing agreement requires Lexis/Nexis to track use of the unannotated code on the free Lexis/Nexis website and, after each publishing year, provide reports to the Commission including "the effect, if any, on subscriptions to the Code in print and on CD-ROM."  Ex. F at 12.  Public Resource requested production of those reports in discovery.  The Commission produced a one-page summary of monthly accesses, which Public Resource assumes is Lexis/Nexis's report under the agreement.  Ex. H.  But that document does not address the free website's effect, if any, on paid subscriptions.

On the other hand, many public domain works, such as religious texts, Shakespeare's plays and *The Federalist Papers*, can now be found on the Internet, yet many individuals still purchase new, printed versions of them.  Most libraries and law firms within Georgia will prefer to continue purchasing the printed, bound volumes for their patrons' use, as they have done since the O.C.G.A. was first published.  Many other official state codes are available, in their entirety, on the

Internet, but the printed editions still sell well.  And a citizen merely seeking to

consult the only official Code of Georgia on a particular issue would be highly

unlikely to purchase the whole O.C.G.A. from Lexis/Nexis in the first place, so no

sale is lost when that citizen consults the O.C.G.A., including annotations, using

Public Resource's website.  Likewise, if a legislator from another state, or her staff,

wants to compare proposed legislation to the analogous Georgia statute, she is

unlikely to purchase the printed edition of the O.C.G.A from Lexis/Nexis, so no

sale is lost when she consults it using Public Resource's website instead.

        And, as in the *Google Books* case, the ability of Public Resource's copy to

satisfy a citizen's need to otherwise consult an authorized copy of the O.C.G.A.

bound or on CD-ROM will generally occur in relation to interests not protected by

copyright, namely finding specific facts as part of broader research.  Students, for

example, are hardly in a position to buy a Lexis/Nexis product to read selected

annotations.  For legal research, for example, a student or lawyer might refer to the

annotations to find the year a statute was last revised, or which cases cite a specific

statutory provision of interest.  These are facts, and the State's copyright (if any)

does not extend to facts in a book, only certain expression.  *See Authors Guild v.*

*Google*, 804 F.3d at 224 (quoting *Hoehling v. Univ. Studios, Inc.*, 618 F.2d 972,

974 (2d Cir. 1980)).  Only the laziest student or lawyer would rely on a judicial

- 23 -

summary—even a succinct and accurate one—without reading the actual judicial decision, which is in the public domain.  Therefore, the Court may conclude that Public Resource's scanning and posting does not offer a competing substitute for the printed O.C.G.A. that deprives the State of significant revenues.  For the same reasons, Public Resource does not contribute to third parties' infringement because the scanned O.C.G.A. on the Internet has substantial noninfringing uses that also do not deprive the State of significant revenue.  *See Sony*, 464 U.S. at 456 (finding no contributory infringement where video recorders had substantial noninfringing uses and studios failed to show any likelihood of substantial harm).  Therefore, the fourth factor is neutral or favors fair use.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant summary judgment in favor of Public Resource on its counterclaim and both the Commission's claims. Respectfully submitted this 17th day of May, 2016.

By: */s/ Elizabeth H. Rader*
      Jason D. Rosenberg
      Georgia Bar No. 510855
      jason.rosenberg@alston.com
      Sarah P. LaFantano
      Georgia Bar No. 734610
      sarah.lafantano@alston.com
      ALSTON & BIRD LLP
      One Atlantic Center

LEGAL02/36379790v4

1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone 404-881-7461
Fax (404) 253-8861

Elizabeth H. Rader
*Admitted pro hac vice*
elizabeth.rader@alston.com
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Telephone:  202-239-3008
Fax: (202) 239-3333

*Attorneys for Defendant*

- 25 -

| | | |
|---|---|---|
| CODE REVISION COMMISSION on | ) | |
| Behalf of and For the Benefit of the | ) | |
| GENERAL ASSEMBLY OF | ) | **CIVIL ACTION** |
| GEORGIA and the STATE OF | ) | |
| GEORGIA, | ) | **FILE NO.   1:15-CV-2594-MHC** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| PUBLIC.RESOURCE.ORG, INC., | ) | |
| | | |
| Defendant. | | |

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing **Defendant**

**Public.Resource.Org, Inc.'s Memorandum of Law In Support of Its Motion**

**for Summary Judgment** was electronically filed with Clerk of Court using the

CM/ECF system which will automatically send notification of such filing to all

attorneys of record.


*/s/ Sarah P. LaFantano*
Sarah P. LaFantano
Georgia Bar No. 734610


- 1 -

# DKT 30

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CODE REVISION COMMISSION on
behalf of and for the benefit of THE
GENERAL ASSEMBLY OF
GEORGIA, and THE STATE OF
GEORGIA,

            Plaintiff,

     v.

PUBLIC.RESOURCE.ORG, INC.

        Defendant.

CIVIL ACTION NO.

1:15-CV-02594-MHC

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff and Counterclaim-Defendant the Code Revision Commission, on behalf of and for the benefit of the General Assembly of Georgia and the State of Georgia ("Commission"), files this Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 N.D. Ga., with respect to the claims in Plaintiff's Amended Complaint relating to the 2014 edition of the OCGA. As more fully discussed in the accompanying Memorandum of Law and exhibits thereto, and further supported by the parties' Stipulation of Facts (Dkt. No. 17), Plaintiff is entitled to summary judgment as follows:

1.      Each of Plaintiff's copyrighted works identified in Exhibit A to the Stipulation of Facts (Dkt. 17), numbered 1-6, 8-10, 12-15 and 17-71 ("Copyrighted Works") are original and creative works of authorship subject to a valid copyright;

2.      The copyright in each of Plaintiff's Copyrighted Works is owned by Plaintiff through a valid work-for-hire agreement with the authors whom are employed by LexisNexis;

3.      Each of Plaintiff's Copyrighted Works was the subject of a U.S. Copyright Registration at the time this lawsuit was filed;

4.      Defendant directly infringed each of the Copyrighted Works by copying each of those works in its entirety, and posting a copy of each of those works on the publicly accessible websites https://law.resource.org and www.archive.org; and

5.      Defendant's direct infringement of each of Plaintiff's Copyrighted Works is not encompassed by the fair use defense.


WHEREFORE, there being no genuine issue of material fact and being entitled to judgment as a matter of law on the issues addressed herein, Plaintiff requests that this Court grant its motion as to Plaintiff's counts of copyright

infringement relating to the 2014 edition of the OCGA described above, pursuant to Rule 56 and Local Civil Rule 56.1.

Respectfully submitted, this 17th day of May, 2016.

> /s/Lisa C. Pavento
> Lisa C. Pavento (G.A. Bar: 246698)
> Anthony B. Askew (G.A. Bar: 025300)
> Warren Thomas (G.A. Bar: 164714)
> Meunier Carlin & Curfman LLC
> 999 Peachtree Street, NE, Suite 1300
> Atlanta, Georgia 30309
> Phone: 404-645-7700
> Fax: 404-645-7707
> lpavento@mcciplaw.com
> taskew@mcciplaw.com
> wthomas@mcciplaw.com
>
> *Counsel for the Plaintiff, Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia*

3

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 17, 2016, I electronically filed the foregoing MOTION

FOR PARTIAL SUMMARY JUDGMENT with the Clerk of Court using the

CM/ECF system, which constitutes service of the filed document on all counsel of

record in this proceeding under LR 5.1(A)(3), N.D. Ga.


By:     */s/Lisa C. Pavento*
Lisa C. Pavento (G.A. Bar: 246698)
Anthony B. Askew (G.A. Bar: 025300)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
lpavento@mcciplaw.com
taskew@mcciplaw.com
wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision*
*Commission on behalf of and for the benefit*
*of the General Assembly of Georgia, and the*
*State of Georgia*

4

# DKT 30-2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CODE REVISION COMMISSION on
behalf of and for the benefit of THE
GENERAL ASSEMBLY OF
GEORGIA, and THE STATE OF
GEORGIA,

           Plaintiff,

      v.

PUBLIC.RESOURCE.ORG, INC.

         Defendant.

CIVIL ACTION NO.

1:15-CV-02594-MHC

## PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(A), Plaintiff and Counterclaim-Defendant the Code Revision Commission, on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia ("Commission"), and in support of Plaintiff's Motion for Summary Judgment, states that there is no genuine issue to be tried as to the following material facts:

      1.      Each Official Code of Georgia Annotated ("OCGA") volume and supplement in Exhibit A to the Stipulation of Facts ("Exhibit A") contains statutory text and non-statutory annotation text. Dkt. 17 ¶ 1.

2.      The 2014 and 2015 State of Georgia session laws each state in part:

Annotations; editorial notes; Code Revision Commission notes; research references; notes on law review articles; opinions of the Attorney General of Georgia; indexes; analyses; title, chapter, article, part, and subpart captions or headings, except as otherwise provided in the Code; catchlines of Code sections or portions thereof, except as otherwise provided in the Code; and rules and regulations of state agencies, departments, boards, commissions, or other entities which are contained in the Official Code of Georgia Annotated are not enacted as statutes by the provisions of this Act.

2014 Ga. Laws 866, § 54; 2015 Ga. Laws 5, § 54. Dkt. 17 ¶ 2.

3.      The non-statutory annotation text of each OCGA volume and supplement in Exhibit A includes summaries of judicial decisions. Dkt. 17 ¶ 3.

4.      The summaries of judicial decisions in the non-statutory annotations of each OCGA volume and supplement in Exhibit A are prepared by Matthew Bender and Company, a member of the LexisNexis Group, a division of Reed Elsevier Properties, Inc. ("LexisNexis") under contract for the State of Georgia, and are finalized under the direct supervision of and subject to the approval of the Code Revision Commission. Dkt. 17 ¶ 4.

5.      The judicial decisions summarized in the judicial decision summaries in each OCGA volume and supplement in Exhibit A have been selected by LexisNexis to be summarized for inclusion in the OCGA, under the direct

supervision and subject to the approval of the Code Revision Commission. Dkt. 17 ¶ 5.

6.     The content of the summaries of judicial decisions in each OCGA volume and supplement in Exhibit A has been selected for inclusion in the OCGA. Dkt. 17 ¶ 6.

7.     The summaries of judicial decisions in each OCGA. volume and supplement in Exhibit A have been coordinated with an OCGA. statute (statutory text). Dkt. 17 ¶ 7.

8.     The summaries of judicial decisions in each OCGA volume and supplement in Exhibit A are arranged under the heading "Judicial Decisions" prior to or following an OCGA. statute (statutory text). Dkt. 17 ¶ 8.

9.     The summaries of judicial decisions are selected, coordinated and arranged in each OCGA. volume and supplement listed in Exhibit A. Dkt. 17 ¶ 9.

10.     The non-statutory annotation text of each OCGA volume and supplement in Exhibit A includes editor's notes. Dkt. 17 ¶ 10.

11.     Editor's notes in each OCGA. volume and supplement in Exhibit A are prepared by LexisNexis under contract for the State of Georgia, and under the direct supervision and subject to the approval of the Code Revision Commission. Dkt. 17 ¶ 11.

12.     The editor's notes in each OCGA volume and supplement in Exhibit A have been coordinated with an OCGA statute (statutory text). Dkt. 17 ¶ 12.

13.     The editor's notes in each OCGA volume and supplement in Exhibit A are arranged after the heading "Editor's notes" prior to or following an OCGA statute (statutory text). Dkt. 17 ¶ 13.

14.     The editor's notes are coordinated and arranged in each OCGA volume and supplement listed in Exhibit A. Dkt. 17 ¶ 14.

15.     Each OCGA. volume and supplement in Exhibit A is the subject of a U.S. Copyright Registration as shown in Exhibit A.  Dkt. 17 ¶ 17; Dkt. 17-1.

16.     The non-statutory annotation text of each OCGA volume and supplement listed in Exhibit A includes summaries of opinions of the Attorney General of Georgia. Dkt. 17 ¶ 18.

17.     The summaries of opinions of the Attorney General of Georgia in the non-statutory annotations of each OCGA volume and supplement listed in Exhibit A are prepared by LexisNexis under contract for the State of Georgia, and under the direct supervision of and subject to the approval of the Code Revision Commission. Dkt. 17 ¶ 19.

4

18.     The opinions of the attorney general of Georgia referenced in each OCGA volume and supplement listed in Exhibit A have been selected for inclusion in the OCGA. Dkt. 17 ¶ 20.

19.     The opinions of the Attorney General of Georgia referenced in the opinion of the attorney general summaries are selected in each OCGA volume and supplement listed in Exhibit A. Dkt. 17 ¶ 21.

20.     The content of the summaries of opinions of the Attorney General of Georgia in each OCGA volume and supplement listed in Exhibit A has been selected for inclusion in the OCGA. Dkt. 17 ¶ 22.

21.     The summaries of opinions of the Attorney General of Georgia in each OCGA volume and supplement listed in Exhibit A have been coordinated with an OCGA statute (statutory text). Dkt. 17 ¶ 23.

22.     The summaries of opinions of the Attorney General of Georgia in each OCGA volume and supplement listed in Exhibit A are arranged under the heading "Opinions of the Attorney General" prior to or following an OCGA statute (statutory text). Dkt. 17 ¶ 24.

23.     The summaries of the opinions of the Attorney General of Georgia are selected, coordinated and arranged in each OCGA volume and supplement listed in Exhibit A. Dkt. 17 ¶ 25.

24.    The non-statutory text of each OCGA volume and supplement listed in Exhibit A includes summaries of research references. Dkt. 17 ¶ 26.

25.    The summaries of research references in the non-statutory annotations of each OCGA volume and supplement in Exhibit A are prepared by LexisNexis under contract for the State of Georgia, and under the direct supervision and subject to the approval of the Code Revision Commission. Dkt. 17 ¶ 27.

26.    The research references referenced in each OCGA volume and supplement in Exhibit A have been selected for inclusion in the OCGA. Dkt. 17 ¶ 28.

27.    The research references are selected in each OCGA volume and supplement listed in Exhibit A. Dkt. 17 ¶ 29.

28.    The content of the summaries of the research references in each OCGA volume and supplement listed in Exhibit A has been selected for inclusion in the OCGA. Dkt. 17 ¶ 30.

29.    The summaries of research references in each OCGA volume and supplement listed in Exhibit A have been coordinated with an OCGA statute (statutory text). Dkt. 17 ¶ 31.

