# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Appeal No. 17-11589-HH
District Court No. 1:15-CV-2594-RWS

PUBLIC.RESOURCE.ORG, INC.

Defendant/Appellant,

CODE REVISION COMMISSION ET AL,

Plaintiffs/Appellees.

On Appeal from the United States District Court
for the Northern District of Georgia

## APPELLANT'S REPLY BRIEF

Elizabeth H. Rader
ALSTON & BIRD LLP
The Atlantic Building
950 F. Street, N.W.
Washington, DC  20004
(202) 239-3008
elizabeth.rader@alston.com

Sarah P. LaFantano
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309
(404) 881-7000
sarah.lafantano@alston.com

*Public.Resource.Org., Inc. v. Code Revision Commission et al.*
No. 17-11589-HH

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellant Public.Resource.Org, Inc. provides the following Certificate of Interested Persons and Corporate Disclosure Statement:

- Acton, Anne M. (Amicus Curiae)

- Adelman, Beth (Amicus Curiae)

- Alston & Bird, LLP (Counsel for Defendant-Appellant)

- American Civil Liberties Union Foundation (Amicus Curiae)

- American Civil Liberties Union Foundation of Georgia, Inc. (Amicus Curiae)

- Anazalone, Filippa Marullo (Amicus Curiae)

- Askew, Anthony B. (Counsel for Plaintiff-Appellees)

- Bhandari, Esha (Counsel for Amici Curiae American Civil Liberties Union Foundation and American Civil Liberties Union Foundation of Georgia, Inc.)

- Bowler, John M. (Counsel for Amicus Matthew Bender & Co., Inc.)

- Butler, Brandon C. (Amicus Curiae)

- Carrier, Michael A. (Amicus Curiae)

- CaseText (Amicus Curiae)

*Public.Resource.Org., Inc. v. Code Revision Commission et al.*
No. 17-11589-HH

- Chisolm, Tuneen (Amicus Curiae)

- Clifford, Ralph D. (Amicus Curiae)

- Code Revision Commission (Plaintiff-Appellee, on behalf of and for the benefit of the General Assembly and the State of Georgia)

- Cohen, Hon. Mark H. (U.S. District Court Judge for the Northern District of Georgia (originally assigned))

- Courtney, Kyle K. (Amicus Curiae)

- Danner, Richard A. (Amicus Curiae)

- Duan, Charles (Counsel for Amici Curiae Public Knowledge, The American Library Association, The Association of Research Libraries, The Organization for Transformative Works, The Institute of Intellectual Property and Social Justice and forty-one (41) librarians and professors of law)

- Durie Tangri, LLP (Counsel for Defendant-Appellant)

- Emerson, Amy A. (Amicus Curiae)

- Fastcase, Inc. (Legal publisher having an interest in offering its subscribers the Official Code of Georgia, Annotated without the need for a license)

- Ford, Roger Allan (Amicus Curiae)

- Fortney, Katie (Amicus Curiae)

*Public.Resource.Org., Inc. v. Code Revision Commission et al.*
No. 17-11589-HH

- Free Law Project (Amicus Curiae)

- Frye, Brian L. (Amicus Curiae)

- General Assembly of Georgia (Beneficiary of Plaintiffs-Appellees)

- Georgia Attorney General's Office (Counsel for State of Georgia)

- Ghosh Shubha (Amicus Curiae)

- Gratz, Joseph C.  (Counsel for Defendant-Appellant)

- Halperin, David (Counsel for Defendant-Appellant)

- Hansen, David R. (Amicus Curiae)

- Heald, Paul Justin (Amicus Curiae)

- Hirsch, Kenneth J. (Amicus Curiae)

- Hirsch, Michelle J.  (Counsel for State of Georgia)

- Hobbs, Michael B. (Counsel for Amicus Matthew Bender & Co., Inc.)

- Joergensen, John (Amicus Curiae)

- Johnson, Eric E. (Amicus Curiae)

- Judicata (Amicus Curiae)

- Juelsgaard Intellectual Property and Innovation Clinic (Counsel for Amici Curiae Casetext, Free Law Project, Judicata, OpenGov Foundation, and Ravel)

- Keele, Benjamin J. (Amicus Curiae)

*Public.Resource.Org., Inc. v. Code Revision Commission et al.*
No. 17-11589-HH

- Kennedy, Jocelyn (Amicus Curiae)

- Klinefelter, Anne (Amicus Curiae)

- LaFantano, Sarah Parker (Counsel for Defendant-Appellant)

- Lantagne, Stacey M. (Amicus Curiae)

- Lee, Sarah Hooke (Amicus Curiae)

- Leiter, Richard (Amicus Curiae)

- Lexis/Nexis Group (Parent of Amicus Matthew Bender & Co., Inc.)