30.     The summaries of research references in each OCGA volume and supplement listed in Exhibit A are arranged under the heading "Research References" prior to or following an OCGA statute (statutory text). Dkt. 17 ¶ 32.

31.     The summaries of research references are selected, coordinated and arranged in each OCGA volume and supplement listed in Exhibit A. Dkt. 17 ¶ 33.

32.     Public Resource purchased from LexisNexis and copied the entirety of 186 volumes and supplements of the OCGA, including front and back covers, which 186 volumes include the volumes and supplements of the OCGA listed in Exhibit A. Dkt. 17 ¶ 34.

33.     Public Resource posted on its website https//law.resource.org the copies it made of the OCGA including the volumes and supplements of the OCGA listed in Exhibit A. Dkt. 17 ¶ 36.

34.     Public Resource has facilitated, enabled, encouraged and induced others to view, download, print, copy and distribute each OCGA volume and supplement listed in Exhibit A without limitation or compensation to the State of Georgia. Dkt. 17 ¶ 38.

35.     Public Resource created works containing each OCGA volume and supplement listed in Exhibit A. Dkt. 17 ¶ 39.

36.     The annotations to each OCGA volume and supplement listed in

Exhibit A include summaries of cases that relate to the OCGA, summaries of

Opinions of the Attorney General of Georgia and summaries of research references

related to the OCGA.  Dkt. 17 ¶ 40.

37.     Public Resource actively encourages all citizens to copy, use, and

disseminate to others in Georgia and elsewhere and to create works containing the

OCGA volumes and supplements listed in Exhibit A. Dkt. 17 ¶ 41.

38.     The Commission does not assert copyright in the OCGA statutory text

itself because the laws of Georgia are and should be free to the public. Dkt. 17 ¶

45.

39.     Subsequent to July 22, 2015 and with full knowledge of the

Commission's Complaint (Dkt. No. 1), Public Resource copied the entirety of the

volumes and supplements of the 2015 OCGA shown in Exhibit A and distributed

those copies via posting them on its website https://law.resource.org. Dkt. 17 ¶ 46.

40.     Public Resource's posting of the entirety of the 114 volumes and

supplements of the OCGA listed in Exhibit A on its website

https://law.resource.org was for the purpose of facilitating, enabling, encouraging

and inducing others to view, download, print, copy and distribute those volumes

and supplements of the OCGA.  Dkt. 17 ¶ 48.

8

41.     Public Resource's posting of the entirety of the 114 volumes and supplements of the OCGA listed in Exhibit A on its website https://law.resource.org resulted in the copying (downloading) of those volumes and supplements from that website by members of the public. Dkt. 17 ¶ 49.

42.     Public Resource posted on a website, www.archive.org, copies of the entirety of the volumes and supplements of the OCGA listed in Exhibit A. Dkt. 17 ¶ 50.

43.     Subsequent to July 22, 2015 and with full knowledge of the Commission's Complaint (Dkt. No. 1), Public Resource copied the entirety of the volumes and supplements of the 2015 OCGA listed in Exhibit A and posted them on the website www.archive.org. Dkt. 17 ¶ 52.

44.     Public Resource's posting of the entirety of the volumes/supplements of the OCGA on the website www.archive.org, including those volumes/supplements listed in Exhibit A, was for the purpose of facilitating, enabling, encouraging and inducing others to view, download, print, copy and distribute those volumes and supplements of the OCGA. Dkt. 17 ¶ 54.

45.     Public Resource's posting of the entirety of volumes and supplements of the OCGA on the website www.archive.org, resulted in the copying

9

(downloading) of each of those volumes/supplements of the OCGA from the website by members of the public as listed in Exhibit A. Dkt. 17 ¶ 55.

46.     Public Resource distributed USB thumb drives containing scanned copies of the OCGA to members of the State of Georgia Legislature. Dkt. 17 ¶ 63.

47.     Public Resource distributed copies of the entirety of 90 volumes and supplements of the OCGA to at least eight institutions in and around the state of Georgia, Honorable David Ralston, Speaker of the House, Georgia House of Representatives and Mr. Wayne Allen, Legislative Counsel, Office of Legislative Counsel, Georgia General Assembly, including those shown in Exhibit A, by placing those copies on USB thumb drives and mailing them. Dkt. 17 ¶ 64.

48.     Public Resource's distribution of the entirety of 90 volumes and supplements of the OCGA to at least eight institutions in and around the state of Georgia, including those volumes and supplements shown in Exhibit A, was for the purpose of facilitating, enabling, encouraging and inducing others to view, download, print, copy and distribute those volumes and supplements of the OCGA. Dkt. 17 ¶ 65.

49.     The Commission has not authorized Public Resource to copy, distribute or make derivative works of any entire volume or supplement of the OCGA, including those shown in Exhibit A, and upon receiving cease and desist

10

letters from the Commission, Public Resource refused to remove any and all copies of the OCGA that it had posted on any website. Dkt. 17 ¶ 66.

50.     The statutory text and numbering of the OCGA is accessible by the public through the Georgia General Assembly website at www.legis.ga.gov and the Georgia Senate website at www.senate.ga.gov by clicking on the "Georgia Code" link on each of those websites which will direct the user to the LexisNexis website operated for the State of Georgia. Dkt. 17 ¶ 73.

51.     The "Georgia Code" links on the websites www.legis.ga.gov and www.senate.ga.gov link to the LexisNexis website http://www.lexisnexis.com/hottopics/gacode/Default.asp ("LexisNexis GA Code website"), which is operated for the State of Georgia, and the LexisNexis GA Code website contains the statutory text and numbering of the OCGA. Dkt. 17 ¶ 74.

52.     There is no fee to access the statutory text and numbering of the OCGA through the LexisNexis GA Code website. Dkt. 17 ¶ 75.

53.     The statutory text and numbering of the OCGA can be electronically copied and/or printed from the LexisNexis GA Code website. Dkt. 17 at ¶ 76.

54.     The statutory text of the OCGA is searchable by term on the LexisNexis GA Code website. Dkt. 17 ¶ 77.

55.     Public Resource operates the websites public.resource.org, law.resource.org, house.resource.org, bulk.resource.org and others. Dkt. 17 ¶ 79.

56.     At least one copy of each OCGA volume and supplement that Public Resource posted on its https//law.resource.org website is in an electronic format that displays an image of the printed publication as copied by Public Resource, which image allows for electronic page turning of the printed publication. Exhibit B to the Stipulation of Facts (Dkt. 17-2) is a true and correct copy of the front cover of one such image. Dkt. 17 ¶ 37.

57.     The preface in each OCGA volume and supplement in Exhibit A of the Stipulation of Facts (Dkt. 17-1) is prepared under contract by LexisNexis for the State of Georgia and under the direct supervision and subject to the approval of the Code Revision Commission.  Dkt. 17 ¶ 15.

58.     Public.Resource.Org has argued:

The distinction between 'the statutory text itself' and additional materials perhaps would have some bearing if the publication in question were the independent commercial endeavor of a publication firm.  If such firm were to copy the state statutes and compile that information with additional analyses and summaries and were to do so as a strictly commercial endeavor, we understand and respect that this material would be their private property. Dkt. No. 17-4, p. 2.

59.     The Official Code of Georgia Annotated is a compilation of the Georgia statutes and other non-statutory materials, or annotations, which has been published yearly since 1982. Exhibit 1, Declaration of Elizabeth P. Howerton ¶ 3.

60.     The annotations in the OCGA provide analyses and other information that allow for a better or easier understanding of a relevant statute.  The annotations included in the OCGA are original and creative summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, and compilations thereof. Ex. 1 ¶¶ 3, 4.

61.     The OCGA is published by Matthew Bender and Company, Inc., a member of the LexisNexis Group ("LexisNexis"), a division of Reed Elsevier Properties, Inc. under a work for hire agreement with the State of Georgia. Ex. 1 ¶ 5.

62.     When entering the contract with LexisNexis, the ability of the state to keep the price of the OCGA low for the benefit of the citizens of Georgia was an important consideration. Ex. 1 ¶ 6.

63.     West's Code of Georgia Annotated is another compilation of the Georgia statutes and annotations thereof that is published by West Publishing. Ex. 1 ¶ 7.

13

64.     The OCGA contains the official, or State of Georgia-approved, codified statutory text (OCGA. 1-1-1), whereas the statutory text in West's Code of Georgia Annotated is not approved by the State. Ex. 1 ¶ 8.

65.     The current price of a complete OCGA set is $404.00 as compared to $2,570.00 for a complete set of West's Code of Georgia Annotated. Ex. 1 ¶ 9.

66.     The entire OCGA, including the annotations, is available for viewing on compact disc at over 60 state- and county-operated facilities such as state and county libraries, state universities, and county law enforcement offices within the State of Georgia. Ex. 1 ¶ 10.

67.     The   Georgia   General   Assembly   has   websites   at http://www.legis.ga.gov,  http://www.house.ga.gov,  and  http://www.senate.ga.gov that provide live broadcasts of both legislative houses, links to the Georgia Code, and  the  ability  to  search  pending  legislation,  obtain  contact  information  for legislators, and obtain state budget documents. Ex. 1 ¶ 11.

68.     The Georgia Code was accessed almost 79 million times between 2007 and 2015 via the website that is linked to the Georgia General Assembly websites. Ex. 1 ¶ 12.

69.     In 1994, the Board of Regents of the University System of Georgia and the University of Georgia created GALILEO, the first state wide digital library. Ex. 1 ¶ 13.

70.     GALILEO can be found at http://dlg.galileo.usg.edu. Ex. 1 ¶ 13.

71.     GALILEO provides access to the *Georgia Laws*, which is a publication of Georgia laws (both codified and uncodified) as enacted by the Georgia Legislature. Ex. 1 ¶ 14.

72.     In 1996, the Georgia Government Publications database (GGP) was created as GALILEO's first digital conversion initiative of publications released by agencies of Georgia's executive branch. Ex. 1 ¶ 15.

73.     Georgia law (OCGA. 20-5-2) requires Georgia state agencies to submit publications to GALILEO that they produce for the public. Ex. 1 ¶ 16.

74.     The GGP database consists of over 70,000 documents produced by Georgia state agencies. Ex. 1 ¶ 17.

75.     Prior to the State of Georgia filing a lawsuit against Public Resource, Public Resource copied and distributed hundreds of annotated state code volumes of several states, including Georgia, Mississippi and Idaho, and then informed each state of its actions. Ex. 1 ¶ 18.

76.    Under the Publication Agreement between the State of Georgia and

LexisNexis, the annotations in the OCGA remain the property of the State of

Georgia and LexisNexis obtains copyright registrations therefore. Exhibit 2,

Agreement for Publication, § 6.1.

77.    LexisNexis is granted the exclusive right to publish and sell the

OCGA according to the prices set in the publication contract, with any price

increases at the sole discretion of the Commission. Ex. 2 §§ 5, 8.

78.    LexisNexis created the summaries of judicial decisions in the OCGA

works using a lengthy process of selection, analysis and summarization. Exhibit 3,

Declaration of Anders X. Ganten ¶¶ 3-15.

79.    LexisNexis identified and read each potentially relevant judicial

decision, determined how the case relates to a statute, and then determined the type

of annotation that should be created. Ex. 3 ¶¶ 4, 5.

80.    For those cases of significance, LexisNexis created an original several

line summary of the case that distills the case's relevant holding relating to the

statute. Ex. 3 ¶¶ 7, 8.

81.    The OCGA annotation of the judicial decision *Cho Carwash*

*Property, LLC. v. Everett* (326 Ga. App. 6 (2014)) published in the 2014 edition of

the OCGA. as associated with Georgia statute § 34-9-260 is as follows:

Average weekly wage calculated correctly. – Award of workers' compensation benefits was upheld because there was some evidence to support the administrative law judge's calculation of the claimant's average weekly wage under OCGA. § 34-9-260(3) based on the claimant's testimony that the claimant was supposed to work from the car wash's opening until its close. *Cho Carwash Property, LLC. v. Everett*, 326 Ga. App. 6, 755 S.E.2d 823 (2014).

Ex. 3 ¶¶ 9, 13.

82.     Each of the OCGA Works further contains original and creative compilations of summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, summaries of research references, and compilations of these compilations. Ex. 3 ¶ 5.

83.     Each judicial decision summary, editor's note, and summary of an opinion of the Attorney General of Georgia was first selected for inclusion in the OCGA by LexisNexis and then coordinated with a particular statute. Ex. 3 ¶ 3.

84.     When multiple summaries or editor's notes were coordinated with a single code section, each was arranged in a particular order. Ex. 3 ¶ 4.

85.     The correspondence shown in Exhibit C to the Stipulation of Facts (Dkt. 17-3) is a true and exact copy of a letter written by Mr. Malamud and sent to David Ralston and Wayne Allen on May 30, 2013. Dkt. 17 ¶ 67.

86.     The correspondence shown in Exhibit D to the Stipulation of Facts (Dkt. 17-4) is a true and exact copy of a letter written by Mr. Malamud and sent to Joshua McKoon, David Ralston and David Shafter on July 30, 2013. Dkt. 17 ¶ 68.

87.     The correspondence shown in Exhibit E to the Stipulation of Facts (Dkt. 17-5) is a true and exact copy of a letter written by Joshua McKoon and sent to Mr. Malamud on July 25, 2013. Dkt. 17 ¶ 69.

88.     The correspondence shown in Exhibit F to the Stipulation of Facts (Dkt. 17-6) is a true and exact copy of a letter written by Joshua McKoon and sent to Mr. Malamud on August 15, 2013. Dkt. 17 ¶ 70.

89.     The correspondence shown in Exhibit G to the Stipulation of Facts (Dkt. 17-7) is a true and exact copy of a letter written by Joshua McKoon and sent to Mr. Malamud on April 2, 2014. Dkt. 17 ¶ 71.

90.     To access the statutory text and numbering in the OCGA via the website link found on the State of Georgia website, www.legis.ga.gov, one must accept the terms and conditions of use generally applicable to the LexisNexis websites ("LexisNexis Website Use Terms and Conditions"). A true and correct copy of the LexisNexis Website Use Terms and Conditions is attached to the Stipulation of Facts as Exhibit I (Dkt. 17-9). The access page that allows users to access the online publication by accepting the LexisNexis Website Use Terms and

Conditions explicitly states that the LexisNexis Website Use Terms and Conditions do not apply to the OCGA statutory text and numbering. A true and correct copy of this access page is attached to the Stipulation of Facts as Exhibit J (Dkt. 17-6). Dkt. 17 ¶ 86.