- Liebesman, Yvette Joy (Amicus Curiae)

- Macklin, Lisa A. (Amicus Curiae)

- Malamud, Carl (President and Founder of Defendant-Appellant)

- Malone, Phillip R. (Counsel for Amici Curiae Casetext, Free Law Project, Judicata, OpenGov Foundation, and Ravel)

- Matthew Bender & Co., Inc. (Amicus and licensee of Plaintiffs-Appellees)

- Mayer, John (Amicus Curiae)

- Meunier Carlin & Curfman LLC (Counsel for Plaintiffs-Appellees)

- Mills Legal Clinic at Stanford Law School (Counsel for Amici Curiae Casetext, Free Law Project, Judicata, OpenGov Foundation, and Ravel)

- Mtima, Lateef L. (Amicus Curiae)

- OpenGov Foundation (Amicus Curiae)

*Public.Resource.Org., Inc. v. Code Revision Commission et al.*
No. 17-11589-HH

- Pavento, Lisa C. (Counsel for Plaintiffs-Appellees)

- Pearlman, Jeffrey (Counsel for Amici Curiae Casetext, Free Law Project, Judicata, OpenGov Foundation, and Ravel)

- Public.Resource.Org, Inc. (Defendant-Appellant)

- Rader, Elizabeth H. (Counsel for Defendant-Appellant)

- Ravel (Amicus Curiae)

- Rosenberg, Jason D. (Counsel for Defendant-Appellant)

- Schemmel, Lawrence A. (Counsel for State of Mississippi)

- Seipp, David J. (Amicus Curiae)

- Selby, Courtney (Amicus Curiae)

- Silbey, Jessica (Amicus Curiae)

- Smith, Kevin L. (Amicus Curiae)

- Sorkin, David E. (Amicus Curiae)

- State of Georgia (Beneficiary of Plaintiffs-Appellees)

- State of Mississippi (State alleging Defendant-Appellant infringes copyright in its official code)

- Story, Hon. Richard W. (U.S. District Judge for the Northern District of Georgia )

- Street, Leslie (Amicus Curiae)

*Public.Resource.Org., Inc. v. Code Revision Commission et al.*
No. 17-11589-HH

- Thomas, Warren J. (Counsel for Plaintiffs-Appellees)

- Troutman Sanders LLP (Counsel for Amicus Matthew Bender & Co., Inc.)

- Tushnet, Rebecca (Amicus Curiae)

- Walters, Edward (Co-Founder and CEO of Fastcase, Inc.)

- Wheeler, Ronald E. (Amicus Curiae)

- Williams, Beth (Amicus Curiae)

- Zimmerman, Katie (Amicus Curiae)

- Zittrain, Jonathan L. (Amicus Curiae)

Appellant Public.Resource.Org, Inc. certifies that it is a California non-profit corporation, that it has no parent corporation, that there is nothing to declare with respect to stock ownership, and that there is no other entity related to, or affiliated with, Public.Resource.Org, Inc. that has a financial interest in the outcome of the claims asserted against it in this case.

.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ................................................... C-1

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 3

    A.    Reversing the district court's decision, on the grounds that the
           O.C.G.A. is the only official and definitive publication of
           Georgia's code would only apply and clarify longstanding
           federal common law ............................................................................. 3

    B.    The district court erred by only considering summaries of
           decisions because Public Resource's counterclaim and motion
           for summary judgment required the court to consider whether
           other kinds of annotations are copyrightable ..................................... 12

           1.    To resolve Public Resource's declaratory judgment
                    counterclaim, the district court should have clearly
                    delineated the metes and bounds of the State's copyright,
                    if any, in the nonstatutory portions of the O.C.G.A ............... 14

           2.    Contrary to the Commission's explanation, the district
                    court did not analyze all the issues Public Resource
                    raised in support of its declaratory judgment
                    counterclaims ......................................................................... 17

    C.    Public Resource's use of the O.C.G.A. was both transformative
           and noncommercial, and the District Court's holding that it was
           not a fair use is an error as a matter of law ........................................ 20

i

1.  The Commission mischaracterizes the transformative nature and noncommercial purpose of Public Resource's providing access to and engagement with the O.C.G.A. on the Internet ........................................................................ 20

2.  Public Resource's posting the whole O.C.G.A., including the annotations, was necessary in light of its purpose to improve access and usability of Georgia's only official code ......................................................................... 22

3.  Public Resource presented evidence, which was unrebutted, that neither the Commission nor Lexis/Nexis has lost any sales from Public Resources Use or that it would suffer if others made the same use of the O.C.G.A ...... 23

CONCLUSION ....................................................................... 25

CERTIFICATE OF COMPLIANCE ..................................... 27

CERTIFICATE OF SERVICE ............................................. 28

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Banks v. Manchester*,
    128 U.S. 244 (1888) .......................................................................8

*BUC Int'l. Corp. v. Int'l Yacht Council Ltd.*,
    489 F.3d 1129 (11th Cir. 2007) ..................................................19

*Building Officials & Code Adm. Int'l. Inc. v. Code Tech, Inc.*,
    628 F.2d 730 (1st Cir. 1980) .......................................................8

*Callaghan v. Myers,*
    128 U.S. 617 (1888) ............................................................ 8, 9, 10

*Cambridge Univ. Press v. Patton*,
    769 F.3d 1232 (11th Cir. 2014) ............................................ 21, 22

*County of Suffolk v. First Am. Real Estate Solutions*,
    261 F.3d 179 (2d Cir. 2001) .......................................................11

*Davidson v. Wheelock*,
    27 F. 61 (Minn. Cir. Ct. 1866) ...................................................8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ............................................................ 18, 19

*Harrison v. Code Revision Comm'n*,
    244 Ga. 325 (1979) .....................................................................8

*Home Design Servs. Inc. v. Turner Heritage Homes*,
    825 F.3d 1314 (11th Cir. June 17, 2016) ..................................18

*Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*,
    554 F.3d 914 (11th Cir. 2008) ...................................................18

iii

*Nash v. Lathrop*,
 142 Mass. 29 (1886) .................................................................8

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
 464 U.S. 417 (1984)..............................................................24

*United States v. Lanier*,
 520 U.S. 259 (1997).................................................................8

*Veeck v. Southern Building Code Cong. Int'l*,
 293 F.3d 791 (5th Cir. 2002) .................................................8