WHEREFORE, there being no genuine issue of material fact and being entitled to judgment as a matter of law on the issues addressed herein, Plaintiff requests that this Court grant its motion as to all of Plaintiff's counts of copyright infringement, pursuant to Rule 56 and Local Civil Rule 56.1.

Respectfully submitted, this 17th day of May, 2016.

*/s/Lisa C. Pavento*

Lisa C. Pavento (G.A. Bar: 246698)
Anthony B. Askew (G.A. Bar: 025300)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
taskew@mcciplaw.com
lpavento@mcciplaw.com
wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision*
*Commission on behalf of and for the benefit*
*of the General Assembly of Georgia, and the*
*State of Georgia*

19

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District of Georgia, the foregoing PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT complies with the font and point selections approved by the Court in L.R. 5.1C. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/Lisa C. Pavento*
Lisa C. Pavento (G.A. Bar: 246698)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: lpavento@mcciplaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on Tuesday, May 17, 2016, I electronically filed the foregoing

PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED

MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY

JUDGMENT with the Clerk of Court using the CM/ECF system, which constitutes

service of the filed document on all counsel of record in this proceeding under LR

5.1(A)(3), N.D. Ga.


By:   /s/Lisa C. Pavento
      Lisa C. Pavento (G.A. Bar: 246698)
      Anthony B. Askew (G.A. Bar: 025300)
      Warren Thomas (G.A. Bar: 164714)
      Meunier Carlin & Curfman LLC
      999 Peachtree Street, NE, Suite 1300
      Atlanta, Georgia 30309
      Phone: 404-645-7700
      Fax: 404-645-7707
      taskew@mcciplaw.com
      lpavento@mcciplaw.com
      wthomas@mcciplaw.com

      *Counsel for the Plaintiff, Code Revision*
      *Commission on behalf of and for the benefit*
      *of the General Assembly of Georgia, and the*
      *State of Georgia*

# DKT 30-3

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on behalf of and for the benefit of THE GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:15-CV-02594-MHC |
| PUBLIC.RESOURCE.ORG, INC. | |
| Defendant. | |

## DECLARATION OF ELIZABETH P. HOWERTON

I, Elizabeth P. Howerton, hereby testify and state by declaration as follows:

1.     I began working as an attorney in the State of Georgia's Office of Legislative Counsel in November of 2002.   I assumed my current position as Deputy Legislative Counsel in 2004.

2.     I make the following declaration on personal knowledge and belief.   If called upon to testify to the statements in this Declaration, I could and would competently testify to these facts.

3.     The Official Code of Georgia Annotated is a compilation of the Georgia statutes and other non-statutory materials, or annotations, which has been published yearly since 1982.

4.     The annotations in the O.C.G.A. provide analyses and other information that allow for a better or easier understanding of a relevant statute. The annotations included in the O.C.G.A. are original and creative summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, and compilations thereof.

5.     The O.C.G.A. is published by Matthew Bender and Company, Inc., a member of the LexisNexis Group ("LexisNexis"), a division of Reed Elsevier Properties, Inc. under a work for hire agreement with the State of Georgia.

6.     When entering the contract with LexisNexis, the ability of the state to keep the price of the O.C.G.A. low for the benefit of the citizens of Georgia was an important consideration.

7.     West's Code of Georgia Annotated is another compilation of the Georgia statutes and annotations thereof that is published by West Publishing.

8.     The O.C.G.A. contains the official, or State of Georgia-approved, codified statutory text (O.C.G.A. 1-1-1), whereas the statutory text in West's Code of Georgia Annotated is not approved by the State.

2

9.     Currently, the price of a complete O.C.G.A. set is $404.00 as compared to $2,570.00 for a complete set of West's Code of Georgia Annotated.

10.     The entire O.C.G.A., including the annotations, is available for viewing on compact disc at over 60 state- and county-operated facilities such as state and county libraries, state universities, and county law enforcement offices within the State of Georgia.

11.     The Georgia General Assembly has websites at http://www.legis.ga.gov, http://www.house.ga.gov, and http://www.senate.ga.gov that provide live broadcasts of both legislative houses, links to the Georgia Code, and the ability to search pending legislation, obtain contact information for legislators, and obtain state budget documents, among other things.

12.     The Georgia Code was accessed almost 79 million times between 2007 and 2015 via the website that is linked to the Georgia General Assembly websites.

13.     In 1994, the Board of Regents of the University System of Georgia created GALILEO, the first state wide digital library, which can be found at http://dlg.galileo.usg.edu.

14.     GALILEO provides access to the *Georgia Laws*—a publication of Georgia laws as enacted by the Georgia Legislature that includes uncodified laws.

15.    In 1996, the Georgia Government Publications database (GGP) was created as GALILEO's first digital conversion initiative of publications released by agencies of Georgia's executive branch.

16.    Georgia law (O.C.G.A. 20-5-2) requires Georgia state agencies to submit publications to GALILEO that they produce for the public.

17.    The GGP database consists of over 70,000 documents produced by Georgia state agencies.

18.    Prior to the State of Georgia filing a lawsuit against Public Resource, Public Resource copied and distributed hundreds of annotated state code volumes of several states, including Georgia, Mississippi and Idaho, as well as the District of Colombia, and then informed each of its actions.

I declare under the penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing testimony is true and accurate to the best of my knowledge, information, understanding, and belief.

May 17, 2016

Elizabeth P. Howerton

4

# DKT 30-4

# EXHIBIT 2

## AGREEMENT FOR PUBLICATION

THIS AGREEMENT ("Agreement"), is made this 21 day of December, 2006, by and between the Code Revision Commission of the State of Georgia ("Commission" or "State") and Matthew Bender & Company, Inc., a member of the LexisNexis Group ("Publisher").

### WITNESSETH:

This Agreement is entered into between the Code Revision Commission of the State of Georgia, as established pursuant to Official Code of Georgia Annotated § 28-9-2, and the Publisher pursuant to a Request for Proposals ("RFP") issued on October 3, 2006 by the Commission for the purpose of providing for the publication, maintenance, and distribution of the Official Code of Georgia Annotated ("Code") and other related services and products as provided in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the Commission and the Publisher agree as follows:

## 1. EDITORIAL DUTIES OF THE PUBLISHER

### 1.1 General.

(a) The Publisher shall be responsible for the ongoing publication and maintenance of the Code, and shall perform and provide all services necessary for the preparation, editorial revision, publication and maintenance of the Code, in printed, electronic and any other form. Duties of the Publisher shall extend to all Code publications in whatever form or medium covered by this Agreement. The editorial and quality standards provided in this Section 1 shall apply to all supplements and replacement volumes prepared by the Publisher and to each updated general index prepared by the Publisher.

(b) The Publisher shall bear all editorial, publication and distribution costs associated with the production and maintenance of the Code, without any contribution, subsidy or expense by the Commission, or any consideration from the Commission other than the consideration provided for in this Agreement.

(c) Upon request of the Commission, the Publisher's editors or other representatives, as determined by the Commission, shall confer with the Commission or its staff, either in Atlanta, Georgia, or at the offices of the Publisher.

–1–

(d) Consultations between and decisions by the editorial staffs of the Commission and the Publisher shall be amply documented in memoranda prepared by each party, so as to provide documentation of and accountability for editorial decisions.

(e) The ultimate right of editorial control over all material contained in the Code shall be in the Commission, and in the event of any disagreement between the Commission and the Publisher over the material to be included, the decision of the Commission shall control.

(f) The Publisher shall be required to publish the Code in conformity with the Commission's *Publication Manual for the Official Code of Georgia Annotated* as provided by staff of the Commission to the Publisher, which manual shall reflect those specific content, style, and publishing standards of the Code as adopted, approved, or amended from time to time by the Commission or its staff pursuant to Code Section 28-9-3 of the Official Code of Georgia Annotated. Such manual is hereby incorporated into this Agreement by reference. The Publisher agrees that the contents and specifications of such manual are controlled by the Commission and that the information contained in the manual is neither confidential nor proprietary to any publisher nor does it constitute a trade secret of any publisher.

(g) The provisions contained in this Section 1 may be varied by mutual written consent of the Publisher and the Commission.

### 1.2 Name of Publication.

The name of the publication produced and maintained pursuant to this Agreement shall be the "Official Code of Georgia Annotated".

### 1.3 Content of Publication.

The material comprising the Code shall include:

(a) All statutory provisions, annotations, captions, catchlines, headings, history lines, editorial notes, cross-references, indices, title and chapter analyses, research references, amendment notes, Code Commission notes, and other material related to or included in such Code at the direction of the Commission;

(b) The United States Constitution and the Georgia Constitution, as amended;

(c) General index, indices related to local and special laws, and conversion tables; and

(d) Other material as provided in this Agreement.

–2–

COMM000002

The Code shall include the codification of Georgia laws prepared by the Code Revision Commission and The Michie Company and enacted by the General Assembly of Georgia by an Act approved September 3, 1981 (Ga. L. 1981, Ex. Sess., p. 8), and subsequent current legislative enactments of the General Assembly of Georgia.

### 1.4  Organization, Arrangement and Numbering.

The Publisher shall maintain the organization and arrangement of the current Code in all supplements and replacement volumes published under this Agreement.  In addition, the Publisher shall continue the section numbering system currently in use in the Code.  The United States Constitution and the Constitution of Georgia, in place of the regular numbering system should carry, at the top of the page as well as at the beginning of each article, section, paragraph, or amendment, the appropriate article, section, paragraph, and amendment numbers.  The Publisher shall provide for descriptive headings known as catchlines to denote the contents of a Code section.  Such catchlines shall be printed in boldface type to the right of a Code section number.  The Publisher shall also include any catchlines at the subsection, paragraph, subparagraph, division, or subdivision level of any Code section as contained in legislation enacted by the General Assembly and such catchlines shall be printed in italics or large and small capitals within the text of a Code section.  The Publisher shall also provide for descriptive headings known as captions to denote the contents of a title, chapter, article, part, subpart, or other subdivision of the Code.  The form and style of the organization, arrangement, catchlines, and captions shall be subject to the approval of the Commission.

### 1.5  User's Guide.

The Publisher shall provide a User's Guide in the bound Volume 1 of the Code containing instructions for the use of the Code, which shall be usable and easily understood by both lay and legal professional persons.  A reference to such User's Guide shall be included in each other bound volume of the Code.  A guide for users shall be set out in other parts of the Code or other publications under this Agreement, as requested by the Commission.

### 1.6  Case Annotations.

(a)  The Publisher shall compile a complete set of annotations to each statute appearing in the Code from all court cases that are available up to the date of adjournment *sine die* of the regular session of the General Assembly.  Case annotations shall include all published opinions of the Georgia Supreme Court and the Court of Appeals of Georgia, and all published opinions of the United States Supreme Court and other federal courts that arose in Georgia and construed Georgia general statutes, whether such decisions favor plaintiffs, defendants, or the prosecution. Additional annotations to those required by this Paragraph may be included where determined useful as determined or approved by the Commission.  References to the annotations shall include both the official publication and the national reporter system reference where available.

–3–

COMM000003

The official state or U.S. citation shall be given first followed by the unofficial citation. The form of the annotations shall be subject to the approval of the Commission.

(b)  Every case decided by the courts mentioned in subparagraph (a) of this Paragraph shall be read by the Publisher's editors for the purpose of preparing annotations for the Code and the Publisher's editors shall extract from such cases all direct constructions and applications. Annotation material shall be extracted from the cases showing reference to all pertinent amendments, additions, and deletions in statutory and constitutional provisions subsequent to the date of the decision being annotated.  In reading cases and extracting material therefrom, the Publisher's editors shall avoid the inclusion of long factual annotations where they do not bear directly upon the statute involved.    The Publisher's editors shall take from the cases constructions concerning constitutionality, purpose, intent, and meaning of words and phrases as well as illustrations as to what a particular provision applies and to what a particular provision does not apply.

(c)  After the annotations have been extracted from the cases, they shall be completely edited and arranged under appropriate headings.  Unless otherwise appropriate, constitutional constructions shall be arranged first, followed by annotations concerning purpose, meaning, and application of the particular provision.  Larger annotations shall be given appropriate analysis lines which shall be selected to cover the content of the material.  Where headings are supplied for annotations, such headings shall be carried so as to present a scheme at the beginning of the annotated material.  After a logical arrangement of annotation material has been made, the individual annotation or paragraph shall be appropriately catchlined, the catchline stating in a few words the general content of the annotation.

(d)  The Publisher shall verify each completed annotation, including the name and citation of the case and its arrangement and catchline.

**1.7 Research References.**

(a) The Publisher shall include the following research references in the Code:

(1)  Collateral references to American Law Reports, American Jurisprudence 2nd, American Jurisprudence Trials, American Jurisprudence Pleading and Practice, American Jurisprudence Proof of Facts, Corpus Juris Secundum, Uniform Laws Annotated, related legislation from the federal government, law reviews and other research aids currently included in the Code;

(2)  Annotations to opinions of the Georgia Attorney General;

(3)  Cross-references to related Code sections and provisions; and

COMM000004

(4)   Any new annotations as determined by the Publisher's editorial staff and approved by the Commission, or as required by the Commission.

(b)   The Publisher shall update all existing research references and historical data, and check for continuing validity of any existing references, annotations and editor's notes before publication of the annual supplements and replacement volumes.

(c)   The form, arrangement, and content of research references shall be subject to the approval of the Commission.

### 1.8  Legislative History.

The Publisher shall insert immediately after each Code section the source and history of that section, including the volume, page number, and section number of the Georgia Laws for the original Act and all amendatory Acts relative to such section, the 1933 Code or any prior officially enacted Code, or the court decision citation or other source of such section, including an indication of the English common law as a source. Historical notes shall be added when the source of the section cannot be simply or adequately expressed by using the volume, page number, and section number of the Georgia Laws.  In addition, a note shall be included at an appropriate location within the Code which relates the history of Georgia's Codes and which specifically refers to the incorporation of principles from Georgia case law and from English statutes in the Georgia Code of 1863. The Publisher also shall insert the bill number or bill numbers constituting the source of the section and the amendments or modifications to the section for all Acts enacted in 2005 or later.  The form of the history lines shall be subject to the approval of the Commission.

### 1.9  Notes.

The Publisher shall provide for editor's notes, amendment notes, Code Commission notes, effective date notes, and such other notes as may be required by the Commission.  Unless otherwise directed by the Commission, such notes shall be placed at the end of Code sections for purposes of explanation of unusual situations, description of changes, correction of errors, reference to uncodified provisions of Acts, delayed effectiveness, and other purposes.  Such notes shall be organized and styled in accordance with the Publication Manual for the Official Code of Georgia Annotated and as approved by the Commission.