*Weitzman, LLC v. Microcomputer Res.*,
 542 F.3d 859 (11th Cir. 2008) ...............................................7

*Wheaton v. Peters*,
 33 U.S. 591 (1834)................................................................10

## Rules and Statutes

17 U.S.C. § 105 ........................................................................7

17 U.S.C. § 107 ........................................................................2

17 U.S.C. § 411(a) ...................................................................7

28 U.S.C. § 2201(a) ...............................................................14

## Other Authorities

*Compendium of U.S. Copyright Office Practices* ....................... 5, 6, 7, 11

iv

## **INTRODUCTION**

This case should not turn on whether summaries of judicial opinions in the Official Code of Georgia, Annotated are sufficiently original and creative to be copyrightable. The entire O.C.G.A. is in the public domain from its creation, because it is the only official, authoritative statement of Georgia law and thus an edict of government. It is a longstanding doctrine in the law of the United States that statutes and other state-sanctioned sources of the law of the country or state are not protectable by copyright. The O.C.G.A. is the only official code of Georgia. The Commission and its publisher assist with its publication on behalf of the General Assembly. The legislature amends the O.C.G.A. each time it considers a new bill, and the legislature endorses the complete O.C.G.A. after it has been prepared. The district court's decision to consider the O.C.G.A.'s annotations as separate works, for the purpose of considering whether they are copyrightable subject matter, is therefore an error of law. This is a Constitutional issue of law, reviewed *de novo*, because First Amendment and Due Process concerns underpin the established doctrine that edicts of government are not copyrightable.

The Code Revision Commission focuses on copyrightability of the O.C.G.A.'s annotations that are summaries of judicial decisions because the summaries are the only kind of annotations where they have a colorable (though

1

not ultimately compelling) argument that they are sufficiently original and creative for copyright protection. This only responds to Public Resource's secondary, alternative argument: that each of the various kinds of annotations are not copyrightable for grounds expressly stated in the copyright act or established in federal common law. These grounds include lack of originality or creativity and the merger doctrine. The different copyrightability arguments require different analyses, but the Commission confusingly mingles these analyses. Furthermore, the district court simply skipped over several of Public Resource's arguments, leaving this Court no way to review its decision on them. By treating judicial summaries as representative of all the annotations in the O.C.G.A., the district court oversimplified its analysis. In this way, it also failed to enter a declaratory judgment that clearly declared each party's rights. If the district court's decision is affirmed, it would leave confusion about how Public Resource and others can lawfully use the O.C.G.A.

Finally, addressing Public Resource's third defense, fair use, the Commission merely defends and elaborates on the district court's cursory analysis of the four factors in 17 U.S.C. § 107. But it cannot save the district court's order from the several clear errors that resulted in its holding that, even if the Commission holds a valid, enforceable copyright in the O.C.G.A's annotations, Public Resource's use of the O.C.G.A. was a fair use under the Copyright Act.

2

# **ARGUMENT**

A.    Reversing the district court's decision, on the grounds that the O.C.G.A. is the only official and definitive publication of Georgia's code would only apply and clarify longstanding federal common law.

The most important issue in this case is whether the state of Georgia can assert copyright in the annotations in the O.C.G.A. to prohibit copying of its entire official code, even though Georgia's General Assembly, through the Commission, requires these specific annotations and supervises their preparation by its private publisher.  Op. Br. at 15, 25-26.  As Public Resource and amicus ACLU have explained, this is a constitutional issue.  *Id.* at 29-30; ACLU Br. at 13, 23, 25.  One of the reasons laws and related state-mandated sources of legal interpretation of statutes are not protected by copyright is to ensure citizens' access to the laws that govern them to ensure that citizens are informed when they exercise their constitutional right to discuss the content, effects and fairness of those laws. ACLU Br. at 23-25; Public Knowledge ("PK") Br. at 18-19, 24-25.  Another reason for the doctrine is to give citizens notice of governing laws to protect their right to due process.  PK Br. at 24, 27-28; ACLU Br. at 25-26.

Yet the Commission barely acknowledges this critical issue in the summary of its argument.  Instead, its brief begins by defending the General Assembly's 1982 decision to contract with a private publisher to publish an annotated Georgia Code and to assert copyright against another publisher of Georgia's statutes.

3

Comm'n Br. at 34-35, 51-52.  It tells the Court the General Assembly cut its deal with LexisNexis to keep the O.G.C.A.'s price low for Georgia's citizens.  Because the General Assembly could have continued to only publish its laws in the uncodified *Georgia Laws*, the annotations are a bonus it generously provides to Georgia's citizens, and are none of Public Resource's or *amici*'s business.  *Id.* at 35-36, 52-53.

Finally touching on the edicts-of-government doctrine twenty-six pages into its brief, the Commission mischaracterizes Public Resource's argument.  It states that Public Resource argues that copyrightability of the O.C.G.A. must be considered based on the work as a whole—that the statutory materials in the O.C.G.A. render the entire work uncopyrightable.  *Id.* at 43.  Public Resource's position is different:  Georgia's legislature has declared the LexisNexis-annotated code, the O.C.G.A., to be the only official and authoritative code of Georgia; thus the whole unified work is not subject to copyright.  Op. Br. at 18-19; 30-31.  Public Resource does not argue that the statutes codified in the O.C.G.A. somehow infect otherwise copyrightable elements in the O.C.G.A.  Instead, the entire O.C.G.A. including the annotations are in the public domain from creation as a result of the State Legislature's determinations that the official code must be annotated and that only the annotated code is official.  *Id.* at 33-34.  Moreover, the General Assembly, through the Commission, supervises and approves the annotations.  Lexis/Nexis's

4

editors' numerous selections, coordination and arrangements carry out the General Assembly's and the Commission's deliberate direction to Lexis/Nexis that the official Code shall contain annotations, captions, titles, catchlines, headings, history lines, editorial notes, cross references and so on.  Doc. 44 at 3; Doc. 29-8 at 2.  The State's close direction of the preparation of the annotations is additional evidence that those annotations are an integral part of the State government's official statement of its law and not subject to copyright.