### 1.10  Volume Index.

Each volume of the Code containing statutory titles shall contain an individual volume index covering the material contained in such volume.  Each volume index shall be prepared in accordance with the specifications for the general index.  Individual volume indexes shall not be revised in the annual supplements to the volumes but shall be revised and updated when a volume is recompiled and republished.

COMM000005

**1.11 General Index.**

(a) The general index shall be updated and published annually.  The general index shall be published in two (2) softcover volumes in a format similar to the current Index, unless otherwise specified by the Commission.  Repealed laws shall be deleted from the general index and references to new laws or new subjects in amended laws shall be integrated annually. General index volumes will be bound with flexible, perfect bound covers.  The general index shall be prepared in accordance with the following general specifications:

(1)  Lines will be produced by an actual reading of the body of the statutes and other material, not merely from headings or catchlines;

(2)  All sections of the Code, appropriate statutes, and other appropriate material will be separately indexed, although blanket references may also be used where a group of sections includes the same general subject matter or where separate indexing of each section will serve no useful purpose;

(3)  The headings used in the index shall not be a mere alphabetical arrangement of those used in the body of the statutes and other material.  In choosing index headings, the indexers shall, whenever practical, break down the large divisions employed by the compilers of the statutes and arrange index lines under such group headings as the user may reasonably be expected to look for in an index prepared on an alphabetical or catchword plan.  All major terms used in the statutory portion of the Code shall be represented in the index.  All short titles used in the statutory portion of the Code shall be represented as main headings in the index and shall also be compiled in a separate table index preceding the general index entries;

(4)  Headings, subheadings, and the lines and sublines under the headings and subheadings shall be arranged alphabetically throughout;

(5)  Where matter may be reasonably indexed under more than one descriptive word, it shall be indexed under each of such descriptive words either by a direct reference or a cross-reference, and no section shall be indexed in less than two entries;

(6)  Under each heading the lines will begin with some descriptive word, so as to be readily located without the necessity of scanning everything under such heading;

(7)  The index shall include popular names of Acts;

(8)  All cross-references shall be made:

(A)  Wherever a heading consists of an expression for which there is a common synonym;

–6–

**COMM000006**

(B)  Whenever there is a group of lines (one flush line and two or more indented lines) which, having been put under a chosen heading, might also properly be put under other headings; the object being to gather all related matter together in one place, with cross-references in all the other places, rather than scattering the lines around, with some under one heading and others under different headings; but this will not apply to single lines, which shall be duplicated in all appropriate places;

(C)  Where matter under a heading might reasonably be expected to be found under some other heading; and

(D)  In all other instances, where, in the judgment of the indexers or the Commission, cross-references would be helpful to the user.

(b)  Adequate precautions shall be taken to see that all cross-references correctly refer to the place intended and are not of the "blind" or "double jump" type, leading either to nothing or to another cross-reference.

(c)  The Publisher shall annually provide the updated general index upon its completion to the Commission in an electronic format acceptable to the Commission as readily usable for the purposes of research and generating a display and printout of how any one or more sections are indexed.

**1.12 Local and Special Law Index.**

(a)  A complete index to all local and special laws and general laws of local application shall be published as a part of the Code.  The local and special laws index shall contain references to the volume and page of the Georgia Laws at which all local and special laws may be found.

(b)  Entries relating to each municipality, county, authority, court, or other topic shall be divided into two sections.  The first section shall contain all currently effective local and special laws pertaining to such topic and each amendment to such laws, even though any such amendments may have been superseded by a later amendment.  The second section under each topic shall contain references to all local and special laws pertaining to such topic which have been repealed and which are no longer in effect.  In the event that the name of any municipality, county, authority, court, or other topic for which index entries are made in the local and special laws index has been changed, index entries shall be made under the current name and cross-references shall be made to former names.

(c)  Care shall be taken to ensure consistency in the manner in which Acts of similar subject matter pertaining to the same topic are indexed.

–7–

COMM000007

(d) The local and special laws index shall also include an index of general laws of local application, arranged according to the census under which they were originally enacted. Such local and special laws index shall also include a table showing the population of Georgia counties according to each census beginning with the United States Decennial Census of 1920 and shall likewise include a list of the population of each county in order according to the population of each county according to the most recent census available.

(e) As used in this Paragraph or elsewhere in this Agreement, the term "local and special laws" shall include laws enacted by the General Assembly of Georgia which, by their terms, are of less than state-wide application and shall also include ordinances and resolutions adopted by municipalities and counties under their home rule powers and which are published in the Georgia Laws, local amendments to the Constitutions of Georgia, miscellaneous resolutions adopted by the General Assembly which are not codified but which appear in the Georgia Laws, and other laws and resolutions which appear in the Georgia Laws but which are not included in the general index.

### 1.13  Tables.

The Publisher shall publish as a part of the Code parallel reference tables between the Code, the Code of Georgia Annotated (published by the Harrison Company), the 1933 Code, and all previous Codes, and between previous Constitutions of Georgia. In addition, the Publisher shall include such additional reference tables as the Publisher determines to be appropriate with the approval of the Commission, or as requested by the Commission.

### 1.14  Constitutions of the United States and the State of Georgia.

(a) The Publisher shall include in the Code the Constitution of the United States and the Constitution of the State of Georgia, with appropriate annotations and references to those Constitutions in all respects conforming to the statutory annotations set forth in Paragraphs 1.6 and 1.7 of this Agreement; however, annotations to the United States Constitution for federal court cases need only refer to those cases that arose in the State of Georgia and construed general Georgia statutes or Georgia constitutional provisions. The Publisher shall prepare separate indices for each Constitution.

(b) As a part of preparing the supplements and replacement volumes for the 2007 general session of the Georgia General Assembly, the Publisher shall provide for the replacement of the volume containing the Georgia Constitution which shall be revised to include a history line for each Constitutional provision containing its origin with ratification of the 1983 Constitution and any subsequent amendments. Such history line shall be annually updated as appropriate by the Publisher in subsequent years. The form of the history line shall be subject to the approval of the Commission.

–8–

COMM000008

**1.15 Limitations of Editorial Changes.**

(a)  In performing editorial services, the Publisher shall copy the exact language of the text of those statutes as it appears in the enrolled acts sent to the Publisher by the Commission staff, except as otherwise specifically instructed by Commission staff, including, but not limited to, changes to the statutory text under the authority of Code Section 28-9-5.

(b)  The Publisher shall call to the attention of the Commission staff any Code sections or provisions that it believes may have been repealed by implication either by judicial action or by enactment of subsequent legislation or that the Publisher believes may keep the laws from being accurate, clear, and harmonious, as for example statutes that are obsolete; that are inconsistent, duplicating, or overlapping with others; that contain grammatical or typographical errors; or that are otherwise defective in form, substance, or relation to other statutes affecting the same subject.  The Publisher shall take only such action as the Commission staff may approve, if any.

(c)  The Commission, from time to time, shall confer with the Publisher's editors and shall instruct the editors as to the manner of handling the individual suggestions and specify whether to incorporate suggested changes and additions into the Code or whether such suggestions and changes must be effected by the General Assembly of Georgia.

**1.16  Editor's Qualifications.**

All editors and indexers involved in the preparations of upkeep materials for the Code, other than copy editors and index technicians, shall be lawyers.  As used in this Paragraph, "lawyer" means a graduate of an accredited law school admitted to the practice of law in one or more jurisdictions.  All copy editors and index technicians must have been appropriately trained and must be supervised by lawyer editors.  The Publisher shall designate one (1) lawyer editor for primary editorial responsibility of the Code.  The Publisher shall notify the Commission of any staffing changes in editors, indexers, and other key staff involved in producing the materials for the Code within ten (10) days of such change.

**1.17   Prepublication Review.**

With respect to supplements, replacement volumes, and updates of the general index, the Publisher shall afford the Commission an opportunity for prepublication review and correction of errors therein.  Such prepublication review process shall meet the following standards:

(1)  The Publisher shall be responsible for proofreading and other quality control procedures sufficient to ensure that such materials accurately incorporate the enactments of the General Assembly and meet the requirements of this Section 1;

–9–

**COMM000009**

(2) The purpose of prepublication review by the Commission shall not be to serve as a primary proofreading or quality control function but to ensure to the Commission's satisfaction that the Publisher has properly carried out its proofreading and quality control procedures;

(3) Submission of material to the Commission for prepublication review shall be according to a schedule approved in advance by the Commission so as to allow the Commission ample time for review; and

(4) Any errors or deficiencies noted by the Commission during prepublication review shall be corrected by the Publisher prior to publication at no charge to the Commission.

## 2. PUBLICATION DUTIES OF THE PUBLISHER.

### 2.1 General.

The Publisher shall provide all printing and distribution services necessary to publish and distribute the Code and all other publications described in this Agreement, in printed, electronic and any other form. The Publisher shall secure all materials needed to compile the Code, except copies of legislative acts in printed, electronic, or both printed and electronic format furnished by the Commission. The Publisher agrees to maintain at all times an adequate staff and adequate publishing and distribution facilities necessary to carry out its duties under this Agreement.

### 2.2 Supplements.

Supplements shall, as directed by the Commission, contain legislation of a general and permanent nature enacted and approved at the preceding regular session of the Georgia General Assembly, as well as legislation of a general and permanent nature enacted and approved at any preceding special session, and not yet included in the bound volumes of the Code. For the benefit of Code users requiring supplemental information more frequently than annually, material and data for ad-interim update between publications of supplements may be prepared and sold separately by the Publisher; provided, however, the Commission retains the right to require the Publisher to publish interim updates within a reasonable period containing general legislation enacted at a special session of the General Assembly.

### 2.3 Replacement Volumes.

(a) When supplements become inconveniently large or when major legislation affects the contents of bound volumes, the Publisher may recompile and replace the affected bound

–10–

volumes with the prior consent and approval of the Commission.  The Commission staff shall make an annual recommendation to the Commission regarding a schedule of replacement volumes for the following general session updates.  Prior to this, the Publisher may make recommendations to Commission staff regarding such schedule.  The Publisher shall schedule for publication replacement volumes as approved by the Commission.

(b)  If the content or arrangement of a volume proposed as a replacement volume is different from the content or arrangement of the volume to be replaced, the changes shall be specified by the Publisher and subject to approval by the Commission.  The present style of numbering volumes shall be continued, unless a change is authorized by the Commission.  The Commission also reserves the right to change volumes to be replaced if circumstances, such as legislative actions, make those changes desirable.

(c)  The Publisher, through an experienced editorial staff, shall review material in each volume before its replacement and refer to the Commission or its staff any laws in such volume that it considers to be archaic, obsolete or unconstitutional.  Any archaic or obsolete research references or annotations shall be removed before replacement, with the approval of the Commission.

(d)  The Publisher shall possess sufficient production capacity to provide replacement volumes in a timely manner as directed by the Commission.  Those volumes shall match the current publication in materials and form as closely as possible.  The publication of all replacement volumes and their retail prices shall require the prior approval of the Commission.

**2.4 Inventory of Additional Code Sets or Volumes.**

At all times during the period of this Agreement the Publisher shall keep available a reasonable supply of complete sets of the Code and supplements and individual volumes of the Code and supplements, to meet the needs or requests of users for purchase or replacement, or shall have the ability to produce and distribute a complete set or any individual volume that is requested for purchase or replacement within two (2) weeks from the date of the request.  The Publisher shall be required to provide an accounting of available inventory at any time, upon request of the Commission.

**2.5  Internet Access to Georgia Code.**

(a)  The Publisher shall provide access to the Code on the Internet as follows:

(1)  The Publisher shall publish and maintain an unannotated Code on the Publisher's Internet site, at no charge to the Commission or the State.  The Commission and the State Bar of Georgia shall be authorized to provide for a weblink from the website of the Georgia General Assembly and the State Bar of Georgia to such unannotated Code at no charge.

–11–

COMM000011

There shall be no charge to users for accessing the unannotated Code on the Publisher's Internet site.  The Publisher shall track usage of the Code on its Internet site, and after each year of publication, the Publisher shall provide usage reports to the Commission with usage and the effect, if any, on subscriptions to the Code in print and on CD-ROM.

(2)  The online unannotated Code shall be accessible to the public 24 hours per day, 7 days per week.  In no event shall a user be required to register, log-in, or establish a username or password in order to access the unannotated Code.  The online unannotated Code shall include the text and numbering of all Code sections; numbers of titles, chapters, articles, parts, and subparts; catchlines, captions, and headings; and history lines.  The online unannotated Code shall be fully searchable, including text in the catchlines, captions, and headings and shall also be accessible by links from the table of contents.

(3)  For any publication on the Internet of the unannotated Georgia Code or the Code, the Publisher shall provide appropriate notices of the State's copyright interest.  All visitors to the Internet site shall be notified that reproduction of any portion of the unannotated Georgia Code or the Code, other than Code section text and numbering, is prohibited unless permission has been granted by the State.  The copyright notice shall appear at the outset of each "session" with the unannotated Code, and each screen shall display the copyright.  The form and content of the notice shall be as approved by the Commission.

(b)  The Publisher shall provide the Commission with the data for an unannotated Georgia Code to be used on an Internet site maintained by the State, if requested by the Commission.

### 2.6 Electronic Version.

(a) The Publisher shall provide to the Commission in electronic format the current Code.  Such electronic format shall be approved annually as to format, content, and coding by the Commission prior to its production by the Publisher so as to ensure that it is usable for the purposes desired by the Commission.  Without limiting the generality of the foregoing, it is contemplated that these purposes shall include computerized bill drafting, computerized search and retrieval and printing of all materials in the Code, and computerized legal research.  It is contemplated that the electronic format furnished will completely eliminate the state's need for the separate statutory computer data base heretofore maintained by the state.

(b)  The electronic format of the Code furnished pursuant to subparagraph (a) of this Paragraph  may be used by the State in any manner in which it deems fit, provided that such electronic format shall not be used in any manner to generate printed volumes or sets of the Code which would compete with the printed volumes or sets produced by the Publisher except as specifically authorized by Paragraph 8.2 or by subparagraph (c) of this Paragraph.