The Commission contends that this Court's reversal of the district court's decision, on the grounds that the O.C.G.A. is a unified edict of government, would be a watershed holding.  But the reversal and holding for which Public Resource argues would merely follow longstanding and controlling precedent holding edicts of government and other government-created statements of the law not subject to copyright.[1]  Op.  Br. at 28-30, 40-32.

---

[1] Public Resource's proposed amendment to the Copyright Act, supported by 115 law professors and law librarians, would do the same thing, clarifying the confusion created by the unfortunate statement in the Copyright Office's *Compendium* that the Office may register annotations unless they "have the force of law."  The Commission crows that Public Resource's founder has advocated for an amendment to the U.S. Copyright Act to provide that state and local official legal documents are uncopyrightable for reasons on public policy.  Comm'n Br. at 28.  The proposed amendment is not evidence, however, for the contention that annotations are only copyrightable if they have the force of law.  Rather, the proposed amendment seeks to codify the preexisting federal common law doctrine.

The rule the district judge applied, that annotations, even in a state's official code, are copyrightable unless they have the force of law, is simply wrong. Nonbinding portions of judicial opinions are public domain and not subject to copyright, even though only portions of an opinion have the force of law. Op. Br. at 33; PK Br. at 21-22.[2]  The Commission continues to rely on a quotation from the *Compendium of U.S. Copyright Office Practices* stating that it may register annotations commenting on legal materials unless the annotations themselves have the force of law.   As noted in Public Resource's Opening Brief, this Court owes no deference to the *Compendium*.  Additionally, the Compendium does not "declare that official state annotations are *copyrightable* as long as those annotations do not have the force of law."  It merely describes which works prepared by government officers and employees the Copyright Office may *register*.  In this way, the *Compendium* is analogous to a federal court's internal operating procedures.  Works are copyrightable or not based on the provisions of

---

[2] The Commission argues that Public Resource says copyrightability of the O.C.G.A.'s annotations is an all-or-nothing proposition, and that controlling cases hold that courts should consider whether given elements are protectable by copyright. Comm'n Br. at 43-44. This is misleading.   As discussed in Section II below, Public Resource recognizes the courts should consider separately whether each element of a work the defendant copied is a kind protectable by copyright. Op. Br. at 38-40.  But whether the State of Georgia can enforce copyright in the O.C.G.A.'s annotations, and thus in its entire only official and authoritative code, because it hired a publisher to draft and update the annotations, is an all-or-nothing proposition.

6

the Copyright Act and federal common law.  If they are copyrightable subject

matter, they are "born copyrighted" when fixed in tangible form even if the author

never applies to register them.  *Weitzman, LLC v. Microcomputer Res.*, 542 F.3d

859, 863 (11th Cir. 2008) ("copyright exists the moment an original idea leaves the

mind and finds expression in a tangible medium").  Registration with the

Copyright Office grants the copyright owner additional advantages.  17 U.S.C.

§ 411(a).[3]  Accordingly, the *Compendium* is a secondary authority and not a

particularly persuasive one.

The Commission also tries to distinguish a state's codification of its laws

from federal government works on the grounds that the Copyright Act only

specifically exempts works of the federal government from copyright and is silent

as to works of a state government.  17 U.S.C. § 105 ("Copyright protection under

this title is not available for any work of the United States Government, but the

United States Government is not precluded from receiving and holding copyrights

transferred to it by assignment, bequest, or otherwise.").  But courts have applied

---

[3] Since the Commission filed this case, the Copyright Office still has not issued certificates of registration for the 2015 O.C.G.A. volumes that Public Resource posted.  The district court did not consider their continuing non-issuance between July 2016 and the date of the district court's order (because that fact was not in the record when the briefing was completed) but did note that the Commission's motion was for partial summary judgment because the 2015 works were "yet to be registered" at the time of briefing.

the doctrine prohibiting copyright in the law to state sources of law as well as to the federal government's. *Banks v. Manchester*, 128 U.S. 244, 253 (1888); *Nash v. Lathrop*, 142 Mass. 29, 35 (1886); *Davidson v. Wheelock*, 27 F. 61 (Minn. Cir. Ct. 1866); *Harrison v. Code Revision Comm'n*, 244 Ga. 325, 329 (1979); *Building Officials & Code Adm. Int'l. Inc. v. Code Tech, Inc.*, 628 F.2d 730, 734 (1st Cir. 1980); *Veeck v. Southern Building Code Cong. Int'l*, 293 F.3d 791, 802 (5th Cir. 2002) (en banc). As a practical matter, there is no reason to apply a different test for a state's official materials stating and interpreting its laws than the test that applies to the federal government's materials. The same reasoning applies to state law, including the due process concerns articulated in some cases. *See United States v. Lanier*, 520 U.S. 259, 265 (1997); *Building Officials & Code*, 628 F.2d at 734; *Veeck*, 293 F.3d at 795.