–12–

(c) Upon and after the termination of the Publisher's right to sell and distribute the Code under this Agreement, or upon and after the state's award of a successor agreement for publication of the Code and within the final twelve (12) months of the Publisher's right to sell and distribute the Code under this Agreement, the Commission may furnish another successor publisher with whom it contracts originals or copies of the electronic format Code furnished pursuant to subparagraph (a) of this Paragraph for the successor publisher's use in the performance of its Agreement.

### 2.7 Database Compare.

The Publisher shall provide for the electronic comparison of its Code database with the database of statutory text of the State. The comparison shall include all of the statutory text and Code section numbering. The comparison shall result in a document containing discrepancies between the databases including all material that is in the Publisher's Code database but not in the State Code database and material that is in the State's Code database but not in the Publisher's Code database.

### 2.8 CD-ROM.

(a) The Publisher shall:

(1) Publish, license and distribute a CD-ROM Edition of the Code. The Publisher shall render and perform all services necessary for the preparation and publication of the CD-ROM, and shall bear all editorial, publication and distribution costs, without any contribution, subsidy or expense by the State. General requirements for the contents and the publication of the CD-ROM are as stated in Exhibit C, which is incorporated into and made a part of this Agreement.

(2) Bear sole responsibility to assure that the statutory text and other materials on the CD-ROM are accurate and are in compliance with this Agreement.

(3) Provide the Commission with a list of the subscribers to the CD-ROM Edition in the same manner as required for the Code under Paragraph 2.10.

(b) There shall be no charge for subscriptions to the CD-ROM Edition for State Government Subscribers. State Government Subscribers may use subscriptions to the CD-ROM Edition on stand-alone computers or on local area networks or intranets without incurring any charges therefor, including concurrent user charges, regardless of the number of concurrent users. Any department or agency of the state which desires to reproduce and distribute or sell copyrighted materials from the Code in printed book format as authorized by Paragraph 8.2 and which is a State Government Subscriber may download and prepare for printing a copy of such material from the CD-ROM which the department or agency receives as a State Government Subscriber.

–13–

(c)  For purposes of this Agreement, the term:

(1) "CD-ROM" means compact disc-read only memory format, and shall also mean and include DVDs (Digital Versatile Discs).

(2) "CD-ROM Edition" means the CD-ROM or DVD version of the Official Code of Georgia Annotated together with other data bases and retrieval software contained on a CD-ROM or DVD, or both, as published by the Publisher pursuant to this Agreement.

(3) "General Subscribers" means all Subscribers who are not State Government Subscribers.

(4) "Hypertext linking" means the ability to directly access referenced material contained on the CD-ROM Edition from a referencing citation on the CD-ROM Edition.

(5) "State Government Subscribers" means subscribers which are departments, agencies, divisions, authorities, entities, or officials of the state government of the State of Georgia, and shall include the Office of Legislative Counsel and other offices, officials, and employees of the General Assembly of Georgia and each house thereof, members of the General Assembly of Georgia, Justices of the Supreme Court of Georgia, Judges of the Court of Appeals of Georgia, judges of the superior courts, judges of the state courts, judges of the probate courts, judges of the juvenile courts, chief magistrates of the magistrate courts, district attorneys, the Attorney General and the Department of Law, the state law library, county law libraries, libraries of law schools, colleges, and universities which are units of the University System of Georgia, and any other entities, including nonprofit organizations, or groups of officials or employees of the State of Georgia or of any counties, municipalities, boards of education, authorities, or political subdivisions which have been designated by the Code Revision Commission as State Government Subscribers.

(6) "Subscriber" means any individual or any private, government, or other entity which has executed a Subscription Agreement with the Publisher for the license and use of the CD-ROM Edition, and includes General Subscribers and State Government Subscribers.

(7) "Subscription Agreement" means an Agreement between the Publisher and any private, governmental, or other entity or person for the license and use of the CD-ROM Edition.

–14–

**COMM000014**

### 2.9 Errata Notices.

Whenever the Commission or Publisher discovers any errors or omissions in the published materials comprising the Code, the Commission may direct the Publisher to correct such errors and omissions, at the Publisher's expense, through the distribution of errata notices, paste-in correction sheets, or such other corrective matter as may be directed by the Commission. The Publisher shall notify the Commission staff immediately upon discovery of any errors or omissions that may warrant an errata notice.

### 2.10 Subscriber Information.

The Publisher shall furnish the Commission on an annual basis and upon request by the Commission the number of subscribers to the Code. The Publisher also shall furnish the Commission with a listing of persons or entities subscribing to the Code, upon request of the Commission or its staff. The subscriber list shall be furnished in both printed form and in a data processing medium reasonably designed to facilitate use by the Commission. The Publisher agrees that the Commission may furnish the subscriber list to any successor publisher to facilitate a transition between publishers and waives any rights in the subscriber list to the contrary. The Commission agrees not to use the subscriber list for purposes of marketing any product competing with the Code or any Code product.

### 2.11 Subscriber Assistance.

(a) The Publisher shall maintain a toll-free telephone number and fax number and an e-mail address at which Code subscribers and other purchasers may consult the Publisher concerning billing, editorial, or index questions. The Publisher also shall provide postage paid response and suggestion cards similar to those currently in use for the convenience of subscribers and other purchasers.

(b) The Publisher shall annually provide the Commission with a summary of problems reported to it concerning the Code.

### 2.12 Online Access for Legislators.

The Publisher shall arrange for its affiliate LexisNexis to provide members of the Georgia General Assembly with access through Lexis.com to fully searchable Georgia primary law materials and federal statutory and case law materials for use by the legislators only in their official duties directly related to their elected office. Such access shall be provided at no charge to the members. The materials included are as listed on Exhibit E, attached hereto and incorporated herein, and are subject to change as LexisNexis adds or deletes material in this menu for distribution to its customers at large. An authorized agent of the Commission shall sign on behalf thereof LexisNexis's regular terms and conditions for use of Lexis.com for

–15–

COMM000015

purposes of this paragraph and shall certify to LexisNexis the names of those members to whom such access is provided. The online service shall be available annually November 1 through the end of each year's legislative session and will be accessible through a customized webpage created specifically for the Georgia General Assembly members.

### 3. SPECIFICATIONS.

(a) The Publisher shall publish the Code in the number of volumes approved in writing by the Commission. The volumes shall continue to be similar to the volumes of the present Code in style, format, appearance and quality. The final decision as to contents of each volume shall rest with the Commission as communicated by the Commission staff. The Code shall be divided so as to equalize the number of pages for the volumes as closely as possible. No volume shall have less than 700 pages or more than 1,400 pages except upon approval of the Commission. The Publisher shall attempt to effect a uniform thickness for individual volumes. Different weights and bulk of paper may be used to accomplish this, but the Commission shall approve all paper differing from the standard specified prior to actual printing. The printing specifications shall be the same as the printing specifications for the Code in effect on the day before the effective date of this Agreement. Larger or smaller volumes in particular instances may be published with the written approval of the Commission through the Commission staff.

(b) All sets of the Code, replacement volumes and supplements shall be made to conform in all respects to existing volumes of the Code. Materials shall be equal or superior quality to existing volumes. Books shall be Smyth sewn in sheets folded, where possible, in thirty-two page signatures and on three, seven-sixteenth tapes, or sewn by a process to produce a volume as strong as that commonly known as "Library Editions." Each signature shall be collation marked.

(c) End sheets shall be 80-lb. offset with a grain running parallel with the binding edge, and the first and last signatures shall be tipped and reinforced using one inch gummed Cambric, gathered, sewn using textbook thread, smashed, glued off, resmashed, three sides trimmed, rounded and backed with the backing not to exceed 1/4 inch; and, also, lined up using legal super which extends at least 1/4 inch beyond the reinforced area, covered with heavy Kraft paper glued affording proper adhesion to allow loose-back casing in. Mercerized headbands shall be applied and the book shall be cased in using suitable adhesive to prevent warpage and to penetrate Pyroxylin cloth.

(d) All of the material used in binding or printing that has a grain shall have the grain running parallel to the binding edge of the book.

(e) The binders shall be so designed that when the volume is opened for use, it will remain open without further physical support and will afford a full view of the page to the reader.

–16–

COMM000016

(f)   The back cover shall have a reinforced pocket to accommodate pocket part supplements.  A stub is to be left in the binding of each volume to accommodate pocket part supplements of no less than 1/4 the size of that volume or 300 pages, whichever is greater, so that the binding of the volumes will not be strained; provided, however, that the requirements of this subparagraph may be amended by mutual consent of the Publisher and the Commission.

(g)  The case shall consist of such material as shall be approved by the Commission, with the advice of the Publisher, but in no event shall the case be of a quality less than Pyroxylin coated Buckram equal to "F" grade Legal (or equal) over No. 18 binders board with the grain running parallel to the binding edge.

(h)   All words and numbers on bindings shall be stamped in imitation gold foil of permanent nature.  The corners of the case are to be square with a minimum of 1/2 inch in-turning on all four edges and the case lining strip is to be of suitable material for loose-back binding.

(i)  The paper, including the weight, finish, and color thereof, to be used in printing shall be specified by the Commission with the advice of the Publisher.  The Publisher shall furnish paper samples to the Commission.

(j)  The color and texture of the binding cloth shall be selected by the Commission after consultation with the Publisher.  The Commission shall approve the design, materials, stamping, etc., after receiving samples submitted by the Publisher. Each bound volume shall be individually shrink wrapped or boxed in such a manner as to protect the volume from dust and damage during storage and shipment.

(k)  Unless otherwise directed by the Commission, all supplements shall be in all respects of equal quality with the bound volumes of the Code except that a different weight or thickness of paper may be used, if approved by the Commission.

(l)   The specifications contained in this Section 3 may be varied by mutual written consent of the Publisher and the Commission.

## 4.  SCHEDULES AND DELIVERY.

### 4.1 Annual Updates.

Supplements, replacement volumes, an updated general index, and any other applicable update materials shall be prepared and shipped by the Publisher no later than 75 days following the receipt by the Publisher of the text of all enrolled acts enacted at each regular session of the

–17–

COMM000017

General Assembly (exclusive of approval dates, page numbers, or other material added after adoption by the General Assembly) in an electronic format specified by the Commission, beginning after the 2007 regular session of the General Assembly and annually thereafter during the term of this Agreement.

### 4.2 Internet Access to Georgia Code.

The online unannotated version of the Code, as provided for in Paragraph 2.5, shall be made available no later than January 15, 2007. Such online version shall be updated no later than thirty (30) days following the date of publication of the annual supplements and other update materials.

### 4.3 Electronic Version.

The Publisher shall deliver the electronic version of the Code, as provided for in Paragraph 2.6, no later than thirty (30) days following the date of publication of the annual supplements and other update materials, or at such earlier time as the electronic version may otherwise be distributed to search service companies. The electronic version shall be delivered to the Commission as directed by the Commission staff. The Publisher agrees to provide such assistance as may be necessary to enable the Commission to make full use of the electronic version.

### 4.4 Database Comparison.

The Publisher shall complete the database comparison provided for in Paragraph 2.7, including a list of any errors which may warrant any errata notices, and provide the same to the Commission no later than thirty (30) days following the date of publication of the annual supplements and other update materials.

### 4.5 CD-ROM.

The Publisher shall make available an updated version of the CD-ROM required in Paragraph 2.8 no later than thirty (30) days following the date of publication of the annual supplements and other update materials, or the beginning of the next calendar quarter following such publication, whichever is later.

–18–

COMM000018

**4.6 Errata Notices.**

Any corrections as provided for in Paragraph 2.9 shall be made to the Publisher's database and published and shipped no later than thirty (30) days after the date the Commission directs the Publisher to make such corrections.

## 5. PRICES.

**5.1 Setting of Prices.**

(a) Except as otherwise provided in subparagraph (b) of this Paragraph, on and after July 1, 2007, and for the remainder of the term of this Agreement, unless otherwise adjusted pursuant to Paragraph 5.2, the prices charged by the Publisher shall not exceed the prices specified in Exhibit D, which is incorporated into and made a part of this Agreement. From December 1, 2006 through June 30, 2007 the Publisher may sell any inventory of the Code at the prices approved by the Commission in July 2006 pursuant to the Agreement dated December 2, 1998 between the State of Georgia and LEXIS Law Publishing.

(b) From December 1, 2006 through June 30, 2007, the Publisher may sell any inventory of the Code that the Publisher purchases from the preceding publisher pursuant to Section 2-6-7 of the Agreement dated December 2, 1998 between the State of Georgia, acting through its Code Revision Commission, and LEXIS Law Publishing at the prices approved by the Commission in July 2006 pursuant to such 1998 Agreement; provided, however, that this provision shall be inapplicable in the event that the Publisher is the same as, or a successor-in-interest to, the preceding publisher.

(c) The Publisher shall provide annual updates at no charge to those State entities having subscriptions on November 15, 2006. For purposes of this subparagraph, "State entity" is defined to include only:

(1) Departments, agencies, divisions, authorities, entities, or officials of the state government of the State of Georgia, and includes the Office of Legislative Counsel and other offices, officials, and members and employees of the General Assembly of Georgia;

(2) The Justices of the Supreme Court of Georgia, Judges of the Court of Appeals of Georgia, and the judicial circuits, state courts and superior courts;

(3) The state's district attorneys and solicitors, and the state's public defenders; and

(4) The law schools, colleges, and universities which are units of the University System of Georgia.

Such annual updates will be provided for the duration of this Agreement.

–19–

**5.2 Price Changes.**

(a)  In the absolute and sole discretion of the Commission, the prices fixed in Paragraph 5.1 may be adjusted once a year by the Publisher effective on or after the date of publication of annual supplements or other update materials of each year beginning in 2008, in light of all relevant factors.  Relevant factors shall include but not be limited to: (1) quality of work performance, including but not limited to accuracy and editorial quality of page proofs submitted for prepublication review, quality of the final published product, and number and severity of errata sheets required after publication; (2) number of days that the previous year's annual supplements and update materials were shipped earlier than the 75 days required in Paragraph 4.1, if any; (3) rate of inflation; (4) cost of labor and materials; (5) quantity of printed pages; (6) rates of local, state, and federal taxes; (7) energy costs; and (8) extra or extraordinary functions required by the Commission to be performed by the Publisher for the benefit of the general public, the state, or both.  The Commission may, in its absolute and sole discretion, approve a price change initiated by either party.  The Publisher shall provide the Commission with all relevant information relating to a proposed price change.