The Commission, like the district court, relies on *Callaghan v. Myers* for its proposition that the official nature of the O.C.G.A. does not render its Commission-supervised annotations uncopyrightable,citing *Callaghan*, 128 U.S. 617, 623, 645-46, 649-50 (1888). That reliance is misplaced. The supplemental materials the Supreme Court found copyrightable, authored by the court reporter— not by the State of Illinois—were headnotes, syllabi of each opinion, lists of the judges composing the court, names of counsel and sometimes their arguments and an index, arranged alphabetically, consisting substantially of a reproduction of the

8

headnotes. *Callaghan*, 128 U.S. at 633. The Court distinguished these annotations, written by a court reporter who worked for the state, from headnotes and statements written by judges themselves, which are not subject to copyright. *Id.* at 647. Illinois has no official code, annotated or otherwise. The Court applied the "general proposition that the reporter of a volume of law reports can obtain a copyright for it as an author, and that such copyright will copy the parts of the book of which he is the author, although he has no exclusive right in the judicial opinions published…" *Id.* at 649.

The Commission argues that recognizing copyright in the O.C.G.A.'s annotation (and, by implication, enforcing it) does not violate the due process clause because copyright in the annotations does not preclude a citizen's receiving notice and fair warning of a state's laws. In short, citizens can go do their own legal research and find and analyze, on their own, the opinions summarized and other annotations provided in the O.C.G.A. *Id.* at 50. This argument is inconsistent with the Commission's position that its interest, when it decided Georgia's official code should contain the annotations, was "to help its citizens understand the laws of Georgia" and that the annotations are "tangible benefits" to Georgia citizens that "assist in understanding the Georgia statutes." *Id.* at 35-36. If citizens need the annotations in the O.C.G.A. to understand the laws they are subject to, then it follows that using copyright to restrict access to the annotations

9

prepared for the Commission acting for the General Assembly under a contract offends due process.

The Commission's reference to the reported decision of *Wheaton v. Peters*, 33 U.S. 591 (1834), is misleading. In that case, the parties were private publishers of Supreme Court reports. The remark that compilations "may be of great utility, but they are not the law" was speaking of compilations of judicial opinions—reporters. And, moreover, the language quoted in the Commission's brief and presented as the Supreme Court's explanation is actually in the reported argument of one of the defendants' attorneys, not part of the Court's opinion, which begins at page 654. *Wheaton*, 33 U.S. at 654. The Supreme Court decided that Wheaton might have exclusive rights to publish his reports under an act of Congress but remanded for a jury trial to determine whether Wheaton had complied with requisite publication of his compliance with the statute in a newspaper and delivery of a copy to the secretary of state. *Id.* at 667-68; *see also Callaghan*, 128 U.S. at 648 (summarizing).

The Commission also observes that other courts have held that "law-related official state documents are copyrightable because the copyright does not prevent fair warning of the laws." The Commission relies too much on a Second Circuit case about county maps used to assess taxes. *Id.* at 49, (citing *County of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179, 194-95 (2d Cir. 2001)). In that

10

case, the court derived a two-part test, never adopted by the Eleventh Circuit, for when state-authored works can be protected by copyright. The two parts are (1) whether the work's creator had adequate incentives, absent copyright, to create the work, and (2) whether the public needs notice of the work to have notice of the applicable law. *Id.* at 194. Even if the Court decided to adopt the Second Circuit's test, it would favor Public Resource. The record shows that the General Assembly determined that the only official Code should contain annotations. The Commission asserts that this decision was to benefit Georgia's citizens so they could better understand Georgia's statutes. Accordingly, the State's incentives to create the annotations are unrelated to its claim of copyright in the annotations. If they were, it would follow that all state-authored works registered with the Copyright Office would pass the first part of the *Suffolk* test. And indeed, the Commission boldly asserts, without citing authority, that "[s]tates are permitted to hold copyright in state-authored works." Comm'n Br. at 38 n.5. In its briefing below, the Commission quoted the *Compendium* for this position: "For example, the Office may register a tourist magazine or written or published by Arizona's department of tourism or a map created and published by the public transit authority for the city of Detroit." Doc. 34 at 11. It is correct that states may register copyright in some documents that are not sources of state law. But this case involves the O.C.G.A., not a tourism magazine or a bus route map.

11

The Commission also cites several cases in which other courts have held that a state's requirement that a citizen refer to state-approved third-party publications to comply with its laws did not prevent or destroy the copyrights in those materials. . These are distinguishable:  the statutes or regulations themselves expressly referred to the other sources of information.  Here, the O.C.G.A. volumes are self-contained and the annotations are controlled by the General Assembly, through the Commission, not by a company or some unrelated entity.  As an integrated edict of Georgia's government, completely controlled by the Georgia Legislature, the O.C.G.A. is in the public domain from its inception, no matter whom the Commission hires to prepare the annotations.

For all of the foregoing reasons, the Court should reverse the district court's decision on the grounds that the O.C.G.A., as the only official, authoritative source for Georgia's law, is not subject to copyright.

B.    The district court erred by only considering summaries of decisions because Public Resource's counterclaim and motion for summary judgment required the court to consider whether other kinds of annotations are copyrightable.

The Commission's argument that the district court properly decided the cross-motions by deciding that summaries of judicial decisions are a protectable element assumes that Public Resource's noninfringement defense and counterclaim for declaratory judgment are mirror images of the Commission's infringement

12

claims.  Thus, in the Commission's view, the district court's holding that judicial

decision summaries are protectable by copyright obviated the need for the district

court to consider other kinds of annotations.  .  The Commission also argues that

Public Resource failed to prove other kinds of annotations are not copyrightable

subject matter so the district court correctly "focus[ed] on one type of annotation in

its originality and copyrightability findings."  Comm'n Br. at 22at 39.