(b)  Both parties to this Agreement recognize that the provisions herein governing time of availability and accuracy of published materials are of the essence.  Both parties recognize that failure of the Publisher to comply with such provisions may decrease the value of the Code to subscribers.  Accordingly, in the event of material failure of the Publisher to comply with such provisions, the Commission is authorized in its sole discretion (after notice to and consultation with the Publisher) to decrease any or all of the maximum prices otherwise chargeable by the Publisher, so as to compensate subscribers reasonably and proportionately for any such decrease in value.  However, such a decrease shall not apply if the failure to comply is due to the Commission's acts or omissions or is due to any matter beyond the control of the Publisher.

**5.3 Discounts.**

The failure of the Publisher to have the supplements, replacement volumes, and other update materials shipped not later than seventy-five (75) days as required by Paragraph 4.1, shall give rise to a discount on purchases of the Code, supplements, individual volumes, replacement volumes, and index volumes.  Unless waived by the Commission, the amount of the discount shall be equal to one percent (1%) of the price for each of those Code products for each period of three (3) working days or less by which shipment is late.  The additional discount shall be in effect through the end of the calendar year in which the failure to meet the deadline occurs.

–20–

COMM000020

## 6. COPYRIGHT.

### 6.1 General.

(a) The work of the Publisher on the Code, the CD-ROM Edition, and other publications covered under this Agreement is work made for hire for the purposes of the copyright laws of the United States, and shall be and remain the sole and exclusive property of the State of Georgia, acting through the Commission.

(b) All the contents of the Code, including all supplements and replacement volumes, the CD-ROM Edition, and those parts of any other publications required by this Agreement or authorized by the Commission that incorporate Code copyrightable materials, to the extent of such incorporation, shall be copyrighted in the name of the State of Georgia, acting through the Commission, and all copyrights thereto shall be vested, held, and renewed in the name of the State of Georgia, acting through the Commission. The copyrights shall cover all copyrightable parts of the Code in all relevant media, including print and electronic forms.

(c) The Publisher, on behalf of the Commission and in the name of the State of Georgia as copyright owner, shall take all necessary actions to obtain and register a copyright on any new or additional materials prepared for the Code and other publications. In addition, the Publisher shall take all necessary actions to renew any existing copyrights on the Code, the CD-ROM Edition, and Code materials in the name of the State of Georgia, acting through the Commission. The Publisher shall annually provide evidence of the registration or renewal of all copyrights to the Commission staff.

(d) The Publisher shall cooperate with and assist in the defense or initiation of any actions relating to the copyright rights referenced in this Agreement.

(e) The Commission shall be the sole entity of the State that may exercise control over the State's copyright on the Code, the CD-ROM Edition, and Code materials.

### 6.2 Notice of Copyright.

(a) Any publication of the Code or portions of the Code shall identify it as the "Official Code of Georgia Annotated" or a selected portion thereof without any additional qualifier or name that would indicate to a user that the Code is not a State copyrighted publication, and shall include notice of the State's copyright.

(b) The Publisher shall label the CD-ROM Edition, both in documentation and on an initial screen which is displayed before a user obtains access to the Code, with the following statement:

"The Code Revision Commission of the State of Georgia, as holder of the copyright to the Official Code of Georgia Annotated, has licensed the use of the Code by

–21–

COMM000021

_____ on this CD-ROM (or DVD) version. This CD-ROM (or DVD) version contains a merged version of the Code in which the material in the supplements has been merged with the material in the case bound, printed volumes of the Code to form a single data base. In the event of any discrepancy or difference between the Code contained on the CD-ROM (or DVD) version and the Code contained in the printed volumes and supplements, the printed volumes and supplements shall control."

## 7. SUPERVISION.

If there is any disagreement as to material to be included in the Code or as to any codification, annotation or other matter of editorial content, the Publisher shall abide by and follow the decision of the Commission as communicated by the Commission staff. If there is any other dispute between the Publisher and the Commission concerning publication of the Code or the Publisher's duties or performance under this Agreement, the decision of the Commission shall prevail.

## 8. RIGHTS TO PUBLISH AND SELL.

### 8.1 Publisher's Right to Publish and Sell.

(a) Except as otherwise provided in this Agreement, the Publisher is granted the exclusive right to distribute and sell in printed, bound book format sets and volumes of the Code as well as the exclusive right to publish, distribute, and sell printed annual supplements and periodic printed replacement volumes to the Code from March 2, 2007 through the term of this Agreement. Notwithstanding any rights granted pursuant to this Agreement, the Commission retains all rights to grant to others the right to use captions, catchlines, history lines, and other components of the Code, CD-ROM Edition, and on-line version.

(b) From December 1, 2006 through March 1, 2007, the Publisher is granted non-exclusive rights to distribute and sell any inventory of the Code that the Publisher purchases from the preceding publisher pursuant to Section 2-6-7 of the Agreement dated December 2, 1998 between the State of Georgia, acting through its Code Revision Commission, and LEXIS Law Publishing, provided, however, that this provision shall be inapplicable in the event that the Publisher is the same as, or a successor-in-interest to, the preceding Publisher.

(c) Ninety days prior to the termination of the Publisher's right to sell and distribute the Code under this Agreement, a successor publisher shall have non-exclusive rights to distribute and sell any inventory of the Code that the successor publisher purchases pursuant to subparagraph (c) of Paragraph 9.6. During this same period, the Publisher shall have non-exclusive rights to distribute and sell any existing inventory of the Code that the successor publisher does not purchase.

–22–

COMM000022

**8.2 State Agencies.**

(a)  Notwithstanding the provisions of Paragraph 8.1, any department or agency of the state shall have the right to reproduce and distribute or sell any one or more titles or parts of titles of the Code (including annotations, indexes, editorial notes, and other material referred to in Paragraph 1.3 of this Agreement) which are administered by, or substantially related to the administration of, that department or agency.  Any such use of copyrighted material by a department or agency of the state shall contain the appropriate copyright notices showing the state's copyright in the selected portions of the Code.

(b)  Subparagraph (a) of this Paragraph does not impose any burdens or responsibilities on the Publisher nor does it preclude the Publisher from entering into a separate agreement, or agreements, with any department or agency of the state to reproduce and distribute or sell on behalf of such department or agency any one or more titles or parts of titles of the Code, including any editorial material in which the state owns the copyright.  Any such use of copyrighted material by the Publisher or by a department or agency of the state shall contain the appropriate copyright notices showing the state's copyright in the selected portions of the Code.

**8.3 Reprint of Selected Portions.**

The Publisher is granted the right to reprint selected portions of copyrighted material from the Code in other publications it might publish for use by the bench and bar of Georgia; e.g., a practice manual which includes selected statutes annotated from the Code, which right shall survive the expiration of this Agreement.  Any such use of copyrighted material by the Publisher shall contain the appropriate copyright notices showing the state's copyright in the selected portions of the Code.

**8.4 CD-ROM.**

(a)  The State of Georgia grants the Publisher the exclusive right to publish, distribute, market, sell, and sublicense for publication, distribution, marketing, and sale, CD-ROM Editions of the Code.

(b)  The State of Georgia grants the Publisher the right to license, distribute, and market the CD-ROM Edition and services described herein to all interested parties.

(c)  The Publisher is granted the right to republish selected portions of copyrighted material from the Code in other electronic publications it might publish for use by the bench and bar of Georgia; e.g., a practice manual which includes selected statutes and annotations from the Code.

(d)  The Commission grants the Publisher the right to grant sublicenses to publish,

−23−

COMM000023

distribute, market, and sell CD-ROM and DVD versions of either the Code, a limited portion of the Code consisting of the text of Code sections plus the captions, catchlines, and history lines, or selected portions of the Code, in accordance with the provisions of this Section 8. The Publisher shall, subject to the terms and conditions of a License Agreement provided by or approved by the Commission, grant such sublicenses to any entities desiring to obtain them. The Publisher shall furnish each such sublicensee a current edition of the Code, or portion thereof, as appropriate, in electronic data base format, in accordance with the terms and conditions of the applicable License Agreement. A License Agreement shall be executed by and between the Publisher and any such sublicensee, and the Publisher shall file a copy of any such executed License Agreement with the Commission no later than 10 days after execution by all the parties thereto. The Publisher shall not grant any sublicense to any entity for publication, distribution, marketing, and sale of CD-ROM versions of either the Code or portions thereof other than by execution of a License Agreement provided by or approved by the Commission.

(e) After the end of each quarter, the Publisher shall make payment to the State of Georgia in an amount equivalent to the percentage specified in Exhibit D of the sum of all licensing fees received by the Publisher during the quarter just ended under any and all License Agreements executed pursuant to subparagraph (d) of this Paragraph. Such payments shall be made no later than thirty (30) days after the end of each quarter.

(f) Concurrent with any payment made pursuant to subparagraph (e) of this Paragraph, the Publisher, by and through a knowledgeable officer of the company having responsibility for accurate reporting of all revenues received by the Publisher, shall make an affidavit under penalty of false swearing and misappropriation of state funds, and submitting to the jurisdiction of the Superior Court of Fulton County, Georgia, stating that the amount of the payment made to the State of Georgia is equivalent to the percentage specified in Exhibit D of the sum of all fees received by the Publisher during the quarter just ended under any and all License Agreements executed pursuant to subparagraph (d) of this Paragraph.

(g) Neither the Commission, the State of Georgia, or any official, officer, employee, or agent thereof shall be responsible or liable in any way for the accuracy of material contained in any electronic data base version furnished by the Publisher pursuant to this Paragraph, and no warranty therefor, express or implied, shall be created as a result of this Agreement. Any License Agreement entered into by the Publisher shall be subject to this subparagraph.

**8.5 Online Licensees.**

(a) The Commission grants the Publisher the right to create electronic data bases containing the Code and to license the use of the Official Code of Georgia Annotated by on-line licensees, as approved by the Commission. The Publisher is authorized to contract with on-line licensees for the use of such materials in the creation and operation of computer data bases of the Official Code of Georgia Annotated, provided that such use shall be subject to the provisions of this Paragraph.

–24–

COMM000024

(b)  The Publisher agrees to furnish to each on-line licensee the Code in electronic data base format compiled and updated at the Publisher's expense and with no cost to the State of Georgia.

(c)  The Publisher agrees to pay to the State of Georgia an annual license fee of the amount specified in Exhibit D for each on-line licensee using the Official Code of Georgia Annotated pursuant to this Paragraph plus a variable royalty in an amount equal to the percentage specified in Exhibit D of the gross receipts the on-line licensee receives from its use of the Official Code of Georgia Annotated on such on-line service.

(d)  The Publisher agrees to make the Official Code of Georgia Annotated and revisions and updates thereto available in electronic format to all on-line licensees simultaneously.

(e)  The rights granted to the Publisher to furnish electronic data base versions to all on-line licensees by this Section 8 shall expire upon the expiration or termination of this Agreement.

(f)  All sums due the State of Georgia pursuant to this Paragraph shall be payable no later than thirty (30) days after the end of each quarter of each year for the duration of this Agreement.  The Commission shall have the right to an accounting for all funds due under this Agreement.

(g)  Concurrent with any payment made pursuant to subparagraph (f) of this Paragraph, the Publisher, by and through a knowledgeable officer of the company having responsibility for accurate reporting of all revenues received by the Publisher, shall make an affidavit under penalty of false swearing and misappropriation of state funds, and submitting to the jurisdiction of the Superior Court of Fulton County, Georgia, stating that the amount of the payment made to the State of Georgia is equivalent to any annual license fees received as specified in Exhibit D for each on-line licensee plus a variable royalty in an amount equal to the percentage specified in Exhibit D of the gross receipts the on-line licensee receives from its use of the Official Code of Georgia Annotated on such on-line service received by the Publisher during the quarter just ended under any and all licensing contracts entered into pursuant to this Paragraph.

(h)  There shall be no automatic renewal of the agreement contained in this Paragraph.

(i)  Neither the Commission, the State of Georgia, nor any official, officer, employee, or agent thereof shall be responsible or liable in any way for the accuracy of material furnished by the Publisher pursuant to this Paragraph, and no warranty, express or implied, shall be created as a result of this Paragraph.

(j)  Any contract between the Publisher and any on-line licensee shall be subject to this Paragraph and other terms of this Agreement.  All contracts between the Publisher and an on-line licensee shall be in a form approved by the Commission prior to entering into the contract.

–25–

**8.6  Reservation of Rights.**

(a)  Other than those rights expressly granted the Publisher in this Agreement, all right, title, and interest in and to the Code and all materials comprising the Code, including without limitation those materials prepared and created by the Publisher for inclusion in the Code, shall remain with the State of Georgia and the Publisher is granted no rights with respect to the Code other than as expressly set forth in this Agreement.  Any and all rights granted to the Publisher in this Agreement with respect to the Code are to be construed as a license and such license shall not limit the ability of the State of Georgia to grant or enter into other licenses or Agreements not in conflict with the licenses granted in this Agreement.

(b)  Except as otherwise provided in this Agreement, the Commission shall have the exclusive right to sell, license, or otherwise permit the Publisher or third parties to use the Code in any electronic, microfilm, microform, or other format.  Except as otherwise provided in this Agreement, the Publisher shall not have any right to distribute the Code in electronic or other format or to sell, license, or otherwise permit third parties to use the Code in electronic or other format, except to the extent that such rights may be granted to the Publisher by the Commission upon such terms as may be approved by the Commission.

## 9.  TERM AND TERMINATION.

**9.1  Term.**

This Agreement shall take effect December 1, 2006, and shall remain in effect until March 1, 2012, unless terminated earlier pursuant to this Section 9.  The Commission retains an option to renew this Agreement for a five-year term or on a year-to-year basis on or after March 1, 2012.

**9.2  Termination for Cause.**

(a)  The Commission may terminate this Agreement for cause whenever the Commission determines that the Publisher has failed to perform one (1) or more of its contracted duties and responsibilities in a timely and proper manner or in a manner satisfactory to the Commission, or if the Publisher fails to adhere to any of the terms of this Agreement, and the Publisher is unable to cure the failure within a reasonable period of time as specified by the Commission.  This termination shall be known as "termination for cause."

(b)  If there is termination for cause as provided by this Paragraph, the Commission may procure, upon such terms and in such manner as the Commission deems appropriate, services

–26–

similar to those terminated, and the Publisher shall be liable to the Commission for any excess costs for those similar services. In addition, the Publisher shall be liable to the Commission for administrative costs or other damages incurred by the Commission in procuring those similar services. The Commission agrees to negotiate in good faith to procure those similar services at a reasonable cost.