There are at least two problems with the Commission's arguments.  First, the

Commission asserts that none of the nonstatutory portions of the O.C.G.A. may be

copied without permission.  Therefore, Public Resource's counterclaim for

declaratory judgment and its motion asked the court to declare its rights with

respect to all the annotations.  Doc. 6 at ¶ 34.  The district court could not properly

do so using judicial summaries as representative of different kinds of annotations.

Second, the Commission offers excuses for the district court's not deciding these

issues, which are contradicted by the briefing below.

1. To resolve Public Resource's declaratory judgment counterclaim, the
   district court should have clearly delineated the metes and bounds of the
   State's copyright, if any, in the nonstatutory portions of the O.C.G.A.

The Declaratory Judgment Act provides in part that, [i]n a case of actual

controversy within its jurisdiction…any court of the United States may declare the

rights and legal relations of any interested party seeking such declaration…"  28

13

U.S.C. § 2201(a). Here, Public Resource had already posted the O.C.G.A. before the Commission filed suit in the Northern District of Georgia. Doc. 44 at 5-6. Therefore, it is beyond dispute that an actual, ripe controversy existed within the district court's jurisdiction concerning Public Resource's rights to scan, post and distribute the O.C.G.A.

The Commission has stated that it claims copyright in at least eleven kinds of non-statutory materials, besides summaries of judicial decisions, created by LexisNexis for the O.C.G.A. Op. Br. at 23; Doc. 17-8. After the Commission sued, investigative reporter Brendan Keefe wrote to Wayne R. Allen, Legislative Counsel, requesting to inspect the current O.C.G.A. for the purpose of publishing it. Doc. 17 at ¶ 72; Doc. 17-8. Mr. Allen's response to Mr. Keefe directed him to the LexisNexis webpage. Doc. 17-8. He advised him, however:

> The remaining, nonstatutory material in the O.C.G.A. (i.e., catchlines of Code sections, names of Titles, Chapters, Articles, Parts, and Subparts; history lines; editor's notes, Code Commission notes; annotations; research references; cross-references; indexes; and other such materials) is copyrighted by the State of Georgia and shall not be republished without permission. No such permission is granted here.

*Id.* The Commission's Amended Complaint defines all Lexis/Nexis's contributions as "Copyrighted Annotations." Doc. 16 at ¶ 13. Therefore, Public Resource understood that all the nonstatutory material in the O.C.G.A., which it had scanned and posted, were included in the Commission's infringement allegations. Because of the breadth of the

14

Commission's copyright claims, Public Resource brought a counterclaim for declaratory judgment, with respect to all the O.C.G.A.'s nonstatutory content.  Doc. 16 at ¶ 34.  Given its mission, and the Commission's copyright claims, Public Resource needed a fairly granular declaration of its rights with respect to all aspects of the nonstatutory text in which the Commission asserted copyright.  *Id.* at ¶ 59.

The Commission's motion for summary judgment stated that it was entitled to summary judgment that all its copyrighted works are original and creative works of authorship subject to a valid copyright.  Doc. 30 at 2.  Public Resource's motion for summary judgment urged the opposite.  Doc. 29 at 1-2.  It asked the district court to enter judgment in favor of Public Resource on both the Commission's claims and Public Resource's counterclaim for declaratory judgment.  *Id.* at 2.  Likewise, in its supporting memorandum, Public Resource had to address multiple categories of annotations, not just the summaries of judicial decisions.  Doc. 29-2 at 17-19.

As discussed in Section I, Public Resource's primary argument was that all the annotations are in the public domain because the O.C.G.A. is one edict of government.  Op. Br. at 28-35.  Thus, Public Resource's secondary arguments in

15

that the annotations are factual and for merger were concise, but plainly referred to

both the summaries of judicial decisions and other annotations:

> Likewise, Editor's notes, indexes, lists of law review articles and
> other reference materials are meant to be accurate compilations of
> uncopyrightable facts about the statutes, organized, as provided in the
> publication agreement, so as to be most useful for legal research.
> Lexis/Nexis's editorial work, like West's in the Matthew Bender case,
> no matter how scholarly, laborious and useful, lacks sufficient
> creativity to make those annotations original or protectable aspects of
> the O.C.G.A.

*Id.* at 37.

The Commission's brief in support of its motion also generally uses

"annotations" to refer to all the non-statutory portions of the O.C.G.A.  Doc. 30-1.

Additionally, the sessions laws each contain a long list of different kinds of

nonstatutory material, similar to the list in the Legislative Counsel's email to Mr.

Keefe.  *Id*. at 21.  Thus, to adjudicate Public Resource's declaratory judgment

claims, the district court should have acknowledged all Public Resource's

arguments why these different annotations are not copyrightable.  The district court

should also have provided enough analysis to permit this Court to meaningfully

review its decisions on these issues.

2.  Contrary to the Commission's explanation, the district court did not analyze all the issues Public Resource raised in support of its declaratory judgment counterclaims.