(c)  The rights and remedies of the Commission provided in this Paragraph shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Agreement. Notwithstanding the above, the Publisher shall not be relieved of its liability to the Commission for damages sustained by virtue of breach of this Agreement by the Publisher.

### 9.3  Termination for Convenience.

(a)  The Commission may terminate this Agreement for convenience without cause by giving written notice to the Publisher at least ninety (90) days before the effective date of the termination, if for any reason the Commission determines, in its sole discretion, that the termination is in the best interest of the State.

(b)  If the Commission terminates this Agreement for convenience, it shall allow the Publisher to complete and sell publications previously authorized and begun as of the date of notice of termination. In addition, the Commission agrees to license Code material to the Publisher for electronic publication until such time as a successor publisher begins providing electronic publication of the Code.

### 9.4  Force Majeure.

Performance of any duty on the part of the Publisher may be excused by the Commission in its sole discretion if it determines in writing that the performance of the specified duty was prevented by fire, strike, flood, war, act of God or other circumstances beyond the control of the Publisher.

### 9.5 Termination of Rights.

Upon expiration or termination of this Agreement, all rights granted to the Publisher under this Agreement will cease and terminate. Further, upon termination of this Agreement the Publisher will cease all publication and sale of the Code, CD-ROM Edition, and on-line licensing except as otherwise provided in this Section 9. The Publisher will have the right to sell its remaining inventory of the Code in accordance with the terms and conditions of subparagraph (c) of Paragraph 9.6 and will have the right to license, market, and sell its remaining inventory of the CD-ROM Edition for a period of 120 days following expiration or termination of this Agreement. Neither party hereto will be liable to the other party hereto for damages, losses,

–27–

COMM000027

costs, or expenses of any kind or character whatsoever arising from the termination or expiration of this Agreement whether such damages, losses, costs, or expenses arise from the loss of prospective sales or expenses incurred or investments made in connection with the establishment, development, or maintenance of the Publisher's business or any other reason whatsoever; provided, however, that such termination or expiration will not affect any claim, demand, liability, or right of either party hereto arising pursuant to this Agreement prior to such termination or expiration or after such termination or expiration in connection with the sale by the Publisher of its remaining inventory of the Code and CD-ROM Edition.

**9.6 Transition.**

(a) If this Agreement expires or is terminated pursuant to this Section 9, the Publisher shall cooperate in any transition to a successor publisher.

(b) Ninety days prior to the termination of the Publisher's right to sell and distribute the Code under this Agreement, the Publisher shall provide to the Commission for use by the Commission and the successor publisher a complete, then current list of the Publisher's subscribers to the Code.

(c) Ninety days prior to the termination of the Publisher's right to sell and distribute the Code under this Agreement, the Publisher agrees to sell its existing inventory of the Code or such portion of its existing inventory of the Code as the successor publisher wishes to purchase to the successor publisher at the Publisher's cost, including all manufacturing and editorial costs, not to exceed 80 percent of the retail prices. Any dispute as to the Publisher's inventory cost shall be resolved through good faith negotiations between the Publisher and the successor publisher.

## 10. MISCELLANEOUS.

**10.1 Documents Incorporated.**

The Publisher agrees to perform the duties and obligations described in the RFP, as amended if applicable, and the Publisher's Technical Proposal ("Proposal"), which are hereby incorporated into this Agreement by reference and attached as Exhibits A and B; however, the Commission is not bound by any provision of the Proposal. If there is any actual conflict, the documents shall govern in the following descending order of superiority:

(a) This agreement;

(b) RFP amendments and addenda (Answers to questions submitted pursuant to Sections 1.2 and 1.3 of the RFP);

–28–

COMM000028

(c) The RFP;

(d) The Proposal.

**10.2 Amendments.**

This Agreement may be amended from time to time upon mutual agreement of the Commission and the Publisher. All amendments shall be made in writing, and fully executed by duly authorized representatives of both parties.

**10.3 Contract Cannot be Assigned.**

The Publisher shall not assign, delegate or subcontract this Agreement or any part of this Agreement without the prior written consent of the Commission. The Commission's consent to the performance of such obligations by third parties shall in no way release the Publisher from responsibility for the performance of any obligations under this Agreement. In no event shall any publications under this Agreement, including but not limited to Code sets, annual update sets, volumes, supplements, or other materials, be printed, bound, or produced outside of the continental United States.

**10.4 Entire Agreement.**

This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior oral and written agreements. This Agreement may not be amended or modified, except by a further written agreement signed by the parties hereto.

**10.5 Counterparts.**

This Agreement may be executed in two (2) counterparts, each of which shall constitute an original, but both of which taken together shall constitute only one (1) instrument.

**10.6 Headings.**

Section and paragraph headings in this Agreement are for convenience only and shall not affect the interpretation or construction of this Agreement.

–29–

**COMM000029**

**10.7 Financial Responsibility.**

The Publisher shall submit satisfactory evidence to the Commission staff of its compliance with the requirement to obtain a One Million Dollar ($1,000,000.00) performance bond, and of the approval of the bond by the Commission.

**10.8 Additional Remedies.**

The Publisher agrees that its obligations set forth in this Agreement and the restrictions on its use, publication, sale, and distribution of the Code, CD-ROM Edition, and on-line version are reasonable and necessary to protect and preserve the interests and properties of the State of Georgia; and that irreparable loss and damage will be suffered by the State of Georgia should the Publisher breach any of its obligations or restrictions with respect to the Code, CD-ROM Edition, and on-line version. Therefore, the Publisher agrees and consents that, in addition to all the remedies provided at law or in equity, the State of Georgia will be entitled to a temporary restraining order and temporary and permanent injunctions to prevent a breach or contemplated breach of any of the covenants. The existence of any claim, demand, action, or cause of action of the Publisher against the State of Georgia shall not constitute a defense to the enforcement by the State of Georgia of any of the covenants or agreements herein.

**10.9 Indemnification.**

(a) The Publisher agrees to protect, indemnify, save and hold harmless the Commission, the State, all State agencies, departments, boards, commissions and institutions, and all officers, agents, servants and employees of the State, from any and all claims, demands, damages, judgments, and liability arising directly or indirectly out of this Agreement, and from any and all costs, expenses and attorneys' fees (including costs of work done by the Georgia Attorney General or his designees) incurred as a result of any claim, demand, lawsuit or cause of action; however, the Publisher shall not be responsible for any claim, demand, damage, judgment or liability arising from the negligent or willful conduct of the Commission or the State.

(b) The Commission or the State or any official, officer, employee, or agent thereof shall not be liable to any third party who is licensed to use any on-line version, electronic version, or CD-ROM of the Code. The Publisher shall save and hold the Commission and the State harmless from any and all claims, demands, damages, judgments, and liability arising directly or indirectly out of the use of any on-line version, electronic version, or CD-ROM of the Code, including the use of any data that the Publisher has provided to the Commission; however, the Publisher shall not be responsible for any claim, demand, damage, judgment or liability arising from the negligent or willful conduct of the Commission or the State.

–30–

**COMM000030**

(c)  The Commission shall give the Publisher written notice of any such claim, demand or lawsuit, if the Commission is notified first, and full right and opportunity to conduct the Publisher's defense of the claim, demand or lawsuit.  However, the Commission does not accord to the Publisher, through its attorneys, any rights to represent the Commission, the State, any State agency, department, board, commission or institution, or any officer, agent, servant or employee of the State, in any legal matter.

**10.10  Non-Discrimination.**

No person shall be excluded from participation in, or be denied benefits of, or be otherwise subjected to discrimination in the performance of the Publisher under this Agreement or in the employment practices of the Publisher on the grounds of disability, age, race, color, religion, sex, national origin or any other classification protected by federal or Georgia constitutional or statutory law.  The Publisher, upon request, shall show proof of such non-discrimination and shall post in conspicuous places, available to all employees and applicants, notices on non-discrimination.

**10.11  Interpretation and Venue.**

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.  Any controversy arising under, or in relation to, this Agreement shall be resolved in accordance with the laws of Georgia and the Publisher hereby consents to the jurisdiction of the Superior Court of Fulton County, Georgia.   The Publisher further consents that any process or notice of motion or other application to the court or any judge thereof may be served upon the Publisher by service upon the Secretary of State of Georgia, with a copy of such being forwarded to the Publisher by the Secretary of State via registered mail.

**10.12  Prohibited Payments.**

The Publisher warrants that no part of the total Agreement amount shall be paid directly or indirectly to an employee or an official of the State as wages, compensation, or gifts in exchange for acting as an officer, agent, employee, subcontractor, or consultant to the Publisher in connection with any work contemplated or performed under this Agreement.

**10.13 Financial Responsibility.**

Notwithstanding any provision in this Agreement to the contrary, in no event is the State or the Commission financially responsible to the Publisher under this Agreement.

–31–

**10.14 Waiver.**

No failure or delay on the part of the Commission in exercising any right or remedy hereunder will operate as a waiver thereof; nor will any single or partial exercise of any such right or remedy preclude any other or further exercise thereof or of any other right or remedy. No provision of this Agreement may be waived except in a writing signed by the party granting such waiver.

**10.15 Severability.**

In the event any one or more of the provisions, or parts of any provisions, contained in this Agreement are held to be invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction for any reason, the same will not invalidate or otherwise affect any other provision hereof, and this Agreement will be construed as if such invalid, illegal, or unenforceable provision, or part of any provision, had never been contained in this Agreement.

IN WITNESS THEREOF, the parties hereto have executed this Agreement on the first above written.

CODE REVISION COMMISSION
    INC.,
of the State of Georgia

MATTHEW   BENDER & COMPANY,

A Member of the LexisNexis Group

BY:

David Adelman
Chairperson

BY:

Name:
Title: Senior Vice President,
          Global Production Group

BY:

Wendell Willard
Co-Chairperson

–32–

**COMM000032**

**EXHIBIT A**

Request for Proposals (RFP) issued by the
Code Revision Commission of the State of Georgia
Dated October 3, 2006

---

–33–

COMM000033

**EXHIBIT B**

Technical Proposal submitted by Matthew Bender & Company, Inc.
in response to the RFP

COMM000034

**EXHIBIT C**

CD-ROM PRODUCT

1. Contents.

(a) The CD-ROM Edition shall include published decisions of the Supreme Court of Georgia and the Court of Appeals of Georgia which are in the public domain, the Official Code of Georgia Annotated, and the Publisher's publication containing the rules of Georgia courts and federal courts in Georgia with annotations. The CD-ROM version of the Code shall include all current material contained in the printed book format version of the Code, including, but not limited to, all Code sections, catchlines, history lines, annotations, research references, editor's notes, Code Commission notes, effective date notes, effect of amendment notes, cross-references, annotations of the Opinions of the Attorney General, the Constitution of the United States, the Constitution of the State of Georgia, the general index, the index of local and special laws, and conversion tables, provided that such CD-ROM version shall not include the individual volume indexes contained in the printed book version or any other material which the Commission has agreed to exclude from the CD-ROM version. The index of local and special laws shall be included on the CD-ROM Edition. The CD-ROM Edition may also include other material as deemed appropriate and useful by the Publisher.

(b) The CD-ROM Edition shall include software required for performing search and retrieval operations on the Code and case decisions along with various control files and installation software. A set of data bases containing statutes and case reports shall be stamped on the CD-ROM disc for purposes of user self-instruction.

(c) The Code, case decisions, and rules of court shall be loaded onto the CD-ROM disc as separate data bases.

(d) The CD-ROM Edition provided for in this Agreement shall meet the generally accepted standards of the electronic legal publication industry for quality and usability.

(e) All material on the CD-ROM Edition shall comply with the requirements of the Agreement and shall have been approved by the Commission or Commission staff. Any proposed additions to the CD-ROM shall be discussed in advance with the Commission.

2. Updates.

The CD-ROM Edition shall be updated quarterly by adding the most recent case reports, statutory changes, research references, and rules changes to each quarterly update. Annually, the Publisher shall issue to each Subscriber a historical CD-ROM disc containing the Code as it then exists, the rules of court, and the licensed program. The Subscriber shall have the right to retain

−35−

and use such historical CD-ROM disc indefinitely subject to the Subscriber's agreeing to use the retained system according to all the terms and conditions of this Agreement and the Subscriber's Agreement with the Publisher.

3. Technology.

    The entire body of materials required to be included on the CD-ROM shall be stamped on a single CD-ROM platter using a special compression process called "underhead" technology, or similarly effective technology.

4. Search capabilities.

    (a) The materials required to be included on the CD-ROM shall be loaded onto the CD-ROM platter as separate databases so that the databases can be searched together or individually.

    (b) Every word in the databases shall be searchable including short words normally not searchable by other software products. The CD-ROM shall allow for both boolean searching (AND, OR, NOT) as well as proximity searching (a search term within a specific range of another search term).

    (c) The information in each database shall be broken down into fields or segments to allow searches to be restricted to certain parts of the database for more precise recall. In the Code, some example fields would be: text, annotations, and statutes catchlines. In the judicial decisions database, some example fields would be: court, judges, case date, and case text, and in the Court Rules: annotations, rules catchlines and rules text.

5. Hypertext capability.

    The Publisher shall provide the following hypertext linking capabilities with the CD-ROM Edition of the Code:

    (a) Each frontal analysis (listing of inclusive titles, chapters, Code sections, etc.) shall have links to the subservient material in the Code;

    (b) Internal references from within a statute or a cross-reference note shall be linked to those referenced Code sections;

    (c) References to other case reports contained on the CD-ROM disc shall be linked from case citations within case reports;

–36–

COMM000036

(d)  References to Code sections from within case reports shall be linked;

(e)  References to case reports from annotations of the Code shall be linked;

(f)  References to specific pages in the case reports shall be linked to windows containing the paragraphs that end on that referenced page; and

(g)  References between rules of court and case reports, annotations, or statutes shall be linked.

6.  Other features.

(a)  The CD-ROM shall include and electronic cut and paste capability to allow the user to extract small or large passages of information from the disc and save them in a generic word processing format that can be imported into Word Perfect and Microsoft Word.

(b)  The Publisher shall display a page number on each paragraph of the CD-ROM Edition of the case reports of the Georgia Reports and the Georgia Appeals Reports.  The page number shall indicate where the paragraph can be located in the printed version of these reports.

(c)  The Publisher shall provide software with the CD-ROM Edition that provides the ability to block out electronically information passages from the CD-ROM data bases and save these passages to an attached hard or floppy disk or diskette.