First, the district court's order describes Public Resource's counterclaim as seeking a judgment of non-infringement.  Doc. 44 at 6.  This is true, but it fails to acknowledge that Public Resource asked the court to adjudicate the whole controversy between the parties about which portions of the non-statutory text in the O.C.G.A. are public domain and which, if any, are not.Second, in Section III, the district court only recited two of Public Resources' three arguments:  that (1) the annotations are not copyrightable "due to the unusual circumstances in Georgia" and (2) the fair use argument.  *Id.* at 8.  In so doing, the district court recognized that Public Resource's primary argument was that the whole O.C.G.A. is public domain as the law of Georgia.  But it failed to even acknowledge, in this list, the secondary argument that the various categories of annotations would not be protectable even they were not part of an edict of Georgia's government because they are facts, or lack originality.  *Id.*

The district court seemed to reason that if *some* annotations of works of government are copyrightable and *some* such annotations can be registered with the Copyright Office, therefore any kind of annotations of statutes or cases is copyrightable.  *Id.* at 10-11.  But even this reasoning is part of the district court's analysis of the "unusual circumstances in Georgia" argument, not the second

17

argument challenging copyrightability.  The Commission contends that Public

Resource did not provide evidence regarding the uncopyrightability of each of the

specific annotations and thus it was appropriate for the district court to only

analyze the summaries of judicial decisions.  But Public Resource properly relied

on legal arguments, provisions of the Copyright Act, and the holdings of analogous

cases.  In *Feist*, the Supreme Court decided the issue of originality as a matter of

law, not fact, to hold that listings in a telephone directory lacked the requisite

originality for copyright.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

362 (1991); *see also Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554

F.3d 914, 920 (11th Cir. 2008); *Home Design Servs. Inc. v. Turner Heritage

Homes*, 825 F.3d 1314, 1322 (11th Cir. June 17, 2016) (separating protectable

expression from non-protectable expression is a question of law).  Moreover, the

district court's order never says Public Resource failed to offer evidence with

respect to these categories of annotations or nonstatutory text.  The district court

simply failed to analyze Public Resource's "uncopyrightable facts" and "lack of

creativity or originality" arguments set out in its briefs and supported with citations

to Supreme Court and Eleventh Circuit precedents.  Doc. 29-2 at 17-19; Doc.  41 at

8-12.

　　　The Commission recognized that Public Resource raised these issues.  Doc.

34 at 18-20.  It argues that Public Resource had to show "that each of the

annotations in each of the registered OCGA works (totaling thousands of annotations) are not of sufficient originality and creativity under *Feist*." *Id.* Again, the district court did not accept or reject this argument. The gap in the district court's order leaves this Court with no analysis of these issues to review. The Commission argues some of the issues that the district court skipped over. This cannot substitute for the district court's findings about those annotations.

In defense of the district court's merger findings, the Commission relies on an illustration from a case declining to apply the doctrine to section headings in compilations of information about yachts for sale. Comm'n Br. at 41-42 (citing *BUC Int'l. Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1142 (11th Cir. 2007)). But, as discussed in Public Resource's Opening Brief, the headings in the O.C.G.A. are uncopyrightable as obvious, noncreative headings, while the ideas of having annotations that are simply research references and lists can only be expressed in so many ways. It would be error to accept the Commission's argument that the "idea" of thousands of different annotations in thousands of pages of documents can be boiled down to "providing information about the statutes of Georgia." Comm'n Br. at 42. Therefore, if the Court does not hold that the whole of the O.C.G.A. is not subject to copyright as an edict of government, it should still reverse the district court's conclusory and clearly erroneous finding that all of the annotations are copyrightable.

19

C.    Public Resource's use of the O.C.G.A. was both transformative and noncommercial, and the District Court's holding that it was not a fair use is an error as a matter of law.

    1.    The Commission mischaracterizes the transformative nature and noncommercial purpose of Public Resource's providing access to and engagement with the O.C.G.A. on the Internet.

The Commission contends that Public Resource's purpose in posting the O.C.G.A. cannot be educational because education requires more than the mere copying of a work. Comm'n Br. at 39. The Commission ignores that Public Resource has increased the functionality of the O.C.G.A., allowing for increased search capabilities, increased accessibility for the visually impaired, and increased accessibility to the general public via mobile devices. Doc. 29-3 at ¶¶ 45-46. As a result, the citizens of Georgia have far greater access to the laws that govern them, including the official interpretations needed to fully understand the statutes that govern them. *Id.* at ¶ 45.

In adding this functionality, Public Resource has also sufficiently transformed the O.C.G.A. Through the addition of metadata, optical character recognition, and mobile display versions to the O.C.G.A., Public Resource allows citizens to interact with the O.C.G.A. in a way they could not previously without paying LexisNexis's required fees. Doc. 29-3 at ¶¶ 45-46. As noted by Amici Next-Generation Legal Platforms, Public Resource's contribution to the O.C.G.A.

has enabled significant development of platforms allowing public engagement and access with the O.C.G.A.  *See* Next-Gen Br. at 30-31.

The Commission also grossly overstates the purported "monetary benefit" Public Resource has received by posting the O.C.G.A.  Donors gave Public Resource only a total of about $3,000 to help partially defray its costs to purchase, scan and post of the O.C.G.A.  Doc. 17 at ¶¶ 42, 62.

As set out in Public Resource's Opening Brief, and that of Amici Curiae Public Knowledge et al, the District Court's inclusion of intangible benefits in the definition of "profit" in the fair use analysis, destroys any distinction between non-profit and for-profit entities.  Op. Br. at 46-50, PK Br. at 16-23.  The Commission argues against Public Resource's statement that an Eleventh Circuit case rejected the rationale of the "non-monetary benefit" cases the district court cited to find Public Resource's use was not nonprofit. Comm'n Br. at 59 (citing *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1265 (11th Cir. 2014)).  The case speaks for itself.  This Court agreed with the Second Circuit "that 'the commercial/nonprofit dichotomy concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct consequence of copying the original work. . .  [C]ourts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest.'"  *Cambridge Univ. Press*, 769 F.3d at 1266.   This Court ultimately held

21

in *Cambridge* that the defendants' use was not commercial "even if Defendants'
use profits GSU in some sense" because the use could not be fairly characterized
as "commercial exploitation" and was in the public interest. *Id.* at 1267. In
reversing this finding, the Court has the opportunity to clarify that non-monetary
benefits do not transform nonprofit uses of works into commercial uses and do not
weigh against fair use.