7.  Documentation.

The Publisher shall provide each Subscriber with documentation to consist of:

(a)  A learning guide which provides step-by-step instructions together with examples that a Subscriber can perform at the Subscriber's own computer; and

(b)  A quick reference guide which provides a source of frequently used commands and search examples.

8.  Sales and marketing.

(a)  The Publisher shall provide sales personnel adequate to promote the CD-ROM product to the courts, government agencies, law libraries, law firms, members of the Georgia Bar, legal assistants and other potential subscribers.

(b)  The Publisher shall issue press releases announcing the CD-ROM service and shall

–37–

COMM000037

advertise the service in law publications.

(c)  The Publisher shall distribute information concerning the CD-ROM product by direct mail to potential subscribers.


9.   Training and support.

(a)   The Publisher shall provide training to General Subscribers with a qualified CD-ROM Training and Support Representative.  General Subscribers to the CD-ROM Edition shall receive basic training on the features and use of the CD-ROM Edition on a complimentary basis.

(b)  Training shall be provided for State Government Subscribers by training designees of the Commission and by furnishing CD-ROM discs for use in training.

(c)  The Publisher shall provide a group of knowledgeable, experienced professionals who will answer CD-ROM support calls associated with any aspect of the CD-ROM Edition. Both State Government Subscribers and General Subscribers shall be entitled to use this support service free of charge.  The Publisher shall provide a toll-free telephone line for this purpose and shall make this number generally known.   The Publisher shall make this support service available on a Monday through Friday basis from 8:30 A.M. until 5:00 P.M. Eastern Time, excluding standard and customary holidays.

(d)  The Publisher shall support the CD-ROM Edition in multiple-user environments using several third-party software products. The Publisher shall use all best efforts to provide a range of solutions for Subscribers' use of the CD-ROM Edition on local area networks and intranets.

(e)  The Publisher shall maintain for distribution to State Government Subscribers and General Subscribers an adequate inventory of the CD-ROM Edition.   Such inventory shall include CD-ROM discs and documentation.


10.   Requisite hardware.

The Publisher shall provide the CD-ROM Edition in one or more versions that operate on an IBM or IBM-compatible personal computer with an operating system which is in general use by the citizens of the State of Georgia and an appropriate CD-ROM or DVD reader.

–38–

COMM000038

11. Local area networks.

The Publisher shall support the CD-ROM product in multiple user environments using several third party software products. The Publisher shall use all best efforts to provide a range of solutions to users who have local area networks.

12. Subscription agreements

(a)  Any subscription agreement must be approved as to form and content by the Commission prior to its use by the Publisher. No term or provision in any subscription agreement shall vary or supersede the terms of this Agreement without the express prior written consent of the Commission. The text of subscription agreements proposed for use by the Publisher may be amended with the prior consent of the Commission. The execution of a subscription agreement by an agent of the Commission shall in no manner limit any previously existing rights of the Commission.

(b)  No person or entity shall be a State Government Subscriber unless such person or entity has executed a subscription agreement, has an appropriate personal computer and an appropriate reader or is in the process of acquiring such equipment, and agrees to use the CD-ROM Edition furnished to such subscriber for the performance of such subscriber's governmental duties. Any person who serves as a judge of more than one of the courts listed in Paragraph 2.8 of this Agreement shall receive only one disc as a State Government Subscriber.

(c)  The Commission shall appoint a designee or designees who will be responsible for obtaining executed Subscription Agreements from State of Georgia officials and forwarding them to the Publisher for the purpose of enrolling the official's office as a State Government Subscriber. Delivery to the State Government Subscribers of the CD-ROM Edition shall be made by the Publisher.

(d) The Commission will use all best efforts to assist the Publisher in enforcing the terms and conditions of the Subscription Agreement for State Government Subscribers.

COMM000039

## EXHIBIT D

### 2007 PRICE LIST

### OFFICIAL CODE OF GEORGIA ANNOTATED

**The prices specified below notwithstanding, this price list includes annual updates to the printed version of the Official Code of Georgia Annotated which will be provided at no charge for the duration of this Agreement as provided in paragraph 5.1 of this Agreement.**

| Printed Bound Volumes | Price |
|---|---|
| (1) Complete Code Sets | $ 360.00 |
| (2) General Index | $ 29.70 |
| (3) Complete Annual Supplement Sets | $ 61.20 |
| (4) Individual Supplements | $ 6.75 |
| (5) Replacement Volumes | |
| (A) Subscribers | $ 18.90 |
| (B) Non-Subscribers | $ 23.40 |
| (6) Individual Volumes | |
| (A) Subscribers | $ 20.70 |
| (B) Non- Subscribers | $ 25.20 |

CD-ROM

Royalty to Commission:

20 percent of the sum of all CD-ROM licensing fees received by the Publisher

On-line Licensees

Royalty to Commission:

Annual license fee of $ 10,000.00 for each on-line licensee; and

Amount equal to 5 percent of the gross receipts the on-line licensee receives from its use of the Code on its on-line service

--40--

**EXHIBIT E**

FREE ACCESS ONLINE MATERIALS PROVIDED TO MEMBERS OF THE GEORGIA
GENERAL ASSEMBLY

–41–

COMM000041

## AMENDMENT

THIS AMENDMENT ("Amendment") to the Agreement entered into December 27, 2006, by and between the Code Revision Commission of the State of Georgia ("Commission" or "State") and Matthew Bender & Company, Inc., a member of the LexisNexis Group ("Publisher") for the purpose of providing for the publication, maintenance, and distribution of the Official Code of Georgia Annotated ("Code") and other related services and products, is hereby made this _5th_ day of _January_, 2012, by and between the Commission and the Publisher.

### WITNESSETH:

This Amendment is entered into by the parties hereto for the purpose of extending the contract term and revising certain terms of the Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the Commission and the Publisher agree as follows:

I.     Paragraph 2.2 of the Agreement, "Supplements," is hereby revised by adding to the end of such paragraph the following:

The Publisher shall produce a standalone Supplement for Volume 20 (Title 24) as part of the 2012 general session updates, in addition to a pocket part supplement produced for such Volume. The pocket part supplement shall include all amendments to the current Title 24 which are enacted at the 2012 general session. The standalone Supplement shall include all material comprising Title 24, including annotations to appropriate Code sections, as it will become effective on January 1, 2013. The standalone Supplement shall be included in the prices specified in Paragraphs (1) and (3) of the Section titled "Printed Bound Volumes" in Exhibit D of this Agreement for Complete Code Sets and Complete Annual Supplement Sets.

II.    Paragraph 9.1 of the Agreement, "Term," is hereby revised to read as follows:

**9.1 Term.**

This Agreement shall take effect December 1, 2006, and shall remain in effect until March 1, 2017, unless terminated earlier pursuant to this Section 9. The Commission retains an option to renew this Agreement for a five-year term or on a year-to-year basis on or after March 1, 2017.

III.   Exhibit D of the Agreement is hereby revised by adding the following to the end of the Section titled "Printed Bound Volumes":

COMM000042

|  |  |
|---|---|
| (7) 2011 Special Session Supplement | $ 6.00 |
| (8) 2012 Standalone Supplement for Volume 20 (Title 24) | $ 8.00 |

IV.  Except as set forth in this Amendment, all terms and conditions of the Agreement remain in full force and effect.

IN WITNESS THEREOF, the parties hereto have executed this Amendment on the date first above written.

CODE REVISION COMMISSION
of the State of Georgia

MATTHEW BENDER & COMPANY, INC.,
a Member of the LexisNexis Group

BY:

Wendell Willard
Chairperson

BY:

Name:  Anders Ganten
Title:   Sr. Director

2

**COMM000043**

# DKT 30-5

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on behalf of and for the benefit of THE GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA,<br><br>   Plaintiff,<br><br>  v.<br><br>PUBLIC.RESOURCE.ORG, INC.<br><br>   Defendant. | CIVIL ACTION NO.<br><br>1:15-CV-02594-MHC |

## <u>DECLARATION OF ANDERS P. GANTEN</u>

I, Anders P. Ganten, hereby testify and state by declaration as follows:

1. I began working at Matthew Bender and Company, a member of the LexisNexis Group ("LexisNexis") in August of 2004. I assumed my current position as Senior Director Government Content Acquisition 2009

2. I make the following declaration on personal knowledge and belief. If called upon to testify to the statements in this Declaration, I could and would competently testify to these facts.

3.     LexisNexis editors create original judicial summary annotations in the O.C.G.A. using the procedures as described in paragraphs 4 through 8.

4.     In correlation with summary and headnote creation, LexisNexis attorney case law editors create substantive and descriptive original case notes, including fact-specific case notes and black-letter-law case notes. Editors analyze the relevant opinion text and endeavor to provide researchers checking statutes, court rules, and constitutional references a snapshot of how that provision was applied or construed in case law. When a provision has been applied in an opinion without significant discussion or construction, editors additionally create citation-only case notes to alert researchers that the provision was cited.

5.     Editors pull an opinion from their assigned task list and open the case in the editing tool (Fab Editor). Once editors have identified the cited and referenced provisions, the editors determine the noteworthiness of the provisions by analyzing whether the provision has been applied or construed, and deciding whether the court's discussion is relevant to an understanding of the provision. Editors additionally evaluate whether a provision falls into a limited non-annotated category.

6.     Noteworthy provisions are verified online to ensure the court's cited reference is valid.  Editors check the editorial guidelines and jurisdictional

instructions to determine the specific case note requirements for the jurisdiction.

For Georgia case notes, inter alia, editors utilize state-specific cite formats and,

with limited exceptions, omit gender-specific pronouns.

  7. The Lexis Nexis case note creation tool (NoteWriter), part of

FabEditor, is utilized to create the case note.  Editors select the appropriate

jurisdiction, provision type, and section number for case note placement.  The

appropriate publication status for the opinion is assigned to the case note.  For fact-

specific case note creation, editors summarize the court's application of the law to

the particular facts of the case.  For new rules of law, editors create a black letter

law case note by summarizing the court's discussion of the provision and relaying

the rule of general applicability as it is relevant to the court's resolution of the

parties' dispute.  Editors may write the black letter rules of law case notes in a fact-

specific combination format.  Where there is limited discussion of a provision, a

citation-only note is assigned to the provision to which it pertains.

  8. The case note text is checked for accuracy, style guideline

compliance, size requirements, and jurisdictional requirement compliance.  For

full case notes, the most on-point and specific classification is assigned to the case

note from the Lexis Nexis taxonomy scheme for internal indexing.  Additionally,

the most on-point and specific catchline is selected from existing catchlines, or

3

created as a new catchline, for jurisdictional-specific indexing.  The editor

proofreads and edits the note and then marks it as complete.  With the completion

of additional case law enhancement, the case note is transferred to the Statutory

Unit for finalization and online and print product publication.

9.    One example of a judicial summary created by LexisNexis using the

above procedures is provided in paragraphs 10 through 15.  As indicated below,

the case of *Cho Carwash Property, LLC. v. Everett*, (326 Ga. App. 6 (2014)) was

selected by a LexisNexis editor, summarized, and coordinated with O.C.G.A. 34-9-

260 and then published in the 2014 edition of the O.C.G.A.

10.    As an editor read the *Cho Carwash Property, LLC. v. Everett* case for

legal holdings and analysis for summary and headnote processing, the editor

correspondingly read for cited provisions and statutory references.  The first

provision cited in the instant case is O.C.G.A. § 34-9-260, the compensation

schedule related to calculating an injured claimant's average weekly wage.  The

court initially specifies that the employer does not dispute that subsection (3) is the

applicable provision for calculating the claimant's average weekly wage in the

instant case.

11.    The editor analyzed the discussion of whether the lower court erred in

applying the statute by using the claimant's training schedule for the compensation

4

determination and whether evidence supports the calculation.  In deciding

noteworthiness, the editor made a determination that the court relied upon

application of the statute to rule that the some evidence supports the administrative

law judge's calculation of the average weekly wage.

12.    Once the editor had an understanding of the provision application, the

editor began the technical aspects of creation of the note.  The editor checked the

provision online to ensure that the cite in the opinion was accurate and the note

was properly placed.  The editor opened the NoteWriter tool in FabEditor and

created a new note, selecting Georgia as the jurisdiction, and 34-9-260 as the

proper code section placement.  The editor also checked the publication status of

the case and marked the note as published in the editing tool.

13.    In creating the case note text, the editor avoided editorializing and

tracked the language of the court to create an original summary of the court's

verification of the proper weekly wage calculation.  The editor summarized the

court's compensation holding as follows:

> Award of workers' compensation benefits was upheld because there
> was some evidence to support the administrative law judge's
> calculation of the claimant's average weekly wage under O.C.G.A. §
> 34-9-260(3) based on the claimant's testimony that the claimant was
> supposed to work from the car wash's opening until its close.

5

14.    The editor used Lexis Advance to select the most specific and on-point catchline to index the note for print and online publication.  The editor marked the catchline as an existing catchline in the editing tool.  Additionally, the editor assigned the most specific on-point classification from the LexisNexis taxonomy scheme to index the annotation internally.  The editor proofread the note and made any necessary edits before marking the note as completed.

15.    The editor continued reading the opinion for additional cited provisions.  When reaching the end of the opinion, the editor did a final opinion skim to ensure all provisions are accounted for and all necessary case notes were completed.  When additional case law enhancement was completed, the case note was sent to the Statutory unit for any final edits and placement in print and online products.

16.    Further, a LexisNexis editor selected each judicial decision summary, editor's note, and summary of an opinion of the Attorney General of Georgia for inclusion in the O.C.G.A. and then coordinated the selection with a particular O.C.G.A. statute.

17.    When multiple summaries or editor's notes were coordinated with a single code section in the O.C.G.A., LexisNexis arranged in a particular order.

6

18.     Therefore, each O.C.G.A. publication contains original and creative compilations of summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, summaries of research references and compilations thereof.


May 17, 2016

Anders P. Ganten

7

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that, on this 7th day of July 2017, I have

electronically filed the foregoing APPELLEE'S SUPPLEMENTAL APPENDIX

VOLUME I with the Clerk of Court for the United States Court of Appeals for the

Eleventh Circuit using the CM/ECF system, which will automatically send e-mail

notification of such filing to the attorneys of record.

The undersigned hereby further certifies that on this 7th day of July 2017,

two copies of the foregoing was shipped to the Clerk of Court for the United States

Court of Appeals for the Eleventh Circuit pursuant to FRAP 25(a)(2)(B).

*/s/Lisa C. Pavento*
Lisa C. Pavento
Georgia Bar No. 246698