> 2. Public Resource's posting the whole O.C.G.A., including the annotations,
>    was necessary in light of its purpose to improve access and usability of
>    Georgia's only official code.

The Commission defends the district court's weighing the third factor against
fair use because excessive verbatim copying weighs against fair use. Comm'n Br.
at 64. But this argument assumes that Public Resource's verbatim scanning was
excessive. As set out in Public Resource's Opening Brief, the district court erred
when it failed to ask whether the quantity and value of the materials used was
reasonable in relation to the purpose of its use. There is ample evidence in the record
of Public Resource's well-documented purpose to improve public access to the
O.C.G.A. to encourage the public's engagement with the law, in keeping with its
mission and its conviction that freedom to speak, read and know the law is essential
to our democracy and underlying doctrines. Op. Br. at 16-17. Posting less than the
entire official, authoritative O.C.G.A., as the Commission suggests Public Resource

could have done, would not have accomplished its goals. Comm'n Br. at 58. For this reason, the district court's finding with respect to the third factor of the fair use analysis is erroneous. Importantly, that error was among those that led to its holding, incorrect as a matter of law, that Public Resource's use was not fair use.

       3.  Public Resource presented evidence, which was unrebutted, that neither the Commission nor Lexis/Nexis has lost any sales from Public Resources Use or that it would suffer if others made the same use of the O.C.G.A.

The Commission's argument is that Public Resource had the burden of proof to demonstrate that the Commission's market would not be substantially adversely impacted if everyone scanned and posted the O.C.G.A., and it failed. Comm'n Br. at 65. It bears noting that when a work is available on the Internet, the effect of everyone posting the same work on the Internet is not much greater. Moreover, Public Resources posted the O.C.G.A. on its website, which is known as source for primary legal materials, and posted it to the Internet Archive website, and there is no dispute that the O.C.G.A. has been further downloaded and used. So the effect of "everyone taking the same action" is not completely hypothetical. And yet, as set out in its Opening Brief, Public Resource submitted evidence that Public Resource's actions cannot have affected the Commission's market for sales of the hard copy of the O.C.G.A., as the State does not receive revenue from royalties on the sale of printed, bound volumes of the O.C.G.A in the first place. Doc. 29-17 at 14-15. As

to the market for subscriptions on CD-ROM, Public Resource submitted a one-page summary, produced by the Commission of monthly accesses of the Lexis/Nexis unannotated Georgia code.  Doc. 29-8 at 12.  This document showed no effect on the market since Public Resource posted the O.C.G.A nearly four years ago.  *Id.*  In addition to pointing out the lack of any evidence that its actions harmed the market for the O.C.G.A., Public Resource offered a number of reasonable explanations why its actions would not and have not affected the State's markets for the O.C.G.A., even if they could directly substitute for the original, authorized works.   The Commission dismisses these arguments as "unsubstantiated facts," and therefore has barely argued against them.  *See* Comm'n Br. at 67.  Finally, the Commission tries to distinguish the *Sony* case, which found time-shifting of television broadcasts to be fair use, on the grounds that the shows were free to the public in the first place and not on the Internet (as they are now, to a large extent).  *Id.* at 68 (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984)).  But the Commission also asserts elsewhere that the entire O.C.G.A., including the annotations, is available for viewing on compact disc at over 60 state and county-operated facilities within the State of Georgia.  *Id.* at 23.  Thus, the market can already tolerate some free riding, with the State's acquiescence, and the public's access to the O.C.G.A. on the Internet can reasonably be considered place-shifting, especially for those who cannot travel to Georgia to view it, or find it in a convenient

library.  Accordingly, the fourth factor is, at worst for Public Resource, neutral, and more likely in favor of fair use.

Given the above, and weighing all four factors together, the district court erred in concluding that Public Resource's scanning and posting of the O.C.G.A. was not a fair use and this Court should reverse that holding as legal error.

## **<u>CONCLUSION</u>**

Based on the foregoing, Public Resource respectfully submits that the district court's orders and judgments should be reversed in light of the errors outlined above.

This 14th day of July, 2017.

Respectfully submitted,

/s/ Elizabeth H. Rader
Elizabeth H. Rader
ALSTON & BIRD LLP
The Atlantic Building
950 F. Street N.W.
Washington DC  20004
Telephone:  202-239-3008
Facsimile: 201-239-3333

Sarah P. Lafantano
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
sarah.laFantano@alston.com

*Counsel for Appellant Public.Resource.Org, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(B), I certify that this Appellant's Reply Brief uses Times New Roman 14-point font and contains 5,906 words.

This 14th day of July, 2017.

/s/ Sarah P. LaFantano
Sarah LaFantano
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
sarah.lafantano@alston.com

*Counsel for Appellant Public.Resource.Org, Inc.*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on July 14, 2017, I electronically filed the foregoing APPELLANT'S REPLY BRIEF with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter.

/s/ Sarah P. LaFantano
Sarah P. LaFantano
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Sarah.lafantano@alston.com

*Counsel for Appellant Public.Resource.Org, Inc.*